# EXHIBIT R

THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GEORGE SCHMIDT, *et al.*, | CASE NO. C16-1725-JCC |
| Plaintiffs, | ORDER |
| v. | |
| SAMSUNG ELECTRONICS AMERICA, INC., *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendants' motions to compel arbitration, dismiss class claims, and stay proceedings (Dkt. Nos. 40, 43, 46). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion to compel arbitration in part, GRANTS the motion to dismiss class claims, and DENIES the motion to stay proceedings for the reasons explained herein.

I.  **BACKGROUND**

Plaintiffs are all purchasers of Samsung Note7 smartphones. (Dkt. No. 37 at ¶¶ 26–32.) Plaintiff Schmidt, a Washington resident, purchased two Note7 phones on the Verizon network in Washington. (*Id.* at ¶¶ 15, 26–29, 32, 42–43.) Plaintiffs King and Richardson, California residents, purchased their Note7 phones on the Sprint network in California. (*Id.* at ¶¶ 16, 32.) After a partial, and then full, recall of all Note7 phones due to a fire risk, Plaintiffs grew

frustrated with the recall process and refund compensation. (*Id.* at ¶¶ 53–61.) Plaintiffs filed a class action against Defendants for various alleged merchantability and products liability violations. (*Id.* at ¶¶ 64, 73–147.) Defendants Samsung Electronics America, Inc. (SEA), Samsung SDI America, Inc. (SDIA), and Samsung Electronics Co., LTD. (SEC), all separately moved to arbitrate pursuant to SEA's arbitration agreement contained within a brochure packaged inside Note7 boxes. (Dkt. Nos. 40, 43, 46.) Plaintiffs argue that the arbitration agreement is invalid on two grounds.

First, Plaintiffs argue that they did not receive notice of the arbitration agreement, nor of the ability to opt out. (Dkt. No. 59 at 10.) Note7 boxes from both Verizon and Sprint network stores state that the "[d]evice purchase [is] subject to additional Samsung terms and conditions," and that customers should "visit Samsung.com for more information on your device." (Dkt. No. 43 at 8–9.) Verizon boxes list contents, including a "Product Safety & Warranty Brochure." (*Id.* at 9.) Verizon box contents are weighed before shipping to ensure that all contents are included. (*Id.*) Inside Verizon boxes is a brochure titled "Product Safety and Warranty Information" (25 pages) and inside Sprint boxes is a brochure titled "Important Information" (37 pages). (*Id.*) Each brochure is "roughly 5.25 inches by 2.5 inches." (*Id.*) Within the first two pages, each brochure states in bold: "**[T]his document contains important terms and conditions with respect to your device. By using this device, you accept those terms and conditions.**" (*Id.* at 9–10.) Brochures also state in roughly the same location, in bold capitalized letters: "**READ THIS INFORMATION BEFORE USING YOUR MOBILE DEVICE**." (*Id.* at 10.) The brochure proceeds to explain on the same page, in partial bold and capitalization (as indicated):

> **Samsung Limited Warranty -** This product is covered under the applicable Samsung Limited Warranty **INCLUDING ITS DISPUTE RESOLUTION PROCEDURE and your right to opt out of arbitration within 30 calendar days of the first consumer purchase. You may opt out by either sending an email to optout@sea.samsung.com with the subject line "Arbitration Opt-Out" or by calling 1-800-SAMSUNG (726-7864).** For more detailed procedures, please refer to the "Dispute Resolution Procedures and Arbitration and Opt-Out" section of the Limited Warranty.

ORDER
PAGE - 2

(*Id.*) On page 21 of the Verizon brochure and page 33 of the Sprint brochure, the arbitration agreement is stated in capitalized font. (*Id.*) The agreement contains an opt-out provision at the end in bold and partial underlined type. (*Id.* at 11.)

