## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **PAULA WALLRICH, DANIELLE JONES, GRANT GRINNELL, JEFFREY BURTON, RHONDA MCCALLUM, PROVIDENCIA VILLEGAS, AND 49,980 OTHER INDIVIDUALS,** | **MOTION TO COMPEL ARBITRATION** |
| *Petitioners,* | Civil Action No. |
| *v.* | |
| **SAMSUNG ELECTRONICS AMERICA, INC.**; and **SAMSUNG ELECTRONICS CO., LTD.** (d/b/a Samsung Electronics America, Inc.), | |
| *Respondent.* | |

## I.  INTRODUCTION

In a blatant display of hubris and hypocrisy, Samsung has breached its commitment to Petitioners (all Samsung customers) by flatly refusing to pay its share of arbitration filing fees and allow Petitioners to pursue remedies in the forum Samsung foisted upon them.  For nearly a decade, Samsung has included a forced mandatory arbitration provision and class action waiver in its terms and conditions wielding it as a shield to successfully evade class actions and, more importantly, liability.  But now, when tens of thousands of customers finally level the playing field by simultaneously filing individual claims in arbitration, Samsung refuses to honor its contract to arbitrate and, worse, tells the arbitral forum that Samsung – a company with approximately $21 Billion in net income last year – will only arbitrate if the individual consumers pay its fees.  This Court must reject Samsung's duplicitous conduct and order it comply with its contract.

Petitioners are 49,986 Samsung Galaxy device users who are pursuing claims against Samsung for surreptitiously generating, collecting, and storing their biometric data in violation of Illinois' Biometric Information Privacy Act ("BIPA").

1

By opening the product packaging or using the product (even if not the purchaser), every user of the Samsung Galaxy Smartphone agreed to Samsung's In-box Terms and Conditions, Samsung's End User License Agreement, Samsung's online Terms & Conditions, and an additional Terms and Conditions agreement with Samsung Electronics & Co., LTD (the parent company) when creating a user account (collectively, "T&C"). All these agreements contain practically identical binding legal agreements requiring mandatory individual arbitration ("Mutual Arbitration Provision").

Samsung's Mutual Arbitration Provision requires Petitioners and Samsung to resolve any disputes in arbitration administrated by the American Arbitration Association ("AAA") under its Commercial Rules for consumer arbitration ("Consumer Rules"). The Mutual Arbitration Provision prohibits Samsung users from joining together to bring class or representative proceedings against Samsung in court or in arbitration.

After six (6) months of noticing Samsung of their claims, and a failed mediation, each Petitioner filed an individual demand for arbitration against Samsung with AAA. AAA made an administrative determination that each Petitioner had met his or her filing requirements, it scheduled an administrative call to discuss logistics and invoiced Petitioners for their filing fees. Petitioners paid their filing fees on the day the invoice was delivered. Simultaneously, Samsung sent a letter to AAA to preemptively avoid AAA's invoice, stating that it would not be paying its share of the filing fees in connection with all but 14 of the 50,000 filed demands. Upon receipt of that letter, AAA cancelled an administrative call with the parties to discuss logistics for moving the arbitrations forward.

Samsung has repeatedly enforced its Mutual Arbitration Provision to prevent users from litigating in court. In doing so, Samsung has affirmed (i) that the arbitration agreement between

2

Samsung and its users is valid and enforceable under the Federal Arbitration Act ("FAA") and covers all of the claims Petitioners have asserted, (ii) that the FAA requires courts to compel arbitration in accordance with the terms of the agreement to arbitrate, and (iii) that the interpretation and application of the arbitration agreement is to be decided by the arbitrator and governed by AAA rules. By refusing to abide by its contract and pay its share of the filing fees as directed by AAA's rules, AAA is prevented from empaneling an individual arbitrator for even a single Petitioner's claim.

Samsung has no excuse for refusing to comply with its own contract. Although Samsung has vaguely and falsely asserted that Petitioners' demands for arbitration have "deficiencies," as set forth in its contract, that is a determination for the arbitrator. The Mutual Arbitration Provision expressly incorporates AAA rules, which in turn authorize AAA to make binding administrative determinations for the assessment of filing fees. And precedent makes clear that courts cannot second-guess AAA's determinations. *See Uber Techs., Inc. v. Am. Arb. Ass'n, Inc.,* 204 A.D.3d 506, 510 (1st Dep't 2022); *see also Lifescan, Inc. v. Premier Diabetic Servs., Inc*, 363 F.3d 1010, 1011–13 (9th Cir. 2004).

