# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PAULA WALLRICH, DANIELLE JONES,** :
**GRANT GRINNELL, JEFFREY BURTON,** :
**RHONDA MCCALLUM, PROVIDENCIA** :
**VILLEGAS, and 49,980 other individuals**, :
:
                *Petitioners*, :
:
      - against - :
:
**SAMSUNG ELECTRONICS AMERICA,** :
**INC. and SAMSUNG ELECTRONICS CO.,** :
**LTD**., :
:
                *Respondents*. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No: 1:22-cv-05506

Hon. Harry D. Leinenweber

## <u>RESPONDENTS' MOTION TO DISMISS PETITION TO COMPEL ARBITRATION</u>

Mark Howard Boyle
DONOHUE BROWN MATHEWSON &
   SMYTH LLC
131 South Dearborn Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 422-0900

James L. Kopecky
KOPECKY SCHUMACHER
   ROSENBURG LLC
120 North LaSalle Street, Suite 2000
Chicago, Illinois 60601
Telephone: (312) 380-6552

Randall W. Edwards (ND IL general bar)
Matthew D. Powers (*pro hac vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone: (415) 984-8700

Michael W. McTigue Jr. (*pro hac vice*)
Meredith C. Slawe (*pro hac vice*)
Kurt Wm. Hemr (*pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000

Dated: December 5, 2022

*Attorneys for Respondents*
*Samsung Electronics America, Inc. and*
*Samsung Electronics Co., Ltd.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.................................................3

     A.     Under the AAA Rules And Procedures, If The Parties To An Arbitration Agreement Fail To Pay Administrative Fees, Then The Parties May Have The Dispute Resolved In Court ....................................3

     B.     After A Putative BIPA Class Action Was Brought Against Samsung, Labaton Began Recruiting BIPA Arbitration Claimants............4

     C.     Labaton Sought To Leverage The Threat Of Arbitration Fees To Demand That Samsung Make An Initial Settlement Offer Of $50,000,000 Or Else It Would Commence 50,000 Arbitrations Against The Company ..................................................................5

     D.     After Samsung Declined To Pay The Filing Fees, Labaton Declined To Advance Those Fees And Asked The AAA To Close The Arbitrations .............................................................................6

     E.     Labaton Brought This Action To Compel Samsung To Participate In Arbitrations That It Had Asked To Be Closed .......................................7

     F.     A Firm With Whom Labaton Is Frequently Co-Counsel Commenced A Second Putative BIPA Class Action Against Samsung ...............................................................................8

     G.     The AAA Has Now Closed The Arbitrations ...............................................9

CORRECTIVE NOTE ON JURISDICTION .................................................9

ARGUMENT ....................................................................................10

     I.     THE PETITION SHOULD BE DISMISSED FOR EACH OF THE INDEPENDENT REASONS SET FORTH IN RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION TO COMPEL, FILED HEREWITH..................................................................................10

     A.     Samsung Did Not Refuse To Arbitrate But Simply Elected Not To Pay Filing Fees, As The AAA Rules Permit; Thus, No Judicial Action Is Warranted ...................................................................10

     B.     Petitioners Are Not Entitled To Compel Arbitration Because They Waived Any Right To Arbitrate .............................................................10

i

## TABLE OF CONTENTS
### (continued)

Page

C.    Respectfully, The Court Does Not Have The Authority To Order The Parties To An Arbitration To Pay Arbitration Fees............................11

D.    Petitioners Are Not Entitled To Any Equitable Relief ..............................12

II.   THE PETITION SHOULD BE DISMISSED BECAUSE PETITIONERS HAVE NOT SUFFICIENTLY PLEADED A PROPER BASIS FOR VENUE IN THIS COURT AS TO ALL PETITIONERS....................................12

A.    Petitioners Have Not Pleaded A Basis For Venue Under The Venue Provision Of The FAA Applicable Here, 9 U.S.C. § 204 .............13

B.    Petitioners Have Also Failed To Sufficiently Plead A Basis For Venue Under The General Venue Statute, 28 U.S.C. § 1391 ...................15

III.  UNDER THE TERMS OF THE ARBITRATION AGREEMENT THAT THEY CLAIM THEY SEEK TO ENFORCE, PETITIONERS CANNOT PROCEED COLLECTIVELY VIA THIS PETITION .........................................17

IV.   THE PETITION SHOULD BE DISMISSED BECAUSE PETITIONERS HAVE NOT SUFFICIENTLY PLEADED THAT EACH OF THEM HAS A VALID ARBITRATION AGREEMENT WITH SAMSUNG ........................18

CONCLUSION.....................................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abernathy v. DoorDash, Inc.*,
  438 F. Supp. 3d 1062 (N.D. Cal. 2020) .......................................................................... 19, 20

*Adams v. Postmates, Inc.*,
  414 F. Supp. 3d 1246 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535 (9th Cir.
  2020) ............................................................................................................................... 11

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986)......................................................................................................... 18

*Badgerow v. Walters*,
  142 S. Ct. 1310 (2022)....................................................................................................... 9

*Billie v. Coverall N. Am.*,
  No. 3:19-CV-00092 (JCH), 2022 WL 807075 (D. Conn. Mar. 16, 2022) ........................... 10

*Bland v. Edward D. Jones & Co.*,
  No. 18-CV-03673, 2020 WL 7027595 (N.D. Ill. Nov. 30, 2020) ......................................... 13

*Carter v. CVS Pharmacy, Inc.*,
  No. 18 C 01482, 2019 WL 11505578 (N.D. Ill. Jan. 15, 2019) ........................................... 19

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*,
  584 F.3d 513 (3d Cir. 2009)............................................................................................. 18

*Chester v. DirecTV, LLC*,
  No. 3:12-CV-710-HTW-LRA, 2014 WL 12779206 (S.D. Miss. July 16,
  2014), *aff'd sub nom. Chester v. DirecTV, L.L.C.*, 607 F. App'x 362 (5th Cir.
  2015) ............................................................................................................................... 20

*Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*,
  529 U.S. 193 (2000).......................................................................................................... 13

*Cota v. Art Brand Studios, LLC*,
  No. 21-CV-1519 (LJL), 2021 WL 4864588 (S.D.N.Y. Oct. 15, 2021).................................. 10

*Day v. Orrick, Herrington & Sutcliffe, LLP*,
  42 F.4th 1131 (9th Cir. 2022) .......................................................................................... 13

*Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*,
  588 F.3d 884 (5th Cir. 2009) ...................................................................................... 10, 11

