## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PAULA WALLRICH, DANIELLE JONES,** :
**GRANT GRINNELL, JEFFREY BURTON,** :
**RHONDA MCCALLUM, PROVIDENCIA** :
**VILLEGAS, and 49,980 other individuals**, :
                                        :
                    *Petitioners,*      :
                                        :
          - against -                   :
                                        :
**SAMSUNG ELECTRONICS AMERICA,** :
**INC. and SAMSUNG ELECTRONICS CO.,** :
**LTD**., :
                                        :
                    *Respondents.*      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No: 1:22-cv-05506

Hon. Harry D. Leinenweber

## RESPONDENTS' OPPOSITION TO
## PETITIONERS' MOTION TO COMPEL ARBITRATION

Mark Howard Boyle
DONOHUE BROWN MATHEWSON &
    SMYTH LLC
131 South Dearborn Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 422-0900

Randall W. Edwards
Matthew D. Powers (*pro hac vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone: (415) 984-8700

James L. Kopecky
KOPECKY SCHUMACHER
    ROSENBURG LLC
120 North LaSalle Street, Suite 2000
Chicago, Illinois 60601
Telephone: (312) 380-6552

Michael W. McTigue Jr. (*pro hac vice*)
Meredith C. Slawe (*pro hac vice*)
Kurt Wm. Hemr (*pro hac vice*)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000

*Attorneys for Respondents*
*Samsung Electronics America, Inc. and*
*Samsung Electronics Co., Ltd.*

Dated: December 5, 2022

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................................5

    A.    Under The AAA Rules Referenced In Samsung's Arbitration Agreement, If One Party Declines To Pay Arbitration Fees, The Other Party May Advance Them .................................................................5

    B.    Labaton Has A Practice Of Threatening And Bringing Massive Numbers Of Individual Arbitration Claims In An Effort To Extract Settlements Based On Arbitration Fees, Irrespective Of The Merits Of The Claims Asserted ................................................................6

    C.    November 2021: After Another Firm Filed A Putative BIPA Class Action Against Samsung, Labaton Began Soliciting Arbitration Claimants ...................................................................................7

    D.    March–September 2022: Notwithstanding Samsung's Explanation And Evidence That Petitioners' BIPA Claims Had No Merit, Labaton Insisted That Samsung Make An Initial Offer Of At Least $50,000,000; When Samsung Refused, Labaton Filed 50,0000 Individual Arbitration Demands .............................................................11

    E.    September 27–28, 2022: In View Of Manifest Deficiencies In Petitioners' Claims And To Conserve The AAA's Resources, Samsung Declined To Pay The AAA Filing Fees Associated With The Arbitration Demands But Stated That It Would Defend Itself If Petitioners (Or Their Counsel) Chose To Advance The Fees And Seek Recoupment In The Arbitration; In Response, Labaton Asked That The Arbitrations Be Closed .................................................................14

    F.    October 7, 2022: Labaton Filed This Action, Ostensibly On Behalf Of Petitioners, To Compel Samsung To Participate In Arbitrations Even Though Samsung Said It Would Participate In Arbitration, And It Was Petitioners Who Had Waived Arbitration and Asked The AAA To "Close The Cases"_____ .........................................................16

    G.    October 19, 2022: Labaton Misstated The Status Of The AAA Proceedings To This Court .......................................................17

i

**TABLE OF CONTENTS**
**(continued)**

Page

H.  October 31, 2022: Weeks After Labaton Represented To This
Court That The AAA Had Determined It Met The AAA's Filing
Requirements, The AAA Finally Made That Determination; In
Response, Samsung Reiterated That It Was Declining To Pay The
Fees And It Understood That Petitioners Had Waived Their Right
To Arbitrate By Choosing Not To Pay Those Fees ................................. 18

I.  October 14–21, 2022: In The Interim, A Firm Commenced A
Second Putative BIPA Class Action Against Samsung; That Firm
And Labaton Are Coordinated In The Pursuit Of Mass Arbitrations
and Class Action Litigation ...................................................... 19

J.  November 20, 2022: Plaintiffs In The Initial Putative BIPA Class
Action Against Samsung Moved To Consolidate The Two BIPA
Putative Class Actions .......................................................... 21

K.  November 30, 2022: The AAA Terminated The Arbitrations After
Labaton Refused To Advance The Arbitration Fees For Petitioners ......... 22

ARGUMENT ................................................................................. 23

I.  PETITIONERS' MOTION FAILS BECAUSE SAMSUNG HAS NOT
REFUSED TO ARBITRATE ...................................................... 23

II.  PETITIONERS HAVE WAIVED THEIR RIGHT TO ARBITRATE BY
DECLINING THE OPPORTUNITY TO ADVANCE ARBITRATION
FEES (THROUGH THEIR COUNSEL) AND ASKING THAT THEIR
CASES BE CLOSED .............................................................. 24

III.  THE COURT DOES NOT HAVE THE AUTHORITY TO REWRITE
THE AAA'S RULES, OR TO CONTROL THE CONDUCT OF AN
ARBITRATION, AND CANNOT ORDER THE PARTIES TO AN
ARBITRATION TO PAY ARBITRATION FEES .............................. 27

IV.  PETITIONERS ARE NOT ENTITLED TO ANY EQUITABLE RELIEF
BECAUSE THEY HAVE AN ADEQUATE REMEDY AT LAW,
NAMELY, ADVANCING THE UNPAID FEES OR JOINING THE
PUTATIVE BIPA CLASS ACTIONS ........................................... 31

V.  THE PETITION SHOULD NOT BE GRANTED AS IT IS REPLETE
WITH PROCEDURAL DEFICIENCIES ....................................... 33

CONCLUSION ............................................................................... 34

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. Amazon.com, Inc.*,
No. 1:21-cv-05858 (N.D. Ill. Nov. 2, 2021) ........................................................................ 27

*Adams v. Postmates, Inc.*,
414 F. Supp. 3d 1246 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535 (9th Cir.
2020) ........................................................................................................................ 28, 29, 30

*Baker et al. v. Match Grp., Inc. et al.*,
No. 2022-CH-10435 (Ill. Cir. Ct. Cook Cty., Oct. 21, 2022) ..................................... 20, 21, 26

*Billie v. Coverall N. Am.*,
No. 3:19-CV-00092, 2022 WL 807075 (D. Conn. Mar. 16, 2022) ....................................... 26

*Brekken v. Reader's Digest Special Prods., Inc.*,
353 F.2d 505 (7th Cir. 1965) ................................................................................................ 29

*Cariten Ins. Co. et al. v. Astrazeneca AB et al.*,
No. 1:14-cv-13873 (D. Mass. Oct. 16, 2014) ....................................................................... 20

*Cota v. Art Brand Studios, LLC*,
No. 21-CV-1519, 2021 WL 4864588 (S.D.N.Y. Oct. 15, 2021) .................................... 26, 32

*Croasmun v. Adtalem Glob. Educ., Inc.*,
No. 20 C 1411, 2020 WL 7027726 (N.D. Ill. Nov. 30, 2020) ............................................... 31

*Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*,
588 F.3d 884 (5th Cir. 2009) .......................................................................................... 26, 29

*DOE v. Meta Platforms Inc., et al.*,
No. 3:22-cv-04293 (N.D. Cal. July 25, 2022) ...................................................................... 20

*Essex Reg'l Ret. Sys. v. Bank of Am. Corp. et al.*,
No. 1:13-cv-05388 (S.D.N.Y. Aug. 1, 2013) ........................................................................ 20

*Estabrook v. Piper Jaffray Cos.*,
492 F. Supp. 2d 922 (N.D. Ill. 2007) ............................................................................. 23, 24

*Frasco v. Flo Health, Inc.*,
No. 3:21-cv-00757 (N.D. Cal. Jan. 29, 2021) ....................................................................... 20

*G.T. v. Samsung Elecs. Am., Inc.*,
No. 1:21-cv-04976 (N.D. Ill. Sept. 20, 2021) ................................................................... 7, 21

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) ............................................................................................................... 28

## TABLE OF AUTHORITIES
### (continued)

**Page**

*In re European Gov't Bonds Antitrust Litig.*,
   No. 19-cv-2601 (S.D.N.Y. Mar. 22, 2019) .......................................................... 20

*In re Facebook Biometric Info. Privacy Litig.*,
   No. 3:15-cv-03747 (N.D. Cal. Aug 17, 2015) ...................................................... 10

*In re Marriage of Belk*,
   605 N.E.2d 86 (Ill. App. 1992) ............................................................................ 29

*In re Optiver Commodities Litig.*,
   No. 1:08-cv-06842 (S.D.N.Y. July 30, 2008) ...................................................... 20

*In re Puerto Rican Cabotage Antitrust Litig. MDL 1960*,
   No. 3:08-md-01960 (D.P.R. Aug 13, 2008) ......................................................... 24

*John Wiley & Sons v. Livingston*,
   376 U.S. 543 (1964) ............................................................................................. 28

*Jones, et al. v. Samsung Elecs. Am., Inc. & Samsung Elecs. Co., Ltd.*,
   No. 1:22-cv-05662 (N.D. Ill. Oct. 14, 2022) ....................................................... 20

*King Mechanism & Eng'g Co. v. W. Wheeled Scraper Co.*,
   59 F.2d 546 (7th Cir. 1932) ................................................................................. 32

*Licata v. Facebook, Inc.*,
   3:15-cv-03747, 2015 WL 13691679 (N.D. Ill. Aug. 28, 2015)............................. 27

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
   363 F.3d 1010 (9th Cir. 2004) ............................................................................. 29

*Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs., Inc.*,
   623 F.3d 476 (7th Cir. 2010) ......................................................................... 27, 28

*Mahaffey v. Ramos*,
   588 F.3d 1142 (7th Cir. 2009) ............................................................................. 31

*Margalioth v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   695 F. Supp. 756 (S.D.N.Y. 1988)........................................................................ 28

*McClenon v. Postmates Inc.*,
   473 F. Supp. 3d 803 (N.D. Ill. 2020) .............................................................. 29, 30

