## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **PAULA WALLRICH, DANIELLE JONES, GRANT GRINNELL, JEFFREY BURTON, RHONDA MCCALLUM, PROVIDENCIA VILLEGAS, AND 49,986 OTHER INDIVIDUALS[1]**, <br> *Petitioners,* <br><br> *v.* <br><br> **SAMSUNG ELECTRONICS AMERICA, INC.**; and **SAMSUNG ELECTRONICS CO., LTD.** (d/b/a Samsung Electronics America, Inc.), <br> *Respondents.* | Civil Action No. 1:22-cv-05506 <br><br> Hon. Harry D. Leinenweber |

## <u>PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION TO DISMISS PETITION TO COMPEL ARBITRATION</u>

**LABATON SUCHAROW LLP**
Jonathan Gardner
Melissa H. Nafash
Jonathan Waisnor
Shannon K. Tully
140 Broadway
New York, NY 10005
Tel: (212) 907-0700

**WALLACE MILLER**
Mark R. Miller
150 N. Wacker Drive, Suite 1100
Chicago, IL 60606
Tel: (312) 261-6193
Fax: (312) 275-8174

Dated: January 19, 2023

*Attorneys for Petitioners*

---

[1] Annexed hereto as Exhibit A is a true and correct copy of the 49,986 Individual Petitioners.

**TABLE OF CONTENTS**

I.    FACTUAL BACKGROUND…………………………………………………… 1

    A.    Samsung Requires Users to Sign an Agreement Containing a Broad Arbitration Clause Selecting AAA as the Arbitration Forum ……………... 1

    B.    AAA Confirmed a Valid Arbitration Agreement Between the Parties Exists …………………………………………………………………… 2

    C.    Samsung Failure Pay Its Filing Fees Blocked the Arbitrations ……………. 3

    D.    Samsung has Repeatedly Relied on its Mutual Arbitration Provision ………. 3

    E.    Samsung Moved to Compel Arbitration in a Putative BIPA Class Action Pending Before this Court …………………………………………………… 4

II.    ARGUMENTS …………………………………………………………………. 5

    A.    This Court Should Grant Petitioners' Motion to Compel Because a Valid Arbitration Agreement Exists and Encompasses the Parties' Dispute …………………………………………………………………… 5

        1.    The Parties Agreed to Arbitrate ……………………………………. 7

        2.    The Claims Fall within the Scope of Samsung's Arbitration Agreement …………………………………………………………… 10

    B.    This Court Has the Authority to Order Samsung to Arbitrate in the Manner Provided for in the Mutual Arbitration Agreement and Pay Its Required Arbitration Fees …………………………………………………………… 11

        1.    Samsung Refused to Arbitrate ……………………………………... 14

        2.    This Court Has the Authority to Order Samsung to Arbitrate and Pay the Arbitration Fees ………………………………………… 17

    C.    Petitioners Did Not Waive Their Right to Arbitration ……………………... 19

    D.    Respondent's Motion Under Rule 12(b)(1) and (3) for Improper Venue and Lack of Subject Matter Jurisdiction Fails …………………………... 21

        1.    The Court Has Subject Matter Jurisdiction Over the Petition ………. 22

        2.    Each Petitioners' Damages Exceeds the Jurisdictional Amount ……. 24

        3.    The Cost of the Requested Equitable Relief from Samsung Far Exceeds the Jurisdictional Minimum Amount……………………... 26

4.    Venue is Proper in This District ……………………………………    28

5.    Venue is Proper Under the General Venue Statute ………………...    29

    i.    *Venue is Proper as a Substantial Part of the Events Giving Rise to Petitioners' Claim Occurred in This District* …………………………………………..............    30

    ii.    *Samsung is Subject to the Court's Personal Jurisdiction to Each Individual Petitioner's Claim* ............................    32

E.    Samsung's Mutual Arbitration Agreement Delegates Disputes to Individual Arbitrators …………………………………………………    33

III.    CONCLUSION ……………………………………………………………    34

# **TABLE OF AUTHORITIES**

**Cases**

*Abernathy v. DoorDash, Inc.,* 438 F. Supp. 3d 1062 (N.D. Cal. 2020)................................. 17, 21

*Acaley v. Vimeo, Inc.*, 464 F. Supp. 3d 959 (N.D. Ill. 2020) ........................................ 11

*Adams v. Postmates, Inc*, 414 F. Supp. 3d 1246 (N.D. Cal. 2019)............................... 21

*Allemeier v. Zyppah, Inc.,* No. CV 18-7437 PA (AGRx), 2018 WL 6038340 (C.D. Cal. Sept. 21, 2018) ................................................................................................ 17, 18, 22, 24

*Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870 (N.D. Ill. 2015).................. 33

*Back Doctors Ltd. V. Metro. Prop. & Cas. Ins. Co*., 637 F.3d 827 (7th Cir. 2011) ..................... 27

*Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091 (N.D. Ill. 2015) ........................................ 10

*Beauperthuy v. 24 Hour Fitness USA, Inc.,* No. 06-715 SC, 2011 WL 6014438 (N.D. Cal. Dec. 2, 2011) ................................................................................................ 18

*BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548 (7th Cir. 2002)............................................ 26

*Beture v. Samsung Elecs. Am., Inc.*, No. CV 17-5757 (SRC), 2018 WL 4621586 (D.N.J. July 18, 2018) ................................................................................................ 12

*Billie v. Coverall N. Am.*, 594 F. Supp. 3d 479 (D. Conn. 2022) ................................................. 24

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773 (2017) .................................. 36

*Brito v. Urbino*, 2018 WL 3672743 (N.D. Ill. 2018)...................................................................... 34

*Brown v. Dillard*'s, Inc., 430 F.3d 1004 (9th Cir. 2005) ............................................................... 19

*Brunner v. Lyft, Inc*., No. 19-cv-04808-VC, 2019 WL 6001945 (N.D. Cal. Nov. 14, 2019)....... 23

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)................................................................. 36

*CK Witco Corp. v.  Paper Allied Indus*., 272 F.3d 419 (7th Cir.  2001) ...................................... 14

*Cont''l Cas. Co. v. Am. Nat'l Ins. Co.,* 417 F.3d 727 (7th Cir. 2005)........................................... 26

*Cota v. Art Brand Studios, LLC*, 21-cv-1519 (LJL), 2021 WL 4864588 (S.D.N.Y. Oct. 15, 2021) ................................................................................................ 25

*Cothron v. White Castle Sys., Inc*., 20 F.4th 1156 (7th Cir. 2021) .............................................. 29

*Croasmun v. Adtalem Glob. Educ., Inc.*, 20 C 1411, 2020 WL 7027726 (N.D. Ill. Nov. 30, 2020) ...................................................................................................................... 16, 18, 21

*Davis v. Fenton*, 26 F. Supp. 3d 727 (N.D. Ill. 2014) ............................................................ 22, 24

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) ............................................................ 16

*Dickinson v. Heinold Secs., Inc.*, 661 F.2d 638 (7th Cir. 1981) ................................................... 23

*Ernst & Young LLP v. Baker O'neal Holdings, Inc.*, 304 F.3d 753 (7th Cir. 2002) ................... 23

*Faulkenberg v. CB Tax Fran. Sys., LP*, 637 F.3d 801 (7th Cir. 2011) ..................................... 25, 32

*Felland v. Clifton*, 682 F.3d 665 (7th Cir. 2012) ........................................................................ 36

*Fischer v. Instant Checkmate LLC*, No. 19 C 4892, 2021 WL 3033586 (N.D. Ill. July 19, 2021) ...................................................................................................................................... 11

*Folse v. Richard Wolf Med. Instruments Corp.*, 56 F.3d 603 (5th Cir. 1995) ............................. 23

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021) ................................ 37

*Ford-Reyes v. Progressive Funeral Home,* 418 F. Supp. 3d 28 (N.D. Ill. 2019) .................. 33, 34

*G.T. v. Samsung Elecs. Am., Inc.*, 1:21-cv-04976 (N.D. Ill. Oct. 29, 2021) .................. 8, 9, 16, 35

*Garcia v. Mason Cont. Prods., LLC*, No. 08–23103–CIV, 2010 WL 3259922 (S.D.Fla. Aug. 18, 2010) ................................................................................................................................... 19

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ..................................................... 9

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ................................... 36

*Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476 (5th Cir. 2002) ................... 23

*Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F. 3d 705 (7th Cir. 2019) ............................ 10

*Halloran v. Davis*, No. 2:12–cv–01011–CBM (CWx), 2013 WL 12153551 (C.D. Cal. Aug. 15, 2013) ................................................................................................................................... 17

*Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1258 (7th Cir.1992) .............................. 34

*Henry* Schein Inc., *v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019) ............................. 11, 38

*Hoenig v. Karl Knauz Motors, Inc.*, 983 F. Supp. 2d 952 (N.D. Ill. 2013) ................................. 24

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ................................................. 10, 16

*HTG Cap. Partners, LLC v. Doe*, No. 15 C 02129, 2016 WL 612861 (N.D. Ill. Feb. 16, 2016) 26

*Illinois v. Hemi Grp. LLC*, 622 F.3d 754 (7th Cir. 2010) ............................................................ 36

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285 (N.D. Cal. 2018) ........................................................................................................................... 12, 16

*Intuit Inc. v. 9,933 Individuals*, B308417, 2021 WL 3204816 (Cal. Ct. App. July 29, 2021)...... 21

*Janiga v. Questar Cap. Corp.*, 615 F.3d 735 (7th Cir. 2010) ........................................................ 9

*Jones v. Gen. Motors Corp.*, 640 F. Supp. 2d 1124 (D. Ariz. 2009) ............................................ 18

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907 (7th Cir. 1999) ...................... 14, 15

*Kincaid v. Menard, Inc.*, No. 13-cv-7279, 2014 WL 1715503 (N.D. Ill. Apr. 30, 2014)............. 27