Second, Plaintiffs argue that the terms of the arbitration agreement contained in both Sprint and Verizon boxes are unconscionable. (Dkt. No. 59 at 11.) The agreement states:

> ALL DISPUTES WITH SAMSUNG ARISING IN ANY WAY FROM THIS LIMITED WARRANTY OR THE SALE, CONDITION OR PERFORMANCE OF THE PRODUCTS SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, AND NOT BY A COURT OR JURY. . . . ANY SUCH DISPUTE SHALL NOT BE COMBINED OR CONSOLIDATED WITH A DISPUTE INVOLVING ANY OTHER PERSON'S OR ENTITY'S PRODUCT OR CLAIM, AND SPECIFICALLY, WITHOUT LIMITATION OF THE FOREGOING, SHALL NOT UNDER ANY CIRCUMSTANCES PROCEED AS PART OF A CLASS ACTION. . . . [A]rbitration shall be conducted according to the American Arbitration Association (AAA) Commercial Arbitration Rules applicable to consumer disputes, . . . [and] [t]he arbitrator shall decide all issues of interpretation and application of this arbitration provision and the Limited Warranty.

(Dkt. No. 43 at 9–11.) The agreement states that "Texas law will govern the interpretation of Samsung's limited warranty and disputes subject to arbitration." (*Id.* at 11.) The agreement provides an arbitration opt-out provision:

> **You may opt out of this dispute resolution procedure by providing notice to SAMSUNG <u>no later than 30 calendar days from the date of the first consumer purchaser's purchase of the Product</u>. . . . Opting out of this dispute resolution procedure will not affect the coverage of the Limited Warranty in any way, and you will continue to enjoy the benefits of the Limited Warranty.**

(*Id.*) This Court must first decide whether the arbitration agreement is valid, and if so, whether it is the Court's role to interpret it.

## II. DISCUSSION

### A. Legal Standard

In a motion to compel arbitration, the Court determines "(1) whether a valid agreement to arbitrate exists and, if it does (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party

seeking to compel arbitration "bears 'the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.'" *Norcia v. Samsung Telecomm. Am.*, 845 F.3d 1279, 1283 (9th Cir. 2017).

### B. Arbitration Agreement Enforceability

A valid agreement to arbitrate exists. For the reasons explained below, Defendants' motions to compel arbitration are GRANTED IN PART, to the extent that the remaining provisions are not substantively unconscionable.

#### 1. Plaintiffs have assented to arbitration.

Plaintiffs argue that they did not assent to the terms of arbitration.[1] (Dkt. No. 59 at 15, 20–21.) Under Washington law, a consumer "cannot successfully argue that the contract is unenforceable as long as [he] was not *deprived of the opportunity* to read it." *Signavong v. Volt Mgmt. Corp.*, 2007 WL 1813845, at *3 (W.D. Wash. June 21, 2007) (emphasis added) (citing *Yakima County Fire Prot. Dist. No. 12 v. City of Yakima*, 858 P.2d 245, 255 (Wash. 1993)). For instance, Washington law permits "shrink-wrap" contracts contained within a product box, even if the consumer did not admit to reading that contract. In *M.A. Mortensen Company, Inc. v Timberline Software Corp.*, the plaintiffs purchased software, and then challenged a limitation on damages contained within a license that was written on the outside of diskette pouches and the inside cover of the instruction manual within the software box. 998 P.2d 305, 308–09 (Wash. 2000). The plaintiff Mortensen argued that the purchase was an integrated contract, and thus the "shrink-wrap" license was an extra term that was not assented to. *Id.* at 310–11. The court found that Washington law "allow[ed] a contract to be formed 'in any manner sufficient to show agreement,'" and this encompassed "layered contracts." *Id.* at 313. Thus "Mortensen's use of the

---

[1] As a threshold matter, Parties dispute whether California or Washington law applies to Plaintiffs King and Richardson's claims. Washington courts adopt the law of the state with the "most significant relationship to the occurrence and the parties." *Barr v. Interbay Citizens Bank of Tampa, Fla.*, 835 P.2d 441, 443 (Wash. 1981) (citing Restatement (Second) of Conflict of Laws § 6 (1971). (*See* Dkt. No. 59 at 12; Dkt. No. 65 at 10–11.) The Court need not resolve this issue at this time, because the arbitration agreement is enforceable under either state's law.

ORDER
PAGE - 4

software constituted its assent to the agreement including the license terms." *Id.*

While on its facts, *Mortensen* applies to user license agreements, it applies more generally to contract formation, including arbitration agreements. The court's holding relied on two cases that dealt specifically with arbitration agreements that were inside packaging. In *Hill v. Gateway 2000, Inc.*, the Seventh Circuit found that an arbitration agreement contained "in-the-box" of a new computer bound the purchasers when they failed to timely return the computer after receiving it. 105 F.3d 1147, 1148–50 (7th Cir. 1997); *see also Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 250–52 (N.Y. Sup. 1998) (finding the same with respect to the same arbitration clause and packaging).