Samsung has violated AAA's requirements and breached its contractual obligation to arbitrate Petitioners' claims. Pursuant to the FAA, this Court must grant Petitioners' motion, enforce the Mutual Arbitration Provision as written, and order Samsung to comply with AAA's administrative determinations so Petitioners' arbitrations can begin.

## II. BACKGROUND

### a. Samsung Requires Users to Sign an Agreement Containing a Broad Arbitration Clause Selecting AAA as the Arbitration Forum.

Since at least 2016, Samsung's T&C have contained a "Mutual Arbitration Provision," which applies to "all disputes between you and Samsung that in any way relate to, or arise from,

the standard limited warranty; or the sale, condition, or performance of the product." *Samsung Services T&C, See* Petition, ¶ 2, Exs. B-E. The arbitration must be individual; the parties cannot bring class, collective, or other representative proceedings. *See id.* ("Any such dispute shall not be combined or consolidated with a dispute involving any other person's or entity's product or claim. Specifically, without limitation of the foregoing, you shall not under any circumstances proceed as part of a class action"). Each Petitioner agreed to those terms.

If the parties dispute the enforceability of the arbitration provision or how that provision should be applied, that dispute must itself be decided by an arbitrator. *See id.* ("The arbitrator shall decide all issues of interpretation and application of this Agreement."). There is no exception to this broad delegation clause. *Id.* The arbitration clause also provides that each Petitioner's arbitration "shall be governed by the [AAA's] Commercial Arbitration Rules applicable to consumer disputes." *Id.* Consistent with the delegation clause in Samsung's arbitration agreement, the AAA Consumer Rules state that the arbitrator will resolve "any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* Petition, Ex. F, Consumer Rule 14(a).

By designating the Consumer Rules to govern disputes, Samsung and users are "deemed to have made th[o]se rules a part of their arbitration agreement." Consumer Rule 1(a). The Consumer Rules also state that "[w]hen parties agree to arbitrate under [the Consumer Rules] . . . they thereby authorize the AAA to administer the arbitration." *Id.,* Consumer Rule 1(b). Once an arbitrator is appointed, "[t]he arbitrator shall interpret and apply the[] rules insofar as they relate to the arbitrator's powers and duties." *Id.,* Consumer Rule 53. But before an arbitrator has been appointed, or where a rule does not involve the "arbitrator's powers and duties," the rules "shall be interpreted and applied by the AAA." *Id.* AAA is authorized to "require the parties to deposit

in advance of any hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's fee." *Id.,* Consumer Rule 6.

The Consumer Rules specify the fee schedule for Petitioners' arbitrations. AAA's Consumer Fee Schedule for Multiple Case Filings applies where, as here, twenty-five (25) or more similar claims for arbitration are filed against the same party and counsel for the parties is consistent across all cases. Consumer Rules at pg. 35. The Multiple Case Filing Fee Schedule in effect when Petitioners filed their demands capped an individual's filing fee at $100 for the first 500 individuals and $50 for the remainder of individuals, and imposes a filing fee on companies of $300 per individual for the first 500 individuals, $225 per individual for the next 1,000 individuals, $150 per individual for the next 1,500 individuals, and $75 per individual for the remainder, plus a $1,400 case management fee for each individual. Multiple Case Filing Fee at 36. The Multiple Case Fee Schedule further provides that "[t]he company's share of filing fees is due as soon as the employee or individual meets his or her filing requirements." *Id.* at 34.

Samsung has repeatedly relied on its Mutual Arbitration Provision to force users to arbitration, thereby eliminating their ability to litigate in court or as part of a class. Samsung's Mot. Compel Arbitration, *Vasadi, et al. v. Samsung Electronics America, Inc.,* 2:21-cv-10238 (D.N.J. July 12, 2021) ECF No. 16; *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. 16-cv-1953 DMG (KKX), 2020 WL 6528422, at *5 (C.D. Cal. Oct. 20, 2020) (same); *Schmidt v. Samsung Elecs. Am., Inc.,* 2017 U.S. Dist. LEXIS 80768 (W.D. Wash. May 25, 2017) (same); and *G.T. v. Samsung Electronics America, Inc.*, 1:21-cv-04976 (N.D. Ill. Oct. 29, 2021), ECF No. 17 (same). In doing so, Samsung has confirmed that its Mutual Arbitration Agreement is valid and enforceable, applies to all users' claims, and that any issues regarding its applicability are left to the arbitrators.