*Faulkenberg v. CB Tax Franchise Sys., LP*,
  637 F.3d 801 (7th Cir. 2011) ...................................................................................... 12, 14

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ...................................................................................................... 18

*Ford-Reyes v. Progressive Funeral Home*,
418 F. Supp. 3d 286 (N.D. Ill. 2019) .......................................................................... 15

*G.T. v. Samsung Elecs. Am., Inc.*,
Docket No. 1:21-cv-04976 (N.D. Ill. Sept. 20, 2021) .......................................... 5, 8

*Gilbert v. I.C. Sys., Inc.*,
No. 19-CV-04988, 2021 WL 292852 (N.D. Ill. Jan. 28, 2021) .............................. 19

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010) ...................................................................................................... 19

*Haber v. Biomet, Inc.*,
578 F.3d 553 (7th Cir. 2009) ............................................................................... 12, 14

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) ........................................................................................................ 11

*Hyatt v. Organon USA, Inc.*,
No. 4:08-MD-1964, 2012 WL 4809163 (E.D. Mo. Oct. 10, 2012) ...................... 12

*Igene v. Sessions*,
No. CV H-17-3143, 2018 WL 1582239 (S.D. Tex. Mar. 29, 2018) ...................... 12

*In re Consol. Parlodel Litig.*,
22 F. Supp. 2d 320 (D.N.J. 1998) ............................................................................... 13

*Jones, et al. v. Samsung Elecs. Am., Inc. & Samsung Elecs. Co., Ltd.*,
No. 1:22-cv-05662 (N.D. Ill. Oct. 14, 2022) .............................................................. 8

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
363 F.3d 1010 (9th Cir. 2004) ..................................................................................... 11

*McClenon v. Postmates Inc.*,
473 F. Supp. 3d 803 (N.D. Ill. 2020) ......................................................................... 11

*McDuffie v. Sunnova Energy Corp.*,
No. EDCV211121JGBSHKX, 2021 WL 9182420 (C.D. Cal. Oct. 13, 2021) ....... 20

*Montgomery v. Markel Int'l Ins. Co.*,
259 F. Supp. 3d 857 (N.D. Ill. 2017) ......................................................................... 14

**TABLE OF AUTHORITIES**
**(continued)**

<b>Page</b>

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)............................................................................ 17

*Niiranen v. Carrier One, Inc.*,
    No. 20-CV-06781, 2022 WL 103722 (N.D. Ill. Jan. 11, 2022)............................ 18

*Sharif v. Wellness Int'l Network, Ltd.*,
    376 F.3d 720 (7th Cir. 2004), *aff'd sub nom. Muzumdar v. Wellness Int'l*
    *Network, Ltd.*, 438 F.3d 759 (7th Cir. 2006)........................................... 14

*Steffanie A. v. Gold Club Tampa, Inc.*,
    No. 8:19-cv-3097, 2020 WL 4201948 (M.D. Fla. July 22, 2020) ...................... 12

*Swanson v. Endres*,
    No. 07 C 1185, 2007 WL 1655230 (N.D. Ill. June 6, 2007) ............................. 15

*Union Cent. Life Ins. Co. v. Andraos*,
    No. 1:09-CV-758, 2011 WL 6091771 (S.D. Ohio Oct. 21, 2011), *report and*
    *recommendation adopted*, No. C-1-09-758, 2011 WL 6100275 (S.D. Ohio
    Dec. 7, 2011)................................................................................... 11

*United States v. Rural Elec. Convenience Coop. Co.*,
    922 F.2d 429 (7th Cir. 1991) ............................................................... 12

*Vaden v. Discover Bank*,
    556 U.S. 49 (2009).............................................................................. 9

*Van Tassell v. United Mktg. Grp., LLC*,
    795 F. Supp. 2d 770, 789 (N.D. Ill. 2011) .............................................. 20

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989)........................................................................... 18

*Wembi v. Gibson's Rest. Grp. Mgmt. Co.*,
    No. 21 C 586, 2021 WL 2272399 (N.D. Ill. May 13, 2021) ............................. 20

## **STATUTES**

28 U.S.C. § 1332.................................................................................... 9, 14

28 U.S.C. § 1391.................................................................................. 13, 15

28 U.S.C. § 1391(b)(2), (c)(2) ................................................................... 15

9 U.S.C. § 202....................................................................................... 9

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

9 U.S.C. § 203 ............................................................................................................... 9, 13

9 U.S.C. § 204 ............................................................................................................... 13, 14

9 U.S.C. § 206 ............................................................................................................... 18

## OTHER AUTHORITIES

Allison Preece, *Labaton Is Keeping Open The Doors To Justice*, Lawdragon
   (Sept. 27, 2022) ........................................................................................................ 4

J. Maria Glover, *Mass Arbitration*, 74 Stan. L. Rev. 1283 (2022) ................................. 4

## PRELIMINARY STATEMENT

The Petition is the latest in a series of maneuvers by Petitioners' Counsel, Labaton Sucharow ("Labaton"), to leverage the overt threat of aggregate arbitration fees to pressure businesses to settle frivolous claims and pay them millions of dollars in attorneys' fees. This weaponization of arbitration provider fee schedules to extract windfall payments to counsel has been cloaked in secrecy, is untethered to the legitimacy of any claims or claimants, and harms businesses, consumers, arbitration administrative bodies, and the legal profession. The Petition is unjustified by the facts and law for multiple reasons, as addressed below, and should be dismissed.

Respondents Samsung Electronics America, Inc. ("SEA") and Samsung Electronics Co. Ltd. ("SEC") (collectively, "Samsung"), faced with Labaton's aggressive threat to bury Samsung under the weight of hundreds of millions of dollars in arbitration fees absent payment to them, refused to capitulate. Labaton made good on its stated threat, filing 50,000 identical and frivolous demands for arbitration with the American Arbitration Association ("AAA") and serving notice of over 50,000 more. Samsung informed the AAA and Labaton that Labaton's list of claimants (and list of Petitioners) includes, *inter alia*, deceased individuals, individuals with fictitious personal information, individuals who are in bankruptcy, and individuals who submitted multiple demands under different names or who also purport to be represented by entirely different counsel on the same threatened claims against Samsung.

Samsung and Petitioners availed themselves of the AAA's rules and procedures and elected to waive any arbitration rights as to these claims. Under those rules and procedures, Petitioners had the full opportunity to proceed to arbitration and indeed Samsung informed Labaton of its willingness to participate in arbitration. But to do so under the AAA's rules, Labaton would have had to advance the extraordinary aggregate arbitration fees. Notwithstanding having the financial capacity to do so, Labaton refused. Instead, Labaton asked the AAA to close all of the arbitrations

and elected to waive Petitioners' arbitration rights (to the extent Petitioners had such rights) in favor of proceeding on the merits in court. The AAA did so.