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. King*,
   812 F. Supp. 1217 (M.D. Fla.), *aff'd sub nom. Merrill Lynch, Pierce v. King*, 3
   F.3d 443 (11th Cir. 1993) .................................................................................... 24

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Mosley v. City of Chicago*,
  252 F.R.D. 445 (N.D. Ill. 2008) ............................................................. 28

*Pezen v. Facebook, Inc.*,
  1:15-cv-03484, 2015 WL 1812904 (N.D. Ill. Apr. 21, 2015) .................. 27

*Rodriguez v. Mastronardi Produce-USA, Inc.*,
  No. 1:20-CV-01702, 2021 WL 2634403 (M.D. Pa. June 25, 2021) ........ 34

*Sanders v. Allenbrooke Nursing & Rehab. Ctr., LLC*,
  No. 2:20- CV-02001, 2020 WL 5576696 (W.D. Tenn. Sept. 17, 2020) ............... 34

*Scan-Graphics, Inc. v. Photomatrix Corp.*,
  1992 WL 2231 (E.D. Pa. Jan. 2, 1992) ................................................. 24

*Sjogren v. Maybrooks, Inc.*,
  214 Ill. App. 3d 888 (1991) .................................................................. 33

*Smith v. GC Servs. Ltd. P'ship*,
  907 F.3d 495 (7th Cir. 2018) ................................................................ 25

*Steffanie A. v. Gold Club Tampa, Inc.*,
  2020 WL 4201948 (M.D. Fla. July 22, 2020) ....................................... 31

*Thomas D. Philipsborn Irrevocable Ins. Tr. v. Avon Cap., LLC*,
  No. 11-cv-3274, 2012 WL 4513903 (N.D. Ill. Oct. 1, 2012) .......... 24, 25

*Uber Techs., Inc. v. Am. Arb. Ass'n, Inc.*,
  204 A.D.3d 506 (N.Y. Ct. App., 1st Dep't 2022) .................................. 32

*Unilectric, Inc. v. Holwin Corp.*,
  243 F.2d 393 (7th Cir. 1957) ................................................................ 32

*Union Cent. Life Ins. Co. v. Andraos*,
  No. 1:09-CV-758, 2011 WL 6091771 (S.D. Ohio Oct. 21, 2011), *report and
  recommendation adopted*, No. C-1-09-758, 2011 WL 6100275 (S.D. Ohio
  Dec. 7, 2011) .................................................................................. 28, 29

*United States v. Rural Elec. Convenience Coop. Co.*,
  922 F.2d 429 (7th Cir. 1991) ................................................................ 32

*Wembi v. Gibson's Rest. Grp. Mgmt. Co.*,
  No. 21 C 586, 2021 WL 2272399 (N.D. Ill. May 13, 2021) .................. 34

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
  417 F.3d 682 (7th Cir. 2005) ................................................................ 24

**TABLE OF AUTHORITIES**
**(continued)**

Page

**STATUTES**

Cal. Civ. Proc. Code § 1281 *et seq*. ............................................................................................. 22

**OTHER AUTHORITIES**

Allison Preece, *Labaton Is Keeping Open The Doors To Justice*, Lawdragon
    (Sept. 27, 2022) ...................................................................................................................... 6

## PRELIMINARY STATEMENT

"The laudable objectives [of arbitration] may be frustrated if an arbitration
provision is exploited as a tool for gamesmanship or evasion."

— *Jonathan Gardner of Labaton Sucharow LLP ("Labaton"), counsel for
Petitioners here, in letter to adverse counsel in a recent dispute, April 19, 2022*[1]

Samsung Electronics America, Inc. ("SEA") and Samsung Electronics Co., Ltd. ("SEC")
(collectively, "Samsung") have not refused to participate in arbitration. Instead, Samsung and
Petitioners have invoked the rules and procedures of the American Arbitration Association
("AAA") in declining to pay arbitration administrative fees and waiving their respective arbitration
rights (to the extent such rights existed). This has resulted in the AAA exercising its delegated
authority under the Federal Arbitration Act ("FAA") and the Arbitration Agreement to apply its
rules and procedures to terminate the arbitral cases so that Petitioners may seek relief on the merits
in court. There is thus no arbitration for the Court to "compel." Instead, Petitioners' motion is a
transparent attempt to force Samsung to pay over $200 million in arbitration fees in 49,986 separate
arbitration claims—relief that is both entirely unwarranted and beyond the Court's authority.

At the October 19, 2022 telephonic hearing in this action, the Court observed, "It seems to
me that the parties are on opposite sides where they normally would be expected to be." Ex. 1 at
4:23-25. This Court then asked: "Why . . . are your positions reversed from what I would normally
anticipate . . . .?" *Id.* at 5:4-6. At the hearing, Labaton—Petitioners' counsel in this action—
sidestepped a direct response to this question. But Samsung welcomes the opportunity to answer
the Court's question directly. In doing so, Samsung will shine a light on questionable and far-
reaching practices affecting numerous businesses that have, to this point, evaded judicial and

---

[1]    Compl. Ex. C, *Baker et al. v. Match Group, Inc. et al.*, No. 2022-CH-10435 (Ill. Cir. Ct.
Cook Cty., Oct. 21, 2022).

regulatory oversight.

After another law firm filed a putative class action lawsuit against Samsung in this District for alleged violations of the Illinois Biometric Information Privacy Act ("BIPA"), the "Mass ADR" practice of Labaton launched a mass arbitration solicitation campaign against Samsung on the same issue. Through misleading advertisements, including on a dedicated website and "click bait" forms on social media platforms, as well as direct e-mail campaigns involving the use of settlement class data from unrelated litigation, Labaton amassed more than 100,000 claimants (including deceased individuals) who do not appear to have been vetted in any way. Labaton then used the threat of the aggregate arbitral administrative fees that Samsung would incur in these tens of thousands of individual arbitrations—which would be in excess of ***$400 million***—to attempt to extract a settlement wholly divorced from the viability of the claims. To that end, Labaton advised Samsung's counsel by telephone that if Samsung did not make an ***opening*** settlement offer of at least $50,000,000 to settle those claims, Labaton would submit 50,000 individual arbitration demands as the first of successive waves of filings.[2] When Samsung declined to acquiesce, Labaton pulled the proverbial trigger and unloaded 50,000 boilerplate, identical arbitration demands on the AAA.[3] Labaton's mass filing of those demands is a patent abuse of the arbitration process and Samsung's consumer-friendly arbitration program. Not only are Petitioners' claims without merit, but Labaton has also refused to engage in any substantive discussion on the dispositive merits issue for those claims (i.e., whether Samsung collects, obtains, or possesses the

---

[2]   At that time, Labaton had amassed more than 70,000 purported claimants.

[3]   Aside from changing the names of the purported claimants, each demand is otherwise identical in every respect. None of the "individual" demands allege any specific, individualized facts, such as which Samsung device the claimant owns, when or how they purchased it, or any other facts which might establish whether Petitioners in fact are subject to arbitration agreements with Samsung, or even own a Samsung device.

data in dispute) and refused to consider, as the AAA encourages, "processes that make the resolution of Multiple Case Filings more efficient." *See* Ex. 2, AAA's Supplementary Rules for Multiple Case Filings ("Supplementary Rules") at 3, *Introduction*. Instead, Labaton has improperly weaponized the AAA's filing fee schedule to place extraordinary, undue pressure on Samsung to settle frivolous claims.

But the AAA does not mandate the payment of arbitration fees by any party. The AAA expressly recognizes that a party may choose not to pay arbitration fees for any reason (or for no reason at all). In such circumstances, the AAA affords the other party the opportunity to proceed in arbitration by advancing those fees. Should that other party (or its counsel) choose to advance those fees consistent with the AAA's procedures, they may recoup them in arbitration—provided, of course, that the claims were not "filed for the purpose of harassment" or were not "patently frivolous." *See* Pet., Ex. F ("AAA Rules"), R-44(c); *see also id.*, R-44(d).

Samsung decided, consistent with the AAA Rules and procedures, to decline to pay the AAA arbitration fees associated with those demands (except for a small number of demands filed by California claimants, who are not among the Petitioners here). Under the AAA Rules, the subset of Petitioners who actually have a contractual relationship and arbitration agreement with Samsung may still proceed with their arbitrations *if* they (or Labaton) choose to advance the arbitration fees. Instead, Labaton requested that the AAA close all of the arbitral cases so that it could proceed in court on the merits consistent with the AAA Rules. This waived Petitioners' arbitration rights (to the extent such rights existed), and the AAA has now closed those cases.

Petitioners have the full opportunity to vindicate their rights through litigation pending in this District. Indeed, two other putative class actions making the same allegations, and having proposed class definitions subsuming Petitioners here, already are pending. While Samsung

3

disputes the allegations and underlying theory of liability in those actions, the appropriate court will address those issues in due course.

Labaton now nonetheless asks this Court to compel Samsung to arbitrate, even though there is nothing for the Court to compel—Samsung has not refused to participate in arbitration. Samsung repeatedly has stated its willingness to arbitrate these claims. If Petitioners (through their counsel) had elected to advance the arbitration fees consistent with the AAA's process, Samsung would have participated and vigorously defended the claims. Rather, it is Petitioners (through their counsel) who notified the AAA and Samsung that they declined the option to advance the fees through their counsel and the ability to seek to recoup them in the arbitration, thereby waiving their right to arbitrate, too.[4] Petitioners' Motion is a pretext targeting Samsung's position on fees, not an actual refusal to arbitrate. Thus, Petitioners seek an order from this Court to compel Samsung to pay the arbitration fees for the now-closed arbitrations. Respectfully, as set forth below, the Court lacks authority to award such relief: courts have uniformly held that the payment of fees is a procedural question reserved for the arbitration administrator and arbitrator. Nor would such equitable relief be appropriate in any event, where Petitioners have a wholly adequate remedy at law (*i.e.*, advancing the fees themselves or joining the pending putative class actions).