*Lambert v. Hughes Network Sys., LLC*, No. 10-CV-0571, 2010 WL 3034212 (N.D. Ill. Aug. 2, 2010) ...................................................................................................................... 27, 28, 30

*Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407 (2019) ....................................................................... 9

*Mastrobouno v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) ........................................... 14

*McNamara v. Samsung Telecomms. Am., LLC*, No. 14 C 1676, 2014 WL 5543955 (N.D. Ill. Nov. 3, 2014) .......................................................................................................... 12, 16

*Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135 (2006) ............................................................. 10

*Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536 (7th Cir. 2006)............................................... 27

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323 (7th Cir. 1995) ................... 35

*Miller v. Sw. Airlines Co.*, No. 18 C 86, 2018 WL 4030590 (N.D.Ill. Aug. 23, 2018) ............... 26

*Miracle-Pond v. Shutterfly, Inc.*, No. 19-cv-0472, 2020 WL 2513099 (N.D. Ill. May 15, 2020) 11

*Modern Space Design & Decoration (Shanghai) Co., Ltd. v. Lynch*, No. 13 C 4329, 2014 WL 4897322 (N.D. Ill. Sept. 29, 2014) ...................................................................................... 22

*Morgan v. Sundance, Inc.*, 142 S.Ct. 1708 (2022)......................................................................... 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)......................... 10, 14

*Nadeau v. Equity Residential Props. Mgmt. Co.*, 251 F. Supp. 3d 637 (S.D.N.Y. 2017) ............ 19

*Nagel v. ADM Inv. Servs., Inc.*, 995 F.Supp. 837 (N.D.Ill. 1998) ................................................ 25

*Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942 (N.D. Ill. 2017) .................................................... 34

*Postmates Inc. v. 10,356 Individuals*, No. CV 20-2783 PSG (JEMx), 2020 WL 1908302 (C.D. Cal. Apr. 15, 2020) ................................................................................................................ 21

*Rapaport v. Soffer*, No. 2:10–cv–00935–KJD–RJJ, 2011 WL 1827147 (D. Nev. May 12, 2011) ......................................................................................................................................... 19, 24

*Receivership Mgmt., Inc. v. AEU Holdings, LLC*, No. 18 C 8167, 2019 WL 4189466 (N.D. Ill.Sept. 4, 2019)................................................................................................................. 33

*Rent–A–Center W., Inc. v. Jackson*, 561 U.S. 63 (2010) .............................................................. 38

*Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813 (7th Cir. 2006).............................................. 27

*Roderick v. Mazzetti & Assocs., Inc.*, No. C 04–2436 MHP, 2004 WL 2554453 (N.D. Cal. Nov. 9, 2004) ..................................................................................................................................... 23

*S. Ill. Beverage, Inc. v. Hansen Beverage Co.*, 07-CV-391-DRH, 2007 WL 3046273, at *8 (S.D. Ill. Oct. 15, 2007) .......................................................................................................... 34

*Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747 (N.D. Ill. 2015)............................................ 22

*Schmidt v. Samsung Elecs. Am., Inc.*, No. C16-1725-JCC, 2017 U.S. Dist. LEXIS 80768 (W.D. Wash. May 25, 2017)............................................................................................... 8, 16

*Schmidt v. Samsung Elecs. Am., Inc.*, No. C16-1725-JCC, 2017 WL 2289035 (W.D. Wash. May 25, 2017) ............................................................................................................................ 12

*Sgouros v. TransUnion Corp.*, 817 F.3d 1029 (7th Cir. 2016) ...................................................... 11

*Shearson v. McMahon*, 482 U.S. 220 (1987)................................................................................. 10

*Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987) ............................................ 9

*Sherman v. AT&T, Inc.*, No. 11 C 5857, 2012 WL 1021823 (N.D. Ill. Mar. 26, 2012)................ 11

*Sink v. Aden Enters., Inc.*, 352 F.3d 1197 (9th Cir. 2003) ....................................................... 19, 22

*Smith v. Sprint Communications Co., L.P.*, 2003 WL 164230 (N.D. Ill. Jan. 23, 2003)............... 31

*Southland, Corp. v. Keating,* 465 U.S. 1 (1984) ........................................................................... 21

*Taylor v. Samsung Elecs. Am., Inc.*, 19 C 4526, 2020 WL 1248655 (N.D. Ill. Mar. 16, 2020).. 12, 16

*Tillman v. Tillman*, 825 F.3d 1069 (9th Cir. 2016)....................................................................... 21

*Tinder v. Pinkerton Sec.*, 305 F.3d 728 (7th Cir. 2002)................................................................ 13

*Treiber & Straub, Inc. v. UPS*, 474 F.3d 379 (7th Cir. 2007) ...................................................... 11

*Trio v. Turing Video, Inc.*, 1:21-CV-04409, 2022 WL 4466050 (N.D. Ill. Sept. 26, 2022) ......... 36

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978 (7th Cir. 2002) ...................... 26, 31

*Vasadi v. Samsung Electronics Am., Inc.,* 2:21-cv-10238 (D.N.J. July 12, 2021) .................. 8, 16

*Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. 16-cv-1953 DMG (KKX), 2020 WL 6528422 (C.D. Cal. Oct. 20, 2020) ........................................................................................ 8, 16

*Volkswagen of Am., Inc. v. Sud's Of Peoria, Inc.*, 474 F.3d 966 (7th Cir. 2007) .......................... 9

*Volt Info. Scs., Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989).. 9

*Walden v. Fiore*, 571 U.S. 277 (2014) ........................................................................................ 37

*We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838 (7th Cir. 1999) ................................................ 28

*Wilcosky v. Amazon.com, Inc.*, 517 F. Supp. 3d 751 (N.D. Ill. 2021) ........................................ 26

*XO Commc'ns, Inc. v. Terra Telecomms. Cor*p., 333 F. Supp. 2d 494 (E.D. Va. 2002) .............. 23

*Xydakis v. Target, Inc.,* 350 F.Supp.2d 748 (N.D. Ill. 2004) ...................................................... 31

*Zurich Am. Ins. Co. v. Trendsetter HR, LLC*, Case No. 15 C 8696 (N.D. Ill. Nov. 16, 2015) ..... 16

## Statutes

28 U.S.C. § 1391(a)(1) ................................................................................................................ 35

28 U.S.C. § 1391(b) .................................................................................................................... 35

740 ILCS 14/20(3) ...................................................................................................................... 31

9 U.S.C. § 2 ................................................................................................................................ 11

9 U.S.C. § 4 ........................................................................................................ 12, 17, 22, 33, 34

9 U.S.C. § 6 ................................................................................................................................ 34

California Code of Civil Procedure §§ 1281 .............................................................................. 22

## Rules

Fed. R. Civ. P. 12(b)(1) .............................................................................................................. 25

Fed. R. Civ. P. 12(b)(3) .............................................................................................................. 25

Fed. R. Civ. P. 81(a)(3) .............................................................................................................. 32

In a misguided campaign to evade its contractual obligation and avoid having to answer in arbitration to the Petitioners claims, Samsung[2] has continuously twisted the arbitral forums' rules, federal statutes, and the relevant caselaw. Samsung's motion to dismiss is no different. For all the reasons set forth below and in Petitioners' Petition to Compel Arbitration ("Petition"), this motion should be denied.

## I.      FACTUAL BACKGROUND

### A.      Samsung Requires Users to Sign an Agreement Containing a Broad Arbitration Clause Selecting AAA as the Arbitration Forum

Since at least 2016, Samsung's terms and conditions ("T&C") have contained a broad "Mutual Arbitration Provision," which applies to "all disputes between you and Samsung that in any way relate to, or arise from, the standard limited warranty; or the sale, condition, or performance of the product." *Samsung Services T&C, See* Petition, ¶ 2, Exs. B-E. Each Petitioner agreed to those terms. By opening the product packaging or using the product (even if not the purchaser), every user of a Samsung Galaxy device agreed to Samsung's "In-box Terms and Conditions," Samsung's "End User License Agreement ("EULA")," Samsung's online T&C, and an additional T&C agreement with Samsung Electronics & Co., LTD, its parent company, when creating a user account. Each of these agreements contain a binding legal agreement requiring mandatory individual arbitration and a class action waiver ("Arbitration Agreement"). *See* Petition, ¶ 2, Exs. B-E. The Mutual Arbitration Provision requires that the parties arbitrate all disputes between the user and Samsung. The provision also requires that arbitration be administered by the American Arbitration Association ("AAA") under AAA's Commercial Arbitration Rules applicable to consumer disputes ("Rules"). Those Rules, in turn, authorize AAA to require that each party pay filing fees before AAA will empanel an arbitrator and proceed with

---

[2] "Samsung" collectively refers to Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd.

the parties' arbitration. Samsung's arbitration provision expressly requires that Samsung pay a portion of the fees and costs necessary to commence arbitration. *See* AAA Consumer Rules, Petition Ex. F..

**B.    AAA Confirmed a Valid Arbitration Agreement Between the Parties Exists**

On September 7, 2022, Petitioners filed individual demands before the AAA containing each claimants' personal information, describing each claimants' individual claims, and requesting individual relief. Petition, ¶ 11, Ex. J. To satisfy AAA's filing requirements, Petitioners' counsel simultaneously filed a fully completed "Multiple Case Filings Intake Data Spreadsheet" (the "Spreadsheet") containing the personal information of all 50,000 claimants in accordance with AAA Supplementary Rules for Multiple Case Filings ("MC") and served a copy of the same on Samsung. *Id.; see also,* Exhibit A, MC-2 ("As part of the filing requirements, the filing party shall submit a fully completed *Multiple Case Filings Intake Data Spreadsheet* (Spreadsheet), which is available at www.adr.org, at the time a Multiple Case Filing reaches the 25-case threshold, and shall update such Spreadsheet as additional cases are filed. This Spreadsheet must also be provided to opposing parties at the same time it is provided to the AAA."). The Spreadsheet contained the first and last name, address, city, state, zip code, phone number, email address, and requested locale state for all Petitioners. *Id.*

AAA subsequently confirmed each claimant's filing met AAA's filing requirements, and AAA invoiced Petitioners for their share of the filing fees. *See* Petition, ¶¶ 12-13, Ex. K ("This will confirm receipt of the 50,000 Demands for Arbitration filed against Samsung Electronics USA, Inc."); Ex. L (invoice); *see also*, Exhibit. B (10/31/22) ("The American Arbitration Association (AAA) acknowledges receipt of 50,000 individual consumer demands for arbitration filed against, Samsung Electronics USA, Inc. (Samsung) . . . **The AAA has made the**

administrative determination that claimants have now met the AAA's administrative filing **requirements on each of the 50,000 cases filed**. A list of these cases are enclosed."). (emphasis added) Petitioners' filing fees were promptly paid. *See* Petition, ¶ 13, Ex. M.