Here, Plaintiffs were provided at least the same notice of the agreement as the plaintiffs in *Mortensen*. Plaintiffs were warned on the outside of the Note7 box that "additional Samsung terms and conditions" applied to their devices. (Dkt. No. 43 at 8–9.) Each box contained a brochure titled either "Product Safety and Warranty Information" (Verizon) or "Important Information" (Sprint). (*Id.* at 9.) [2] At the beginning, each brochure warned the reader that "**by using this device, you accept those [contained] terms and conditions,**" and instruct the viewer to "**READ THIS INFORMATION BEFORE USING YOUR MOBILE DEVICE.**" (*Id.* at 9–10.) Both the arbitration agreement and opt-out provisions were then contained within the brochure. (*Id.* at 10–11.) Just like in *Mortensen*, Plaintiffs could have opened the box to find the agreement, read and disagreed with the terms, and then returned the device (or opted out). While the challenged agreements in *Mortensen* were directly viewable on the outside of the diskette pouches within the box, 998 P.2d at 308–09, Plaintiffs had similar adequate notice that additional terms and conditions existed, and should have read further to inquire. Thus, the Court finds that

---

[2] Plaintiff Schmidt claims that he never received a brochure in any of four Note7 boxes that he ultimately handled. (Dkt. No. 37 at ¶ 28). However, evidence of a consistent practice of delivering agreements is "prima facie evidence that [a consumer is] aware" of the offer. *Schwartz v. Comcast Corp.*, 256 Fed. Appx. 515, 518 (3d Cir. 2007). Defendants have provided evidence of a consistent practice of including the brochure in every Note7 box. (Dkt. No. 43 at 16–17.) Plaintiff Schmidt has not provided adequate evidence to overcome this presumption.

1  Plaintiffs assented to arbitration under Washington law.

2  Plaintiffs' argument also fails to the extent that any claims fall under California law. "[U]nder California law, mutual assent is a required element of contract formation." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). While generally "silence or inaction does not constitute acceptance of an offer," certain exceptions exist. *Norcia*, 845 F.3d at 1284. Silence *may* constitute assent when (1) "the offeree has a duty to respond to an offer and fails to act in the face of this duty," or (2) "the party retains the benefit offered." *Id.* at 1284–85; *see Gentry v. Superior Court*, 165 P.3d 556, 571–72 (Cal. 2007), *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (finding that the plaintiff employee silently assented to arbitration when he failed to opt-out within 30 days in accordance with an "easily readable, one-page form" that he signed). However, the silent offeree must "reasonably . . . know that an offer ha[s] been made." *Norcia*, 845 F.3d at 1285; *see Windsor Mills, Inc. v. Collins & Aikman Corp.*, 101 Cal. Rptr. 347, 351 (Ct. App. 1982) (finding that when an arbitration agreement was "in small print" and "not conspicuous," and the plaintiff "was not advised" of the agreement, the plaintiff's silence was not an assent).

In *Norcia*, the plaintiff purchased a Samsung phone; an arbitration agreement was in a 101-page "Product Safety and Warranty Information" brochure inside the phone box. 845 F.3d at 1282. The plaintiff's only notice that such an agreement was in the box was a statement on the back of the box stating "Package Contains . . . Product Safety and Warranty Brochure," and a note on the receipt stating "I understand that I am agreeing to . . . settlement of disputes by arbitration." *Id.* The court found that the plaintiff had not assented to the arbitration agreement. First, the plaintiff had no duty to act to avoid assent because "the outside of the . . . box did not notify the consumer that opening the box would be considered agreement to the terms set forth in the brochure." *Id.* at 1286–87. Second, the court found that California law had not adopted *Hill* in-the-box contracts as enforceable, but even if it had, a "Product Safety and Warranty Information" brochure did not notify a "reasonable person" "that the brochure contained a

ORDER
PAGE - 6

freestanding obligation outside the scope of the warranty." *Id.* at 1287–90. *See also Noble v. Samsung Electronics America, Inc.*, 2017 WL 838269 (3d Cir. Mar. 3, 2017) (finding that an arbitration agreement located "on the ninety-seventh page of the 'Health and Safety and Warranty Guide'" for a Samsung product was not binding under New Jersey law).