**b. Petitioners Filed Individual Arbitration Demands that AAA Determined Met the Initial Filing Requirements and Paid Their Filing Fees.**

On September 7, 2022, Petitioners filed individual demands before the AAA containing each claimant's individual information, describing each claimant's individual claims, and requesting individual relief. Petition, ¶ 11, Ex. J. After it determined that each claimant's demand met AAA's filing requirements, AAA invoiced Petitioners for their share of the filing fees. *See* Petition, ¶ 13, Ex. L. Petitioners' filing fees were promptly paid. *See* Petition, ¶ 13, Ex. M.

**c. Samsung Failed to Pay Its Filing Fees Required by AAA to Empanel Arbitrators.**

On September 27, 2022, the same day Petitioners were invoiced and paid their filing fees, Samsung sent AAA a letter advising that it would not be paying its Business Filing Fee in connection with 49,986[1] of the filed demands. *See* Petition, ¶ 14, Ex. N. In its letter, Samsung told AAA that after conducting some undefined sampling it had identified that "a substantial number of the Demands are facially defective and do not involve proper [Petitioners]." *Id.* Samsung did not identify to whom or how many Petitioners its allegation applied. *See id.* Samsung further stated that it would participate in the arbitrations only if Petitioners paid the fees to arbitrate for Samsung – a multi-billion-dollar company. *Id.*

Petitioners' counsel responded the next day, noting several inaccuracies in Samsung's letter and declining the invitation to pay Samsung's portion of the filing fees. *See* Petition, ¶ 15, Ex. O. On September 28, 2022, AAA cancelled the administrative call scheduled for September 29, 2022, thereby determining the arbitrations could not move forward. *See* Petition, ¶ 16, Ex. P.

---

[1] Samsung told the AAA it would pay the filing fee for the fourteen Illinois users who are now living in California. Samsung cited CA Code of Civil Procedure §§ 1281 *et seq.* which provides for sanctions if Samsung did not pay its fees

## III. ARGUMENT

On the facts and law, this is a straightforward motion to enforce a contract. Under the FAA, courts "place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Essentially, the FAA codifies the right of a party to specific performance of an arbitration agreement: "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Petitioners and Samsung entered into valid agreements to arbitrate Petitioners' claims: the Mutual Arbitration Provision. Under the Mutual Arbitration Provision, AAA administers the arbitrations pursuant to its Consumer Rules. The Mutual Arbitration Provision states that any issues relating to their interpretation or application may be decided only by the arbitrator—which occurs after the parties meet AAA's administrative requirements to appoint an arbitrator.

Petitioners did everything required of them to commence arbitration under the T&C and AAA's Rules. AAA made an administrative determination that Petitioners had met all requirements. AAA further determined that Samsung was obligated under AAA's Rules and the Mutual Arbitration Provision to pay its share of the filing fees so Petitioners' arbitrations could commence. Samsung refused. Samsung's decision to not comply with AAA rules "in the manner provided for in [its] agreement," 9 U.S.C. § 4, violates the FAA, and entitles Petitioners to a court order compelling Samsung to arbitrate.

Beyond determining whether there is a valid arbitration agreement, and that Samsung has refused to arbitrate under it, this Court's role is extremely limited. Before AAA, Samsung raised an unspecified number of "deficiencies" with a purported but undefined sampling of Petitioners'

demands but refused to give any more detail before deciding to breach its arbitration agreement. Under the delegation clause in the Mutual Arbitration Agreement, however, arguments about those purported "deficiencies" may be resolved only by AAA and the arbitrator, not this Court. Such arguments provide no basis for this Court to decline to compel arbitration.