In an about-face, Labaton now seeks to enlist the Court to revive the fee pressure on Samsung through a procedurally and substantively deficient Petition. Labaton brazenly asks the Court to compel Samsung to pay AAA arbitration fees in connection with cases that have been terminated by the AAA at Labaton's request. Respectfully, the Court lacks authority to order the relief sought. There is no legal support for Labaton's position.

As set forth in detail in Samsung's opposition to Petitioners' motion to compel arbitration filed herewith (the "Opposition" or "Opp."), the Court should dismiss the Petition for numerous reasons. Petitioners have asked the Court to compel arbitration, but there is nothing to compel: Samsung has not refused to arbitrate. Rather, Petitioners waived any arbitration rights they might have had and agreed to adjudicate the claims in court.

And even if any arbitration rights had not been waived, the Court lacks authority to order a party to an arbitration to pay arbitration fees: that is a matter reserved for the arbitral body (here, the AAA) and the arbitrators. In addition, Petitioners have an adequate remedy at law and therefore cannot seek the equitable remedy of an order compelling Samsung to pay arbitration fees: they or their counsel may advance the arbitration fees, or they may proceed in court. These arguments are set out briefly in Part I of the argument *infra*, but Samsung respectfully refers the Court to its Opposition for a fuller recitation of those arguments. *See* Opp. at 23-33.

In addition to the reasons set forth in the Opposition filed herewith, the Petition should be dismissed for the following independent reasons:

- Petitioners have not pleaded a sufficient basis for venue in this Court for each Petitioner. *See* Part II, *infra.*

- Petitioners, having agreed that they may not proceed collectively in connection with the arbitration agreements they seek to enforce, cannot at the same time collectively file this Petition seeking relief. *See* Part III, *infra*.

- Petitioners have failed to meet their burden to demonstrate that each of them has an enforceable arbitration agreement with Samsung. *See* Part IV, *infra*.

Accordingly, the Petition should be dismissed in its entirety and with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

**A.    Under the AAA Rules And Procedures, If The Parties To An Arbitration Agreement Fail To Pay Administrative Fees, Then The Parties May Have The Dispute Resolved In Court**

SEC manufactures and SEA sells smartphones, tablets, and other devices. The terms of use for certain of those devices contain an arbitration agreement (collectively, the "Arbitration Agreement") with a collective action waiver and providing for arbitration under the AAA Consumer Arbitration Rules ("AAA Rules"). Pet., Ex. B at 10; Pet., Ex. C at 2; Pet., Ex. D at 6; Pet., Ex. E at 3.

The AAA fee schedule governs the parties' respective administrative fee obligations.[2] For mass arbitrations, the AAA promulgated the Supplementary Rules for Multiple Case Filings ("Supplementary Rules"), which apply when the same or coordinated counsel file 25 or more similar demands against the same respondents (as is the case here). Opp., Ex. 2 at MC-1(b).[3] The Supplementary Rules contemplate that consumers or businesses may decline to pay administrative

---

[1]    Samsung respectfully refers the Court to its Opposition (pp. 5-22) for a fuller discussion of the factual and procedural background.

[2]    *See* https://www.adr.org/sites/default/files/Consumer_Fee_Schedule_2.pdf.

[3]    The AAA has determined that both the AAA Rules and the Supplementary Rules apply to the arbitrations. *See* Opp., Ex. 3.

fees and provide that if one party does not pay the fees required to initiate arbitration, the other side has the option to "advance the required payment within the time specified by the AAA." *Id.*, MC-10(d). If a party advances the fees owed by the other party, the arbitration will proceed and the advancing party may recover the fees in the final arbitration award under AAA Rules, R-44(d). Pet., Ex. F at 29. If neither party pays the administrative fees before an arbitrator is appointed, "the AAA may suspend or terminate those proceedings." Opp., Ex. 2, MC-10(e). When that occurs, AAA Rule R-1(d) provides that "either party may choose to submit its dispute to the appropriate court for resolution." Pet., Ex. F at 11.

### B. After A Putative BIPA Class Action Was Brought Against Samsung, Labaton Began Recruiting BIPA Arbitration Claimants

Labaton maintains a "Mass ADR" practice group that is "focused on mass arbitrations for consumers."[4] That practice is based on (i) soliciting tens of thousands of consumers who claim they are parties to a business's mandatory arbitration clause, (ii) simultaneously filing thousands of identical individual arbitration demands on behalf of those consumers, and then (iii) leveraging the massive arbitration filing fees imposed on the business to obtain a settlement.[5]

On August 11, 2021, a putative class action was filed in the Circuit Court of Cook County, Chancery Division, alleging that a functionality of certain Samsung devices violated the Illinois

---

[4] Allison Preece, *Labaton Is Keeping Open The Doors To Justice*, Lawdragon (Sept. 27, 2022), https://www.lawdragon.com/lawyer-limelights/2022-09-27-labaton-is-keeping-open-the-doors-to-justice.

[5] In a comprehensive survey of the mass arbitration tactic, Georgetown Professor J. Maria Glover noted that the "fee-leveraging mechanism of the mass-arbitration model could impose settlement pressure for more dubious claims—that is to say, it could impose illegitimate, *in terrorem* settlement pressure." J. Maria Glover, *Mass Arbitration*, 74 Stan. L. Rev. 1283, 1349-50 (2022). That is precisely the *in terrorem* settlement pressure Labaton seeks to impose here.

Biometric Information Privacy Act ("BIPA") (the "*G.T.* Action").[6]  Shortly after that action was filed, Labaton created a listing on its "Client Connect" mass arbitration website soliciting claimants, asserting that Samsung device users "May Be Entitled to Compensation Up to $5,000" for substantially similar BIPA claims.[7]  Labaton also solicited potential claimants through targeted advertising on Facebook as well as through direct email campaigns apparently using class data obtained in unrelated litigation.