In addition, Petitioners' request is replete with procedural deficiencies that independently warrant denying Petitioners' Motion, as set forth in Respondents' accompanying Motion to Dismiss the Petition ("Motion to Dismiss").

---

[4] Moreover, Petitioners here have not even attempted to meet their threshold burden of establishing that they each have an arbitration agreement. Instead they have filed this action collectively for the principal purpose of trying to compel the payment of arbitration fees, but such questions are not for the Court to decide. Should the Court entertain Petitioners' request, Petitioners must first offer strict proof that each of them has a valid arbitration agreement with Samsung.

For all of those reasons, the Motion should be denied and this action should be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.**  **Under The AAA Rules Referenced In Samsung's Arbitration Agreement, If One Party Declines To Pay Arbitration Fees, The Other Party May Advance Them**

SEC manufactures and SEA sells devices, such as smartphones, tablets, and other devices. The terms of use for certain of those devices, contain, among other things, an arbitration agreement for its customers.  Although each agreement varies slightly, in all instances Samsung's arbitration agreements (collectively, the "Arbitration Agreement") contain an agreement by both parties that any dispute a customer may have with Samsung must be brought in an individual capacity and not on a consolidated or class basis.[5]  The Arbitration Agreement cited by Petitioners states that "[t]he arbitration shall be conducted according to the American Arbitration Association (AAA) Commercial Arbitration Rules applicable to consumer disputes."  Pet., Ex. B at 11.  It further provides that "[t]he arbitrator shall decide all issues of interpretation and application of this Agreement."  *Id.*  Samsung is committed to its consumer arbitration program and has arbitrated many disputes with consumers.

Under the AAA's fee schedule for consumer arbitrations, both consumers and businesses are initially responsible for paying certain filing fees for arbitrations.[6]  *See* AAA Rules at 34. Businesses pay substantially more than consumers: while the filing fee for a consumer (often, like here, paid by their counsel) is no more than $50-$100, in arbitrations that fall under the "multiple

---

[5]    Pet., Ex. B at 10 ("You and Samsung each agree that all disputes between you and Samsung . . . shall be resolved exclusively through final and binding arbitration . . . . Any such dispute shall not be combined or consolidated with a dispute involving any other person's or entity's product or claim."); Pet., Ex. C at 2 (similar); Pet., Ex. D at 6 (similar); Pet., Ex. E at 3 (similar).

[6]    *See* https://www.adr.org/sites/default/files/Consumer_Fee_Schedule_2.pdf.

consumer case filings" in the AAA's consumer arbitration fee schedule (which is the case here), a business must pay $75-$300 in filing fees, as well as $1,400-$1,775 in case management fees, and at least $1,500 for arbitrator compensation, meaning that *in each individual case*, the business can expect to pay several thousand dollars in fees alone. *Id.*

For mass arbitrations, the AAA has also promulgated the Supplementary Rules, which apply when the same or coordinated counsel file 25 or more similar demands against the same respondents. Supplementary Rules at MC-1(b). Those Supplementary Rules provide that if one side does not pay the fees required to initiate arbitration, the other has the option to "advance the required payment within the time specified by the AAA." MC-10(d). A party who advances those fees may then recover them in the final arbitration award under AAA Rules, R-44(d). AAA Rules at 29. If neither party pays before an arbitrator is appointed, "the AAA may suspend or terminate those proceedings." Supplementary Rules, MC-10(e). If that happens, AAA Rules, R-1(d) provides that "either party may choose to submit its dispute to the appropriate court for resolution." AAA Rules at 11. The AAA has acknowledged that, in addition to the AAA Rules, the Supplementary Rules apply to the Petitioners' claims. Ex. 3 at 1.

**B.    Labaton Has A Practice Of Threatening And Bringing Massive Numbers Of Individual Arbitration Claims In An Effort To Extract Settlements Based On Arbitration Fees, Irrespective Of The Merits Of The Claims Asserted**

Petitioners' counsel Labaton maintains a "Mass ADR" practice group that is "focused on mass arbitrations for consumers."[7] That practice, which they launched in 2020, is based on extracting settlements by threatening and then filing (where massive settlements are not forthcoming) enormous numbers of individual arbitration demands:

---

[7]   Allison Preece, *Labaton Is Keeping Open The Doors To Justice*, Lawdragon (Sept. 27, 2022), https://www.lawdragon.com/lawyer-limelights/2022-09-27-labaton-is-keeping-open-the-doors-to-justice.

(i)     Labaton solicits tens or even hundreds of thousands of consumers who might be parties to a business's arbitration clause;

(ii)     they then simultaneously threaten to file and file thousands of substantially identical individual arbitration demands on behalf of those consumers;

(iii)     they threaten successive waves of additional arbitration demands in the absence of immediate, private settlements with excessive attorneys' fees that have no judicial or regulatory oversight;

(iv)     they coordinate with other firms and entities to put undue pressure on the target business through parallel class actions and mass arbitration threats; and

(v)     they seek to leverage the massive arbitration administrative fees imposed on the business to obtain a settlement cloaked in secrecy, irrespective of and with disregard for the merits of the actual claims asserted in those demands.

The practice is co-chaired by Melissa Nafash and Jonathan Waisnor, both of whom currently claim to represent "over 250,000" individual clients. This practice has reportedly "been a highly fruitful area for the firm."[8] Ms. Nafash has acknowledged that with "250,000 clients," she does not "speak to every single one of them individually."[9] She has stated that to solicit new clients "[w]e advertise on social media and search engines," and have also built a database of past clients "that we communicate with about new cases."[10]

### C.     November 2021: After Another Firm Filed A Putative BIPA Class Action Against Samsung, Labaton Began Soliciting Arbitration Claimants

On August 11, 2021, a putative class action was filed in the Circuit Court of Cook County, Chancery Division, alleging that a functionality of certain Samsung devices violated BIPA. On September 20, 2021, Samsung removed that action to this District, where it is now assigned to Judge Nancy L. Maldonado. *See G.T. v. Samsung Electronics America, Inc.*, No. 1:21-cv-04976 (N.D. Ill. Sept. 20, 2021), ECF No. 2 (the "*G.T.* Action"). Each of the Petitioners in this action

---

[8]    *Id.*

[9]    *Id.*

[10]    *Id.*

would appear to be a member of the class proposed in the *G.T.* Action—if they are actual Samsung customers with a Samsung device who are Illinois residents. Indeed, Petitioners acknowledge that the allegations in the *G.T.* Action are "very similar" to the allegations set forth in the demands that they filed with the AAA. *See* Mot. at 8.

Labaton maintains a "Client Connect" website dedicated to recruiting potential arbitration claimants.[11] On or around November 18, 2021—*i.e.*, shortly after the *G.T.* Action was filed—Labaton created a listing on its Client Connect website soliciting Samsung device users, claiming that the users "May Be Entitled to Compensation Up to $5,000."[12] Labaton made several representations that, along with material omissions, fail to accurately inform them about the process. For example:

- Under the "Frequently Asked Questions" heading, Labaton states that an arbitration clause "not only require[s] you to arbitrate your claim, but to do so individually," omitting the fact that Labaton threatens and submits tens or hundreds of thousands of identical arbitration demands simultaneously or in successive waves to pressure the target business with aggregate fees.[13]

- Labaton also gives the impression that those who sign up will never risk any financial obligations, asserting that "[s]tarting a claim is quick, free, and easy," "[w]e only receive a fee if you win, and you will never owe ***us*** any money," and "[y]ou will never pay ***us*** out-of-pocket." *Id.* (emphasis added). Such statements omit the potential that those who sign up could end up owing money to Samsung (for example, for bringing claims "for purposes of harassment" or that are "patently frivolous" (AAA Rules, R-44(c)).

---

[11] As of this writing, Labaton is actively soliciting potential arbitration claimants to threaten and file individual arbitration demands against 31 businesses. *See* https://clientconnect.labaton.com/#open-cases-sections (last visited Dec. 5, 2022).

[12] Available at https://clientconnect.labaton.com/case/samsung/ (last visited Dec. 5, 2022). As of this writing, Labaton is still seeking Samsung device users to "Sign Up" to file individual arbitration claims against Samsung. *See id.*

[13] *Id.*

- Under the heading "[d]o I have to appear in person for arbitration?" Labaton states that "[m]ost of the time, arbitration can be conducted either by telephone or through documents provided by you and the company," failing to note that Samsung has the right to seek to depose any individual claimant in connection with their arbitration and to request a hearing (or the arbitrator may require one).[14]

- Labaton claims that they "can select an arbitrator for you who is fair and neutral," omitting that it is the AAA, not Labaton, that appoints arbitrators.[15]

- Another Labaton FAQ asks: "**I heard there was a class action against Samsung. Is it better for me to be part of that class action or pursue my claims in arbitration?**" The response states: "A class action was filed against Samsung and is pending before the Northern District of Illinois. Since you are an adult user and Samsung's user agreement has a mandatory arbitration clause, *it is unlikely that your claim could proceed in court. As a result, we've determined that arbitration is the best available option for adult Samsung users.*"[16] That answer has remained unchanged on Labaton's website even though Samsung has withdrawn its motion to compel arbitration in the *G.T.* Action and there are now in fact two putative class actions pending against Samsung relating to this matter. *See infra,* Sections I-J.

In addition to their "Client Connect" website, Labaton solicits potential arbitration claimants against Samsung (and other businesses) through targeted advertising on Facebook. These advertisements ask the viewer to "Sign Up" for a claim against Samsung, and some claim that "Up to $5000 In Compensation May Be Available." *See, e.g.*, Ex. 4. Labaton has also solicited potential claimants against Samsung (and other businesses) through direct e-mail campaigns. These e-mail solicitations reveal that: (i) Labaton is using e-mail addresses obtained by them in connection with a $650 million BIPA class settlement against Facebook to recruit participants for an array of unrelated mass arbitration opportunities and (ii) Labaton is drawing upon a repository of e-mail addresses created from previous mass arbitration efforts that were conducted by, or in coordination with, Labaton. Specifically, Labaton is actively using Facebook

---

[14] https://clientconnect.labaton.com/case/samsung/ (last visited Dec. 5, 2022).