### C. Samsung Failure Pay Its Filing Fees Blocked the Arbitrations

On September 27, 2022, the same day Petitioners were invoiced and paid their filing fees, Samsung sent AAA a letter advising that it would not be paying its Business Filing Fee in connection with 49,986[3] of the filed demands. *See* Petition, ¶ 14, Ex. N. In its letter, Samsung told AAA that after conducting some undefined sampling it had identified that "a substantial number of the Demands are facially defective and do not involve proper [Petitioners]." *Id.* Samsung did not identify (and to date has still not identified) to whom or how many Petitioners its allegation applied. *See Id.* Samsung further stated that it would participate in the arbitrations only if Petitioners paid the fees to arbitrate for Samsung. *Id.*

Petitioners' counsel responded the next day, noting several inaccuracies in Samsung's letter and declining to pay Samsung's portion of the filing fees. *See* Petition, ¶ 15, Ex. O. On September 28, 2022, AAA cancelled the administrative call scheduled for September 29, 2022, thereby determining the arbitrations could not move forward. *See* Petition, ¶ 16, Ex. P. On November 8, 2022, Samsung again refused to pay its business filing fees in response to AAA's letter confirming Petitioners had satisfied the filing requirements and invoicing Samsung for its fees. *See* Exhibit C. Thereafter, AAA closed the cases.

### D. Samsung has Repeatedly Relied on its Mutual Arbitration Provision

---

[3] Samsung told AAA it would pay the filing fee for the fourteen Illinois users who are now living in California. Samsung cited California's Code of Civil Procedure §§ 1281 *et seq.* which provides for sanctions if Samsung did not pay these fees.

Samsung has in the past repeatedly relied on its Mutual Arbitration Provision to force users to arbitration, thereby eliminating their ability to litigate in court or as part of a class. *See* Petition, Ex. Q (Samsung's Mot. Compel Arbitration, *Vasadi v. Samsung Electronics Am., Inc.,* 2:21-cv-10238 (D.N.J. July 12, 2021) ECF No. 8); Petition, Ex. R (*Schmidt v. Samsung Elecs. Am., Inc.,* No. C16-1725-JCC, 2017 U.S. Dist. LEXIS 80768 (W.D. Wash. May 25, 2017)); Petition, Ex. S (*G.T. v. Samsung Elecs. Am., Inc.*, 1:21-cv-04976 (N.D. Ill. Oct. 29, 2021), ECF No. 17); and Petition, Ex. T (*Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. 16-cv-1953 DMG (KKX), 2020 WL 6528422, at *5 (C.D. Cal. Oct. 20, 2020)).  In doing so, Samsung has confirmed that its Mutual Arbitration Agreement is valid and enforceable, applies to all users' claims, and that any issues regarding its applicability are to be determined exclusively by the arbitrators.

### E. Samsung Moved to Compel Arbitration in a Putative BIPA Class Action Pending Before this Court

On August 11, 2021, a putative class action was filed in the Circuit Court of Cook County, Chancery Division, alleging that the functionality of certain Samsung devices violated Illinois' Biometric Information Privacy Act ("BIPA").  Samsung subsequently removed the action to this District on September 20, 2021, where it is now assigned to Judge Nancy L. Maldonado.  *See G.T. v. Samsung Elecs. Am., Inc.*, No. 1:21-cv-04976 (N.D. Ill. Sept. 20, 2021), ECF No. 2 (the "G.T. Action").  Following removal, on October 29, 2021, Samsung moved to compel the G.T. Action to arbitration. *Id.* at ECF No. 17.  In its motion to compel, Samsung vigorously argued that Samsung's Mutual Arbitration Agreement is valid, enforceable, and encompasses BIPA claims. *Id.* at ¶¶ 2-18. The plaintiffs in the G.T. Action opposed Samsung's motion on December 16, 2021. *Id.* at ECF No. 26.  Samsung filed its reply in further support of its motion to compel on January 20, 2022, and notice of supplemental authority on March 28, 2022.  *Id.* at ECF Nos. 28-29.  On September 23, 2022, nearly eleven (11) months after filing its motion to compel, seventeen (17)

days after Petitioners filed their demands for arbitration with AAA, and four (4) days before it told AAA it would not pay its business filing fee, Samsung withdrew its motion and entered a stipulation setting a briefing schedule for Samsung's motion to dismiss. *Id.* at ECF No. 32; *see also*, Ex. J.

## II.     ARGUMENTS

### A.     This Court Should Grant Petitioners' Motion to Compel Because a Valid Arbitration Agreement Exists and Encompasses the Parties' Dispute

One of the primary purposes of the Federal Arbitration Act ("FAA") is to ensure the enforcement of private arbitration agreements according to their terms. *Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407, 1415-16 (2019); *Volt Info. Scs., Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 469 (1989) (the FAA was meant "to ensure that private arbitration agreements are enforced according to their terms"). The enactment of the FAA placed arbitration agreements on the same footing as other contracts. *Morgan v. Sundance, Inc*., 142 S.Ct. 1708, 1713 (2022); *Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 740 (7th Cir. 2010) (quoting 9 U.S.C. § 2); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991) (The purpose of the FAA is to "reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts."); *Volkswagen of Am., Inc. v. Sud's Of Peoria, Inc.,* 474 F.3d 966, 970 (7th Cir. 2007) (quoting *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225 (1987)) ("The FAA was enacted in 1925 against the backdrop of 'centuries of judicial hostility to arbitration agreements.'").

Under the FAA, valid arbitration agreements are irrevocable and enforceable, except on grounds that exist at law or in equity for the revocation of any other type of contract. 9 U.S.C. § 2. Because the FAA amounts to a "congressional declaration of a liberal federal policy favoring

arbitration agreements[,]" courts should address arbitration through "[a]n expeditious and summary hearing, with only restricted inquiry into factual issues." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22-24 (1983). The burden is on the party opposing arbitration to demonstrate that the arbitration agreement is unenforceable. *Shearson v. McMahon*, 482 U.S. 220, 227 (1987). Any doubts a court may have on whether a dispute is arbitrable should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp.,* 460 U.S. 1, 24-25 (1983); *Scheurer v. Fromm Family Foods, LLC*, 863 F.3d 748, 752 (7th Cir. 2017) ("Generally, federal policy favors arbitration, and once an enforceable arbitration contract is shown to exist, questions as to the scope of arbitrable issues should be resolved in favor of arbitration.").

Section 4 of the FAA permits a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In deciding whether to compel arbitration, courts generally analyze two "gateway" issues: (1) whether the parties have entered into a valid arbitration agreement, and (2) whether the agreement covers the dispute. *See Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 83–84 (2002). In determining whether a valid arbitration agreement exists between parties, federal courts apply the state law principles of contract formation. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F. 3d 705, 711 (7th Cir. 2019); *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1097 (N.D. Ill. 2015); *Janiga*, 615 F.3d 735, 742. "In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract." *Melena v. Anheuser-Busch, Inc*., 219 Ill. 2d 135, 151 (2006) (holding that an arbitration agreement can constitute an offer and continued employment can constitute both acceptance and consideration.

Where, as here, the parties have delegated questions regarding the interpretation, enforceability, or scope of an arbitration clause to the arbitrator, the court need only determine that the parties entered into a valid arbitration agreement. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

### 1.    <u>The Parties Agreed to Arbitrate</u>

By accepting the Mutual Arbitration Agreement included in the EULA and T&C, Petitioners agreed to arbitrate all disputes with Samsung. Petitioners agreed to Samsung's EULA (which contained the Arbitration Agreement) during the phone's set-up process. Like traditional contracts, digital agreements require mutual assent. *Fischer v. Instant Checkmate LLC*, No. 19 C 4892, 2021 WL 3033586, at * 5 (N.D. Ill. July 19, 2021). Federal courts in this district applying Illinois law enforce online clickwrap agreements where, as here, subscribers must accept the terms. *See, e.g., Sherman v. AT&T, Inc.*, No. 11 C 5857, 2012 WL 1021823, at *3 (N.D. Ill. Mar. 26, 2012) ("The clickwrap process of checking a box next to hyperlinked terms generally provides adequate notice.") (citing *Treiber & Straub, Inc. v. UPS*, 474 F.3d 379, 382 (7th Cir. 2007) ("[S]ignif[ying] agreement by clicking on a box on the screen" is "common in Internet commerce.")). Indeed, the Seventh Circuit recently reiterated that under Illinois law, parties may agree to online terms where the website "plac[es] the agreement, or a scroll box containing the agreement, or a clearly labeled hyperlink to the agreement, next to an 'I Accept' button that unambiguously pertains to that agreement." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1036 (7th Cir. 2016); *Miracle-Pond v. Shutterfly, Inc.*, No. 19-cv-0472, 2020 WL 2513099, at *4 (N.D. Ill. May 15, 2020) (customer assented to the clickwrap contract when she clicked the button "Accept" accompanied by the prompt that she "agreed to use . . . Shutterfly . . . in accordance with Shutterfly's Terms of Use."); *Acaley v. Vimeo, Inc.*, 464 F. Supp. 3d 959, 966 (N.D. Ill. 2020)

(user bound by Vimeo's terms and conditions after clicking the prompt "[b]y continuing I agree to the terms" because that process "would place a reasonable person on notice that there were terms and conditions connected to his or her continued use of the app."). Moreover, in *Beture v. Samsung Elecs. Am., Inc.*, No. CV 17-5757 (SRC), 2018 WL 4621586, at *7 (D.N.J. July 18, 2018), the New Jersey District Court held that the same Samsung EULA was binding on a plaintiff who clicked through the same setup process at issue here.