Presumably in review of an attempt to resolve the *Norcia* problems, the Ninth Circuit in *Dang v. Samsung Electronics Co., Ltd.* once again considered under California law a Samsung arbitration agreement that was contained within a brochure titled "Important Information for the Samsung SPH-L710." 2017 WL 218896, at *1 (9th Cir. Jan. 19, 2017). The court again found that Samsung failed "provide Dang with adequate notice that the information brochure contained an offer to enter into a bilateral contract." *Id.* Thus, no agreement to arbitrate was formed. *Id.*

In the instant case, Defendants have cured many of the defects noted in *Norcia* and *Dang*.[3] Whereas the *Norcia* packaging simply noted that the "Package Contains . . . Product Safety & Warranty Brochure," 845 F.3d at 1282, the packaging at issue here stated that the "Device purchase [is] subject to additional Samsung terms and conditions," (Dkt. No. 43 at 23), thus giving the Plaintiffs notice of additional contractual *terms* and *conditions* that the *Dang* plaintiff lacked. The brochure itself was labeled "Important Information," thus expanding the reasonable scope of the brochure beyond just safety and warranty information. *See Norcia*, 845 F.3d at 1287–90. Defendants' brochure contained reference to arbitration in the table of contents and on the second numbered page, (Dkt. No. 43 at 10, 21), neither of which is reflected in the *Norcia* record. Plaintiffs have more notice of an arbitration agreement here than in either *Norcia* or *Dang*. The Court finds that a "reasonable person" was on notice of the arbitration agreement, and thus Plaintiffs assented under California law.

In sum, the Court finds that Plaintiffs assented under both Washington and California law.

---

[3] Because only the Sprint Note7 phones purchased by Plaintiffs King and Richardson may be subject to California law, the Sprint packaging characteristics will be analyzed here.

ORDER
PAGE - 7

       2. <u>The arbitration agreement is unconscionable, but severable.</u>

  Because Plaintiffs assented to the terms of arbitration, the Court next considers whether the terms of arbitration are unconscionable. Unconscionability is a high standard; "[t]he party resisting arbitration bears the burden of proving unconscionability." *Pinnacle Museum Tower Ass'n v. Pinnacle Market Development (US), LLC*, 282 P.3d 1217, 1232 (Cal. 2012). To find an agreement unconscionable, California law requires that both substantive *and* procedural unconscionability be present. *Id.* Under Washington law, either procedural *or* substantive unconscionability is sufficient. *Adler v. Fred Lind Manor*, 103 P.3d 773, 781–82 (Wash. 2004). The arbitration agreement at issue is substantively unconscionable, but is severable.

     a. *Procedural unconscionability*

  Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *Pinnacle Museum*, 282 P.3d at 1232. However, "the mere existence of unequal bargaining power will not, standing alone, justify a finding of procedural unconscionability." *Adler*, 103 P.3d at 783. "Rather, the key inquiry for finding procedural unconscionability is whether [the plaintiff] lacked meaningful choice." *Id.*

  Plaintiffs here did not "lack[] meaningful choice," whether by "oppression or surprise" or other means, when they agreed to arbitration. The agreement is not oppressive. Plaintiffs take issue that the arbitration agreement "pegs the 'arbitration to rules which might change'" by directing the reader to consult the American Arbitration Association (AAA) rules. (Dkt. No. 59 at 32–33.) However, this Court has previously held enforceable an arbitration agreement that "provide[d] the AAA's website and a toll-free telephone number, so that customers may obtain the governing rules." *Ekin v. Amazon Services, LLC*, 84 F. Supp. 3d 1172, 1174 (W.D. Wash. 2014).

  Plaintiffs also argue that the agreement is "buried in the Warranty guide and its bilateral, contractual nature is hidden under the guise of a unilateral warranty that, by definition, is only

ORDER
PAGE - 8

binding on the seller." (Dkt. No. 59 at 32.) But, both Verizon and Sprint brochures state within the first two pages, in bold: **"[T]his document contains important terms and conditions with respect to your device. By using this device, you accept those terms and conditions."** (Dkt. No. 43 at 9–10) (bold in original). In roughly the same location, the brochures also inform the reader that the phone is "covered under the applicable Samsung Limited Warranty **INCLUDING ITS DISPUTE RESOLUTION PROCEDURE**" and of the right to opt out. (Dkt. No. 43 at 10) (bold and capitalization in original).