Samsung has repeatedly enforced its Mutual Arbitration Agreement to compel consumers to arbitrate their claims, including attempting to enforce it against very similar data privacy claims currently pending in this district (at least before it discovered that thousands of individuals wanted to arbitrate). *See G.T. v. Samsung Electronics America, Inc*., No. 2021-cv-04976 (N.D. Ill. 2021), ECF No. 17. Samsung's actions make clear that it does not actually support the right of a meaningful number of consumers to pursue arbitration; rather, it is only willing to comply with the arbitration provision it drafted and forced on users when a small number of Samsung customers invoke it. Fortunately, Samsung's contract and the FAA prevent this obvious gamesmanship and require that Samsung be ordered to participate in arbitration as administered by AAA under the Consumer Rules.

> **a. The Parties Entered Into a Valid Arbitration Agreement That Covers the Present Dispute.**

Under the FAA, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. When a party moves to compel arbitration pursuant to Section 4 of the FAA, they must show (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration. *Zurich Am. Ins. Co. v. Watts Indus., Inc.,* 466 F.3d 577, 580 (7th Cir.2006). If these requirements are met, the FAA "mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v.*

*Byrd*, 470 U.S. 213, 218 (1985); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002).[2]  Where, as here, the parties have agreed to a "delegation clause" that delegates questions regarding the enforceability or scope of an arbitration clause to an arbitrator, the court need only determine that the parties have entered into a valid arbitration agreement.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).  Any other issues are for the arbitrator to resolve.

Samsung and Petitioners have entered into a valid arbitration agreement that encompasses the present dispute.  There is no dispute that Samsung has refused to arbitrate.  The Court must compel Samsung to arbitrate Petitioners' claims.

### i. The Parties Entered Into a Valid Arbitration Agreement.

The parties entered into a valid arbitration agreement.  *See* Petition, Exs. B-E.  The terms and conditions each Petitioner agreed to when registering or using their Samsung device contains a sweeping arbitration provision.  Samsung has successfully compelled consumers to arbitrate their claims under this provision.  *See Vasadi v. Samsung Elecs. Am., Inc.*, No. 21-cv-10238 (D.N.J. July 12, 2021), ECF No. 16 (granting Samsung's motion to compel arbitration as to all named consumer plaintiffs who did not opt-out of agreement); *Velasquez-Reyes v. Samsung Electronics America, Inc.*, No. 16-cv-1953 DMG (KKX), 2020 WL 6528422, at *5 (C.D. Cal. Oct. 20, 2020) (same); and *Schmidt v. Samsung Elecs. Am., Inc.,* 2017 U.S. Dist. LEXIS 80768 (W.D. Wash. May 25, 2017).

Samsung has admitted that a valid arbitration agreement exists.  Samsung argued in *G.T.* that "[t]he Arbitration Agreement is valid and enforceable."  Petition, Ex. S at 9.  In fact, in its

---

[2] Petitioners may institute a court action by filing a petition to compel arbitration, as they have done here. *See, e.g.*, *Cequent Performance Prods., Inc. v. Let's Go Aero, Inc.*, 2016 WL 4036754, at *2 (N.D. Ill. July 28, 2016); *Unite Here Loc. 1 v. The Standard Club*, No. 07-CV-2530, 2007 WL 2962788, at *1 (N.D. Ill. Oct. 5, 2007).

September 27, 2022 letter to AAA, Samsung acknowledged that its terms and conditions contain a valid arbitration agreement. Samsung claimed it "is committed to its consumer arbitration program and values the role that the AAA plays in ensuring the fair adjudication of legitimate disputes between parties. Consumers and Samsung have mutually benefitted from the AAA's administration of individual disputes pursuant to Samsung's Arbitration Arregement." Petition, Ex. N. Samsung stated that it would pay its share of the fees for 14 Claimants living in California that asserted BIPA claims based on their past residence in Illinois,[3] and expressly reserved its "rights with respect to any other individual and pending or future demands for arbitration." *Id.* Samsung cannot deny that the Mutual Arbitration Provision is valid and enforceable.

### ii. The Mutual Arbitration Provision Covers the Present Dispute.

That the parties have entered into a valid arbitration agreement is sufficient by itself to compel arbitration, because Samsung's temrs and conditions delegate to the arbitrator all questions regarding the scope of the arbitration agreement: "The arbitrator shall decide all issues of interpretation and application of this Agreement." Petition, Exs. B-E. When an agreement contains a broad delegation clause like that in the T&C, it is well established that, "[j]ust as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Schein*, 139 S. Ct. at 530. As Samsung argued in *G.T.*, "the scope of the Arbitration Agreement—including whether it encompasses Plaintiffs' claims—is an issue that should be resolved by the arbitrator." Petition Ex. R at 17 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995).)