### C.   Labaton Sought To Leverage The Threat Of Arbitration Fees To Demand That Samsung Make An Initial Settlement Offer Of $50,000,000 Or Else It Would Commence 50,000 Arbitrations Against The Company

Labaton contacted Samsung on March 21, 2022, asserting that it had 10,157 initial claimants who had "suffered harm to their privacy because of Samsung's BIPA violations."  Pet., Ex. G.  By August 2022, Labaton was threatening Samsung with no less than 70,469 demands and the associated arbitration administrative fees.  In August 2022, Samsung sought to mediate those demands with Labaton before retired Chief Judge of this Court, James F. Holderman, but that mediation was unsuccessful.  Shortly thereafter, Labaton informed Samsung that the firm would immediately commence 50,000 individual arbitrations against Samsung (and trigger the associated fees) if Samsung did not make an initial offer to pay Labaton at least $50,000,000.  *See* Opp., Ex. 11 at 1.  In response, Samsung sent Labaton a letter explaining that the claims that Labaton was asserting have no merit whatsoever, and Samsung attached a declaration of SEC engineer Youngil Shin (the "Shin Declaration") detailing the functionality of the technology at issue in Petitioners'

---

[6]   On September 20, 2021, Samsung removed that action to this District, where it is now assigned to Judge Nancy L. Maldonado.  *See G.T. v. Samsung Electronics America, Inc.*, No. 1:21-cv-04976 (N.D. Ill. Sept. 20, 2021), ECF No. 2.

[7]   Available at https://clientconnect.labaton.com/case/samsung/ (last visited Dec. 5, 2022). Labaton made several representations that, along with material omissions, fail to accurately inform consumers about the process.  Those inaccuracies are set out at Opp. at 8-9.

claims and how it does not implicate either information regulated by BIPA, or any control or collection of that information by Samsung.  Pet., Ex. H.

The next day, Labaton submitted to the AAA 50,000 identical arbitration demands, along with a spreadsheet containing certain information regarding Petitioners ("Claimant Spreadsheet"). *See* Pet., Ex. J.  Each demand alleges that a particular Petitioner is party to an arbitration agreement with Samsung and that Petitioner "is a natural person who owns a Samsung Device and has taken photographs of themselves, including photographs of Petitioner's face and other physical attributes while residing in the State of Illinois, and saved those photographs to the Samsung Gallery application." *Id.*, Ex. J ¶¶ 1, 4.  Under the AAA's consumer fee schedule, Samsung would owe $4,125,000 in initial filing fees for those 50,000 arbitrations, and ***total*** fees of $149,125,000 for "desk" arbitrations or a minimum of $224,125,000 if the arbitrations involved hearings.[8]  Labaton has continued to solicit potential claimants and has now amassed more than 100,000 claimants, which would result in total fees of $310,768,650 for "desk" arbitrations or $467,269,650 if the arbitrations involved a hearing.

### D. After Samsung Declined To Pay The Filing Fees, Labaton Declined To Advance Those Fees And Asked The AAA To Close The Arbitrations

On September 27, 2022, Samsung informed the AAA and Labaton that Samsung's sampling of the Claimant Spreadsheet revealed glaring deficiencies[9] that raised concerns as to

---

[8]    For 50,000 arbitrations, Samsung would owe $4,125,000 for initial filing fees, $70,000,000 for the case management fees, and $75,000,000 for arbitrator compensation for desk arbitrations or $150,000,000 for arbitrator compensation if the arbitrations involved a hearing.

[9]    Specifically, based on its sampling, Samsung discovered that Claimants' counsel had filed demands on behalf of (i) Claimants who are deceased, (ii) Claimants with fictitious personal information, (iii) Claimants who are not Illinois residents, (iv) Claimants who are in bankruptcy, (v) Claimants who Samsung has no record of ever being a customer or owning any of the devices at issue, let alone being a party to an arbitration agreement with Samsung, (vi) Claimants who submitted duplicate Demands, (vii) Claimants who submitted multiple Demands related to the

whether Labaton had performed any due diligence regarding its purported clients.  *See* Pet., Ex. N.

Samsung is committed to its consumer arbitration program and has arbitrated many disputes with

consumers.  But in light of Samsung's concerns, the deficiencies in the information provided, and

Labaton's improper purpose in commencing 50,000 arbitrations, Samsung invoked the process set

forth under the AAA Rules and Supplementary Rules.  It informed the AAA that, while it would

participate in arbitrations, it would not pay the filing fees in connection with Petitioners' demands.

*See id*., Ex. N.[10]  Dispositively, Samsung's decision to not pay initial filing fees did not foreclose

Petitioners' ability to arbitrate or litigate their claims: Petitioners (or their counsel) could advance

the arbitration fees under the AAA Rules, or Petitioners could "elect to waive arbitration by not

paying (directly or through their counsel)" those fees and proceed in court on the merits.  *Id.*; *see

also* Opp., Ex. 2, MC-10(d).  The next day, Labaton declined to advance the filing fees and

requested that the AAA "close the cases so Claimants can proceed to court."  Pet., Ex. O.  AAA

thereafter closed those cases.  *See* Opp., Exs. 18-19.

### E.  Labaton Brought This Action To Compel Samsung To Participate In Arbitrations That It Had Asked To Be Closed

On October 7, 2022, Labaton commenced this action by filing a single Petition To Compel

Arbitration and Motion To Compel Arbitration ("Motion" or "Mot.") purportedly on behalf of

49,986 arbitration claimants.  This single aggregated proceeding is a violation of the Arbitration

Agreement's collective action waiver on which Labaton has otherwise relied in refusing to

consolidate or otherwise streamline the 50,000 arbitrations brought against Samsung.  Labaton

---

same device under different names, (viii) Claimants who also purport to be represented by entirely
different counsel on the same threatened claim against Samsung, (ix) Claimants who have a history
of criminal fraud-related offenses, and (x) Claimants who are serial claimants and litigants.  Pet.,
Ex. N at 2.

[10]  Samsung has paid the filing fees associated with the demands of 14 California residents
and will seek to recoup them in arbitration.  Those claimants are not Petitioners here.

requested that the Court compel Samsung to arbitrate in each of the 49,986 arbitrations that it had previously requested that the AAA close. It also requested that the Court order Samsung to pay the fees in each of those arbitrations. *See* Pet. ¶ 43; Mot. at 17.

That same day, Labaton sent notice to Samsung of an additional 16,508 claimants for whom Labaton would be submitting arbitration demands against Samsung. Thus, as of October 7, 2022, Labaton asserted that it was representing 86,977 claimants.