[15] *Id.*

[16] *Id.* (italicization added, bold in original).

settlement class data from *In re Facebook Biometric Information Privacy Litigation*, No. 3:15-cv-03747 (N.D. Cal. Aug 17, 2015) ("*In re Facebook*") to solicit consumers to bring claims against Samsung (and others), notwithstanding a protective order was in place limiting the use of such data. In an e-mail dated September 28, 2022, originating from "markingteam@labaton.com", Labaton wrote:

> This is Labaton Sucharow LLP. We recently represented you in a class action against **Facebook** and are reaching out about *another case* that may be of interest to you. Samsung Galaxy users who took photos on their smartphones or tablets were likely subjected to facial recognition technology. This violates your privacy rights and Illinois law. We are bringing claims of up to **$5,000** on behalf of Samsung Galaxy users in Illinois. To see if you qualify, visit our website to submit your claim. Signing up is free. You won't owe us anything out of pocket, and we only receive a fee if we recover money for you.

Ex. 5 (italicization added, bold in original). This e-mail suggests that Labaton is reaching out about another class action, not a mass arbitration campaign. A Facebook user posted a similar e-mail received from Labaton on September 9, 2022, indicating that this practice appears to be widespread. Ex. 6.

Based on social media posts, consumers appear confused as to whether they are actually signing up for a class action lawsuit against Samsung, as well as whether merely clicking to join leads to "free" money:

- "This is NOT a scam. It's 100% legit. ***This simply the opportunity to be part of a class action lawsuit*** where there might be an actual payout for residents of Illinois who have taken selfies on a Samsung device." Ex. 7 (emphasis added).

- "Just so yall know theres a Samsung Lawsuit going on and an Instagram lawsuit for illinois. Called the law firm or w.e. and they said it's real and you can still sign up. Labaton sucharow is the name of the firm." Ex. 8.

- "Samsung Galaxy and IL residents. Same lawsuit that was won against facebook. Might not see the money for a few years but ***free is free***." Ex. 9 (emphasis added).

There have also been complaints that Labaton's sign-up process involves the firm obtaining—and retaining—consumers' personal information even if the consumers do not

ultimately sign an engagement with the firm:

- "They collect your personal information for the Samsung lawsuit THEN tell you about the fees they get for 'fighting on your behalf.' . . . Very dishonest and misleading. ***Now you have personal information people don't want you to have!***" Ex. 10 (emphasis added).

Labaton's website is conspicuously vague about whether the firm ***retains*** consumers' information even if the consumers do not move forward.[17]

    **D.**      **March–September 2022: Notwithstanding Samsung's Explanation And Evidence That Petitioners' BIPA Claims Had No Merit, Labaton Insisted That Samsung Make An Initial Offer Of At Least $50,000,000; When Samsung Refused, Labaton Filed 50,0000 Individual Arbitration Demands**

On March 21, 2022, Labaton sent a letter to Samsung claiming that it had 10,157 initial claimants who had "suffered harm to their privacy because of Samsung's BIPA violations." Pet., Ex. G. They sought individual payment of a total of $50,785,000, and threatened to file individual arbitration demands if Samsung did not pay. *Id.* Between March and June 2022, Labaton sent Samsung several more letters seeking to escalate the pressure, each time informing Samsung of additional claimants that Labaton had amassed. At the same time, as noted above, Labaton was running advertisements across various social media websites and sending direct e-mail solicitations in an effort to continue to scale up and gather more potential claimants to threaten arbitration demands against Samsung.

By August 2022, Labaton was threatening Samsung with more than 70,000 arbitration demands and the associated arbitration administrative fees (totaling $210,020,275 for so-called "desk" arbitrations (without hearings) or a minimum of $315,723,775 for arbitrations with a

---

[17] *See* https://clientconnect.labaton.com/#faq-sections (stating that "[i]f you don't qualify or you don't sign our attorney-client agreement, we won't do anything with your information," but making no reference to whether Labaton nonetheless retains the consumer's information).

hearing).[18]  Samsung and Labaton subsequently participated in a mediation with retired Chief Judge of this Court James F. Holderman in August 2022, but the mediation was unsuccessful. Shortly thereafter, Labaton informed Samsung that the firm would immediately commence 50,000 individual arbitrations (and trigger the associated fees) absent an offer by Samsung to pay Labaton at least $50,000,000.  *See* Ex. 11 at 1.

Faced with an unreasonable counterparty disinterested in engaging with the key merits question of whether Samsung actually collected or otherwise obtained any of the data at issue, on September 6, 2022, Samsung sent Labaton a letter explaining that the claims it was asserting had no merit whatsoever, and attached a declaration of SEC engineer Youngil Shin (the "Shin Declaration") detailing the functionality of the technology at issue in Petitioners' BIPA claims and how it does not implicate BIPA and regardless, all activity is exclusively addressed locally on the user's device with no access by Samsung.  Pet., Ex. H.  The Shin Declaration explained, among other things, that while Samsung devices group the user's photographs based on the faces identified in the photographs, (i) the result of the analysis cannot be used to recognize specific individuals; and (ii) the analysis is performed exclusively on the user's device and is not transmitted to (or accessible by) Samsung.  Samsung explained to Labaton that, under their theory, only the claimants themselves—not Samsung—could face liability under BIPA.

Notwithstanding those facts, the very next day, September 7, 2022, Labaton submitted 50,000 identical arbitration demands, along with a spreadsheet containing certain information regarding Petitioners ("Claimant Spreadsheet"), to the AAA.  *See* Pet., Ex. J.  Under the AAA's

---

[18]  Specifically, by August 2022, Labaton had threatened 70,469 arbitration demands, meaning Samsung would owe $5,660,175 for initial filing fees, $98,656,600 for case management fees, and $105,703,500 for arbitrator compensation for desk arbitrations or $211,407,000 for arbitrator compensation if the arbitrations involved a hearing.

consumer fee schedule, the total arbitration fees Samsung would owe for these 50,000 arbitrations (assuming Petitioners satisfied the AAA intake requirements) would be $149,125,000 for "desk" arbitrations or a minimum of $224,125,000 if the arbitrations involved hearings: (1) $4,125,000 for initial filing fees; (2) $70,000,000 for the case management fees; and (3) $75,000,000 for arbitrator compensation for desk arbitrations or $150,000,000 for arbitrator compensation if the arbitrations involved a hearing.[19] Thus, Labaton's submission promptly after Samsung refused to make an opening offer of at least $50,000,000 was plainly aimed at imposing substantial aggregate administrative fee exposure on Samsung for non-meritorious claims.

Petitioners' cookie-cutter demands—which were identical except for the name—alleged that the functionality of certain technology on Samsung devices violated BIPA. *See* Pet., Ex. J. Each demand filed by Petitioners represents that Petitioner is party to an arbitration agreement with Samsung and that Petitioner "is a natural person who owns a Samsung Galaxy Device and has taken photographs of themselves, including photographs of Petitioner's face and other physical attributes while residing in the State of Illinois, and saved those photographs to the Samsung Gallery application." *Id.*, Ex. J ¶¶ 1, 4. Notwithstanding Labaton's express representations to Claimants that they could seek to recover "up to $5,000," *see supra* Section C, each demand seeks "statutory damages of at least $15,000" and injunctive relief, Pet., Ex. J, Prayer for Relief, likely to evade application of the AAA's small claims exception to arbitration. *See* AAA Rules, R-9 (providing that "[i]f a party's claim is within the jurisdiction of a small claims court, either party may choose to take the claim to that court instead of arbitration").

---

[19] As noted *infra* note 21, Labaton is continuing to solicit potential arbitration claimants and has informed Samsung that is has now amassed over 104,334 claimants. Samsung's total fees for 104,334 arbitrations would be $310,768,650 for "desk" arbitrations or $467,269,650 if the arbitrations involved a hearing.

**E.      September 27–28, 2022: In View Of Manifest Deficiencies In Petitioners' Claims And To Conserve The AAA's Resources, Samsung Declined To Pay The AAA Filing Fees Associated With The Arbitration Demands But Stated That It Would Defend Itself If Petitioners (Or Their Counsel) Chose To Advance The Fees And Seek Recoupment In The Arbitration; In Response, Labaton Asked That The Arbitrations Be Closed**

The Claimant Spreadsheet purported to provide the "First Name," "Last Name," and "Claimant City" for each claimant. *See* Pet., Ex. A. On September 27, 2022, Samsung wrote to the AAA to inform it of preliminary deficiencies with the claimant information provided by Labaton. Pet., Ex. N. In this regard, Samsung noted:

Specifically, based on its sampling, Samsung is in possession of information suggesting Claimants' counsel has filed Demands on behalf of:

1. Claimants who are deceased;

2. Claimants with fictitious personal information;

3. Claimants who are not Illinois residents;

4. Claimants who are in bankruptcy;

5. Claimants who Samsung has no record of ever being a customer or owning any of the devices at issue, let alone being a party to an arbitration agreement with Samsung;

6. Claimants who submitted duplicate Demands;

7. Claimants who submitted multiple Demands related to the same device under different names;

8. Claimants who also purport to be represented by entirely different counsel on the same threatened claim against Samsung;

9. Claimants who have a history of criminal fraud-related offenses; and

10.  Claimants who are serial claimants and litigants.

*Id.* at 2.

Samsung also noted that "Labaton has disclaimed interest in and ignored key underlying facts on the merits, which itself reinforces that these purported claims have an improper purpose,"

14

and that Labaton had made clear it had no interest in streamlining the arbitrations to "ensure resolution of them in a timely and cost-effective manner." Pet. Ex. N.