There can be no real dispute that the parties entered into a valid arbitration agreement. Petitioners were required to consent to Samsung's arbitration agreement. Samsung has successfully argued that position in this Court. *See Taylor v. Samsung Elecs. Am., Inc.*, 19 C 4526, 2020 WL 1248655, at *4 (N.D. Ill. Mar. 16, 2020) (enforcing Samsung's shrinkwrap arbitration agreement because the terms and conditions were provided to plaintiff in numerous different ways); *McNamara v. Samsung Telecomms. Am., LLC*, No. 14 C 1676, 2014 WL 5543955, at *1 (N.D. Ill. Nov. 3, 2014) (holding that smartphone's product user guide provided reasonable notice of the arbitration clause); *see also*, *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1300 (N.D. Cal. 2018) (arbitration clause binding because plaintiff received notice of arbitration clause and opt-out option in multiple ways); *Schmidt v. Samsung Elecs. Am., Inc.*, No. C16-1725-JCC, 2017 WL 2289035, at *3, *4 (W.D. Wash. May 25, 2017) (relying on Hill and ProCD to enforce shrinkwrap agreement to arbitrate for a different Samsung smartphone under California and Washington law); *In re Samsung Galaxy*, 298 F. Supp. 3d at 1300 (enforcing a shrinkwrap arbitration clause against certain plaintiffs because the materials "direct[] the consumer to read the important legal information and notes in bold that arbitration applies . . . and includes the capitalized arbitration provision and the bolded procedure describing how to opt out").

As argued in the G.T. Action, Samsung declares "[t]here is no doubt that Samsung provided clear and proper notice of the existence of the obligation to arbitrate all disputes, including: (1) on the phone's box; (2) in the printed Terms and Conditions insert included with the phone; and (3) pre-loaded on the phone itself (and available on Samsung's website)." *See* Petition, Ex. S at 13-14. Moreover, Petitioners could not capture or save images or use the Gallery App unless they first affirmatively accepted the EULA. *Id.* Each Petitioner was given the opportunity to review the full EULA, including the arbitration clause, before clicking the "Accept" button. *Id.* As outlined in the Petition, all Petitioners were required to agree to the Mutual Arbitration Agreement in order to use their device and provided consent upon purchasing the device. Because neither the EULA, T&C, nor device box require the user's signature and the user does not receive an electronic copy of the EULA confirming their consent, it is impossible to produce individual arbitration agreements for the Petitioners. Nevertheless, as explained in Section I(B), the Spreadsheet provided to AAA and Samsung contains each Petitioners' personally identifiable information, including first and last name, address, city, state, zip, phone number, and email address. *Id.* The personally identifiable information provided, is more than sufficient for Samsung to identify each claimant as the Spreadsheet provides more information than required by Samsung when a user is creating a Samsung account or registering a device.[4]

Moreover, Samsung, as the party resisting arbitration, "bears the burden of identifying a triable issue of fact on the purported arbitration agreement." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)). "[A] party ***cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests***; the party must identify specific evidence in the

---

[4] *See, e.g.,* Create your Samsung account, https://account.samsung.com/accounts/v1/samsung_com_us/signUp (requiring first name, last name, email, zip code, and date of birth).

record demonstrating a material factual dispute for trial." *Id.* (emphasis added). While Samsung is attempting to avoid its arbitration responsibilities in this case, it has consistently argued in other actions that all Samsung users agree to its Mutual Arbitration Agreement that has been routinely upheld by federal courts. Nevertheless, even if the court has doubts about the enforceability of an arbitration agreement, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mastrobouno v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 62 n.8 (1995).

## 2. The Claims Fall Within the Scope of Samsung's Arbitration Agreement

Petitioners' claims fall squarely within the arbitrable claims set forth in the Agreement. The scope of the Agreement expressly states that "all disputes between you and Samsung that in any way relate to, or arise from, the standard limited warranty; or the sale, condition, or performance of the product, shall be resolved exclusively through final and binding arbitration, and not by a court or jury." Petition, ¶ 2, Exs. B-E.[5] Statutory or common law claims are also specifically subject to this arbitration requirement. Thus, the language of the arbitration provisions in all agreements is unambiguous. The Mutual Arbitration Agreement refers to all legal related claims. Petitioners' BIPA claims fall within the scope of the agreement. *See Kiefer Specialty Flooring, Inc. v. Tarkett, Inc*., 174 F.3d 907, 910 (7th Cir. 1999) ("Broad arbitration clauses [. . .] necessarily create a presumption of arbitrability"); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24–25 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."); *see also CK Witco Corp. v. Paper Allied Indus*., 272 F.3d 419, 421–22 (7th Cir. 2001) ("[W]hen a contract contains an arbitration clause, a strong

---

[5] https://www.samsung.com/us/support/legal/mobile/#arbitration-agreement

presumption in favor of arbitration exists and courts have no choice but to order arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.").  Moreover, Samsung itself argued in the G.T. Action case that data privacy claims, like the claims here, belong in arbitration (until it discovered that thousands of individuals wanted to arbitrate).  *See* Petition, Ex. S., pp. 1-20.

Petitioners agreed to arbitrate "all disputes between . . . Samsung relating in any way to or arising in any way from the EULA, Samsung Software . . .  or the sale, condition or performance of the Product or Samsung Software."  See Petition, ¶ 2, Exs. B-E.  The Seventh Circuit has interpreted arbitration provisions applying similarly broad language—claims "arising out of or relating to" an agreement—as "capable of an expansive reach" under Illinois law.  *Kiefer Specialty Flooring, Inc.*, 174 F.3d at 909.  Thus, Petitioners claims "aris[e] from . . . Samsung Software" and are therefore covered by the Arbitration Agreement.

### B. This Court Has the Authority to Order Samsung to Arbitrate in the Manner Provided for in the Mutual Arbitration Agreement and Pay Its Required Fees

The FAA requires federal courts to compel arbitration when a party that agrees to arbitrate refuses to do so.  Here, Samsung not only agreed to arbitrate—it drafted the agreement, chose the terms, and forced consumers to agree to them as a condition of using its technology.

Section 4 of the FAA "provides that any arbitration agreement within its scope 'shall be valid, irrevocable, and enforceable,'" and "permits a party 'aggrieved by the alleged … refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." 9 U.S.C. § 4.   The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  In deciding whether to compel arbitration, courts

generally analyze two "gateway" issues: (1) whether the parties have entered into a valid arbitration agreement, and (2) whether the agreement covers the dispute. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002).

Neither of these elements can reasonably be disputed here. Indeed, Samsung itself has routinely enforced this broad language to compel consumers to arbitration, including in this Court. *See, e.g., Taylor v. Samsung Elecs. Am., Inc.*, 19 C 4526, 2020 WL 1248655, at *4 (N.D. Ill. Mar. 16, 2020); *McNamara v. Samsung Telecomms. Am., LLC*, No. 14 C 1676, 2014 WL 5543955, at *1 (N.D. Ill. Nov. 3, 2014); *G.T. v. Samsung Elecs. Am., Inc.*, 1:21-cv-04976 (N.D. Ill. Oct. 29, 2021), ECF No. 17; *see also, In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1300 (N.D. Cal. 2018); *Schmidt v. Samsung Elecs. Am., Inc.*, No. C16-1725-JCC, 2017 WL 2289035, at *3, *4 (W.D. Wash. May 25, 2017); *In re Samsung Galaxy Smartphone Mktg. And Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1300 (N.D. Cal. 2018); *Vasadi, et al. v. Samsung Elecs. Am., Inc.*, 2:21-cv-10238 (D.N.J. July 12, 2021) ECF No. 16; *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. 16-cv-1953 DMG (KKX), 2020 WL 6528422, at *5 (C.D. Cal. Oct. 20, 2020). Additionally, Samsung itself has already conceded the validity of the Mutual Arbitration Agreement and its application to all Petitioners by paying AAA the filing fees for the fourteen California residents. *See, e.g.,* Petition, Ex. N.

This Court must therefore enforce Petitioners' motion to "compel[] arbitration in the manner provided for in the agreement." *Zurich Am. Ins. Co. v. Trendsetter HR, LLC*, Case No. 15 C 8696, 8 (N.D. Ill. Nov. 16, 2015) ECF No. 43 (holding that the FAA requires the court to enforce the arbitration agreement in accordance with its terms); *Croasmun v. Adtalem Glob. Educ., Inc.*, 20 C 1411, 2020 WL 7027726, at *3 (N.D. Ill. Nov. 30, 2020) (same).

12

In these circumstances, the FAA authorizes courts to enter an order requiring Samsung to comply with AAA's determinations of the fees necessary to commence arbitration. For example, in *Allemeier v. Zyppah, Inc.*, No. CV 18-7437 PA (AGRx), 2018 WL 6038340, at *1 (C.D. Cal. Sept. 21, 2018), the petitioner filed a demand for arbitration with AAA against his former employer, and AAA determined that he had satisfied his filing requirements. AAA ordered the employer to pay its share of the filing fees, but the employer refused to do so. *Id.* at *1, *2. When AAA declined to proceed with the arbitration because of that nonpayment, the petitioner moved to compel. The district court granted the motion and ordered the employer to proceed with the petitioner's arbitration by "pay[ing] any fees that the AAA allocate[d] to it and … comply[ing] with any other requirements that the AAA impose[d]." *Id.* at *4; *see also Halloran v. Davis*, No. 2:12–cv–01011–CBM (CWx), 2013 WL 12153551, at *2 (C.D. Cal. Aug. 15, 2013) (ordering the parties to "submit their claims to arbitration and pay arbitration fees and costs as required by the rules and procedures of the AAA").