Plaintiffs also argue that procedural "surprise" exists because the agreement defines "large claims" subject to AAA arbitration differently than the AAA does, and because it requires the party making the claim to advance filing fees. (Dkt. No. 59 at 33.) However, this Court has found that a requirement to "front the costs of arbitration" is not unconscionable. *GG v. Valve Corp.*, 2017 WL 1210220, at *3 (W.D. Wash. Apr. 3, 2017); *see also Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1024–25 (9th Cir. 2016) (holding that California law did not prohibit bilateral arbitration fee-shifting agreements as unconscionable).

As such, Plaintiffs have not shown that the arbitration agreement is procedurally unconscionable.

    b.  *Substantive unconscionability*

Plaintiffs point to two things as substantively unconscionable; they have met their burden with at least one. The Court need not address the issue to the extent that "the claimant shall front the administrative fee," because such fee can cost "$10,000 or more" if the consumer's claim is over $5,000. (Dkt. No. 59 at 33.) Plaintiffs have not shown that any of them have a claim over $5,000 that could potentially implicate such a fee. Rather, Plaintiffs would likely face a $200 filing fee, which this Court has previously upheld as enforceable. *See Valve Corp.*, 2017 WL 1210220, at *3; *Consumer Arbitration Rules: Costs of Arbitration*, American Arbitration Association (Jan. 1, 2016), https://www.adr.org/sites/default/files/Consumer%20Fee%20 Schedule_0.pdf.

However, the agreement is substantively unconscionable to the extent it applies Texas law in "all disputes" subject to the agreement. (*See* Dkt. No. 59 at 34.) This Court will consider "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *See Bermudez v. PrimeLending*, 2012 WL 12893080, at *5 (C.D. Cal. Aug. 14, 2012). In *Gordon v. Lloyd Ward & Associates, P.C.*, the Washington Court of Appeals considered a Texas choice of law provision in an arbitration agreement between an online debt reduction legal services company and Washington consumer plaintiffs. 323 P.3d 1074, 1077 (Wash. Ct. App. 2014). The court found that the agreement created an attorney-client relationship, and thus it was procedurally unconscionable that the defendant company failed to advise the plaintiffs of the implications of applying Texas law. *Id.* at 1080. In dicta, the court noted without deciding that the provision was also "substantively questionable with regard to the harsh choice of law . . . provisions." *Id.*

Defendant SEA points to its "mobile division" with "operations in Texas" that render Texas a "reasonable basis for the parties' choice." (Dkt. No. 65 at 15.) This is unpersuasive. At best SEA's relationship with Texas is only tenuously established. Plaintiffs have no connection to Texas, nor is there another basis for which Texas law might reasonably apply. Thus, the term is substantively unconscionable. Severance is an appropriate remedy for a substantively unconscionable provision within a larger agreement. *See Adler*, 103 P.3d at 788. The Court accordingly SEVERS the Texas choice of law provision from the rest of the agreement. *See id.* The appropriate law to apply is determined by whichever state has the "most significant relationship" with the action. *See McKee v. AT&T Corp.*, 191 P.3d 845, 851–52 (Wash. 2008); *see also Nedlloyd Lines B.V. v. Superior Ct.*, 834 P.3d 1148, 1152 (Cal. 1992) (finding that, in the face of an invalid choice of law provision, California law would apply if California has a "materially greater interest" than the chosen state).

//

//

ORDER
PAGE - 10

**C. Scope of the Arbitration Agreement.**

    1. <u>The scope of the arbitration agreement is determined by the arbitrator.</u>

The Court must determine whether the arbitration agreement contemplates the dispute at issue. *See Chiron Corp.*, 207 F.3d at 1130. However, "incorporation of the AAA rules constitutes 'clear and unmistakable' evidence that the parties intended to delegate the arbitrability question to an arbitrator." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Such is the issue here. The arbitration agreement incorporates the AAA rules. (Dkt. No. 43 at 26.) As discussed above, such incorporation is not unconscionable. Thus, the Court finds that the agreement provides "'clear and unmistakable' evidence that the parties" delegated the scope of arbitrability to the arbitrator.