---

[3] As Samsung recognized, there is a California statute that provides for strict penalties for any company that fails to pay an invoice issued by an arbitration organization in an arbitration involving a consumer or employee. Cal. Code Civ. Proc. § 1281.97-.99 (providing that a drafting party that fails to pay arbitral administration fees or costs under the arbitration administrator's rules within 30 days of the "due date" is deemed to be "in material breach of the arbitration agreement" and providing for sanctions). Claimants submit that, should Samsung disregard any orders to arbitrate under the Arbitration Agreement, California law would provide an appropriate benchmark for any sanctions or penalties this Court would impose on Samsung for violations of a court order.

Undoubtedly, the Mutual Arbitration Provision covers the present dispute. The T&C states that "all disputes between you and Samsung relating in any way to or arising in any way from the Standard Limited Warranty or the sale, condition or performance of the Product shall be resolved exclusively through final and binding arbitration, and not by a court or jury." Petition, Exs. B-E. Petitioners demand arbitration because whether Samsung's use of facial-recognition technology in its Products violates Illinois law is a dispute over the "sale, condition, or performance" of Samsung devices. Samsung agrees that the Claimants' BIPA claims are within the scope of the Mutual Arbitration Provision: "[t]he relevant Arbitration Agreement language is broad and requires arbitration of all disputes related to the Gallery App and other activities on the phone." Petition, Ex. S at 6.

> **b. Samsung Has Breached the Mutual Arbitration Provision By Refusing to Arbitrate.**

On September 7, 2022, Claimants each filed an arbitration demand with AAA and paid the associated filing fees. AAA had barely begun administration of the cases when Samsung informed it that "to protect the integrity of the [arbitration] process and to vindicate its rights, Samsung will not be paying the Business Filing Fee in connection with the demands." *See* Petition ¶ 14, Ex. N. Samsung only agreed to arbitrate—in direct violation of its own Mutual Arbitration Provision and AAA rules—if *Petitioners*, individual consumers, agreed to pay the arbitration fees due and payable by *Samsung*, a company that earned nearly $21 billion in net income in 2021. *Id.*; Exs. B-E (providing that the responsibility for AAA fees is determined by AAA rules). Petitioners rejected this absurd "offer." *See* Petition ¶ 15, Ex. O. Due to Samsung's non-payment, AAA cancelled the administrative call signaling that the cases cannot not move forward. *See* Petition, ¶ 16, Ex. P.

This is not the first time that a corporate defendant has strategically breached an arbitration agreement it drafted, imposed on consumers or employees. Courts around the country have uniformly held that these companies must arbitrate. This is true even where the company objects to the arbitrator's administration decisions or complains that the arbitration demands are not properly filed. These issues are clearly delegated to individual arbitrators.

For example, a court in this District, in *McClenon v. Postmates Inc.*, 473 F. Supp. 3d 803, 806 (N.D. Ill. 2020), *appeal dismissed*, No. 20-2577 (7th Cir Apr. 8, 2021), individual rideshare couriers filed thousands of individual arbitration demands with AAA pursuant to an arbitration clause in their "Fleet Agreement" with the company. The company refused to pay arbitration fees, claiming that the arbitration demands were improperly filed under the Fleet Agreement and were an impermissible collective arbitration tactic. AAA informed the company that the couriers' demands were properly filed as individual arbitrations under AAA rules and that the company could raise any additional issues with the demands before the arbitrators assigned to the individual arbitrations. *Id. at* 807. The company refused to pay the arbitration fees. On the parties' cross-motions to compel arbitration, the Northern District of Illinois ordered the company to arbitrate because "the Fleet Agreement delegates to the arbitrator the exclusive authority to resolve Postmates' claims that Petitioners' arbitration demands violate the Class Action and Representative Action Waivers by seeking *de facto* class arbitration. As such, the Court declines to consider the merits of the parties' arguments on that issue and leaves them for an arbitrator to resolve." *Id.* at 811-12.