### F. A Firm With Whom Labaton Is Frequently Co-Counsel Commenced A Second Putative BIPA Class Action Against Samsung

On October 14, 2022, plaintiffs represented by Lowey Dannenberg ("Lowey") filed a second putative BIPA class action against Samsung, asserting claims substantially similar to the claims asserted both in the *G.T.* Action and in Petitioners' arbitration demands. *See Jones, et al. v. Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd.*, Docket. No. 1:22-cv-05662 (N.D. Ill. Oct. 14, 2022), ECF No. 1 (the "*Jones* Action"). The *Jones* complaint—although it was filed by another firm, Lowey—references information that was previously provided to Labaton, such as the Shin Declaration. The *Jones* complaint also expressly carves out from its putative class "any individuals that have noticed private arbitrations against Samsung relating to the claims asserted in this Action," plainly to avoid any overlap with Labaton's ongoing claims. *Id.* ¶ 42.[11] On November 20, 2022, counsel for the plaintiffs in the *G.T.* Action filed a motion to consolidate that case with the *Jones* Action, which Samsung did not oppose. *See G.T. v. Samsung Elecs. Am., Inc.*, No. 1:21-cv-04976 (N.D. Ill. Sept. 20, 2021), ECF No. 41. That motion was granted on December 2, 2022. *Id.*, ECF No. 44.

---

[11] This apparent coordination between Labaton and Lowey is not out of the ordinary. Labaton frequently serves as co-counsel with Lowey, and the *Jones* attorneys in particular have partnered a number of times with the Labaton attorneys representing Petitioners here. *See* Opp. at 20.

### G.    The AAA Has Now Closed The Arbitrations

On November 14, 2022, the AAA advised the parties that because both sides had refused to pay the filing fees for non-California cases, "unless we hear otherwise prior to November 16, 2022, the AAA will close all non-California cases." Opp., Ex. 16 at 1. In response, on November 17, 2022, Labaton requested that the AAA "stay these matters until Claimants' Motion to Compel has been decided." *Id.*, Ex. 17. That same day, Labaton also sent notice to Samsung of an additional 17,357 claimants for whom Labaton would be submitting arbitration demands against Samsung. Thus, as of that date, Labaton now purported to have amassed a total of *104,334* claimants.

On November 28, 2022, the AAA advised the parties that "the AAA will proceed with closing [Petitioners' 49,986 individual arbitration matters] and issue a refund for the filing fees paid by the claimants." Opp., Ex. 18. On November 30, 2022, the AAA confirmed that it had "administratively closed" the arbitrations and "acknowledge[d] the request from Ms. Nafash [of Labaton] for a refund on the 49,986 cases," stating it would "work with our finance team to process the refund." *Id.*, Ex. 19.

### CORRECTIVE NOTE ON JURISDICTION

Petitioners assert that "[t]his Court has jurisdiction over this action pursuant to 9 U.S.C. § 4 and 28 U.S.C. §§ 1331 and 1367 because the underlying controversy involves claims arising under federal law." Pet. ¶ 24. But Section 4 of the Federal Arbitration Act ("FAA") does not itself support federal jurisdiction; instead, a court must "look through" to the "underlying substantive dispute" to assess its jurisdiction. *Badgerow v. Walters*, 142 S. Ct. 1310, 1315-18 (2022). Here, Petitioners' putative claim arises under state law, and the predicates of diversity jurisdiction under 28 U.S.C. § 1332 are not met. However, this Court does have subject matter jurisdiction over this action under Section 203 of the FAA because Respondent SEC is a South Korean corporation, and

the arbitration agreement is not "entirely between citizens of the United States." *Id.* § 202; Pet. ¶ 23; *see Vaden v. Discover Bank*, 556 U.S. 49, 59 n.9 (2009).

## ARGUMENT

## I.     THE PETITION SHOULD BE DISMISSED FOR EACH OF THE INDEPENDENT REASONS SET FORTH IN RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION TO COMPEL, FILED HEREWITH

The Petition should be dismissed as a matter of law for each of the following reasons, which are set forth in greater detail in the Opposition filed herewith:

### A.     Samsung Did Not Refuse To Arbitrate But Simply Elected Not To Pay Filing Fees, As The AAA Rules Permit; Thus, No Judicial Action Is Warranted

Petitioners purport to be seeking judicial intervention to compel arbitration, but Samsung has not refused to arbitrate Petitioners' claims. Petitioners have acknowledged that when Samsung explained to the AAA that it was electing the option not to pay filing fees, it would nonetheless "participate and defend itself vigorously" should Petitioners choose to advance those fees and proceed with arbitration. *See* Pet., Ex. O at 3. Petitioners "declin[ed] the invitation to pay" pursuant to Supplementary Rule MC-10(d), thus waiving arbitration. Mot. at 6. Petitioners' failure to establish Samsung's refusal to arbitrate warrants dismissal of their Petition to compel Samsung's participation. *See* Opp. at 23-24.

### B.     Petitioners Are Not Entitled To Compel Arbitration Because They Waived Any Right To Arbitrate

Courts have held that a refusal to proceed with arbitration by declining to advance the opposing party's unpaid fee is "inconsistent[] with the right to arbitrate." *Cota v. Art Brand Studios, LLC*, No. 21-CV-1519 (LJL), 2021 WL 4864588, at *9-10 (S.D.N.Y. Oct. 15, 2021); *see also Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 888 (5th Cir. 2009); *Billie v. Coverall N. Am.*, No. 3:19-CV-00092 (JCH), 2022 WL 807075 (D. Conn. Mar. 16, 2022). Here, the Petition should be dismissed because Petitioners' refusal to proceed by paying the filing

10

fees—and their express request that the arbitral proceedings be closed—waives any right they might have had to compel arbitration. *See* Opp. at 24-27.

## C. Respectfully, The Court Does Not Have The Authority To Order The Parties To An Arbitration To Pay Arbitration Fees

Courts have repeatedly held that absent a contractual provision to the contrary whether a party has to pay arbitration fees is a procedural question relating to the arbitration, which is to be decided by the arbitration body or arbitrator, not a judge. *See, e.g.*, *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("'[P]rocedural' questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge." (internal quotation marks omitted)); *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1255 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535 (9th Cir. 2020) ("[T]he payment of arbitration fees . . . is a procedural condition precedent to be decided by the arbitrator.").[12]  Accordingly, courts have declined to compel parties to pay arbitration fees. *See McClenon v. Postmates Inc.*, 473 F. Supp. 3d 803, 812 (N.D. Ill. 2020) (Rowland, J.); *Adams*, 414 F. Supp. at 1255 (citation omitted).[13]  The Petition should therefore be dismissed because the relief Petitioners seek is beyond the Court's power to grant. *See* Opp. at 27-31.

---

[12]  This is especially true here, where, as Petitioners concede, the Arbitration Agreement contains a delegation clause that has "no exception." Mot. at 4.  Indeed, Petitioners emphasize that "[c]ourts agree that if a valid arbitration agreement with a delegation clause exists, matters involving the interpretation or applicability of the agreement, including the payment of arbitration fees, are a matter for arbitrators, not courts." *Id*. at 15.