Accordingly, Samsung informed the AAA that to prevent the unnecessary expenditure of resources by the AAA (a non-profit organization) and Samsung, to ensure that the interests of consumers (including some Samsung customers) were protected, and to preserve the integrity of the arbitration process, that "assuming the intake requirements are deemed satisfied," it would not be paying the filing fees in connection with Petitioners' demands should the intake requirements be deemed satisfied. *Id*. at 3. Critically, Samsung's decision to not pay initial filing fees did not foreclose Petitioners' ability to arbitrate their claims. Samsung expressly stated that it was invoking the AAA process whereby, because it was declining to pay the fees, claimants and Labaton had the option to "pay the arbitration fees," in which case "Samsung will participate and defend itself vigorously against these meritless claims." *Id.* Alternatively, claimants could "elect to waive arbitration by not paying (directly or through their counsel)" the fees under Supplementary Rules, MC-10(d) in which case, "consistent with AAA R-1(d), Samsung expects that the AAA will decline to administer and 'either party may choose to submit its dispute to the appropriate court for resolution.'" *Id.*

***One day later***, on September 28, 2022, Labaton, purporting to "write on behalf of the 50,000 Claimants" (including those who are deceased), declined to advance the filing fees consistent with the AAA's process and requested that the AAA "***close the cases*** so Claimants can proceed to court." Pet., Ex. O (emphasis added).[20] On September 30, 2022, Labaton wrote to the AAA again, asking "when we can expect to receive a formal letter from the AAA ***closing the cases***

---

[20] It is unclear how Labaton could have communicated with and obtained authority from all 50,000 claimants to make this election in one day.

and allowing us to proceed to court."  Ex. 12 (emphasis added).

>   **F.**    **October 7, 2022: Labaton Filed This Action, Ostensibly On Behalf Of Petitioners, To Compel Samsung To Participate In Arbitrations Even Though Samsung Said It Would Participate In Arbitration, And It Was Petitioners Who Had Waived Arbitration and Asked The AAA To "Close The Cases"**

Just one week later, Labaton filed a single Petition and Motion to Compel Arbitration purportedly on behalf of 49,986 of these claimants (the Petitioners in this action).  This single aggregated proceeding is a violation of the Arbitration Agreement's collective action waiver on which Labaton has otherwise relied in refusing to consolidate or otherwise streamline the 50,000 arbitrations brought against Samsung.  Had each Petitioner filed a separate Petition, as required by the Arbitration Agreement and consistent with Labaton's position elsewhere, then the total court filing fees that Labaton would be required to pay for all 49,986 Petitions—with a filing fee of $402 for each Petition—would have been $20,094,372.

That same day, Labaton—consistent with its playbook—also sent notice of claims to Samsung notifying it that they would be proceeding with the next wave of individual arbitration demands: an ***additional*** 16,508 claims against Samsung under BIPA.  As of this writing, Labaton has threatened to pursue demands for arbitration for more than ***100,000*** individuals (while continuing to solicit more).[21]

In the Motion, Labaton inaccurately stated to this Court that the "AAA made an administrative determination that each Petitioner had met his or her filing requirements."  Mot. at 2.  The AAA had made no such determination.  In fact, five days later, on October 12, 2022, the AAA advised Petitioners that they had ***not*** met their filing requirements.  The AAA "determined

---

[21]  By October 7, 2022, Labaton had threatened to submit demands for arbitration for 86,977 purported claimants.  On November 17, 2022, Labaton sent yet another notice of claims for an additional 17,357 individual arbitration claimants against Samsung.  Thus, to date, Labaton has threatened to submit demands for arbitration for 104,334 purported claimants.

that the Consumer Arbitration Rules (Consumer Rules) and the Supplementary Rules for Multiple

Case [MC] Filings (Supplementary Rules) apply to these matters," and that pursuant to MC-2, "the

filing party shall submit a fully completed Multiple Case Filings Intake Data Spreadsheet

(Spreadsheet)." Ex. 3; *see also* Supplementary Rules, MC-2. As the AAA went on to explain:

> ***In conducting the review of the claimants' filing materials to confirm if filing requirements have been met, the AAA has found inaccurate and/or incomplete information on the Spreadsheet submitted by the claimants***. Below is an example of the inaccurate/incomplete information we have found. There are numerous additional cases with the same or similar inaccurate/incomplete information. As such, we request that the claimants review the entire Spreadsheet and update, correct or if you are unable to do so, withdraw the filing and refile the matter at such time as you can provide updated and/or accurate information for the claimant(s). ***Once we receive the revised Spreadsheet with the completed information set forth in MC-2, the AAA can complete our review to determine if the claimants have met the filing requirements***.

*Id.* (emphasis added). The AAA then provided seven representative examples of the glaring

deficiencies in Labaton's Claimant Spreadsheet that even a cursory level of pre-filing due diligence

would have discovered, such as a claimant with a listed address line as "Q" and another with a

listed address as "This Fi Dhkhj." *Id.*

### G. October 19, 2022: Labaton Misstated The Status Of The AAA Proceedings To This Court

On October 19, 2022, this Court held a telephonic hearing regarding the Motion. The Court

observed that "the parties are on opposite sides where they normally would be expected to be," in

that "[i]t would seem to me that it would be Samsung who would be seeking to require arbitration

as opposed to a class action, and it would be the claimants who would be seeking to file a class

action and avoid arbitration." Ex. 1 at 4:23-5:3. Thus, the Court asked, "Why . . . are your

positions reversed from what I would normally anticipate the parties to take?" *Id.* at 5:4-6. In

response, Melissa Nafash of Labaton acknowledged that "there is also a pending class action that

was filed against Samsung." *Id.* at 5:7-8 (*i.e.*, the *G.T.* Action). She further referenced Labaton's

attempts to leverage the AAA fees against Samsung, stating that Samsung withdrew its motion to compel arbitration in the *G.T.* Action because "***it faced having to pay extensive fees to arbitrate the claims individually*** and, of course, faced the threat of the amount of damages in this case." *Id.* at 5:12-19 (emphasis added). But despite noting the pending *G.T.* Action ***and*** that Samsung had withdrawn its motion to compel arbitration in that action, Ms. Nafash failed to acknowledge that Petitioners—in light of their counsel's decision not to pay Samsung's arbitration fees—could simply join that putative class action where the claims would be asserted on their behalf.

Ms. Nafash also stated that, for the 50,000 individual demands for arbitration that Labaton filed on September 7, 2022, "AAA determined that we had met the filing requirements and on September 16th, sent an email stating that we had met the requirements and scheduling a call to discuss the logistics for moving forward." *Id.* at 10:9-12. That statement was wrong. As discussed above, *see supra* Section F, the AAA had written to Labaton on October 12, 2022 to inform them that claimants had ***not*** met their filing requirements, and had identified various deficiencies with Labaton's claimant list. *See* Ex. 3. Labaton did not even send a response to the AAA, purporting to cure these deficiencies, until October 21, 2022—two days ***after*** Ms. Nafash represented to this Court during the hearing that the AAA had already determined that claimants had met their filing requirements.

> **H.    October 31, 2022: Weeks After Labaton Represented To This Court That The AAA Had Determined It Met The AAA's Filing Requirements, The AAA Finally Made That Determination; In Response, Samsung Reiterated That It Was Declining To Pay The Fees And It Understood That Petitioners Had Waived Their Right To Arbitrate By Choosing Not To Pay Those Fees**

On October 21, 2022, Labaton provided a revised claimant spreadsheet to the AAA. Ex. 13. On October 31, 2022, more than three weeks after Petitioners inaccurately stated to this Court that they had satisfied the AAA's filing requirements, the AAA sent a letter to the parties stating that Petitioners "have now met the AAA's administrative filing requirements . . . note, this

is the first time the AAA has made the administrative determination that the claimants' filing requirements have been met and requested filing fees from Samsung Electronics USA, Inc." Ex. 14.

Samsung responded by letter to the AAA on November 8, 2022. *See* Ex. 15. Samsung stated it had notified the AAA in its prior September 27, 2022 letter that it would not be paying the filing fees in connection with claimants' demands (except as to any demands filed by California claimants). *See id.* It noted that in that earlier letter, it had specifically "invoked the AAA Rules and procedures" and stated that "if the Claimants elect to waive arbitration by not paying (directly or through their counsel) all of the AAA filing fees pursuant to their option under AAA Supplementary Rule for Multiple Case Filings 10(d), consistent with AAA R-1(d), Samsung expects that the AAA will decline to administer and 'either party may choose to submit its dispute to the appropriate court for resolution.'" *Id.* (quoting Pet., Ex. N). In response, Labaton "expressly declined" to pay the fees. *Id.* at 2. Thus, Samsung concluded:

> [B]y affirmatively electing on behalf of each of the Claimants not to advance the filing fees, Claimants' counsel voluntarily waived each of the Claimants' arbitration rights (to the extent such rights existed). Samsung acknowledges Claimants' counsel's choice to waive arbitration, and their implied representation to the AAA that they have the authority to do so on behalf of each of the Claimants.
>
> Samsung reaffirms its position. Pursuant to the AAA Rules and procedures, Samsung respectfully declines to pay filing fees in connection with the non-California Claimants' demands for arbitration. These demands are frivolous and have been brought in arbitration for an improper purpose.

*Id.*

### I. October 14–21, 2022: In The Interim, A Firm Commenced A Second Putative BIPA Class Action Against Samsung; That Firm And Labaton Are Coordinated In The Pursuit Of Mass Arbitrations and Class Action Litigation

On October 14, 2022, a second putative BIPA class action—which asserted claims substantially similar to those asserted in the *G.T.* Action and in Petitioners' arbitration demands—

was filed against Samsung by plaintiffs represented by Lowey Dannenberg ("Lowey"). *See Jones, et al. v. Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd.*, Docket. No. 1:22-cv-05662 (N.D. Ill. Oct. 14, 2022), ECF No. 1 (the "*Jones* Action"). The *Jones* complaint—although filed by another firm, Lowey—frequently references information that was previously provided to Labaton, such as the Shin Declaration. The *Jones* complaint also expressly carves out from its putative class "any individuals that have noticed private arbitrations against Samsung relating to the claims asserted in this Action," plainly to avoid any overlap with Labaton's ongoing claims. *Id.* ¶ 42.