In sum, Samsung has "forced arbitration clauses upon [Petitioners], thus taking away their right to go to court, and forced class-action waivers upon them too, thus taking away their ability to join collectively to vindicate common rights." *Abernathy v. DoorDash, Inc.,* 438 F. Supp. 3d 1062, 1067 (N.D. Cal. 2020). Now consumers "wish to enforce the very provisions forced on them by seeking, even if by the thousands, individual arbitrations, the remnant of procedural rights left to them . . . [defendant], faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause." *Id*. at 1068. This Court should reject Samsung's hypocrisy here and do precisely what Samsung so many times demands of its consumers: enforce the arbitration provision and compel Samsung to arbitrate under the terms it drafted and imposed upon Petitioners. *Id.* ("in irony upon irony, [defendant] now

wishes to resort to a class-wide lawsuit, the very device it [vigorously] denied to the workers, to avoid its duty to arbitrate. This hypocrisy will not be blessed, at least by this order.").

### 1.     **Samsung Refused to Arbitrate**

There is no dispute that: (1) Samsung agreed to individually arbitrate Petitioners' BIPA claims in accordance with the AAA's Rules; (2) Samsung moved to compel arbitration before this Court in the *G.T. Action* ("*G.T.* Motion"), which involves similar BIPA allegations; (3) Samsung withdrew the *G.T.* Motion on September 23, 2022, nearly one year after it was filed and approximately three weeks after Petitioners filed their demands with AAA; (4) Petitioners paid the AAA filing fees for all Petitioners; and (5) Samsung refused to pay the AAA invoice for their portion of AAA's fees, despite Samsung's ability to pay the invoice in full, thus preventing AAA from moving forward with these arbitrations.

Numerous courts, including courts in this district, have held that a refusal to pay arbitration fees constitutes a refusal to arbitrate.  *See, e.g., Croasmun v. Adtalem Glob. Educ., Inc.*, No. 20 C 1411, 2020 WL 7027726, at *3 (N.D. Ill. Nov. 30, 2020) (refusal to pay the filing fees blocks the door to the arbitrator and thus is a breach of the agreement to arbitrate); *Allemeier v. Zyppah, Inc.*, CV 18-7437 PA (AGRX), 2018 WL 6038340, at *1, *4 (C.D. Cal. Sept. 21, 2018) (determining that defendant refused to arbitrate by repeatedly refusing to pay its portion of the filing fee as determined by the AAA, attempting to compel Petitioner to arbitrate in Nevada, and continuing to oppose arbitration in California); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-715 SC, 2011 WL 6014438, at *2, *4 (N.D. Cal. Dec. 2, 2011) (rejecting argument that defendants were not refusing to arbitrate under the FAA because they were willing to arbitrate in another location); *Jones v. Gen. Motors Corp.*, 640 F. Supp. 2d 1124, 1145 (D. Ariz. 2009) (plaintiff opposed motion to enforce arbitration thereby resisting arbitration and unambiguously manifesting

an intention not to arbitrate the subject matter of this dispute.); *Nadeau v. Equity Residential Props. Mgmt*. Co., 251 F. Supp. 3d 637, 641 (S.D.N.Y. 2017) (finding that defendant breached arbitration agreement and could not compel arbitration where AAA administratively closed case due to defendant's non-payment of fees); *Garcia v. Mason Cont. Prods., LLC*, No. 08–23103–CIV, 2010 WL 3259922, at *3 (S.D.Fla. Aug. 18, 2010) (holding "[b]y failing to timely pay its share of the arbitration fee, Defendant materially breached its obligations, thereby 'scuttling' [its] opportunity" to insist on arbitration); *Rapaport v. Soffer*, No. 2:10–cv–00935–KJD–RJJ, 2011 WL 1827147, at *2 (D. Nev. May 12, 2011) (finding the defendant was in default under FAA § 3 because the AAA "closed" or "terminated" the case because of his failure to pay fees); *Brown v. Dillard*'s, Inc., 430 F.3d 1004, 1011 (9th Cir. 2005) (explaining the defendant "breached the arbitration agreement by refusing to participate in properly initiated arbitration proceedings" and that the "breach was tantamount to a repudiation of the arbitration agreement"); *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003) (the failure to pay the required costs of arbitration was a material breach of its obligations in connection with the arbitration).

Samsung's claim that it has not refused to arbitrate is untenable for two independent reasons. First, Samsung failed to set forth any explanation or showing of a "good faith failure to pay." Specifically, on October 7, 2022, Samsung refused to pay its required filing fees for the 49,986 Petitioners residing in any state other than California. *See* Petition, Ex. N. ("Samsung will not be paying the Business Filing Fees in connection with the Demands"). In response to AAA's October 31st invoice, Samsung refused for the second time to pay AAA's invoiced fees for the non-California claimants without any explanation. *See* Samsung's November 8th letter to AAA ("Samsung reaffirms its position. Pursuant to the AAA Rules and procedures, Samsung respectfully declines to pay filing fees in connection with the non-California Claimants' demands

for arbitration.  These demands are frivolous and have been brought in arbitration for an improper purpose.").  *See* Ex. C.  Neither of its letters enumerated any good faith reason why Samsung could not pay.

Second, Samsung's offer to participate in arbitration if and only if Petitioners pay Samsung's filing fees is disingenuous and intended to have the arbitrations scuttled.  Samsung knew that if it did not pay its fees, the arbitrations would be administratively closed.  *See Id.* ("In addition, Samsung requests that the AAA send its standard notice to Claimants' counsel that sets forth their option, consistent with the AAA Rules and procedures, to advance the filing fees in connection with non-California Claimants' claims to move those claims forward or to choose to have the matters administratively closed.").

Further, Samsung only acknowledges its responsibility when there is a California statute that would sanction it for not paying its fees.  *See* Ex. N ("Samsung will pay Business Filing Fees associated with Demands filed by Claimants who are residents of California . . . consistent with the timing obligations in California Code of Civil Procedure §§ 1281 et seq. and appropriate invoicing from AAA.  While California Code of Civil Procedure §§ 1281 et seq. is preempted by the Federal Arbitration Act, Samsung will nevertheless make these payments under a full reservation of its right to recoup them in connection with any arbitration proceeding.").  This clearly shows that Samsung understands it has a contractual obligation to pay its filing fees but chooses only to do so under threat of sanctions.

Under these circumstances, Samsung is unquestionably refusing to arbitrate by refusing to pay its filing fees.  As the FAA requires, this Court should enforce the arbitration agreement in accordance with its terms and issue an "order directing that such arbitration proceed in the manner provided for in such agreement," 9 U.S.C. § 4; *Croasmun v. Adtalem Glob. Educ., Inc.*, 20 C 1411,

2020 WL 7027726, at *3 (N.D. Ill. Nov. 30, 2020). "Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." *Southland, Corp. v. Keating,* 465 U.S. 1, 7 (1984).

### 2. This Court Has the Authority to Order Samsung to Arbitrate and Pay the Arbitration Fees

This Court should put an end to Samsung's dilatory tactics and trickeries. Indeed, courts have uniformly rejected efforts from large corporations like Samsung, which have imposed restrictive mandatory arbitration agreements and then hypocritically sought to abandon arbitration by refusing to pay the required arbitration fees. *See, e.g.*, *Abernathy v. DoorDash, Inc*., 438 F. Supp. 3d 1062, 1067-68 (N.D. Cal. 2020); *Adams v. Postmates, Inc*, 414 F. Supp. 3d 1246, n.2 .(N.D. Cal. 2019); *Postmates Inc. v. 10,356 Individuals*, No. CV 20-2783 PSG (JEMx), 2020 WL 1908302 (C.D. Cal. Apr. 15, 2020); *Intuit Inc. v. 9,933 Individuals*, B308417, 2021 WL 3204816 (Cal. Ct. App. July 29, 2021).

As the court in Tillman explained,

> Our decision that Tillman's case may proceed does not mean that parties may refuse to arbitrate by *choosing* not to pay for arbitration. ***If Tillman had refused to pay for arbitration despite having the capacity to do so, the district court probably could still have sought to compel arbitration under the FAA's provision allowing such an order in the event of a party's "failure, neglect, or refusal" to arbitrate***. 9 U.S.C. § 4. Or, in that context, the court could, and most probably should, dismiss Tillman's complaint under Fed. R. Civ. P. 41(b), for failure to comply with the order to arbitrate despite its ability to do so…***The outcome would likely be different if Tillman were the one seeking a stay of the district court proceedings, as that would frustrate the Rheingold firm's attempts to have the case heard in either the court or the arbitral forum***. (*Citing Sink*, 352 F.3d at 1201).

*Tillman v. Tillman*, 825 F.3d 1069, 1075–76 (9th Cir. 2016) (emphasis added). The court further emphasized "[e]ven if such an arbitration has been terminated in accordance with the rules governing the arbitration . . . ***it may be contrary to the "structure and purpose of the FAA' to***

*allow a party to an arbitration agreement to benefit from their intentional noncompliance with an arbitrator's rules*." *Id.* at 1075 n.1. (citing *Sink v. Aden Enters.*, 352 F.3d 1197, 1200 (9th Cir. 2003)) (emphasis added); *see also*, *Allemeier v. Zyppah, Inc.*, CV 18-7437 PA (AGRX), 2018 WL 6038340, at *3 (C.D. Cal. Sept. 21, 2018) (same). Samsung's actions fall directly in line with the question anticipated by the *Tillman* court. A party seeking "to invalidate an arbitration agreement [because] arbitration would be prohibitively expensive . . . must provide some individualized evidence to show that [he] is likely to face prohibitive costs in the arbitration and that [he] is financially incapable of meeting those costs." *Davis v. Fenton*, 26 F. Supp. 3d 727, 739 (N.D. Ill. 2014). While there is no bright line test, "the Seventh Circuit has outlined two pertinent questions: (1) how the party's financial situation will be factored into an assessment of the arbitration costs under this hardship provision, and (2) how the costs will compare between litigating in the courts versus proceeding in arbitration." *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 756 (N.D. Ill. 2015).