    2. <u>Plaintiffs' class claims are dismissed.</u>

The Federal Arbitration Act compels the Court to dismiss Plaintiffs' class claims. California law does not forbid class action waivers in arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011). In *AT&T* Mobility, the Supreme Court held that the Federal Arbitration Act preempted the judicial rule against class action waivers. *See id.* at 340, 352. Plaintiffs assert that Washington law is not similarly governed. (Dkt. No. 59 at 35.) The Washington Supreme Court has found that class action waivers are substantively unconscionable. *Scott v. Cingular Wireless*, 161 P.3d 1000, 1008 (Wash. 2007). However, in *Coneff v. AT&T Corp.*, the Ninth Circuit found that the rule in *Scott* had similar reasoning to the preempted California rule, and that the "concerns underlying those two states' rules are 'almost identical.'" 673 F.3d 1155, 1160 (9th Cir. 2012). Thus, the court reasoned, "if California's substantive unconscionability rule is preempted by the FAA, then so is Washington's similarly reasoned rule." *Id.* The Court thus GRANTS Defendant's motion to dismiss Plaintiffs' class claims.

    3. <u>Plaintiffs' individual claims are dismissed.</u>

The Court has discretion to stay or dismiss litigation pending arbitration. *See Sparling v.*

ORDER
PAGE - 11

*Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988). While the Ninth Circuit has expressed a strong preference that arbitrable cases be stayed rather than dismissed, *See Ekin v. Amazon Services, LLC*, 2015 WL 11233144 (W.D. Wash. Feb. 10, 2015), other concerns can override this preference and justify dismissal. As discussed above, to the extent that some claims might be governed by California law, this Court has found that Defendants have adopted a more reasonable arbitration agreement than that found in *Norcia*. However, *Norcia* ultimately condemns a lower threshold of contract visibility; *Norcia* does not necessarily *approve* of Defendants' current arbitration scheme. In addition, this Court interprets *Mortensen* to find that Plaintiffs assented under Washington law. However, the Ninth Circuit has not properly determined the scope of *Mortensen*. For these reasons, the Court finds that the potential appellate value of this case overrides the "strong preference" to stay. Thus, the Court DISMISSES Plaintiffs' individual claims.

**D.     SDIA and SEC are entitled to enforce SEA's arbitration agreement.**

> A non-signatory may enforce an arbitration agreement
> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, [or] (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (*quoting Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013); *see also McLeod v. Ford Motor Co.*, 2005 WL 3763354, at *4 (C.D. Cal. Apr. 14, 2005) (finding that when "charges against a parent company and its subsidiary are based on the same facts" and the two companies are "inherently inseparable," one such nonsignatory company could enforce the arbitration agreement that the other signed); *cf. Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) (finding that a third party could not enforce an arbitration agreement when it did not have more than an "attenuated relation" to the issue or the parties).

ORDER
PAGE - 12

  At least the second element is met here. Plaintiffs allege claims broadly against SEA, SEC, and SDIA. (*See* Dkt. No. 37 at ¶¶ 18–20.) The Plaintiff signatories have "allege[ed] substantially interdependent and concerted misconduct by the nonsignator[ies] and another signatory." In addition, the Court need not go beyond the terms of the agreement. The agreement applies to SEA's "affiliates." (Dkt. No. 49 at 36–37.) SEA's parent companies plainly fall within the realm of SEA's "affiliates." Thus, SEC and SDIA can enforce SEA's arbitration agreement, pursuant to both *Murphy* and the parties' own agreement.

### III.  CONCLUSION

  For the foregoing reasons, Defendants' motion to compel arbitration (Dkt. Nos. 40, 43, and 46) is GRANTED IN PART. As discussed above, the agreement's Texas choice of law provision is substantively unconscionable and SEVERED. Defendants' motion to dismiss class claims is GRANTED. Defendants' motion to stay proceedings is DENIED, and Plaintiffs' individual claims are hereby DISMISSED. Defendants' motion to dismiss (Dkt. No. 47) is DISMISSED as moot.

  DATED this 25th day of May 2017.

*John C. Coughenour*
John C. Coughenour
UNITED STATES DISTRICT JUDGE

# EXHIBIT S