Similarly, courts in the Ninth Circuit have ordered recalcitrant companies to arbitrate in accordance with their agreements. In *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1254 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535 (9th Cir. 2020), the Northern District of California reached the

same conclusion with respect to a rideshare company's failure to pay arbitration fees for the claims of 5,257 couriers.  The company raised arguments regarding whether the couriers had complied with AAA filing rules and sought an order from the court compelling them to refile their demands. The court disagreed "it is unnecessary to resolve Petitioners' purported motivations with respect to the Class Action Waiver. To the contrary, the salient issue is simply whether Petitioners' demands comport with the requirements of the Mutual Arbitration Provision. That determination is within the arbitrator's exclusive authority." *Id.* at 1254; *see also Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1066 (N.D. Cal. 2020) (granting motion to compel arbitration as to 5,010 individual couriers over refusal of company to pay arbitration fees).  That decision was upheld by the Ninth Circuit.  823 F. App'x 535 (9th Cir. 2020).

In *McLellan v. Fitbit, Inc.*, the court granted the defendant's motion to compel the plaintiff's misrepresentation claims to arbitration under the defendant's Terms of Service.  No. 16-cv-00036-JD, 2018 WL 3549042, at *1–2 (N.D. Cal. July 24, 2018). When the plaintiff then demanded arbitration, the defendant "turned to 'the dark side'" and refused to pay the filing fees it owed under the same Terms of Service upon which it had relied to compel arbitration.  *Id*. at *2–4.  While the defendant's eleventh-hour decision to pay the arbitration fees after the Court had expressed concern saved it from losing the motion to compel arbitration, the court-imposed sanctions on counsel for "delay[ing] and imped[ing] the arbitration on frivolous grounds."  *Id*. at *4-6.

The weight of authority is overwhelming.  A defendant breaches its arbitration agreement when it refuses to pay the arbitration filing fees required by that agreement, as Samsung has done here.  *See, e.g.*, *Thomas D. Philipsborn Irrevocable Ins. Tr. v. Avon Cap., LLC*, No. 11-cv-3274, 2012 WL 4513903, at *5 (N.D. Ill. Oct. 1, 2012) (denying the defendants' motion to compel

arbitration and proceeding with litigation when the defendants failed to pay AAA's required arbitration fees); *see also Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015) (lifting stay following termination of arbitration based on a party's refusal to pay fees); *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1009–10 (9th Cir. 2005) (finding that a defendant that "breached its [arbitration] agreement . . . by refusing to participate in the arbitration proceedings . . . cannot now enforce it"); *Garcia v. Mason Contract Prods., LLC*, No. 08-cv-23103, 2010 WL 3259922, at *1–2 (S.D. Fla. Aug. 18, 2010) (granting a motion to reopen the case after the "[d]efendant persistently refused to timely pay its share of the arbitrator's fee"); *cf. Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 500 (7th Cir. 2018) (holding that the defendant waived its ability to compel arbitration when its conduct was "manifestly inconsistent with an intention to arbitrate").

Samsung also cannot avoid arbitration by objecting to Petitioners' demands or AAA's administration decisions. Before AAA, Samsung justified its decision to breach the Mutual Arbitration Provision based on a litany of supposed complaints about whether the demands complied with the Mutual Arbitration Provision or AAA Rules, some of which were contradictory. For example, Samsung argued that Petitioners' filing of individual demands was a form of class or representative proceeding, while at the same time complaining that Petitioners would not agree on a "streamlining process" to consolidate the claims. *See* Petition, Ex. N. Other of Samsung's complaints went to the merits of the underlying BIPA claims. All of which are matters for arbitrators, not for AAA staff or a court.

As AAA and courts have recognized, these objections arise from either the "interpretation" or "application" of the T&C, and thus are delegated to individual arbitrators. *See* Petition, Exs. B-E ("[t]he arbitrator *shall decide all issues of interpretation and application of this Agreement.*")

(emphasis added).  In fact, Samsung asserted in *G.T.* just last October that any disputes arising from the parties' interpretations of Samsung's contract, such as whether a minor plaintiff could be bound to arbitrate under the T&C, may be raised only with individual arbitrators.  Samsung's Mot. to Compel Arbitration at 9, *G.T.*, Dkt. No. 17 ("Here, the Arbitration Agreement expressly incorporates [AAA's] Supplementary Procedures for Consumer-Related Disputes, and specifically AAA's rule that '[t]he arbitrator shall decide all issues of interpretation and application of this Agreement.' Accordingly, the parties have agreed that all challenges to the Arbitration Agreement are to be determined by the arbitrator").  Because AAA determined that Petitioners' filings comply with AAA's rules, any disputes regarding the T&C's interpretation or application must be determined by the arbitrators.  That cannot happen until Samsung pays its share of the filing fees so arbitrators can be assigned to the cases.