[13]  *See also Dealer Comput. Servs.*, 588 F.3d at 887; *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012-13 (9th Cir. 2004); *Union Cent. Life Ins. Co. v. Andraos*, No. 1:09-CV-758, 2011 WL 6091771, at *5 (S.D. Ohio Oct. 21, 2011), *report and recommendation adopted*, No. C-1-09-758, 2011 WL 6100275 (S.D. Ohio Dec. 7, 2011).

Remarkably, Petitioners themselves seek to rely on many of these cases. *See Adams* (cited in Pet. at 5; Mot. at 12-13); *McClenon* (cited in Mot. at 12).

### D.     Petitioners Are Not Entitled To Any Equitable Relief

The equitable remedy sought by the Petition is precluded for multiple reasons:

- The Court cannot compel the AAA to reopen cases it has already closed. *E.g.*, *Steffanie A. v. Gold Club Tampa, Inc.*, No. 8:19-cv-3097, 2020 WL 4201948, at *4 (M.D. Fla. July 22, 2020) (noting absence of "any legal authority supporting the proposition that a district court can force an independent arbitration organization such as the AAA to ignore its own rules and re-open a case that it has previously closed").

- Equitable relief is also precluded because Petitioners have adequate remedies at law, *i.e.*, to advance the fees themselves to proceed with the now-closed arbitrations, or to forgo arbitration and join one of the pending class actions. "It is well settled that the availability of an adequate remedy at law renders injunctive relief inappropriate." *United States v. Rural Elec. Convenience Coop. Co.*, 922 F.2d 429, 432 (7th Cir. 1991).

The Petition should be dismissed for those independent reasons as well. *See* Opp. at 31-33.

## II.     THE PETITION SHOULD BE DISMISSED BECAUSE PETITIONERS HAVE NOT SUFFICIENTLY PLEADED A PROPER BASIS FOR VENUE IN THIS COURT AS TO ALL PETITIONERS

This Court "cannot compel arbitration outside the confines of its district." *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011). Accordingly, "[w]hen a complaint requesting arbitration is filed in the wrong forum, the appropriate response is for the opposing party to file a motion to dismiss, which should then be granted by the court." *Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009). Here, Petitioners have failed to plead a proper basis for venue, and accordingly their Petition must be dismissed.

"When a defendant raises improper venue, the plaintiff has the burden to prove that the chosen venue is proper." *Igene v. Sessions*, No. CV H-17-3143, 2018 WL 1582239, at *1 (S.D. Tex. Mar. 29, 2018). In particular, venue must be proper as to each Petitioner. *See, e.g.*, *Hyatt v.*

*Organon USA, Inc.*, No. 4:08-MD-1964, 2012 WL 4809163, at *3 (E.D. Mo. Oct. 10, 2012) (ordering plaintiffs to "file new complaints, in a venue that is proper for each Plaintiff"); *In re Consol. Parlodel Litig.*, 22 F. Supp. 2d 320, 322 (D.N.J. 1998) (agreeing that it was proper "to transfer venue from the District of New Jersey to the respective districts where each Plaintiff resides"); *see also Bland v. Edward D. Jones & Co.*, No. 18-CV-03673, 2020 WL 7027595, at *5 (N.D. Ill. Nov. 30, 2020) (Wood, J.) (holding that, in the class action context, each named plaintiff in a putative class action must establish that venue is proper, noting "numerous other courts have held that each named plaintiff in a class action must individually satisfy the applicable venue requirements") (collecting cases). Here, Petitioners have failed to satisfy their burden of establishing that venue is proper as to each individual Petitioner under both the pertinent FAA venue provision, 9 U.S.C. § 204, and the general venue statute, 28 U.S.C. § 1391.

## A. Petitioners Have Not Pleaded A Basis For Venue Under The Venue Provision Of The FAA Applicable Here, 9 U.S.C. § 204

Petitioners have not pleaded facts sufficient to provide a basis for venue in this Court under 9 U.S.C. § 204, the provision of the FAA which governs their Petition.[14] That section provides that a court exercising jurisdiction under 9 U.S.C. § 203—the jurisdiction provision of the FAA operative here, as discussed *supra*—is a proper venue for an action where (i) "save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought," or (ii) "the district . . . embraces the place designated in the agreement as the place of arbitration." Petitioners cannot establish venue under either ground.

---

[14] Section 204 of the FAA is a "permissive, supplemental venue provision in addition to the general venue provision, 28 U.S.C. § 1391." *Day v. Orrick, Herrington & Sutcliffe, LLP*, 42 F.4th 1131, 1141 (9th Cir. 2022); *see also Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 200 (2000). Because Section 204 is permissive, it "supplement[s], but do[es]not supplant, the general [venue] provision." *Cortez Byrd Chips*, 529 U.S. at 198.

As an initial matter, Petitioners could not bring this action in this Court "save for the arbitration agreement" because they could not establish subject matter jurisdiction for each Petitioner absent reliance on the Arbitration Agreement. Federal question jurisdiction is not present here—Petitioners' putative claims arise under BIPA, which is a state statute—and diversity jurisdiction is also not present. Under 28 U.S.C. § 1332, federal courts have diversity jurisdiction where "the matter in controversy exceeds the sum or value of $75,000," and the dispute is between "citizens of different states." Petitioners cannot establish either of these elements here, including because they do not adequately allege "the citizenship of every participating" Petitioner. *Montgomery v. Markel Int'l Ins. Co.*, 259 F. Supp. 3d 857, 866 (N.D. Ill. 2017) (Castillo, C.J.) (dismissing for lack of jurisdiction where plaintiffs only generally alleged that they resided in "Illinois"). Further, each individual Petitioner's demand for arbitration seeks $15,000, far less than the $75,000 statutory minimum. See Pet. Ex. J, Prayer for Relief.[15]

Nor is venue proper on the ground that this "district . . . embraces the place designated in the agreement as the place of arbitration." 9 U.S.C. § 204. This District is not "designated in the [Arbitration Agreement] as the place of arbitration" for this dispute: the Arbitration Agreement does not specify a locale for the arbitrations and the AAA did not designate one. *See infra* at II.B.