This apparent coordination between Labaton and Lowey is not out of the ordinary. Labaton frequently serves as co-counsel with Lowey, and the *Jones* attorneys in particular have worked with the Labaton attorneys representing Petitioners in the present action a number of times in recent years. *E.g.*, *Baker et al. v. Match Group, Inc. et al.*, No. 2022-CH-10435 (Ill. Cir. Ct. Cook Cty., Oct. 21, 2022), Class Action Complaint and Request For Jury Trial, dated October 21, 2022 ("*Baker* Compl.").[22]

Prior to commencing the *Baker* litigation, Labaton used a similar strategy to the present case in that they threatened to file waves of individual demands for arbitration against the Match Group unless the latter agreed to a substantial settlement.[23] However, when the arbitrations were

---

[22]   *See also, e.g.*, *Frasco v. Flo Health, Inc.*, No. 3:21-cv-00757 (N.D. Cal. Jan. 29, 2021); *DOE v. Meta Platforms Inc., et al.*, 3:22-cv-04293 (N.D. Cal. July 25, 2022) (until Labaton withdrew from the case on October 5, 2022). Lowey and Labaton have also served as co-counsel in at least four other putative class actions: *In re European Gov't Bonds Antitrust Litig.*, 19-cv-2601 (S.D.N.Y. Mar. 22, 2019); *Cariten Ins. Co. et al. v. Astrazeneca AB et al.*, No. 1:14-cv-13873 (D. Mass. Oct. 16, 2014); *Essex Reg'l Ret. Sys. v. Bank of Am. Corp. et al.*, No. 1:13-cv-05388 (S.D.N.Y. Aug. 1, 2013); *In re Optiver Commodities Litig.*, No. 1:08-cv-06842 (S.D.N.Y. July 30, 2008).

[23]   As in the instant action, Labaton initially reached out to that defendant asserting that they represent a large number of claimants and noting "if we cannot resolve these matters within 30

administratively closed in the *Baker* Action (at the Match Group's request), Labaton and Lowey filed a class action **together**, asserting that a party "waive[s] their right to arbitration" where the party "requests administrative closure of all arbitrations." *Id.*, ECF No. 1 at 9.

In the present action, the firms have apparently settled on a somewhat different (but nonetheless coordinated) approach: Labaton threatens—and then brings—waves of individual arbitrations against Samsung to try to extract a high-value settlement while Lowey simultaneously pursues a putative class action against Samsung.[24]

**J.     November 20, 2022: Plaintiffs In The Initial Putative BIPA Class Action Against Samsung Moved To Consolidate The Two BIPA Putative Class Actions**

On November 20, 2022, counsel for the plaintiffs in the *G.T.* action filed a motion to consolidate that case with the *Jones* action, which Samsung did not oppose.[25] On December 2, 2022, the court granted the motion and consolidated both cases for all future purposes.[26] Consequently, there is a single consolidated pending putative class action which would cover all of the claims that Petitioners have brought against Samsung in the AAA arbitrations (as well as

---

days of receipt of this letter, our clients will exercise their individual rights" and pursue arbitration. *Baker* Compl., Ex. F. When the parties did not reach settlement, Labaton proceeded to file arbitrations with JAMS. *Id.*, Exs. G, H. The defendant requested administrative closure of all cases, in part because the claimant list was deficient and included individuals who were not customers. *Id.*, Ex. F. The defendant also accused Labaton of "engaging in baseless accusations because it knows its only chance at monetary gain is to force [Match] into a Hobson's choice between paying millions in upfront JAMS fees to defend against meritless claims or to settle and pay Labaton." *Id.*, Ex. N. JAMS then administratively closed the arbitrations in order for the parties to proceed in court.

[24] It is thus the height of irony that, in correspondence with the defendants in the *Baker* Action, Labaton stated that "[t]he laudable objectives [of arbitration] may be frustrated if an arbitration provision is exploited as a tool for gamesmanship or evasion." *Baker* Compl., Ex. C.

[25] *See G.T. v. Samsung Elecs. Am., Inc.*, No. 1:21-cv-04976 (N.D. Ill. Sept. 20, 2021), ECF No. 41.

[26] *Id.*, ECF No. 44.

the thousands of additional demands for arbitration that Labaton has threatened to submit with the AAA).

**K.    November 30, 2022: The AAA Terminated The Arbitrations After Labaton Refused To Advance The Arbitration Fees For Petitioners**

On November 14, 2022, the AAA followed its Rules and procedures and notified the parties that:

> Based on the claimants' and Samsung's statements declining to pay Samsung's portion of the filing fees for the non-California cases, unless we hear otherwise prior to November 16, 2022, the AAA will close all non-California cases. R-1(d) of the Consumer Arbitration Rules (Consumer Rules), provides, "should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution."

Ex. 16 at 1. On November 15, 2022, Samsung proceeded to pay the filing fees for the demands for arbitration brought by the 14 California claimants.[27]

On November 17, 2022, Labaton sent a letter to the AAA requesting the AAA to "stay these matters until [Petitioners'] Motion to Compel has been decided." Ex. 17. On November 28, 2022, the AAA advised the parties that "the AAA will proceed with closing [Petitioners' 49,986 individual arbitration matters] and issue a refund for the filing fees paid by the claimants." Ex. 18. On November 30, 2022, the AAA confirmed that it had "administratively closed" the arbitrations and "acknowledge[d] the request from Ms. Nafash [of Labaton] for a refund on the 49,986 cases." Ex. 19.

---

[27]    Samsung has paid the filing fees associated with the demands of California residents to comply with California Code of Civil Procedure §§ 1281 *et seq.* Samsung has made these payments under a full reservation of rights and will seek to recoup them in arbitration. It has specifically reserved its arguments that the statute is preempted by the FAA.

## ARGUMENT

### I.  PETITIONERS' MOTION FAILS BECAUSE SAMSUNG HAS NOT REFUSED TO ARBITRATE

As a threshold matter, Samsung has not refused to arbitrate Petitioners' claims.  On a motion to compel arbitration, petitioners must make a threshold showing of the opposing party's refusal to arbitrate.  *Estabrook v. Piper Jaffray Cos.*, 492 F. Supp. 2d 922, 925 (N.D. Ill. 2007) (Kocoras, J.).  Petitioners' Motion, while styled as a "Motion to Compel Arbitration," is really seeking an order from the Court that interprets AAA's Rules and compels Samsung to pay the AAA's fees under those Rules—which, as explained in Section IV.D, is not a permissible remedy.

Petitioners acknowledge that on September 27, 2022, Samsung explained to the AAA that while it was electing its option not to pay filing fees, it would "participate and defend itself vigorously" should Petitioners choose not to waive arbitration.  *See* Pet., Ex. N at 3.  As concluded by the AAA, that position is fully consistent with the process envisioned by AAA's Supplementary Rules, which provide that if the AAA's fees have not been paid in full, "one party may advance the required payment within the time specified by the AAA."  *See* Supplementary Rules, MC-10(d).  Moreover, by doing so, Petitioners had the opportunity, under AAA's Consumer Rule R-44(d) and MC-10(d), to fully recover any fees advanced by themselves or their counsel, if they succeeded on the merits.  *See* Supplementary Rules, MC-10(d); AAA Rules at 29 ("In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-4, R-5, and R-7 in favor of any party.").

Petitioners (or their counsel) could have ensured that arbitration with Samsung proceeded by following AAA's Rules and electing to advance fees and then seek recovery at the conclusion of the arbitrations.  But they "declin[ed] the invitation to pay" pursuant to MC-10(d).  Mot. at 6.

The AAA thereafter followed its Rules and closed the cases so the parties could proceed to have the claims resolved in Court. *See* Ex. 16 at 1; Ex. 19.

Petitioners' failure to establish any refusal by Samsung to arbitrate itself is sufficient to require denial of the Motion. Indeed, where parties have disputed certain aspects of the arbitration process but have not refused to arbitrate entirely, courts have denied motions to compel. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. King*, 812 F. Supp. 1217, 1218 (M.D. Fla.), *aff'd sub nom. Merrill Lynch, Pierce v. King*, 3 F.3d 443 (11th Cir. 1993); *Scan-Graphics, Inc. v. Photomatrix Corp*., 1992 WL 2231, at *2 (E.D. Pa. Jan. 2, 1992).

## II.    PETITIONERS HAVE WAIVED THEIR RIGHT TO ARBITRATE BY DECLINING THE OPPORTUNITY TO ADVANCE ARBITRATION FEES (THROUGH THEIR COUNSEL) AND ASKING THAT THEIR CASES BE CLOSED

To compel arbitration, Petitioners must show "a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Estabrook*, 492 F. Supp. 2d at 925 (quoting *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005)). As Labaton has stated in other actions, "arbitration clauses are only forum selection provisions and a party can waive an agreement about who decides a dispute." *See In re Puerto Rican Cabotage Antitrust Litig. MDL 1960*, No. 3:08-md-01960, Dkt. 616 at 2 (D.P.R. Aug 13, 2008) (arguing defendant's "active participation in litigating this case . . . clearly support[s] a finding of waiver. Such conduct is not consistent with an agreement to arbitrate."). "The question of whether a party has waived its right to invoke an arbitration clause is one for the court to decide." *Id*. at 10. "[W]aiver can be explicit or inferred." *Thomas D. Philipsborn Irrevocable Ins. Tr. v. Avon Cap., LLC*, No. 11-cv-3274, 2012 WL 4513903, at *5 (N.D. Ill. Oct. 1, 2012) (Leinenweber, J.) (cited in Mot. at 13-14).

The cases cited by Petitioners themselves recognize that a party waives its right to compel

arbitration when its conduct is "manifestly inconsistent with an intention to arbitrate." *See Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 500 (7th Cir. 2018) (cited in Mot. at 14); *see also Thomas D. Philipsborn Irrevocable Ins. Tr.*, 2012 WL 4513903, at *5 ("Waiver is inferred if, under the totality of the circumstances, the party acted fundamentally inconsistently with its right to arbitrate.").