Here, Samsung cannot satisfy its burden because it merely asserts, without any support, that Samsung "should not be burdened with extensive arbitration costs." Bare assertions cannot invalidate an arbitration agreement based on prohibitive costs. *See Fenton*, 26 F. Supp. 3d at 739 (concluding that "Plaintiff has provided no evidence demonstrating what the costs of arbitration would be or any evidence regarding her financial situation . . . plaintiff's bare assertions that the fees and costs of arbitration would be prohibitively expensive are not enough to meet her burden . . . "); *Modern Space Design & Decoration (Shanghai) Co., Ltd. v. Lynch*, No. 13 C 4329, 2014 WL 4897322, at *4 (N.D. Ill. Sept. 29, 2014) (concluding that employee did not show "that arbitrating his case in Shanghai would impose a hardship so substantial that it would effectively deprive him of a meaningful opportunity to pursue his claims . . . Although [employee] speculates

18

that such a requirement would visit upon him 'a significant and likely insurmountable financial burden,' he offers no evidence in support of that assertion . . . ").

Because Samsung simply "refused to pay for arbitration despite having the capacity to do so," Samsung's actions violate the spirit of the FAA and should not be countenanced. Moreover, it is well within this Court's power to compel the parties back to arbitration. *See Brunner v. Lyft, Inc.*, No. 19-cv-04808-VC, 2019 WL 6001945, at *1 (N.D. Cal. Nov. 14, 2019) (granting a motion to dismiss and compel a party to return to arbitration with Lyft); *Roderick v. Mazzetti & Assocs., Inc.*, No. C 04–2436 MHP, 2004 WL 2554453, at *2, *12 (N.D. Cal. Nov. 9, 2004) (compelling parties to return to arbitration after one party filed a lawsuit during an ongoing arbitration).

Therefore, this Court should invoke its authority under Section 4 of the FAA and compel Samsung to arbitrate according to the terms of the Mutual Arbitration Agreement. *See, e.g., Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 487 (5th Cir. 2002); *Folse v. Richard Wolf Med. Instruments Corp.*, 56 F.3d 603, 604-06 (5th Cir. 1995); *XO Commc'ns, Inc. v. Terra Telecomms. Cor*p., 333 F. Supp. 2d 494, 496 (E.D. Va. 2002).

### C. Petitioners Did Not Waive Their Right to Arbitration

Petitioners have preserved their right to arbitrate this dispute. A "waiver of arbitration is not lightly to be inferred." *Dickinson v. Heinold Secs., Inc.*, 661 F.2d 638, 641 (7th Cir. 1981) (reversing district court's denial of a motion to compel arbitration). "The essential question is whether, under the totality of the circumstances, the defaulting party acted 'inconsistently' with the arbitration right." *Id.* (internal citations omitted); *Ernst & Young LLP v. Baker O'neal Holdings, Inc.*, 304 F.3d 753 (7th Cir. 2002) (Courts must examine the totality of the circumstances and determine whether based on all the circumstances, "the [party against whom the waiver is to be enforced] has acted inconsistently with the right to arbitrate."); *Billie v. Coverall N. Am.*, 594

19

F. Supp. 3d 479, 496 (D. Conn. 2022) (Whether a party waived their right to arbitration is determined by a two-part test: (1) under a totality of the circumstances, has the party acted inconsistently with its arbitration right, and (2) by doing so, has that party prejudiced the other party.)  Further, "the diligence, or lack thereof, of the party seeking arbitration is an important consideration in deciding whether there has been a waiver . . . other important factors include whether the party seeking arbitration substantially delayed its request for arbitration, participated in litigation, or participated in discovery." *Davis*, 26 F. Supp. 3d at 744. In light of the strong federal policy that favors arbitration, "'parties asserting waiver bear a heavy burden and courts should not lightly infer waiver.'" *Hoenig v. Karl Knauz Motors, Inc*., 983 F. Supp. 2d 952, 965 (N.D. Ill. 2013).

Samsung argues that Petitioners waived their right to arbitrate by declining to pay Samsung's filing fees pursuant to Supplementary Rule MC-10(d).  Samsung Br., at 10.  However, as courts have recognized, "the fact that the AAA arbitration rules allow the arbitrator to ask [Petitioner] whether [Petitioner] would like to pay in order to prevent termination ***does not create an obligation*** for [Petitioner] to do so, nor does it change the fact that [Respondent] owed the unpaid fees." *See Allemeier v. Zyppah, Inc.*, CV 18-7437 PA (AGRX), 2018 WL 6038340, at *3 (C.D. Cal. Sept. 21, 2018) (quoting *Rapaport v. Soffer*, No. 2:10-CV-00935-KJD-RJJ, 2011 WL 1827147, at *3 (D. Nev. May 12, 2011)).

The cases cited by Samsung are distinguishable and starkly different from the case at hand and Petitioners' actions. In *Cota v. Art Brand Studios, LLC*, the court denied defendant's motion to compel arbitration because the defendant waived its right to arbitration by refusing to pay AAA the arbitration fees for the plaintiffs who demonstrated poverty during the pre-suit arbitration proceedings.  *Cota v. Art Brand Studios, LLC*, 21-cv-1519 (LJL), 2021 WL 4864588, at *11

(S.D.N.Y. Oct. 15, 2021). The court determined that after the plaintiffs notified AAA and the defendant of their inability to pay for arbitration, AAA gave defendant the opportunity to continue arbitration by covering costs for both parties with the ability to recoup such costs at the end of the proceedings if defendant prevailed. *Id.* at *5. Defendant refused, and AAA subsequently terminated the arbitration proceedings. *Id.* at *6. Plaintiffs filed suit in the Southern District of New York. In response, defendant moved to compel arbitration. *Id.* at *7. However, the Southern District denied the motion, concluding defendant "chose[] not to pay the arbitral fees and having taken action that it knew would result in the termination of the arbitration, ... acted inconsistently with its arbitration right." *Id.* at 9. Samsung fails to cite a single authority holding that an individual plaintiff should be compelled to pay the filing fees of a corporate defendant or risk having waived their right to individual arbitration. Any such holding would be unjust.

Petitioners' actions have always been consistent with their right to arbitrate evidenced by (i) sending Samsung letters noticing Samsung of their intention to arbitrate, (ii) filing arbitrations before the agreed upon arbitral forum, (iii) paying their filing fees, and (iv) moving before this Court to compel Samsung back to arbitration. Thus, Petitioners have preserved their right to arbitrate.

### D. Respondent's Motion Under Rule 12(b)(1) and (3) for Improper Venue and Lack of Subject Matter Jurisdiction Fails

In assessing a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(3) for improper venue, the Court takes all allegations in the complaint as true, draws any reasonable inferences from those facts in the plaintiff's favor, and may examine facts outside the complaint. *Nagel v. ADM Inv. Servs., Inc.*, 995 F.Supp. 837, 843 (N.D.Ill. 1998) (a court may examine facts outside the complaint to determine whether venue is proper); *Faulkenberg v. CB Tax Fran. Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011) (the court should

construe all facts and draw reasonable inferences in favor of the plaintiff); *Miller v. Sw. Airlines Co.*, No. 18 C 86, 2018 WL 4030590, at * 4 (N.D.Ill. Aug. 23, 2018) (the court must resolve factual conflicts in the parties' submissions and draw any reasonable inferences in the Petitioners' favor, unless they are contradicted by the non-moving party's affidavits). District courts may consider materials outside of the pleadings, including the parties' arbitration agreement. *Cont"l Cas. Co. v. Am. Nat'l Ins. Co.,* 417 F.3d 727, 733 (7th Cir. 2005). Dismissal is appropriate when the forum selection clause of a contract requires arbitration in another district. *Wilcosky v. Amazon.com, Inc.*, 517 F. Supp. 3d 751, 759 (N.D. Ill. 2021); *HTG Cap. Partners, LLC v. Doe*, No. 15 C 02129, 2016 WL 612861, at *8 (N.D. Ill. Feb. 16, 2016) (citing *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005)).

### 1. This Court Has Subject Matter Jurisdiction Over the Petition

This Court has subject matter jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000. Despite Samsung's protestations, there is no real dispute that the parties are diverse. Samsung has its principal place of business in the United States in Ridgefield, NJ. The Spreadsheet attached hereto as Exhibit D indicates the city and state of residence of every single Petitioner, none of which are New Jersey. [6] Thus, diversity is satisfied.

The amount in controversy is also satisfied. The amount in controversy is "not the amount sought by the plaintiff but the amount at stake to either party to the suit." *BEM I, L.L.C. v. Anthropologie, Inc*., 301 F.3d 548, 553 (7th Cir. 2002); *Uhl v. Thoroughbred Tech. & Telecomms., Inc*., 309 F.3d 978, 983 (7th Cir. 2002) ("[T]he jurisdictional amount should be assessed looking at either the benefit to the plaintiff or the cost to the defendant of the requested relief."). Jurisdiction "is a legal conclusion, a consequence of facts rather than a provable 'fact.'" *Meridian*

---

[6] The columns of the spreadsheet sent to AAA that contain the personally identifying information of Petitioners has been redacted.

*Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006) (emphasis in original). Thus, "what the proponent of jurisdiction must "prove' is contested factual assertions. *Id.* at 540-43. Although the proponent of jurisdiction "may be called on to prove facts that determine the amount in controversy," once those facts have been established, "the proponent's estimate of the claim's value must be accepted unless there is 'legal certainty' that the controversy's value is below the threshold." *Id.* at 541. The proponent "does not have to establish that it is likely that plaintiff will prevail or, if she does, that she will obtain a judgment exceeding the amount-in-controversy requirement." *Kincaid v. Menard, Inc*., No. 13-cv-7279, 2014 WL 1715503, at *1 (N.D. Ill. Apr. 30, 2014) (citing *Back Doctors Ltd. V. Metro. Prop. & Cas. Ins. Co*., 637 F.3d 827, 831 (7th Cir. 2011)). The burden, rather, "is to show what the plaintiff hopes to get out of the litigation; if this amount exceeds the jurisdictional threshold, the case proceeds in federal court unless a rule of law will keep the award under the threshold." *Id*. (citing *Rising-Moore v. Red Roof Inns, Inc*., 435 F.3d 813, 816 (7th Cir. 2006)). "Once the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction." *Lambert v. Hughes Network Sys., LLC*, No. 10-CV-0571, 2010 WL 3034212, at *1 (N.D. Ill. Aug. 2, 2010).