Courts agree that if a valid arbitration agreement with a delegation clause exists, matters involving the interpretation or applicability of the agreement, including the payment of arbitration fees, are a matter for arbitrators, not courts.  As a New York appeals court recently reaffirmed: "While [the company] is trying to avoid paying the arbitration fees associated with 31,000 nearly identical cases, it made the business decision to preclude class, collective, or representative claims in its arbitration agreement with its consumers, and AAA's fees are directly attributable to that decision."  *Uber Techs.,* 204 A.D.3d at 510.  This Court should not allow Samsung to frustrate arbitration's purpose by raising issues expressly delegated to individual arbitrators.

### c. The Court Should Enforce the Mutual Arbitration Provision and Compel Samsung to Arbitrate Under the Terms of its Agreement.

Under the FAA, once a court determines a valid arbitration agreement exists, it must enter an order "directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  The T&C incorporates AAA rules, which provide that Samsung is responsible for

filing, administrative, and arbitration fees according to the fee schedules for consumer disputes and mass filings. *See* Petition, Exs. B-E ("Administrative, facility and arbitrator fees for arbitrations in which your total damage claims, exclusive of attorney fees and expert witness fees, exceed $5,000.00 ("Large Claim") shall be determined according to AAA rules.").

Because Samsung and each Petitioner entered into a valid arbitration agreement applicable to Petitioner's underlying privacy claims, and because Samsung has breached that agreement, this Court's role is clearly defined. It must "rigorously enforce the arbitration agreement in accordance with [its] terms," *Am. Express Co. v. Italian Colors Rest.,* 133 S. Ct. 2304, 2309 (2013), and issue an "order directing that such arbitration proceed in the manner provided for in such agreement," 9 U.S.C. § 4. The FAA "mandates that district courts *shall* direct the parties to proceed to arbitration." *McClenon*, 473 F. Supp. 3d at 807 (citing *Byrd*, 470 U.S. at 218).

The FAA further mandates that a motion to compel be decided on an expedited basis, reflecting "Congress's clear intent … to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983); *Young v. Shipt, Inc.*, 563 F. Supp. 3d 832, 840 (N.D. Ill. 2021) (granting motion to compel arbitration and denying limited discovery because "[a]llowing discovery, without any factual dispute to resolve, would run afoul of 'the unmistakably clear congressional purpose that the arbitration procedure . . . be speedy and not subject to delay and obstruction'") (citations omitted). As there is no serious dispute regarding that Samsung has breached a valid agreement to arbitrate, this case presents a clear scenario for the FAA's policy in favor of summary disposition.

Fortunately, the law provides an efficient remedy when a company has refused to comply with AAA's administrative determinations requiring it to pay fees so that the parties can arbitrate:

16

order the company to arbitrate in accordance with its agreement with consumers.  *See McClenon*, 473 F. Supp. 3d at 806 (compelling company to arbitrate individual demands before AAA); *Adams*, 414 F. Supp. 3d at 1254 (same); *Abernathy*, 438 F. Supp. 3d at 1066 (same).  This Court should compel Samsung to arbitration.

## IV. CONCLUSION

For the foregoing reasons, Petitioners' motion to compel arbitration should be granted. This Court should require Samsung to arbitrate Petitioners' claims in accordance with the terms and conditions it drafted, which includes the requirement to pay its share of the fees.

Dated: October 7, 2022                                    Respectfully submitted,

*/s/ Mark R. Miller*_____
Mark R. Miller
WALLACE MILLER
150 N. Wacker Drive, Suite 1100
Chicago, IL 60606
T. (312) 261-6193
F. (312) 275-8174
E. mrm@wallacemiller.com

*Local Counsel for Petitioners*

Jonathan Gardner
Melissa H. Nafash
Jonathan Waisnor
Shannon K. Tully
LABATON SUCHAROW LLP
140 Broadway
New York, NY  10005
Tel: (212) 907-0700
Fax: (212) 818-0477
jgardner@labaton.com
mnafash@labaton.com
jwaisnor@labaton.com
stully@labaton.com

*Counsel for Petitioners*