In short, Petitioners have sought to compel 49,986 individual arbitrations, but they have failed to establish that this District is the venue for any, let alone all, of those arbitrations. Nor have Petitioners explained how venue could lie here for the approximately 14,335 Petitioners who reside outside of the District. *See infra* at II.B. Because "a district court cannot compel arbitration outside the confines of its district," *Faulkenberg*, 637 F.3d at 808, Samsung's motion to dismiss

---

[15] The Seventh Circuit has held that ordinarily "the combined losses of multiple plaintiffs cannot be aggregated." *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 727 (7th Cir. 2004), *aff'd sub nom. Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759 (7th Cir. 2006).

the Petition for lack of venue "should then be granted by" this Court. *Haber*, 578 F.3d at 558.

> **B.** **Petitioners Have Also Failed To Sufficiently Plead A Basis For Venue Under The General Venue Statute, 28 U.S.C. § 1391**

Petitioners assert that "[v]enue is proper in this District pursuant to 28 U.S.C. § 1391 because many of the Petitioners live in this District and the arbitrations were venued to take place in this District." Pet. at 6. But Petitioners' fail to allege that for *each individual Petitioner's claims*, this District is where: (i) "a substantial part of the events or omissions giving rise to the claim occurred" or (ii) that Samsung would be "subject to the court's personal jurisdiction with respect" to each individual Petitioner's claim. 28 U.S.C. § 1391(b)(2), (c)(2). Specifically, a substantial number of Petitioners appear to reside outside this District and the arbitrations have not been "venued" in this District. Thus, per Petitioners' own allegations, there is no basis to find venue is appropriate in this District.

*First*, "when it comes to venue, the plaintiff's residence counts for nothing" because it is not a consideration under Section 1391. *Ford-Reyes v. Progressive Funeral Home*, 418 F. Supp. 3d 286, 290 (N.D. Ill. 2019) (Seeger, J.); *see also Swanson v. Endres*, No. 07 C 1185, 2007 WL 1655230, at *2 (N.D. Ill. June 6, 2007) (Gettleman, J.) (rejecting venue based on plaintiff's residence). To the extent that Petitioners seek to use their place of residence as a proxy to establish that Samsung would be subject to personal jurisdiction for each individual Petitioner's claim or to satisfy the "substantial events" provisions of Section 1391 in this District, Petitioners fail to provide sufficient evidence of each Petitioner's residence. Indeed, although Petitioners claim that the "[d]etails for each Petitioner are listed in Exhibit A," Exhibit A only contains the "First Name," "Last Name," and "Claimant City" of each plaintiff:

| Claimant First Name | Claimant Last Name | Claimant City |
|---|---|---|
| . . . . | | |
| Jacob | Mathews | Marissa |
| Kathleen | Fleagle | Marissa |
| Robert | Guenther | Fairview Heights |
| Dawn | Guenther | Fairview Heights |
| Karen | Gall | Springfield |
| Tammy | Bevely | Springfield |

*(Excerpt of Pet., Ex. A, pp. 1, 3. If the "Claimant City" identified refers to a municipality in Illinois, all Petitioners in this excerpt reside in either the Southern or Central Districts of Illinois.)*

The "Claimant City" does not inform the Court whether the conduct allegedly giving rise to the claims occurred in that city, whether Petitioner resides in that city, or whether that is a city in Illinois. For example, while it is true that "Darien"—the city identified for the named Petitioner Ms. Wallrich and 84 other petitioners—is the name of a city in Illinois, "Darien" is also the name of cities in Connecticut, Georgia, Missouri, New York, and Wisconsin. 612 Petitioners are identified with "Springfield," but more than half of the 50 states have a city or town named "Springfield." What's more, Springfield, Illinois is located in the Central District of Illinois.

**Second**, Petitioners alternatively contend that venue is appropriate in the Northern District of Illinois because "the arbitrations were venued to take place in this District." Pet. at 6. But Petitioners' arbitrations have not been "venued" in this District or anywhere else. The Arbitration Agreement does not designate a place of arbitration, but incorporates the AAA Rules. While the AAA's "Procedures for the Resolution of Disputes through Document Submission" do not provide for how the AAA will determine the venue of the arbitration, AAA Rule R-11 provides:

> If an in-person hearing is to be held and if the parties do not agree to the locale where the hearing is to be held, *the AAA initially will determine the locale of the arbitration*. If a party does not agree with the AAA's decision, that party can ask the arbitrator, once appointed, to make a final determination. The locale determination will be made after considering the positions of the parties, the circumstances of the parties and the dispute, and the Consumer Due Process Protocol.

(Emphasis added.)  The AAA made no determination as to the venue of any arbitration before closing those proceedings.  There is thus no support for Petitioners' assertion that venue is appropriate in the Northern District of Illinois because "the arbitrations were venued to take place in this District."  Pet. at 6.  Nor do Petitioners account for the approximately 14,335 Petitioners listed on Exhibit A[16] that appear to reside outside this District.

### III.    UNDER THE TERMS OF THE ARBITRATION AGREEMENT THAT THEY CLAIM THEY SEEK TO ENFORCE, PETITIONERS CANNOT PROCEED COLLECTIVELY VIA THIS PETITION

The Arbitration Agreement that Petitioners seek to enforce precludes this collective action. *See* Pet., Ex. B at 11 ("Any [] dispute shall not be combined or consolidated with a dispute involving any other person's or entity's product or claim.").  Indeed, Petitioners acknowledge that under the Arbitration Agreement, "the parties cannot bring class, collective, or other representative proceedings."  Mot. at 4.  On the one hand, Labaton has argued that it was forced to submit 50,000 individual demands for arbitration because of the Arbitration Agreement's prohibition on collective actions.  *See, e.g.*, *id.* at 1.  On the other hand, in this Court, Labaton has sought to bring one single Petition and Motion on behalf of all but 14 of these 50,000 individuals.[17]  The Petition should therefore be dismissed for violation of the Arbitration Agreement's collective action

---

[16]    Samsung's analysis indicates that there is no city, town, or village within this District matching the name listed in at least 14,335 of the entries listed under "Claimant City."

[17]    It is thus clear that when it is tactically advantageous to them, Labaton will insist on strict adherence to the Arbitration Agreement, *i.e.*, by filing 50,000 separate demands for arbitration to try to force Samsung to pay hundreds of millions of dollars in arbitration fees so as to coerce a settlement.  But when inconvenient, they will flout that agreement, as they have done here by purportedly filing a single Petition on behalf of 49,986 individuals so as to avoid paying separate court filing fees.  Those fees would have cost them in excess of $20,000,000 in the aggregate (based on a filing fee of $402 for each petition) had they filed separate actions on behalf of each Petitioner.  Petitioners should be estopped from taking such clearly inconsistent positions.  *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (noting that judicial estoppel is an equitable doctrine designed "to protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment").

waiver.  *See Niiranen v. Carrier One, Inc.*, No. 20-CV-06781, 2022 WL 103722, at *8 (N.D. Ill. Jan. 11, 2022) (Wood, J.) (dismissing putative class claims against employer where a "class-action waiver itself provides that Plaintiffs waive their right to initiate or participate in any class action brought against [defendant]").