Here, in the face of Labaton's abuse of the AAA arbitration process and fee schedule to try to coerce a settlement wholly removed from the viability of Petitioners' claims, Samsung declined to pay, consistent with the AAA procedures that expressly contemplate that a party may decline to pay arbitration fees. In such circumstances, the other party (or its counsel) has the choice to pay those fees and seek to recoup them in the arbitration, or it may waive its right to arbitrate and proceed in court. Labaton, ostensibly on behalf of Petitioners, chose the latter option. *See supra* Section E.

Petitioners' Motion misleadingly suggests to this Court that the arbitrations may proceed only if Samsung pays the filing fees. *See, e.g.*, Mot. at 15 (claiming arbitrations "cannot happen until Samsung pays its share of the filing fees so arbitrators can be assigned to the cases"). But that is incorrect. As set forth above, the AAA expressly recognizes that parties may choose not to pay arbitration fees and has a specific protocol in place in such circumstances: the other party or its counsel may advance the fees and seek to recoup them in the arbitration (unless the claims are ultimately deemed "frivolous" or "brought for an improper purpose"), or the other party may waive their right to arbitration and proceed with their underlying claims in court (*i.e.*, "waive [their] agreement about who decides a dispute" as Labaton would put it). *See supra* Section A.

Here, Labaton, purportedly on behalf of 50,000 individual claimants, rejected the option of advancing the fees and instead sought to proceed in court. Labaton also explicitly asked the AAA

to terminate the arbitrations. *See* Pet., Ex. O.[28]  These actions amount to a waiver of Petitioners'

right to arbitrate.  Courts have held that a party's refusal to proceed with arbitration by declining

to advance the opposing party's unpaid fee is "inconsistent[] with the right to arbitrate." *Cota v.*

*Art Brand Studios, LLC*, No. 21-CV-1519, 2021 WL 4864588, at *10 (S.D.N.Y. Oct. 15, 2021).

In *Cota*, the respondents in an AAA arbitration declined to pay their arbitration fees, and the

claimant refused to advance those fees. *Id*. at *6.  The arbitration panel notified the parties that if

neither paid, AAA would close the case, and it ultimately did so. *Id*.  When the claimant attempted

to compel arbitration, the court found that it had waived its right to arbitrate: the claimant "had a

choice—it could pay both fees if it wanted to prosecute the claims . . . or it could elect not to pay

either set of fees and allow the arbitration . . . to terminate." *Id*. at *9.  Having chosen the latter

course, the claimant had "taken action that it knew would result in the termination of the

arbitration," thereby acting "inconsistently with its arbitration right." *Id*.; *see also Dealer Comput.*

*Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 888 (5th Cir. 2009) (reversing order granting

motion to compel AAA arbitration where party refused to advance the opposing party's fees and

remarking that appellant "stated multiple times in briefs and oral argument that it is willing to go

forward with the arbitration" if appellee advanced the fees); *Billie v. Coverall N. Am.*, No. 3:19-

CV-00092, 2022 WL 807075 (D. Conn. Mar. 16, 2022) ("if a party seeks to compel arbitration,

then refuses an opportunity to advance costs to ensure that the arbitration takes place, it acts

inconsistently with its contractual arbitration right").[29]

---

[28]  Indeed, in the recently filed *Baker* Complaint against Match, Labaton and their co-counsel
Lowey assert that a party "waives their right to arbitration" where the party (like Petitioners here)
"requests administrative closure of all arbitrations." *Baker* Compl. at p. 9.

[29]  While the issue typically arises when one party claims an inability to pay, the principle
applies regardless of the reason for nonpayment.  In fact, the AAA Supplementary Rules directly
address situations like this when thousands of claims are amassed and pursued at one time.  If a

Labaton's September 28, 2022 letter requesting that the AAA close their arbitrations evidences their understanding that the proper course of action, if they do not want to advance the arbitration fees, is to proceed with a putative class action in federal court. Indeed, Labaton has repeatedly asserted in other cases its belief that a class action is the superior method of vindicating alleged violations of BIPA, even where the claims at issue may have been subject to an arbitration agreement. *See, e.g.*, *Pezen v. Facebook, Inc.*, 1:15-cv-03484, 2015 WL 1812904 (N.D. Ill. Apr. 21, 2015) (Labaton asserting in case alleging BIPA violations that "[a] class action is superior to all other available methods for the fair and efficient adjudication of this controversy"); *Licata v. Facebook, Inc.*, 3:15-cv-03747, 2015 WL 13691679 (N.D. Ill. Aug. 28, 2015) (same); *Adams v. Amazon.com, Inc.*, No. 1:21-cv-05858 (N.D. Ill. Nov. 2, 2021) (same). Here, there is a consolidated class action pending in federal court that subsumes the claims at issue. *See supra* Section J.

### III. THE COURT DOES NOT HAVE THE AUTHORITY TO REWRITE THE AAA'S RULES, OR TO CONTROL THE CONDUCT OF AN ARBITRATION, AND CANNOT ORDER THE PARTIES TO AN ARBITRATION TO PAY ARBITRATION FEES

It is well settled that courts do not have any special authority under the FAA to order a party to pay arbitration fees. A court's role on a motion to compel arbitration is limited to determining whether a binding arbitration agreement exists and whether the dispute falls within the scope of the arbitration agreement. *See Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs., Inc.*, 623 F.3d 476, 480 (7th Cir. 2010) ("[w]hether or not [a] [party] [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court on the basis of the

---

respondent elects not to pay the fees associated with such filings, the filing parties or their counsel is given the option to advance the fees or proceed in court. Here, Labaton made its election under the Supplementary Rules not to advance the fees and Petitioners may now proceed to have their claims resolved in court.

contract entered into by the parties") (quoting *John Wiley & Sons v. Livingston*, 376 U.S. 543, 547 (1964)).

Further, courts are clear that procedural questions relating to an arbitral proceeding are to be decided by the arbitration administrator or arbitrator, not a judge, absent an agreement to the contrary. *See, e.g.*, *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("'[P]rocedural' questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge.") (quotation marks omitted); *Lumbermens*, 623 F.3d at 481 ("procedural question about a condition precedent to arbitration . . . is for the arbitrator to address"). And courts have consistently held that "the payment of arbitration fees . . . is a procedural condition precedent to be decided by the arbitrator." *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1255 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535 (9th Cir. 2020); *see also Union Cent. Life Ins. Co. v. Andraos*, No. 1:09-CV-758, 2011 WL 6091771, at \*5 (S.D. Ohio Oct. 21, 2011), *report and recommendation adopted*, No. C-1-09-758, 2011 WL 6100275 (S.D. Ohio Dec. 7, 2011).

The Arbitration Agreement specifies that the AAA Rules apply, and the AAA Rules do not mandate the payment of fees by any party. Courts are not empowered to rewrite those procedural rules. *See Margalioth v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 695 F. Supp. 756, 757 (S.D.N.Y. 1988) (holding that because plaintiff elected to arbitrate before the National Association of Securities Dealers (NASD), plaintiff must abide by the NASD rules, but "[p]laintiff cannot . . . refuse to comply with these rules or *ask a court to rewrite them merely because they do not suit his interests*") (emphasis added); *cf. Mosley v. City of Chicago*, 252 F.R.D. 445, 449 (N.D. Ill. 2008) (Cole, Mag. J.) ("Courts are not at liberty to rewrite statutes and rules that plainly and

unambiguously prescribe duties, obligations and procedures.").[30]  Accordingly, under similar circumstances, courts have repeatedly held that they do not have the authority to order a party to pay arbitration fees.  *See McClenon v. Postmates Inc.*, 473 F. Supp. 3d 803, 812 (N.D. Ill. 2020) (Rowland, J.) (declining "to grant the Petitioners' request that the Court order Postmates to . . . pay all arbitration filing fees and arbitration retainers necessary to proceed with Petitioners' demands for arbitration" because "'the payment of arbitration fees, including related expenses, is a procedural condition precedent to be decided by the arbitrator'") (citation omitted); *Adams*, 414 F. Supp. at 1255-56 (noting that the AAA Rules "include provisions regarding the payment of arbitration fees . . . as well as the available remedies for non-payment" and "declin[ing] to enter an order compelling Postmates to pay outstanding and future arbitration fees"); *Dealer Comput.*, 588 F.3d at 887 ("Payment of fees is a procedural condition precedent that the trial court should not review . . . . The arbitrators are within their discretion to ask one or the other party to pay the entire fee, and tax the fee as part of the award, or, alternatively, suspend the arbitration."); *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012-13 (9th Cir. 2004) (FAA "limits the court's discretion . . . the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue" and, as a result, "the district court erred in holding that [respondent] must pay its pro rata share of the arbitration fees"); *Union Cent.*, 2011 WL 6091771, at *5 ("The payment of arbitration fees is a condition precedent to arbitration, similar to the required submission of documents and abiding by

---

[30]  Likewise, the court should decline Petitioners' attempt to have this Court rewrite the Arbitration Agreement that incorporates the AAA Rules.  It well established that "courts cannot rewrite the contracts which [the parties] made."  *Brekken v. Reader's Digest Special Prods., Inc.*, 353 F.2d 505, 506 (7th Cir. 1965); *see also In re Marriage of Belk*, 605 N.E.2d 86, 90 (Ill. App. 1992) ("Courts cannot rewrite contracts to suit either party but must enforce the contract terms as written.").

time limits, which are considered procedural issues to be decided by an arbitrator."). Many of these precedents are ones Petitioners themselves cite. *See Adams*, *supra* (cited in Pet. at 5; Mot. at 12-13); *McClenon*, *supra* (cited in Mot. at 12).