With respect to equitable relief, "the Seventh Circuit . . . identified three situations in which the cost of equitable relief to a defendant might satisfy the jurisdictional minimum: (1) where the requested relief would require some alteration in the defendant's business practices that would cost more than the jurisdictional minimum amount; (2) where the requested relief would force the defendant to forgo a benefit that is worth more than the jurisdictional minimum amount; or (3) where the requested relief would entail clerical or ministerial costs of compliance greater than the jurisdictional minimum amount." *Id.* at *2.

Here, the amount in controversy is satisfied in two ways: (i) the monetary damages for each Petitioner, and (ii) the cost to Samsung of the requested equitable relief.

### 2.     Each Petitioners' Damages Exceeds the Jurisdictional Amount

In this case each Petitioner is seeking to protect their rights in a consumer data privacy claim seeking in excess of $75,000 in damages. *See* 740 ILCS 14/20 ("[a] prevailing party may recover ***for each violation***: (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater; (2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater; (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and (4) other relief, including an injunction, as the State or federal court may deem appropriate.") In *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 841 (7th Cir. 1999), the Seventh Circuit held that, although a petition to compel arbitration is a separate lawsuit, the amount in controversy must be determined by the stakes of the potential arbitration. After ordering We Care Hair to present evidence that the amount in controversy requirement was satisfied, the district court held that diversity jurisdiction existed. Appellant argued that this decision was in error because We Care Hair had insufficient assets to pay more than $15,000 to each set of named plaintiffs. The Court disagreed and found that "**[u]nless it is legally certain that the stakes of the arbitration would be $75,000 or less . . . the claim satisfies the jurisdictional minimum**." *Id.* at 841. *See also Lambert, LLC*, 2010 WL 3034212, at *1 ("Once the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction.")

As discussed herein the amount at stake between the litigants is far in excess of $75,000.

The question of whether a Petitioner can recover separately each time his or her biometric data is collected will be resolved by the Illinois Supreme Court in *Cothron v. White Castle Sys., Inc*., 20 F.4th 1156 (7th Cir. 2021). In *Cothron,* the named plaintiff is claiming that her employer violated BIPA by using a timekeeping system that captured her fingerprint data, arguing that each fingerprint scan represented a separate violation and right to collect an additional set of statutory damages. The District Court agreed, holding that plaintiff could seek statutory damages for each scan of her fingerprints. On appeal, the Seventh Circuit certified the question to the Illinois Supreme Court. *Id.* . The Illinois Supreme Court heard argument on May 17, 2022. Thus, the current state of the law is that each Petitioner can seek statutory damages for each improper collection of their biometric information. As such, each Petitioner will seek the full amount of damages allowable under the statute, including reasonable attorneys' fees and costs (740 ILCS 14/20(3)) and statutory damages of $5,000 for every scan of Petitioners' biometric data collected per Section 14/20. Samsung's technology generates and collects biometric data each and every time Petitioners upload a photo or video to Samsung's Gallery App or while using Samsung's Camera Features. As its Gallery App was designed to do, Petitioners capture and save multiple images and videos of themselves on a regular basis. *See* Petition, ¶ 11, Ex. J and How do I use the Gallery app on my Galaxy device? ("The Gallery app is the perfect place to organize all of your videos and photos. Everything you capture from the camera on your phone will automatically be saved to the gallery, but you can also add in or download photos so that you can store all of your memories in the same place.").[7] Petitioners easily meet and exceed $75,000 in damages.

### 3. The Cost of the Requested Equitable Relief from Samsung Far Exceeds the Jurisdictional Minimum Amount

---

[7] *How do I use the Gallery app on my Galaxy device?* SAMSUNG, https://www.samsung.com/uk/support/mobile-devices/how-do-i-use-the-gallery-app/.

Petitioners individually requested both monetary damages and equitable relief. The the equitable relief sought is: "(i) awarding injunctive relief and ordering that Samsung immediately destroy the faceprints, face scans, and facial geometry of the Claimant, and (ii) awarding other equitable relief as is necessary to protect the interests of Claimant, including, *inter alia*, an order requiring [Samsung] to collect, store, use, and share biometric identifiers or biometric information in compliance with BIPA." Petition, ¶ 11, Ex. J. Complying with a favorable award would cost Samsung far in excess of $75,000.

The *Lambert* Court identified three independent "situations in which the cost of equitable relief to a defendant might satisfy the jurisdictional minimum." *Lambert,* 2010 WL 3034212, at *2. Two of those scenarios are applicable here: (i) altering its business practices, and (ii) clerical or ministerial costs of compliance. The underlying claims in this case are that Samsung is violating Illinois' Biometric Information Privacy Act by collecting and storing Petitioners' biometric information without first obtaining informed consent, having proper disclosures in its privacy policy, and having a publicly available retention and destruction policy for the collection and storage of biometric information. *See* Petition, ¶ 11, Ex. J. If a single Petitioner prevails, the cost to Samsung will include monetary damages plus destroying the faceprints, face scans, and facial geometry of the Petitioner, plus the cost of complying with BIPA's requirements. Complying with BIPA's requirements include but are not limited to:

- altering its business practices to:
  - develop and implement software to provide necessary disclosures and obtain informed consent from users;
  - revise its current privacy policy to include the necessary disclosures; and
  - develop and make publicly available a retention and destruction policy for the biometric information it collects;
  - satisfy BIPA's reasonable security requirement;[8] and

---

[8] David J. Oberly, Blank Rome: Satisfying BIPA's Reasonable Security Requirement, (June 2021) https://www.blankrome.com/sites/default/files/2021-06/satisfying_bipas_reasonable_security_requirement.pdf (last viewed on January 18, 2023).

- o ongoing costs of monitoring and maintaining all of the above.

- • clerical or ministerial costs of compliance:
  - o hourly rates for engineers to develop the necessary software to provide disclosures and obtain informed consent;
  - o clerical time spent finding and deleting all of a Petitioner's biometric data, including his/or face template;
  - o hourly rates for regulatory personnel to review and revise the privacy policy;
  - o hourly rates for regulatory personnel to prepare a publicly available retention and destruction policy; and
  - o legal fees for reviewing and confirming compliance.

Courts have found that even a slight change in business practices would entail costs that exceed $75,000. *See e.g., Xydakis v. Target, Inc.,* 350 F.Supp.2d 748, 749 (N.D. Ill. 2004) "the claim would implicate the records of every Target store in at least the United States for a number of years. An effort to comply reasonably (indeed, undoubtedly) would entail costs in excess of $75,000. And that confers subject matter jurisdiction[.]"; *Smith v. Sprint Communications Co., L.P.*, 2003 WL 164230, at *3 (N.D. Ill. Jan. 23, 2003) finding the jurisdictional minimum was met where the injunction sought a telecom company to remove its fiber optic cables from a railroad right of way; and *Uhl,* 309 F.3d 978 wherein the court found the jurisdictional minimum was satisfied where "[Plaintiff] assert[ed] that it is unquestioned that ... [defendant] would have to spend more than $75,000 to avoid the costs of injunction and condemnation even if only his land was involved."

It is undeniable that the cost to Samsung of the requested relief *far* exceeds $75,000 because Samsung does not already have the above in place. These costs easily meet the jurisdictional minimum.

### 4. <u>Venue is Proper in This District</u>

Section 4 of the FAA mandates a geographic link between the venue of the arbitration (*i.e.*, Illinois) and the court determining arbitrability of the asserted claims:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . for an order that such arbitration proceed in the manner provided for in such agreement . . . *The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.*

9 U.S.C. § 4 (emphasis added).[9]

The cases cited by Samsung are distinguishable and do not mandate dismissal. In *Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801 (7th Cir. 2011), the plaintiff franchisees brought a state court action against the defendant franchisor that was removed to federal court. The defendant franchisor moved to dismiss the action, based in part on a broad arbitration clause requiring all disputes to be submitted to arbitration in Texas. *Id.* at 804. The court affirmed the lower court's dismissal, holding that "[i]f the parties agreed to arbitrate all disputes in Texas, then the case was correctly dismissed for improper venue based on the arbitration provision rather than the forum-selection clause." *Id.* at 807. Here, an arbitration proceeding is not currently pending in any particular judicial district since Samsung has refused to participate. However, every Petitioner designated Illinois as the locale to hear their individual arbitration claim. Furthermore, the arbitration clause here does not mandate that the arbitration proceed in any particular venue. Rather, the clause simply provides that the resolution of all disputes "shall be conducted according to the American Arbitration Association

---

[9] The Federal Rules of Civil Procedure govern proceedings under the FAA only to the extent not provided for in the FAA itself. *See* Fed. R. Civ. P. 81(a)(3). Section 6 of the FAA provides: "Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." 9 U.S.C. § 6. Accordingly, a court must review parties' motion papers under the relevant portions of the FAA, applying the Federal Rules of Civil Procedure as a supplement where the FAA is silent. *See Health Servs. Mgmt. Corp. v. Hughes,* 975 F.2d 1253, 1258 (7th Cir.1992) ("Thus, the language of Section 6 preempts the applicability of the Federal Rules[.]"). *S. Ill. Beverage, Inc. v. Hansen Beverage Co.*, 07-CV-391-DRH, 2007 WL 3046273, at *8 (S.D. Ill. Oct. 15, 2007).