## IV.    THE PETITION SHOULD BE DISMISSED BECAUSE PETITIONERS HAVE NOT SUFFICIENTLY PLEADED THAT EACH OF THEM HAS A VALID ARBITRATION AGREEMENT WITH SAMSUNG

A court may order a dispute to arbitration only if the parties have expressly agreed to arbitrate that dispute.  *See* 9 U.S.C. § 206 ("A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement[.]"); *see also Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009) ("Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement.").  This is so because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quotations omitted).[18]  It follows that "[t]he party seeking to compel arbitration has the burden of establishing an agreement to arbitrate."  *Gilbert v. I.C. Sys., Inc.*, No. 19-CV-04988, 2021 WL 292852, at *2, *7 (N.D. Ill. Jan. 28, 2021) (Valderrama, J.) (denying motion to compel where moving party failed to satisfy "burden of establishing a valid agreement

---

[18]    *See also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration."); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) ("Arbitration under the [FAA] is a matter of consent, not coercion . . . . By permitting the courts to 'rigorously enforce' [arbitration] agreements according to their terms, we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind by the FAA." (internal citation omitted)).

to arbitrate, because it has not shown that [the parties] assented to the Terms and Conditions").[19]

Here, Petitioners assert that "[t]he parties entered into a valid arbitration agreement." Mot. at 9. But Petitioners have failed to present this Court with any evidence of these arbitration agreements. The Claimant lists provided by Labaton in the underlying arbitrations and the Claimant list attached as Exhibit A to the Petition do not evince those agreements, given that both Samsung and the AAA have identified numerous deficiencies in those lists.[20] Petitioners have failed to satisfy their burden to show with evidence—not conclusory assertions—that valid arbitration agreements exist between each of them and Samsung, and the Motion should be denied.

A court recently reached a similar result in *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062 (N.D. Cal. 2020), on which Petitioners themselves rely. *See* Mot. at 13. In *DoorDash*, a petition was filed, putatively on behalf of 5,879 individuals, seeking to compel arbitration of claims asserted under various labor statutes against an online food delivery service. 869 of those individuals provided "witness statements" that provided their residential addresses and certain other information, but they did not provide the identifying information that each individual used to register with the company and did not reference the specific arbitration agreement that the individual had "clicked through." *Id.* at 1065. The court thus held that it "cannot conclude that an

---

[19]   Even when an agreement contains a so-called delegation provision, "'where the dispute at issue concerns contract formation, the dispute is generally for courts to decide.' . . . [I]t is only proper for the Court to assess the threshold matter of formation of the arbitration agreement before tendering the remaining issues to an arbitrator." *Carter v. CVS Pharmacy, Inc.*, No. 18 C 01482, 2019 WL 11505578, at *1 (N.D. Ill. Jan. 15, 2019) (Kendall, J.) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010)).

[20]   *See* Pet., Ex. N; Opp., Ex. 3 ("In conducting the review of the claimants' filing materials to confirm if filing requirements have been met, the AAA has found inaccurate and/or incomplete information on the Spreadsheet submitted by the claimants.").

arbitration agreement exists as to those petitioners" and declined to grant them any relief. *Id.*[21] Here, Petitioners have not even provided that much information; they have provided only a spreadsheet (Pet., Ex. A) setting forth their names and the name of a city which putatively bears some relation to their claim. That provides this Court with no basis to hold that there is an arbitration agreement between each of those individuals and Samsung. The Petition should be dismissed for that reason alone.[22]

## CONCLUSION

Accordingly, the Petition should be dismissed in its entirety and with prejudice.

---

[21]    *See also Chester v. DirecTV, LLC*, No. 3:12-CV-710-HTW-LRA, 2014 WL 12779206, at *5 (S.D. Miss. July 16, 2014), *aff'd sub nom. Chester v. DirecTV, L.L.C.*, 607 F. App'x 362 (5th Cir. 2015) (denying motion to compel arbitration where "defendant [] failed to demonstrate, through circumstantial evidence, that [the plaintiff] signed an arbitration agreement with DirecTV"); *McDuffie v. Sunnova Energy Corp.*, No. EDCV211121JGBSHKX, 2021 WL 9182420, at *3 (C.D. Cal. Oct. 13, 2021) (denying motion to compel arbitration where defendant "fail[ed] to establish the existence of a valid arbitration agreement); *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 789 (N.D. Ill. 2011) (Castillo, J.) (denying motion to compel arbitration "because there is a genuine issue of material fact pertaining to whether [p]laintiffs ever viewed the enrollment web pages containing the Terms and Conditions").

[22]    In the event the Court entertains the Petition, , each Petitioner should be required to provide strict proof as to a valid arbitration agreement with Samsung and respond to additional arbitration-related discovery warranted by these circumstances. *Cf. Wembi v. Gibson's Rest. Grp. Mgmt. Co.*, No. 21 C 586, 2021 WL 2272399 (N.D. Ill. May 13, 2021) (Lefkow, J.).

Dated: December 5, 2022

Respectfully submitted,

/s/ Randall W. Edwards

Mark Howard Boyle
DONOHUE BROWN MATHEWSON &
   SMYTH LLC
131 South Dearborn Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 422-0900

Randall W. Edwards (ND IL general bar)
Matthew D. Powers (*pro hac vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone: (415) 984-8700

James L. Kopecky
KOPECKY SCHUMACHER
   ROSENBURG LLC
120 North LaSalle Street, Suite 2000
Chicago, Illinois 60601
Telephone: (312) 380-6552

Michael W. McTigue Jr. (*pro hac vice*)
Meredith C. Slawe (*pro hac vice*)
Kurt Wm. Hemr (*pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000

*Attorneys for Respondents*
*Samsung Electronics America, Inc. and*
*Samsung Electronics Co., Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 5th day of December 2022, he caused the foregoing Respondents' Memorandum Of Law In Support Of Motion To Dismiss Petition To Compel Arbitration to be filed with the Clerk of the District Court via the CM/ECF system, which will send notification of such filing to all counsel of record at the email addresses on file with the Court.

Dated: December 5, 2022

*/s/ Randall W. Edwards*
Randall W. Edwards
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone: (415) 984-8700

*Attorney for Respondents*
*Samsung Electronics America, Inc. and*
*Samsung Electronics Co., Ltd.*