Each of the different Arbitration Agreement versions further confirms—and Petitioners agree—that "[t]he arbitrator shall decide all issues of interpretation and application of this Agreement." Pet., Exs. B-E; Mot. at 15. And the Arbitration Agreement provides that "[t]he arbitration shall be conducted according to the American Arbitration Association (AAA) Commercial Arbitration Rules applicable to consumer disputes." The AAA has already interpreted this language as providing that the AAA Rules and the Supplementary Rules apply to the underlying arbitrations. *See* Ex. 3. The AAA Rules confirm that the AAA—not the Court—has the authority to address the non-payment of arbitration administrative fees. And, in light of this, the AAA has developed a specific protocol: the other party (or its counsel) may advance the fees and seek to recoup them in the arbitration, or they may waive their right to arbitration and proceed with their underlying claims in court. Samsung, in declining to pay the fees, expressly invoked this process and explained that claimants (or their counsel, Labaton) could pay the fees and seek to recoup Samsung's share at a later date, or instead elect to proceed in court. *See* Pet., Ex. N.

Petitioners also repeatedly acknowledge in their Motion that the arbitrator, not a court, governs the conduct of the arbitration:

- "If the parties dispute the enforceability of the arbitration provision or how that provision should be applied, that dispute must itself be decided by an arbitrator." Mot. at 4.

- "[T]he court need only determine that the parties have entered into a valid arbitration agreement . . . . Any other issues are for the arbitrator to resolve." *Id.* at 9.

- "[W]here the company objects to the arbitrator's administration decisions or complains that the arbitration demands are not properly filed[,]" "these issues are clearly delegated to individual arbitrators[.])" *Id.* at 12.

- "Courts agree that if a valid arbitration agreement with a delegation clause exists, matters involving the interpretation or applicability of the agreement, including the payment of arbitration fees, are a matter for arbitrators, not courts." *Id.* at 15.

Indeed, as Petitioners emphasize, "this Court's role is extremely limited." *Id*. at 7.

In sum, Petitioners have provided no legal authority in support of their contention that Samsung can be ordered to pay arbitration fees associated with their demands for arbitration. Petitioners, by failing to cite any legal authorities supporting this argument, should also be deemed to have waived or forfeited the argument. *E.g.*, *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived[.]"); *Croasmun v. Adtalem Glob. Educ., Inc.*, No. 20 C 1411, 2020 WL 7027726, at *4 (N.D. Ill. Nov. 30, 2020) ("Adtalem cites no authority or cogent argument for its position[;] . . . the argument is forfeited."). Regardless, all of the relevant authority *(including Petitioners' authorities)* holds that the Court cannot order Samsung to pay arbitration fees.

## IV. PETITIONERS ARE NOT ENTITLED TO ANY EQUITABLE RELIEF BECAUSE THEY HAVE AN ADEQUATE REMEDY AT LAW, NAMELY, ADVANCING THE UNPAID FEES OR JOINING THE PUTATIVE BIPA CLASS ACTIONS

The Motion seeks an equitable remedy—compelling Samsung to pay arbitration fees. But as shown above, the Court cannot order Samsung to pay arbitration fees because Petitioners' requested equitable relief of specific performance is an issue for the arbitrator to decide, not the Court. Nor can Labaton seek an order compelling AAA to reopen cases it has already closed. *E.g.*, *Steffanie A. v. Gold Club Tampa, Inc.*, 2020 WL 4201948, at *4 (M.D. Fla. July 22, 2020) (noting absence of "any legal authority supporting the proposition that a district court can force an independent arbitration organization such as the AAA to ignore its own rules and re-open a case that it has previously closed"). An independent reason Petitioners are not entitled to the equitable remedy of forcing Samsung to pay arbitration fees is that they have an adequate remedy at law. "It is well settled that the availability of an adequate remedy at law renders injunctive relief

inappropriate." *United States v. Rural Elec. Convenience Coop. Co.*, 922 F.2d 429, 432 (7th Cir. 1991); *see also Unilectric, Inc. v. Holwin Corp.*, 243 F.2d 393, 396 (7th Cir. 1957) (finding a party was not entitled to an order forcing the opposing party to pay royalties because subsequent recovery of those royalties was an adequate remedy at law); *King Mechanism & Eng'g Co. v. W. Wheeled Scraper Co.*, 59 F.2d 546, 548 (7th Cir. 1932) (holding that "specific performance of a contract" will be accorded "in no instance where there is an adequate remedy at law").

Petitioners are not entitled to the equitable remedy of forcing Samsung to pay arbitration fees because they have an entirely adequate remedy: under the AAA Rules, they can pay those AAA fees and later seek reimbursement unless the claims are deemed frivolous or brought for an improper purpose.[31]  Indeed, if Petitioners (or their counsel) had paid Samsung's fees for the now-closed arbitrations, nothing prevented Petitioners from asserting claims against Samsung seeking reimbursement of the fees at issue.  *Cf. Uber Techs., Inc. v. Am. Arb. Ass'n, Inc.*, 204 A.D.3d 506, 509–10 (N.Y. Ct. App., 1st Dep't 2022) (denying motion to enjoin the AAA from invoicing Uber its filing fees, stating, "Uber may not seek a declaratory judgment when other remedies are available for all four Uber's claims. . . . Uber has asserted counterclaims against its arbitration counterparties seeking reimbursement of the fees at issue, thus cutting against its claim of irreparable harm."); *Cota*, 2021 WL 4864588, at *10 (rejecting defendant's argument it "should not be required to pay fees that the other side was obligated to pay as a condition of continuing the arbitration" and declining to compel plaintiff to submit to arbitration or pay fees).  Nor can Petitioners argue that proceeding in court instead of arbitration is an inadequate remedy, because

---

[31]  *See* AAA Rules R-44(c) ("The arbitrator may also allocate compensation, expenses as defined in sections (v) and (vii) of the Costs of Arbitration section, and administrative fees (which include Filing and Hearing Fees) to any party upon the arbitrator's determination that the party's claim or counterclaim was filed for purposes of harassment or is patently frivolous.").  Samsung's Arbitration Agreement also contemplates such an award.  *See* Pet., Ex. B at 11.

they can obtain the same relief through litigation that they would be able to seek in arbitration. *Sjogren v. Maybrooks, Inc*., 214 Ill. App. 3d 888, 892 (1991) (rejecting request for equitable relief because subject of contract on which plaintiff sought specific performance was not "unique" and plaintiff "therefore had an adequate remedy at law for damages").

Petitioners do not cite a single decision in which a court, facing a party's failure to pay required arbitration fees, ordered specific performance rather than finding that the right to compel arbitration had been waived as to the Petitioners' claims.

Alternatively, the claims asserted in Petitioners' demands for arbitration are encompassed by an already pending putative class action that would assert these claims on their behalf. *See supra* Section J.

## V.      THE PETITION SHOULD NOT BE GRANTED AS IT IS REPLETE WITH PROCEDURAL DEFICIENCIES

As set forth in Respondents' Motion to Dismiss the Petition, filed concurrently,[32] the Petition is also replete with procedural deficiencies that bar the requested relief in this Court: Petitioners (i) have not sufficiently pled that venue lies in this Court as to each Petitioner, (ii) have not sufficiently pled that each of them is a party to the Arbitration Agreement, and (iii) cannot bring this Petition collectively under the plain terms of the Arbitration Agreement on which they purport to rely. Each of those is an independent ground on which this Court can and should also deny Petitioner's Motion.[33]

---

[32]    To avoid unnecessary duplication of argument, Samsung respectfully requests that the argument submitted on that Motion on these points be deemed incorporated by reference here.

[33]    To the extent the Court is inclined to entertain Petitioners' Motion to Compel Arbitration, Samsung encourages the Court to require strict proof that each Petitioner is, in fact, aware of and authorized the filing of the Petition and Motion on their behalf prior to the date of filing. In addition, Samsung would be entitled to strict proof that each Petitioner has an arbitration agreement with Samsung. *See, e.g.*, *Wembi v. Gibson's Rest. Grp. Mgmt. Co.*, No. 21 C 586, 2021

## CONCLUSION

For the foregoing reasons, Petitioners' Motion should be denied.

Dated: December 5, 2022

Respectfully submitted,

*/s/ Randall W. Edwards*

Mark Howard Boyle
DONOHUE BROWN MATHEWSON &
   SMYTH LLC
131 South Dearborn Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 422-0900

Randall W. Edwards (ND IL general bar)
Matthew D. Powers (*pro hac vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone: (415) 984-8700

James L. Kopecky
KOPECKY SCHUMACHER
   ROSENBURG LLC
120 North LaSalle Street, Suite 2000
Chicago, Illinois 60601
Telephone: (312) 380-6552

Michael W. McTigue Jr. (*pro hac vice*)
Meredith C. Slawe (*pro hac vice*)
Kurt Wm. Hemr (*pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000

*Attorneys for Respondents*
*Samsung Electronics America, Inc. and*
*Samsung Electronics Co., Ltd.*

---

WL 2272399 (N.D. Ill. May 13, 2021) (Lefkow, J.) (continuing motion to compel arbitration "pending an evidentiary hearing" and allowing parties to "conduct limited discovery on the existence of an [arbitration] agreement"); *Rodriguez v. Mastronardi Produce-USA, Inc.*, No. 1:20-CV-01702, 2021 WL 2634403, at *2 (M.D. Pa. June 25, 2021) (granting "parties thirty days to conduct limited discovery on the issue of whether [plaintiff's] claims are governed by a valid arbitration agreement"); *Sanders v. Allenbrooke Nursing & Rehab. Ctr., LLC*, No. 2:20- CV-02001, 2020 WL 5576696, at *10 (W.D. Tenn. Sept. 17, 2020) ("When there are genuine disputes of material fact about whether a valid arbitration agreement exists, courts sometimes allow limited discovery on those issues.").

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 5th day of December, 2022, he caused the foregoing Respondents' Memorandum In Opposition To Petitioners' Motion To Compel Arbitration to be filed with the Clerk of the District Court via the CM/ECF system, which will send notification of such filing to all counsel of record at the email addresses on file with the Court.

 Dated: December 5, 2022

*/s/ Randall W. Edwards*
Randall W. Edwards
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone: (415) 984-8700

*Attorney for Respondents*
*Samsung Electronics America, Inc. and*
*Samsung Electronics Co., Ltd.*