(AAA) Commercial Arbitration Rules applicable to consumer disputes," and AAA considers the position of the parties when making its locale determination. *See* Petition, ¶ 2, Exs. B-E, and ¶30, Ex. F, Rule 11.

### 5. Venue is Proper Under the General Venue Statute

Section 1391 governs the venue of "all civil actions" filed in district courts. 28 U.S.C. § 1391(a)(1). The statute provides that an action "may be brought" in three – and only three – locations:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). The Northern District of Illinois is a proper venue because a "substantial part of the events or omissions giving rise to the claim occurred" here for every single Petitioner. *Ford-Reyes v. Progressive Funeral Home,* 418 F. Supp. 3d 286, 290 (N.D. Ill. 2019). "A 'substantial part' is less than a majority, and venue is proper in a district with substantial ties to the claims even if more claim-related events took place in other districts." *Receivership Mgmt., Inc. v. AEU Holdings, LLC*, No. 18 C 8167, 2019 WL 4189466, at *14 (N.D. Ill.Sept. 4, 2019); *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 877 (N.D. Ill. 2015) (test for proper venue is not whether majority of the activities occurred in a particular jurisdiction, but whether a substantial proportion giving rise to the claim occurred in a particular district). "Venue could be proper in more than one place, and the Northern District of Illinois does not have to be

the 'best venue.'" *Ford-Reyes* 418 F. Supp. 3d at 290 (citing *Brito v. Urbino*, 2018 WL 3672743, at *4 (N.D. Ill. 2018); *Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 952-53 (N.D. Ill. 2017)).

Samsung argues that for each individual Petitioner's claims, this District is not where Petitioners reside and, therefore, Samsung would not be "subject to the court's personal jurisdiction to each individual Petitioner's claim." Samsung Br. at 15. Samsung is incorrect.

### i. Venue is Proper as a Substantial Part of the Events Giving Rise to Petitioners' Claim Occurred in This District

As an initial matter, Samsung does not dispute that a "substantial part of the events giving rise" to Petitioners' claim occurred in this District. Samsung's silence is telling. Petitioners assert that venue in this District is proper because: (1) Petitioners reside in this District; (2) Petitioners use and have used their Samsung device(s) to capture images of themselves and their faces while residing in this District; (3) Petitioners have used and uploaded images to the Gallery App while residing in and traveling throughout this District; (4) Samsung's devices deploy technology to collect and capture the biometric data of Petitioners residing in and traveling through this District; (5) the Gallery App employs facial processing and recognition technology to images captured and stored on Samsung devices by Petitioners in this District; (6) Petitioners' biometric data is stored, in part, on their Samsung devices located in this District; and (7) Samsung's technical support services are located within this District. Petition, ¶ 11, Ex. J.

More importantly, Samsung correctly admits that venue is proper in this District for approximately 74% of the Petitioners. See Samsung's Br. at 17 (arguing that Petitioners do not account for the "approximate 14,335 Petitioners listed on Exhibit A that appear to reside outside of this District."). As for the remaining 26%, while those Petitioners may not directly reside within the bounds of this District, venue is still proper in the Northern District for two significant reasons. First, both this Petition and the class action are pending in this District. Samsung moved to compel

30

arbitration in the class case over a year ago, on October 29, 2021. *See G.T.* v. *Samsung Electronics America, Inc.*, No. 1:21-cv-04976, ECF No. 17. Samsung's motion to compel arbitration was pending before this Court while Petitioners filed their individual arbitration demands with AAA. Petition, ¶ 11, Ex. J. Therefore, Samsung, in its own motion and through its own actions already admitted that this District is the proper venue for all claimants residing in Illinois and the District that has the authority to compel arbitration. To transfer the claims of the Petitioners who reside outside of this District to another venue would result in nothing more than inefficiencies and potential inequities. See *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 326–31 (7th Cir. 1995).[10] Second, this District has the strongest ties not only to the Petitioners' claims, but to the class case, and to Samsung's own operations. Samsung does not and has never disputed whether this District has venue over the claims in the class action, which notably, is the same action that Samsung is trying to force Petitioners into. Therefore, by Samsung's own argument, Samsung is admitting that this District is the proper venue to decide the fate of Petitioners' claims. Additionally, since December 18, 2003, Samsung has been registered to do business within the state of Illinois, specifically designating its registered agents address at 208 South LaSalle St., Suite 814, Chicago, IL 60604. *See* Exhibit E. Moreover, Samsung not only has a corporate address located within Chicago but also has numerous "Authorized Service Centers" located within this

---

[10] "The facts of this case offer a textbook demonstration of the inefficiencies and potential inequities to be achieved if the dictates of § 4 are ignored. Merrill Lynch agreed to arbitration in Florida. The parties began preparations for that proceeding. Merrill Lynch then filed the § 4 petition below, followed closely by the filing of the Lauers' § 4 petition in the Northern District of Florida. The result: two ongoing federal court proceedings, both dealing with the pending arbitration. The Florida district court plainly has the authority under § 4 to hear both the Lauers' claim and any defenses or counterclaims Merrill Lynch might choose to raise. Intervention from the Northern District of Illinois court simply adds another layer, when dismissal of this action to allow for a judicial determination of arbitrability in Florida district court—the course proposed in our opinion in Snyder —would have avoided parallel proceedings and promoted the conservation of judicial resources. Intervention from the Northern District of Illinois also raises the disturbing specter of forum-shopping, which can hardly be deemed either an efficient or a desirable result: it undermines the certainty and predictability parties seek when entering written arbitration agreements.").

same district.  *See* Exhibit F.  To transfer or dismiss Petitioners' claims to a venue outside of the Northern District would allow Samsung to engage in purposeful forum shopping and further aid their intent to absolve themselves from liability.

ii.       ***Samsung is Subject to the Court's Personal Jurisdiction to Each Individual Petitioner's Claim***

"A federal court sitting in diversity may exercise personal jurisdiction over a defendant if authorized by the forum state's long-arm statute and the United States Constitution." *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012)   Illinois' long arm statute further provides that a court may also exercise jurisdiction "on any basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."  735 ILCS 5/2-209(c).  Because the Seventh Circuit has found no "operative difference" between the two constitutional limits, Illinois courts typically focus their analysis on whether exercising jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.  *See Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 756–57 (7th Cir. 2010); *Trio v. Turing Video, Inc.*, 1:21-CV-04409, 2022 WL 4466050, at *3 (N.D. Ill. Sept. 26, 2022). Personal jurisdiction comes in the form of general or specific jurisdiction.   Petitioners are proceeding under specific jurisdiction.

Specific jurisdiction, examines whether the defendant has "purposefully directed his activities at residents of the forum" and "the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (internal quotation marks omitted); *see also Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017) ("[T]here must be 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Specific jurisdiction exists when (1) the defendant has

32

purposefully directed its activities at the forum state or purposefully availed itself of the privilege of conducting business in that state, and (2) the alleged injury arise[s] out of or relate[s] to the defendant's contacts with the forum. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024-25 (2021). In other words, when the defendant's suit-related conduct creates a substantial connection with the forum state. *Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State."). Petitioners satisfy both elements.

As an initial matter, Petitioners note that Samsung does not dispute that this court has personal or specific jurisdiction, or the fact that a "substantial part of the events or omissions giving rise to the claim occurred" in Illinois. Samsung Br. at 15-17. Samsung purposefully avails itself of the state by advertising and selling smartphone devices in Illinois, maintaining and employing people in an office within the state, and registering to do business in Illinois. *See* Exhibit D. Samsung also recruits Illinois-based employees to work as sales agents and in tech services. *See* Exhibit E. Samsung's forum-related activities stem from the sale of Samsung Devices and maintenance of the technology contained therein. Therefore, Petitioners' BIPA claims are necessarily connected to Samsung purposefully availing itself of the Illinois mobile device market. *Burger King Corp*, 471 U.S. at 472–73.

**E. Samsung's Mutual Arbitration Agreement Delegates Disputes to Individual Arbitrators**

Samsung has agreed to arbitrate not only Petitioners' underlying claims, but also the parties' disagreements over whether those claims must be arbitrated. Just as this Court should leave the merits of Petitioners' claims to individual arbitrators, it should leave the resolution of the parties' threshold disputes to individual arbitrators. AAA has already determined as much, and that determination accords with well-established Supreme Court precedent.

It is well-established that parties to an arbitration agreement may agree to have an arbitrator decide "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein Inc.*, *v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). And an "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent– A–Center W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

Samsung and Petitioners reached just such an agreement here. The agreement provides that "[a]ny dispute or claim relating in any way to the services or this agreement will be resolved by binding arbitration, rather than in court." *See* Petition, ¶ 2, Exs. B-E (emphasis added). The agreement further incorporates AAA's Consumer Rules, *id.*, which give individual arbitrators the authority to rule on "the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim," Consumer Rule 14(a). The parties have thus agreed to arbitrate threshold questions of arbitrability just as they have agreed to arbitrate the merits of Petitioners' claims. Both of Samsung's claims—that it may force Petitioners' claims out of arbitration and into court, and that each Petitioner seeks improper collective arbitration—are gateway issues that have been delegated by the parties' agreement to arbitrators.

## III.    CONCLUSION

For the reasons set forth above, Petitioners respectfully request that this Court deny Samsung's Motion to Dismiss the Verified Petition to Compel Arbitration.

Dated: January 19, 2022

Respectfully submitted,

LABATON SUCHAROW LLP

/s/ Jonathan Gardner
Jonathan Gardner
Melissa H. Nafash
Jonathan Waisnor
Shannon K. Tully
140 Broadway
New York, NY  10005
Tel: (212) 907-0700
jgardner@labaton.com
mnafash@labaton.com
jwaisnor@labaton.com
stully@labaton.com
*Counsel for Petitioners*

**WALLACE MILLER**
/s/ Mark R. Miller
Mark R. Miller
150 N. Wacker Drive, Suite 1100
Chicago, IL 60606
Tel: (312) 261-6193
Fax: (312) 275-8174
E.mrm@wallacemiller.com
*Local Counsel*