**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| **PAULA WALLRICH, DANIELLE JONES,** | : | Civil Action No: 1:22-cv-05506 |
| **GRANT GRINNELL, JEFFREY BURTON,** | : | |
| **RHONDA MCCALLUM, PROVIDENCIA** | : | Hon. Harry D. Leinenweber |
| **VILLEGAS, and 49,980 other individuals**, | : | |
| | : | |
| *Petitioners*, | : | |
| | : | |
| - against - | : | |
| | : | |
| **SAMSUNG ELECTRONICS AMERICA,** | : | |
| **INC. and SAMSUNG ELECTRONICS CO.,** | : | |
| **LTD**., | : | |
| | : | |
| *Respondents*. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**RESPONDENTS' REPLY IN FURTHER SUPPORT OF THEIR
MOTION TO DISMISS PETITION TO COMPEL ARBITRATION**

Mark Howard Boyle
DONOHUE BROWN MATHEWSON &
    SMYTH LLC
131 South Dearborn Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 422-0900

James L. Kopecky
KOPECKY SCHUMACHER
    ROSENBURG LLC
120 North LaSalle Street, Suite 2000
Chicago, Illinois 60601
Telephone: (312) 380-6552

Randall W. Edwards
Matthew D. Powers (*pro hac vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone: (415) 984-8700

Michael W. McTigue Jr. (*pro hac vice*)
Meredith C. Slawe (*pro hac vice*)
Kurt Wm. Hemr (*pro hac vice*)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Telephone: (212) 735-3000

*Attorneys for Respondents
Samsung Electronics America, Inc. and
Samsung Electronics Co., Ltd.*

Dated: February 9, 2023

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................... ii

INDEX TO EXHIBITS TO FILINGS ........................................................................... vi

PRELIMINARY STATEMENT ......................................................................................1

ARGUMENT ...................................................................................................................4

I.     THE PETITION SHOULD BE DISMISSED BECAUSE PETITIONERS
DECLINED TO ADVANCE RESPONDENTS' ARBITRAL FEES, THE
ARBITRAL PROCEEDINGS HAVE BEEN CLOSED, AND THERE IS NO
RELIEF THAT THIS COURT MAY PROPERLY GRANT ...........................................4

    A.     The AAA's Application Of Its Rules To Petitioners' Demands Was
Straightforward, Consistent With Their Plain Text, And Otherwise Correct..........4

    B.     The Court Does Not Have Authority To Order Payment Of Arbitration
Fees ......................................................................................................................10

    C.     Petitioners Waived Any Right They Might Have Had To Compel
Arbitration, Which Forecloses Granting Them Any Relief..................................15

II.     NO EQUITABLE RELIEF IS APPROPRIATE BECAUSE PETITIONERS
HAVE ADEQUATE REMEDIES AT LAW ..................................................................17

III.     PETITIONERS HAVE NOT SUFFICIENTLY PLEADED A PROPER BASIS
FOR VENUE IN THIS COURT AS TO ALL PETITIONERS .......................................19

    A.     Petitioners Have Not Pleaded A Sufficient Basis For Venue Under The
Pertinent Venue Provision of the FAA, 9 U.S.C. § 204 ........................................20

    B.     Petitioners Have Not Pleaded A Basis For Venue Under The General
Venue Statute, 28 U.S.C. § 1391 ..........................................................................21

IV.     PETITIONERS CANNOT PROCEED COLLECTIVELY VIA THEIR
PETITION...................................................................................................................23

V.     PETITIONERS FAIL TO SHOW THAT EACH OF THEM HAS A VALID
ARBITRATION AGREEMENT WITH SAMSUNG.....................................................23

CONCLUSION...............................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Abernathy v. DoorDash, Inc.,*
438 F. Supp. 3d 1062 (N.D. Cal. 2020) .......................................................................25

*Adams v. Postmates, Inc.*,
414 F. Supp. 3d 1246 (N.D. Cal. 2019), *aff'd*,
23 F. App'x 535 (9th Cir. 2020) ................................................................................12

*Allemeier v. Zyppah, Inc.*,
No. CV 18-7437 PA (AGRX), 2018 WL 6038340 (C.D. Cal. Sept. 21, 2018)...............12

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
No. 06-715 SC, 2011 WL 6014438 (N.D. Cal. Dec. 2, 2011)...................................12, 15

*Billie v. Coverall N. Am.*,
594 F. Supp. 3d 479 (D. Conn. 2022).......................................................................15, 16

*BillingNetwork Pat., Inc. v. Modernizing Med., Inc.*,
No. 17 C 5636, 2017 WL 5146008 (N.D. Ill. Nov. 6, 2017)...........................................22

*BMN Ent., LLC v. Je'Caryous Johnson Ent. LLC*,
No. 22 C 03741, 2022 WL 4094164 (N.D. Ill. Sept. 7, 2022)........................................23

*Brown v. Dillard's, Inc.*,
430 F.3d 1004 (9th Cir. 2005) ....................................................................................14

*Chase Bank USA, N.A. v. Swanson*,
No. 10-CV-06972, 2011 WL 529487 (N.D. Ill. Feb. 4, 2011) .......................................25

*Cota v. Art Brand Studios, LLC*,
No. 21-CV-1519 (LJL), 2021 WL 4864588 (S.D.N.Y. Oct. 15, 2021).............9, 11, 16, 17

*Croasmun v. Adtalem Glob. Educ., Inc.*,
20 C 1411, 2020 WL 7027726 (N.D. Ill. Nov. 30, 2020)...........................................13, 15

*Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*,
588 F.3d 884 (5th Cir. 2009) ........................................................................................11

*Doe v. Rumsfeld*,
No. 07 C 6220, 2008 WL 11518112 (N.D. Ill. May 9, 2008) .........................................22

*Dong v. Garcia*,
553 F. Supp. 2d 962 (N.D. Ill. 2008) ............................................................................21

*Eliasieh v. Legally Mine, LLC*,
    No. 18-CV-03622-JSC, 2020 WL 1929244 (N.D. Cal. Apr. 21, 2020) ............................9

*Faxel v. Wilderness Hotel & Resort, Inc.*,
    No. 19 C 4649, 2019 WL 6467317 (N.D. Ill. Dec. 2, 2019) ...............................................23

*Garcia v. Mason Cont. Prods., LLC*,
    No. 08–23103–CIV, 2010 WL 3259922 (S.D. Fla. Aug. 18, 2010) .................................14

*Gilbert v. I.C. Sys., Inc.*,
    No. 19-CV-04988, 2021 WL 292852 (N.D. Ill. Jan. 28, 2021) ........................................24

*Golin v. Neptune Mgmt. Corp.*,
    704 F. App'x 591 (7th Cir. 2017) ...................................................................................20

*Greco v. Uber Technologies, Inc.*,
    Case No. 4:20-cv-02698-YGR, 2021 WL 134578 (N.D. Cal. Jan. 14, 2021) ..............9, 10

*Grumhaus v. Comerica Sec., Inc.*,
    223 F.3d 648 (7th Cir. 2000) ..........................................................................................16

*Halloran v. Davis*,
    No. 212CV01011CBMCWX, 2013 WL 12153551 (C.D. Cal. Aug. 15, 2013) ...............13

*Heard v. Jenkins*,
    No. 1:21-CV-01374, 2022 WL 4482765 (N.D. Ill. Sept. 27, 2022) ................................23

*Hernandez v. MicroBilt Corp.*,
    No. CV2104238FLWLHG, 2022 WL 16569272 (D.N.J. Oct. 25, 2022) .........................9

*In re Parkland Props., LLC*,
    605 B.R. 509 (Bankr. N.D. Ill. 2019) ............................................................................17

*Iowa Grain Co. v. Brown*,
    171 F.3d 504 (7th Cir. 1999) ..........................................................................................16

*Jones v. Gen. Motors Corp.*,
    640 F. Supp. 2d 1124 (D. Ariz. 2009) ......................................................................12, 15

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
    363 F.3d 1010 (9th Cir. 2004) ........................................................................................10

*McClenon v. Postmates Inc.*,
    473 F. Supp. 3d 803 (N.D. Ill. 2020) .............................................................................13

*McLellan v. Fitbit, Inc.*,
    No. 3:16-CV-00036-JD, 2018 WL 3549042 (N.D. Cal. July 24, 2018) .....................13, 14

*Montgomery v. Markel Int'l Ins. Co. Ltd.*,
    259 F. Supp. 3d 857 (N.D. Ill. 2017) ...............................................................................20

*Moran Indus., Inc. v. Mr. Transmission of Chattanooga, Inc.*,
    No. 09-CV-5563, 2010 WL 11713534 (N.D. Ill. Feb. 9, 2010) ........................................21

*Morgan v. Sundance, Inc.*,
    142 S. Ct. 1708 (2022) ...............................................................................10, 12, 16, 17

*Mullins v. Premier Nutrition Corp.*,
    No. 13-cv-01271-RS, 2018 WL 510139 (N.D. Cal. Jan. 23, 2018) ...................................18

*Nadeau v. Equity Residential Props. Mgmt. Co.*,
    251 F. Supp. 3d 637 (S.D.N.Y. 2017).................................................................................14

*Noble Capital Fund Management, L.L.C. v. US Capital*,
    31 F.4th 333 (5th Cir. 2022) .........................................................................................8, 9

*Pheasant Run, Inc. v. Hutto*,
    No. 98 C 4198, 1998 WL 401545 (N.D. Ill. July 13, 1998) ..............................................21

*Postmates Inc. v. 10,356 Individuals*,
    No. CV202783PSGJEMX, 2020 WL 1908302 (C.D. Cal. Apr. 15, 2020) ......................13

*Qin v. Deslongchamps*,
    31 F.4th 576 (7th Cir. 2022) ...........................................................................................20

*Rapaport v. Soffer*,
    No. 2:10–cv–00935–KJD–RJJ, 2011 WL 1827147 (D. Nev. May 12, 2011)..................14

*Sink v. Aden Enters., Inc.*,
    352 F. 3d 1197 (9th Cir. 2003) ............................................................................. 11, 14-15

*St. Mary's Medical Center of Evansville, Inc. v. Disco Alum. Prods., Co.*,
    969 F.2d 585 (7th Cir. 1992) ...........................................................................................16

*Stavis v. One Techs., LLC*,
    No. 3:21-CV-2753-N, 2022 WL 3274533 (N.D. Tex. July 13, 2022)..................................9

*Steffanie A. v. Gold Club Tampa, Inc.*,
    No. 8:19-CV-3097-T-33TGW, 2020 WL 4201948 (M.D. Fla. July 22, 2020)...................9

*Symbology Innovations, LLC v. Lego Sys., Inc.*,
    282 F. Supp. 3d 916 (E.D. Va. 2017) ...............................................................................22

*Thomas D. Philipsborn Irrevocable Ins. Tr. v. Avon Cap., LLC*,
    No. 11-cv-3274, 2012 WL 4513903 (N.D. Ill. Oct. 1, 2012) ...........................................14

*Tillman v. Tillman*,
    825 F.3d 1069 (9th Cir. 2016) ....................................................................11

*Turner v. Lam Rsch. Corp.*,
    No. 22 C 810, 2022 WL 4356759 (N.D. Ill. Sept. 20, 2022)............................21

*Waters v. Vroom Inc.*,
    No. 22-CV-1191 TWR (AGS), 2023 WL 187577 (S.D. Cal. Jan. 13, 2023) ....................9

## STATUTES

9 U.S.C. § 202 ....................................................................................................20

9 U.S.C. § 203 ................................................................................................19, 20

9 U.S.C. § 204 ....................................................................................................20

28 U.S.C. § 1332 ..................................................................................................20

28 U.S.C. § 1391 .............................................................................................20, 21

## OTHER AUTHORITIES

American Arbitration Association,
    *2021 Annual Report and Financial Statements* ....................................................8

P. Jean Baker,
    *AAA Issues Supplementary Rules for Multiple Case Filings*,
    AM. BAR ASS'N, Sept. 14, 2021 ..........................................................................8

P. Jean Baker,
    *New Rules for Disputes Involving Online Marketplaces and Individuals*,
    AM. BAR ASS'N, Nov. 10, 2021 ...........................................................................8

Aaron Schmidt & Adam Shoneck,
    *Multiple Case Filings in Arbitration*,
    ADVOCATE, Sept. 2022 .......................................................................................8

## INDEX TO EXHIBITS TO FILINGS

### PETITIONERS' INFORMATION

Spreadsheet listing Claimant First Name,
Claimant Last Name, and Claimant City ........................................Pet. Ex. A, ECF No. 1-2

Spreadsheet listing Claimant City, Claimant State,
Claimant Zip, Claim Date, and Locale State ...................MTD Opp. Ex. D, ECF No. 36-4

### MATERIALS RE: PETITIONERS' COUNSEL'S SOLICITATIONS

Labaton Sucharow LLP Facebook post ........................................MTC Opp. Ex. 4, ECF No. 27-4

Facebook posting of September 28, 2022 email
from marketingteam@labaton.com ...................................MTC Opp. Ex. 5, ECF No. 27-5

Excerpts of online discussions
...................MTC Opp. Ex. 6-10, ECF Nos. 27-6 to -10; MTD Reply (this filing), Exs. 2-5

Page from Labaton Sucharow LLP Client Connect Portal ..............MTD Reply (this filing), Ex. 1

### ARBITRAL RULES

American Arbitration Association,
*Consumer Arbitration Rules*
(effective Sept. 1, 2014; as to costs Nov. 1, 2020) ........................ Pet. Ex. F, ECF No. 1-7

American Arbitration Association,
*Supplementary Rules for Multiple Case Filings*
(effective Aug. 1, 2021) ....................................................MTC Opp. Ex. 2, ECF No. 27-2[*]

### CORRESPONDENCE AMONG PARTIES' COUNSEL AND THE AAA

March 21, 2022 letter from Petitioners' counsel
to Samsung legal department..........................................................Pet. Ex. G, ECF No. 1-8

September 6, 2022 letter from Samsung's counsel
to Petitioners' counsel..................................................................Pet. Ex. H, ECF No. 1-9

September 7, 2022 letter from Petitioners' counsel
to Samsung's counsel..................................................................Pet. Ex. I, ECF No. 1-10

---

[*]    Also submitted as MTC Reply Ex. C, ECF No. 35-3 and MTD Opp. Ex. A, ECF No. 36-1.

September 7, 2022 Demand For Arbitration filed with the AAA
on behalf of Petitioner Paula Wallrich ...........................................Pet. Ex. J, ECF No. 1-11

September 16, 2022 email chain between the AAA
and all counsel ...............................................................Pet. Ex. K, ECF No. 1-12

September 26, 2022 letter from Samsung's counsel
to Petitioners' counsel....................................................MTC Opp. Ex. 11, ECF No. 27-11

September 27, 2022 AAA invoice to Petitioners' counsel .......................Pet. Ex. L, ECF No. 1-13

September 27, 2022 email from Petitioners' counsel to the AAA ..........Pet. Ex. M, ECF No. 1-14

September 27, 2022 letter from Samsung's counsel to the AAA .............Pet. Ex. N, ECF No. 1-15

September 28, 2022 email from Petitioners' counsel to the AAA ..........Pet. Ex. O, ECF No. 1-16

September 29, 2022 email chain between the AAA
and all counsel...............................................................Pet. Ex. P, ECF No. 1-17

September 30, 2022 email chain between the AAA
and all counsel...............................................................MTC Opp. Ex. 12, ECF No. 27-12

October 12, 2022 letter from the AAA to all counsel....................MTC Opp. Ex. 3, ECF No. 27-3

October 21, 2022 email chain between the AAA
and all counsel ...............................................................MTC Opp. Ex. 13, ECF No. 27-13

October 31, 2022 letter from the AAA to all counsel...............MTC Opp. Ex. 14, ECF No. 27-14[†]

November 8, 2022 letter from Samsung's counsel
to the AAA...................................................................MTC Opp. Ex. 15, ECF No. 27-15[‡]

November 14, 2022 letter from the AAA to all counsel............MTC Opp. Ex. 16, ECF No. 27-16

November 17, 2022 letter from Petitioners' counsel
to the AAA...................................................................MTC Opp. Ex. 17, ECF No. 27-17

November 28, 2022 email chain between the AAA
and all counsel ...............................................................MTC Opp. Ex. 18, ECF No. 27-18

November 30, 2022 letter from the AAA to all counsel............MTC Opp. Ex. 19, ECF No. 27-19

---

[†]    Also submitted as MTC Reply Ex. A, ECF No. 35-1 and MTD Opp. Ex. B, ECF No. 36-2.

[‡]    Also submitted as MTC Reply Ex. B, ECF No. 35-2 and MTD Opp. Ex. C, ECF No. 36-3.

**OTHER ITEMS**

Various Samsung Terms and Conditions.....................................Pet. Exs. B-E, ECF Nos. 1-3 to -6

Court papers in other matters.................................................Pet. Exs. Q-T, ECF Nos. 1-18 to -21

Transcript of October 19, 2022 conference
     before the Court in this action...........................................MTC Opp. Ex. 1, ECF No. 27-1

Samsung Electronics America, Inc.
     Illinois Certificate of Good Standing...............................MTD Opp., Ex. E, ECF No. 36-5

List of Samsung Repair centers in Chicago area ...........................MTD Opp. Ex. F, ECF No. 36-6

## PRELIMINARY STATEMENT[1]

As Samsung demonstrated in its prior briefing, Petitioners' counsel openly seek to leverage the aggregate administrative fees of tens of thousands of demands for arbitration to force windfall settlements untethered to the merits of any claims, negotiated behind closed doors, and finalized without the scrutiny afforded to class settlements. Such practices unduly enrich attorneys at the expense of consumers and businesses. But Petitioners' counsel were frustrated by Samsung's refusal to fall into line after they demanded that Samsung make an opening bid of at least $50 million to stave off the filing of 50,000 frivolous claims with the American Arbitration Association ("AAA") and avoid the threat of successive waves of additional filings and corresponding arbitral fees. After neither side was willing to pay the hundreds of millions of dollars in fees associated with those demands, the AAA closed the proceedings at Petitioners' request and in accordance with its rules. Petitioners' Opposition does not dispute any of that. Instead, it mischaracterizes— or simply ignores—the legal authority identified by Samsung explaining why the relief that Petitioners seek is not available.

Upset that the AAA rules (specifically designed to address "Multiple Case Filings") actually contemplate the non-payment of fees in connection with mass arbitration filings and create a remedy for non-payment—*i.e.*, the parties may have the disputes heard in court on the merits— Petitioners' counsel filed this action. To be clear, this action is not about vindicating the rights of Petitioners. They can proceed with their underlying claims in court if they actually believe the claims have any merit. This action is a last-ditch attempt by Petitioners' counsel to prevent their

---

[1] Petitioners' Opposition to Samsung's motion to dismiss (ECF No. 36) is referred to as the "Opposition" or "MTD Opp." Petitioners' Reply in support of their motion to compel (ECF No. 35) is referred to as "MTC Reply." Other filings in this action are cited similarly.

practice's business model from collapsing.[2]

There is no relief for this Court to grant here. The AAA handled Petitioners' demands in accordance with its rules, and the proceedings are now closed consistent with those rules and, indeed, at the request of Petitioners' counsel. Petitioners identify no basis or authority for this Court to second-guess the AAA. And, respectfully, this Court may not overrule a private arbitral entity's resolution of a fee question in accordance with its rules, or direct that entity to reopen proceedings that it has closed. The Petition should therefore be dismissed as a matter of law because there is no relief that this Court can properly grant to Petitioners.

The record before the Court on this motion to dismiss is straightforward:

   **(i)**    Beginning in November 2021, Petitioners' counsel solicited tens of thousands of claimants to commence arbitrations against Samsung, hoping to use the specter of hundreds of millions of dollars of arbitral fees to extract a settlement from Samsung. (*See* MTC Opp. Exs. 4-10, ECF Nos. 27-4 to 27-10; Pet. ¶ 4, ECF No. 1; Pet. Exs. G, H, ECF Nos. 1-8, 1-9.) Petitioners are unhappy with that unvarnished description of their strategy (*see, e.g.*, MTC Reply at 1 ("tantrum," "aggression")), but they do not meaningfully dispute that it is what they sought to do. Petitioners' strategy is necessary context for the pertinent AAA rules and Samsung's response to

---

[2]    Petitioners' counsel do not address the substantial questions that Samsung has raised about their purported clients. (*See* MTC Opp. at 14; MTD at 6-7 (noting various deficiencies in list of Petitioners submitted to the AAA including, *inter alia*, deceased individuals, individuals purporting to be represented by other counsel on the same claims, and individuals submitting multiple demands).) Their lack of substantive response to these fundamental questions lays bare their disinterest in the merits of each of their purported clients' claims—rather, their chief concern is establishing the largest "claimant" base possible in order to increase the total arbitration fees that they seek to force Samsung to pay. Indeed, Petitioners' counsel's complaint that Samsung did not do their work for them by identifying "to whom or how many Petitioners" these deficiencies apply (MTD Opp. at 3) only underscores their unwillingness (and failure) to perform even the most basic pre-filing diligence with regard to their purported clients.

Petitioners' commencement of tens of thousands of arbitral proceedings.[3]

**(ii)** In September 2022, after Samsung refused a demand from Petitioners' counsel that Samsung make an opening offer of at least $50 million to settle the proceedings, Petitioners' counsel commenced 50,000 arbitral proceedings against Samsung on their behalf. (*See* MTC Opp. Ex. 11, ECF No. 27-11; Pet. ¶¶ 8, 11, ECF No. 1; Pet. Exs. I, J, K, M, ECF Nos. 1-10, 1-11, 1-12, 1-14.) Samsung, relying on the applicable provisions of the AAA rules, advised the AAA that it declined to pay the arbitral fees for those proceedings. (*See* Pet. ¶¶ 14-15, ECF No. 1; Pet. Ex. N, ECF No. 1-15; MTC Opp. Exs. 14, 15, ECF Nos. 27-14, 27-15.) Petitioners complain that Samsung has "twisted" the AAA rules (MTD Opp. at 1), but the "Multiple Case Filing" rules expressly contemplate that a party may decline to pay arbitral fees in this type of situation and provide remedies in that event.

**(iii)** When Samsung declined to pay those fees, the AAA gave Petitioners and their counsel the opportunity to advance those fees—again, as expressly provided in the AAA rules— with the possibility of recovering them as part of an arbitral award. (*See* MTC Opp. Ex. 16, ECF No. 27-16.) Petitioners' counsel, purportedly on behalf of each of their 49,986 clients, immediately declined to do that. (*See* MTC Opp. Ex. 17, ECF No. 27-17.) Petitioners assert that their refusal to pay those fees is justified because that expense would have been "prohibitive" (MTC Reply at 2), but of course that is the very reason their counsel hoped to use that expense as settlement leverage against Samsung in the first place.

---

[3] Petitioners' counsel have employed the same strategy against other businesses. *E.g.*, *Baker v. Match Group, Inc.*, No. 2022-CH-10435 (N.D. Ill., Dec. 9, 2022). (*See* MTC Opp. at 20-21.) On January 13, 2023, the defendants in *Baker* moved to dismiss that action, noting the "long-running effort by Plaintiff's counsel—Labaton Sucharow LLP—to extract a settlement payment from Defendants based on demonstrably false claims" by threatening to "file thousands of arbitration demands in JAMS—thereby subjecting Defendants to millions of dollars in filing fees." *Baker*, ECF No. 18, at 1, 2.

**(iv)** When Petitioners' counsel advised the AAA that they would not advance the fees, they further requested that the AAA close the arbitral proceedings so they could proceed in court. The AAA has now done that. (*See* MTC Opp. Exs. 18, 19, ECF Nos. 27-18, 27-19.) Again, under the AAA rules, Petitioners are now free to pursue any claims that they genuinely believe are not frivolous in court. *See* Supplementary Rule MC-10(d), (e); AAA Rule R-1(d).

Under those facts, there is no relief that this Court can grant. Samsung declined to pay the arbitral fees but stood ready to arbitrate. After Petitioners declined to advance those fees, the AAA closed the proceedings. The FAA does not empower this Court to order the AAA to re-open those arbitrations. Even if it did, the Court would have no authority to direct that Samsung pay fees when the AAA rules permit Samsung to decline to do so, nor would the Court have the authority to supersede the AAA's interpretation of its own rules. The Petition should therefore be dismissed as a matter of law, because no relief can be granted on it.

In addition, there are numerous independent grounds for dismissal of the Petition:

- Petitioners seek equitable relief here, but they had and continue to have adequate remedies at law.
- Petitioners have failed to plead a sufficient basis for venue in this Court.
- To the extent that Petitioners actually have arbitration agreements with Samsung, they agreed not to bring collective actions like this Petition.
- Each Petitioner has failed to meet their individual burden of establishing that they entered into arbitration agreements with Samsung.

## ARGUMENT

**I.** **THE PETITION SHOULD BE DISMISSED BECAUSE PETITIONERS DECLINED TO ADVANCE RESPONDENTS' ARBITRAL FEES, THE ARBITRAL PROCEEDINGS HAVE BEEN CLOSED, AND THERE IS NO RELIEF THAT THIS COURT MAY PROPERLY GRANT**

### A. The AAA's Application Of Its Rules To Petitioners' Demands Was Straightforward, Consistent With Their Plain Text, And Otherwise Correct

Every step along the way, both the AAA and Samsung proceeded consistently with the

AAA's rules, which are specifically incorporated into Samsung's Arbitration Agreement. Upon Petitioners' filing of their demands with the AAA, the AAA notified the parties that the arbitral proceedings would be governed by *two* sets of AAA rules:

> Based on the filing materials submitted by the claimants, the AAA has determined that the Consumer Arbitration Rules (Consumer Rules) and the Supplementary Rules for Multiple Case Filings (Supplementary Rules) apply to these matters.

(MTC Opp. Ex. 3, ECF No. 27-3.) It is undisputed that the AAA was correct in so determining:

   (i)   The Consumer Rules ("AAA Rules") apply to arbitrations between consumers and businesses. (Pet. Ex. F, ECF No. 1-7.) Petitioners admit those rules governed in these proceedings. (*See* Pet. ¶¶ 29-33.)

   (ii)  The Supplementary Rules—which have been submitted as MTC Opp. Ex. 2, ECF No. 27-2—apply when "twenty-five or more similar Demands for Arbitration [are] filed against or on behalf of the same party or related parties [and] where representation of the parties is consistent or coordinated across the cases." Supplementary Rules, MC-1(b). That is what occurred here—where Labaton filed 50,000 identical demands for arbitration—and Petitioners do not dispute that the Supplementary Rules also apply.

Samsung notified the AAA that it declined to pay the filing fees associated with those proceedings, with the exception of the fees for 14 California claimants:

> After careful consideration, we write to inform the AAA that (assuming the intake requirements are deemed satisfied), to protect the integrity of the process and to vindicate its rights, Samsung will not be paying the Business Filing Fees in connection with the Demands. Samsung is providing notice of its decision at this early stage to ensure that the AAA's resources are conserved. If the Claimants elect to waive arbitration by not paying (directly or through their counsel) all of the AAA filing fees pursuant to their option under AAA Supplementary Rule for Multiple Case Filings 10(d), consistent with AAA R-1(d), Samsung expects that the AAA will decline to administer and "either party may choose to submit its dispute to the appropriate court for resolution." Should the Claimants pay the arbitration fees, Samsung will participate and defend itself vigorously against these meritless claims.

(Pet. Ex. N, ECF No. 1-15 (footnote omitted); *see also* Pet. ¶ 14.)

Samsung did not make this decision lightly. As it explained to the AAA, its decision was a result of (i) Petitioners' counsel's attempts to use the hundreds of millions of dollars of filing fees that Samsung would be asked to pay for 50,000 arbitrations as a lever to coerce a settlement,

(ii) their pursuit of frivolous claims and disclaiming interest in and ignoring key underlying facts on the merits, (iii) their refusal to countenance any efficient approach to the arbitrations such as streamlining or bellwethering of the arbitrations, and (iv) Samsung's own diligence indicating that a substantial number of the demands for arbitration were facially defective and did not involve proper claimants. (*See* Pet. Ex. N, ECF No. 1-15.)[4] Even now, Petitioners' counsel continue to recruit arbitral claimants by misleadingly telling potential clients that a class action would not offer them any relief, notwithstanding the withdrawal of the motion to compel arbitration in the *G.T.* Action: "[I]t is unlikely that your claim could proceed in court. As a result, we've determined that arbitration is the best available option for adult Samsung users." (*See* Ex. 1 hereto.) Not surprisingly, consumers continue to be confused by these statements, believing they are signing up for "free money," as well as being uncertain as to whether they are in fact signing up for a class action lawsuit. (*See, e.g.*, Ex. 2 hereto ("To all my Illinois Peeps, check this out! Need free money? I mean, stupid question right…. The one [against] Samsung could be up to $5,000 a person…. All you need to do is sign up!!! When they settle, you get a check. Easy as that! Go now and get you some. ://clientconnect.labaton.com/").)[5]

In its letter to the AAA (Pet. Ex. N, ECF No. 1-15), Samsung invoked Supplementary Rule MC-10(d), which expressly contemplates that when a respondent facing multiple demands elects not to pay those fees, the AAA will offer the claimant the opportunity to advance the fees:

> If administrative fees, arbitrator compensation, and/or expenses have not been paid in full, the AAA may notify the parties in order that one party may advance the required payment within the time specified by the AAA.

---

[4]  Samsung has continued to perform diligence on that list and has identified further deficiencies—more individuals who are deceased, more individuals purporting to be represented by other counsel on the same claims, and more individuals who do not appear to reside in Illinois.

[5]  *See also* Ex. 3 ("Class action checks are the new tax returns"); Ex. 4 ("Keep the checks coming!"); Ex. 5 ("Better file a claim ya'll").

Supplementary Rule MC-10(d). If those fees are advanced, they may be recouped as part of an arbitral award. *See* AAA Rule R-44(c), (d). Samsung's letter also referred to Rule R-1(d) of the AAA Rules, which explains what may occur if neither party pays the fees:

> Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

AAA Rule R-1(d). The following day, Labaton, on behalf of Petitioners, informed the AAA that it would not be paying those fees. They expressly asked the AAA to close the arbitral cases:

> Claimants decline Samsung's invitation to pay Samsung's fees to arbitrate the cases. Claimants further respectfully request the AAA issue an invoice to Samsung or, if the AAA believes Samsung's statement is sufficient regarding its refusal to pay the business fees, close the cases so Claimants can proceed to court.

(Pet. Ex. O, ECF No. 1-16; *see also* Pet. ¶ 15.) Thereafter, on November 14, 2022, the AAA notified the parties that it would close the arbitral proceedings (except as to the 14 California claimants) and that they could have their disputes resolved in court:

> Based on the claimants' and Samsung's statements declining to pay Samsung's portion of the filing fees for the non-California cases, unless we hear otherwise prior to November 16, 2022, the AAA will close all non-California cases. R-1(d) of the Consumer Arbitration Rules (Consumer Rules), provides, "should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution."

(MTC Opp. Ex. 16, ECF No. 27-16; *see also* MTC Opp. Exs. 17-18, ECF Nos. 27-17, 27-18.)[6] The AAA then closed the proceedings and refunded the fees that Petitioners' counsel had paid for the non-California claimants. (MTC Opp. Ex. 19, ECF No. 27-19.)

All of that is consistent with the express text of the applicable AAA rules. Although Petitioners complain that Samsung has "twisted" the AAA rules (MTD Opp. at 1), Petitioners

---

[6] After the AAA sent this letter advising the parties of its intention to close the arbitral proceedings, Petitioners apparently changed their mind about the desirability of closing those proceedings and instead urged that the AAA stay them pending resolution of this Petition. (*See* MTC Opp. Ex. 17, ECF No. 27-17.) Nevertheless, the AAA closed the proceedings. (MTC Opp. Ex. 14, ECF No. 27-19.)

pointedly do not identify any rule that the AAA failed to apply correctly.  That being said, even if there were any doubt as to the correctness of the AAA's handling of Petitioners' demands under the AAA Rules and the Supplementary Rules, that is exclusively for the AAA to decide:

*First*, the Supplementary Rules expressly provide that "[i]n its sole discretion, the AAA has the authority to interpret and apply these Supplementary Rules."  Rule MC-1(g).  Thus, if there were any cause for doubt here, it must be resolved in favor of the AAA's determinations.

*Second*, Petitioners specifically requested that the AAA close the arbitrations and cannot now be heard to challenge the AAA's determination to do so.  (*See* p. 3 *supra*.)

*Third*, there can be no genuine suggestion that the AAA's application of the plain text of the Supplementary Rules is misplaced under these circumstances.  The AAA developed the Supplementary Rules specifically in contemplation of "large volume filings" such as the mass filing made here by Labaton.[7]  It intended the Supplementary Rules to further its goal of "fair, effective, efficient and economical" resolution of disputes.  *See* Supplementary Rules, "Introduction," at 3.  There is no reason to believe that the AAA misconstrued the provisions of its own Rule MC-10(d) regarding the payment of fees in connection with a large volume filing.

*Fourth*, the law is clear that where, as here, an arbitral body has formally closed arbitrations under its own procedures, courts do not have the authority under the FAA to second-guess that

---

[7]    *See* AAA's *2021 Annual Report and Financial Statements*, at 20 ("On August 1, 2021, the [Labor, Elections, Employment, and Consumer Division of the AAA] introduced the all-new Supplementary Rules for Multiple Case Filings.  These Rules provide for case coordination and administrative efficiencies to assist counsel with management of dozens, hundreds, or even thousands of contemporaneous, individual arbitration cases for disputes where the Employment/Workplace Fee Schedule or the Consumer Fee Schedule apply.").  Several articles by AAA employees further confirm that the Supplementary Rules were developed in response to the use of mass arbitration.  *E.g.*, Aaron Schmidt & Adam Shoneck, *Multiple Case Filings in Arbitration*, ADVOCATE, Sept. 2022; P. Jean Baker, *New Rules for Disputes Involving Online Marketplaces and Individuals*, AM. BAR ASS'N, Nov. 10, 2021; P. Jean Baker, *AAA Issues Supplementary Rules for Multiple Case Filings*, AM. BAR ASS'N, Sept. 14, 2021.

determination and order that body to re-open the proceedings. *See e.g.*, *Noble Cap Fund Mgmt., L.L.C. v. US Cap. Glob. Inv. Mgmt., L.L.C.*, 31 F.4th 333, 336 (5th Cir. 2022) (affirming a district court's denial of a motion to compel arbitration and stay litigation where the arbitration was terminated because of a party's failure to pay arbitral fees, because "the parties still exercised their contractual right to arbitrate prior to judicial resolution in accordance with the terms of their agreements."); *Hernandez v. MicroBilt Corp.*, CV No. 21-04238, 2022 WL 16569272, at *6 (D.N.J. Oct. 25, 2022) (refusing to compel arbitration); *Stavis v. One Techs., LLC*, No. 3:21-CV-2753-N, 2022 WL 3274533, at *2-3 (N.D. Tex. July 13, 2022) ("no basis exists to compel arbitration under FAA after AAA issued its declination letter"); *Steffanie A. v. Gold Club Tampa, Inc.*, No. 8:19-cv-3097-T-33TGW, 2020 WL 4201948, at *4-5 (M.D. Fla. July 22, 2020) (No "legal authority support[s] the proposition that a district court can force an independent arbitration organization such as the AAA to ignore its own rules and re-open a case."). Thus, "[u]nder well-settled caselaw and the AAA's own rules," termination of an arbitration due to nonpayment of fees simply means that a plaintiff may proceed in court. *Eliasieh v. Legally Mine, LLC*, No. 18-CV-03622-JSC, 2020 WL 1929244, at *4 (N.D. Cal. Apr. 21, 2020) (referencing AAA Rule R-1(d)).[8]

Here, the AAA has "the sole discretion" to interpret and apply its rules, and the Court does not have the authority to interfere with that process. *See Cota v. Art Brand Studios, LLC*, No. 21-cv-1519 (LJL), 2021 WL 4864588, at *10 (S.D.N.Y. Oct. 15, 2021) (court order compelling arbitration after the AAA declined arbitration would be "exactly opposite to the respect for the arbitral process and for the right of the arbitrators (and not the court) to decide on arbitration rules and provisions that the FAA is designed to reflect"); *Greco v. Uber Techs., Inc.*, Case No. 4:20-

---

[8]    *Accord Waters v. Vroom Inc.*, No. 22-CV-1191 TWR (AGS), 2023 WL 187577, at *3 (S.D. Cal. Jan. 13, 2023) ("The rules [the parties] chose allow the arbitrator … to stop the administration of the arbitration and to then allow the [p]arties to proceed in court.").

cv-02698-YGR, 2021 WL 134578, at *3 (N.D. Cal. Jan. 14, 2021) ("The [AAA] rules also allow the AAA to decline to administer arbitration 'in its sole discretion.'").

### B. The Court Does Not Have Authority To Order Payment Of Arbitration Fees

Courts do not have authority to order the payment of fees in arbitrations. To the extent Petitioners argue that the Court is somehow empowered to order Samsung to pay fees by the federal policy favoring arbitration (*see* MTD Opp. at 17-19), that argument would not be well taken in light of the Supreme Court's recent decision in *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022). In *Morgan*, the Court held that "[t]he FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules" and "[t]he federal policy is about treating arbitration contracts like all others, ***not*** about fostering arbitration." *Id.* at 1713 (emphasis added). The FAA does not authorize courts to order a party to pay arbitral fees and, in light of *Morgan*, a court cannot otherwise arrogate such a power by "invent[ing]" a "special, arbitration-preferring procedural rule[]." *Id.*

*Morgan* is consistent with the federal courts' longstanding deference to private arbitral entities administering their own rules. For example, in *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010 (9th Cir. 2004), after one party to an arbitration ("Premier") declined to pay fees that had been assessed, the AAA gave the other party ("Lifescan") the option of advancing the fees. Lifescan declined to advance the fees and instead sought a court order requiring Premier to pay the fees. The Ninth Circuit declined to do so, holding that the AAA's resolution of the fee issue was in accordance with its rules:

> This may not be an ideal solution to the problem of a party's failure to pay its share of the fees, but it is well within the discretion of the arbitrators. There is, of course, no totally satisfactory solution in such circumstances, which is doubtless why the AAA rules give arbitrators the flexibility to make the best of a bad situation.

*Id.* at 1013. Here, the AAA Rules and the Supplementary Rules specifically contemplate what

happens if one party declines to pay fees: the arbitration will proceed if the other party advances the fees, and if not, the cases will be closed and the parties can address their claims in an appropriate court. (*See* MTD at 3-4; MTC Opp. at 5-6.)  The AAA, exercising "its sole discretion" (Supplementary Rules, MC-1(g)), applied its rules and this Court should decline to take any action to undermine that decision. *Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 888 (5th Cir. 2009) (citing *Lifescan*) (district court erred by compelling party to pay AAA deposit; "Such conditions precedent to arbitration are procedural issues left to the discretion of the arbitrators."); *accord Cota*, 2021 WL 4864588, at *10.

The Ninth Circuit reinforced its *Lifescan* precedent in *Tillman v. Tillman*, 825 F.3d 1069, 1072-74 (9th Cir. 2016), on which Petitioners seek to rely here.  (MTD Opp. at 17-18.)  In that case, a client's malpractice claim against a law firm was stayed in favor of AAA arbitration.  When the client was unable to pay a fee deposit that the AAA required, the firm declined to advance the deposit, and the AAA terminated the arbitration.  The firm argued that because the arbitration had been terminated, the client's claim in court should also be dismissed.  *See id.* at 1071-73.  The Ninth Circuit disagreed, holding that "[n]othing in the FAA requires dismissal of the litigation" for non-payment of arbitration fees.  *Tillman*, 825 F. 3d at 1075.  The court did not hold it could order a party to pay arbitration fees.  In *dicta*, the court, "mindful, of course, of the 'liberal federal policy favoring arbitration,'" *id.*, speculated that an order to pay fees may be proper in a case of "intentional noncompliance" with the arbitrator's rules, *id.* at 1074 & n.1 (citing *Sink v. Aden Enters., Inc.*, 352 F.3d 1197 (9th Cir. 2003)), but expressly did not decide that question.  Here, Samsung did not refuse to engage with the AAA: it proceeded in accordance with the AAA's rules and it stood ready to arbitrate.  Moreover, in light of *Morgan*, it is clear that the "federal policy favoring arbitration," *Tillman*, 825 F. 3d at 1075, does not authorize a federal court to override the

11

AAA's resolution of a fee question in accordance with its rules. *See Morgan*, 142 S. Ct. at 1713 ("[T]he FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration preferring procedural rules"). Accordingly, the Ninth Circuit's *dicta* in *Tillman* does not provide any authority for ordering payment of fees.

In *Allemeier v. Zyppah, Inc.*, No. CV 18-7437 PA (AGR), 2018 WL 6038340 (C.D. Cal. Sept. 21, 2018) (cited at MTD Opp. at 13-14, 18, 20), an employer in an AAA arbitration involving a single employee sought to have the arbitration heard elsewhere. In ordering the employer to cooperate with the AAA arbitration, including paying AAA fees, the court cited the *dicta* in *Tillman*, *see id.* at *4, which (as noted above) was based on reasoning that is in conflict with the Supreme Court's recent holding in *Morgan*. The court did not otherwise address precedents or rationale supporting its decision that a party may be ordered to pay arbitration fees.[9]

Samsung's moving brief cited numerous other authorities holding that a court does not have the authority to order a party to pay arbitral fees. (*See* MTC Opp. at 28-30; MTD at 11-12.) Petitioners do not distinguish those authorities and indeed actually seek to rely on some of them:

- In *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1255 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535 (9th Cir. 2020) (cited at MTD Opp. at 17), the court, noting that the AAA's Commercial Arbitration Rules (which were specifically incorporated into the applicable arbitration agreement), "include provisions regarding the payment of arbitration fees … as well the available remedies for

---

[9] The *Allemeier* court cited two other cases as "*see also*" support for its decision. 2018 WL 6038340, at *4. Neither case addressed whether a court could order a party to pay arbitration fees. *See Jones v. Gen. Motors Corp.*, 640 F. Supp. 2d 1124, 1146 (D. Ariz. 2009) (compelling party to arbitrate a products liability dispute where he argued that his claims were outside the scope of the FAA and had commenced litigation in court); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-715 SC, 2011 WL 6014438, at *5 (N.D. Cal. Dec. 2, 2011) (compelling party to arbitrate an employment dispute in that district over the party's objection that each arbitration must take place in the geographic vicinity of where the dispute arose).

non-payment," and citing *Lifescan* and *Dealer*, declined to order payment of fees.  In *Postmates Inc. v. 10,356 Individuals*, No. CV202783PSGJEMX, 2020 WL 1908302 (C.D. Cal. Apr. 15, 2020) (cited at MTD Opp. at 17), a subsequent decision arising out of the same dispute, the court did not rule on whether it could order the payment of fees.

- In *McClenon v. Postmates Inc.*, 473 F. Supp. 3d 803, 812 (N.D. Ill. 2020) (cited at MTC Reply at 17-18), Judge Rowland, noting that the AAA's rules governed the arbitration and citing *Dealer*, declined to order payment of fees.

- Likewise, in *Croasmun v. Adtalem Glob. Educ., Inc.,* No. 20 C 1411, 2020 WL 7027726, at *4 (N.D. Ill. Nov. 30, 2020) (cited at MTD Opp. at 12), Judge Lefkow, citing *McClenon*, declined to order payment of fees, holding that that dispute "is for the arbitrator to decide."[10]  Here, the AAA has already resolved the fee issue.

The handful of other authorities on which Petitioners rely (*see* MTD Opp. at 13, 17-18) are all outside the mass arbitration context and are otherwise distinguishable:

- In *Halloran v. Davis*, No. 212CV01011CBMCWX, 2013 WL 12153551 (C.D. Cal. Aug. 15, 2013) (cited at MTD Opp. at 13), the "sole issue" before the court was "whether Plaintiff waived arbitration by filing the instant litigation," *id.* at *1, and the court's summary statement at the conclusion of its opinion that the parties should "pay arbitration fees and costs as required by the rules and procedures of the AAA," *id.*, was not analyzed at any length.

- In *McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2018 WL 3549042 (N.D. Cal. July 24, 2018) (cited at MTC Reply at 19), the issue was not whether the court could order payment of arbitral fees but whether a party "lost the right to arbitrate" by failing to pay fees. *Id.* at *4.

---

[10]  Petitioners mischaracterize *Croasmun* as having "held" that "refusal to pay the filing fees blocks the door to the arbitrator and thus is a breach of the agreement to arbitrate." (MTD Opp. at 14.)  That was an argument made by the petitioners there, not a holding of the court.  *Id.* at *4.

13

Further, Samsung is not seeking to invoke substantive unconscionability to invalidate agreements with any Petitioners. Petitioners' argument that Samsung has the "burden" to show that any such arbitration agreements are invalid because "arbitration would be prohibitively expensive" thus addresses an argument that Samsung never made. (MTD Opp. at 18.)

Finally, in the cases that Petitioners rely upon for their contention that Samsung's decision not to pay fees "blocked" the arbitrations (*see* MTD Opp. at 14-15; MTC Reply at 7-8), the courts held that the non-paying party waived its right to compel arbitration of that dispute—***not*** that the non-paying party could be compelled to pay the fees.[11] *See Thomas D. Philipsborn Irrevocable Ins. Tr. v. Avon Cap., LLC*, No. 11C3274, 2012 WL 4513903, at *5 (N.D. Ill. Oct. 1, 2012) (Leinenweber J.) (defendants "waived any right to arbitrate" by failing to pay fees and declining to compel arbitration); *Nadeau v. Equity Residential Props. Mgmt. Co.*, 251 F. Supp. 3d 637, 641 (S.D.N.Y. 2017) (defendant that had refused to arbitrate "therefore cannot use the [a]greement to compel arbitration"); *Garcia v. Mason Cont. Prods., LLC*, No. 08–23103–CIV, 2010 WL 3259922, at *4 (S.D. Fla. Aug. 18, 2010) (by "default[ing] on the parties' contractual rules, Defendant can no longer claim entitlement to stay or dismissal as per § 3 of the FAA"); *Rapaport v. Soffer*, No. 2:10–cv–00935–KJD–RJJ, 2011 WL 1827147, at *2 (D. Nev. May 12, 2011) ("[T]he failure by a party to pay fees in arbitration will prevent that party from successfully moving to compel arbitration in the same case in the future"); *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005) (declining to compel arbitration where defendant "breached the arbitration agreement itself by refusing to arbitrate"); *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1199-1200

---

[11] While Samsung has paid the filing fees for the 14 California claimants, who are not Petitioners in this case, this is only because of a specific California state statute, SB 707, that may apply to those 14 claimants—as Petitioners concede (*see* MTD Opp. at 12, 16).

14

(9th Cir. 2003) (defendant's failure to pay fees "waived its right to arbitrate").[12]

### C.      Petitioners Waived Any Right They Might Have Had To Compel Arbitration, Which Forecloses Granting Them Any Relief

As Petitioners' counsel have previously asserted, "'arbitration clauses are only forum selection provisions and a party can waive an agreement about who decides a dispute.'" (MTC Opp. at 24, quoting *In re Puerto Rican Cabotage Antitrust Litig. MDL 1960*, No. 3:08-md-01960, ECF No. 616 at 2 (D.P.R. Aug 13, 2008) (Labaton as counsel for plaintiffs).) Here, Petitioners had a choice between (i) advancing the filing fees and seeking to recoup them in the arbitration and (ii) permitting the arbitral cases to be closed and proceeding in court. Through their counsel, they elected not to advance the fees and asked that the cases be closed. (Pet. Ex. O, ECF No. 1-16.) By doing so, they waived their right to compel arbitration.

Petitioners' Opposition misstates the waiver standard and thus misanalyzes this issue. Petitioners rely on precedents stating that in light of a federal policy that favors arbitration, parties asserting waiver bear a heavy burden, and waiver is not to be lightly inferred. (*See* MTD Opp. at 19-21, MTC Reply at 9-10.) They assert that "[w]hether a party waived their right to arbitration is determined by a two-part test: (1) under a totality of the circumstances, has the party acted inconsistently with its arbitration right, and (2) by doing so, has that party prejudiced the other party." (MTD Opp. at 19-20 (citing *Billie v. Coverall N. Am.*, 594 F. Supp. 3d 479, 496 (D. Conn. 2022)).) This is not a correct statement of the law. The Supreme Court very recently resolved a

---

[12]      Petitioners cite other decisions where the court granted a motion to compel arbitration (*see* MTD Opp. at 14-15), but those cases did not involve the payment of arbitration fees. *See Jones*, 640 F. Supp. 2d at 1145 (granting motion to compel arbitration where the party "resisted arbitration and unambiguously manifested an intention not to arbitrate the subject matter of this dispute"); *Beauperthuy*, 2011 WL 6014438, at *2, *4 (party's rejection of "arbitration demands constitute[d] a failure to arbitrate"). In *Croasmun*, 2020 WL 7027726, at *4-5, the court compelled arbitration but ***declined*** to order payment of fees because "the dispute over JAMS's filing fees is for the arbitrator to decide."

circuit split on the standard for waiver of arbitration, adopting the longstanding view of the Seventh Circuit[13] that a party may be deemed to have waived arbitration ***without*** a showing of prejudice to the other party. *Morgan*, 142 S. Ct. at 1713-14. All of Petitioners' waiver cases (*see* MTD Opp. at 19-21; MTC Reply at 9-15) pre-date *Morgan*.

The test for whether Petitioners waived their right to arbitration is whether they "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Morgan*, 142 S. Ct. at 1714; *see also Dominick's Finer Foods, Inc. v. Makula*, 217 B.R. 550, 555 (N.D. Ill. 1997) (Leinenweber, J.) (under Illinois law, waiver is "the voluntary and intentional relinquishment of a known right" (citation omitted)), *aff'd sub nom. In re Makula*, 172 F.3d 493 (7th Cir. 1999). Here, Petitioners' counsel, ostensibly on behalf of each Petitioner, knowingly declined the AAA's invitation pursuant to its rules to advance the fees and then requested that the AAA close the arbitrations so they could proceed in court. *See Grumhaus*, 223 F.3d at 650 ("[W]e have held that a court must presume that a party implicitly waived its right to arbitrate when it chooses a judicial forum for the resolution of a dispute."). Courts have repeatedly held that a party's refusal to proceed with arbitration by declining to advance the opposing party's unpaid fees is "inconsistent[] with the right to arbitrate." *Cota*, 2021 WL 4864588, at *9-10 (the party "[chose] not to pay the arbitral fees and [took] action that it knew would result in the termination of the arbitration"); *Billie*, 2022 WL 807075, at *13 (D. Conn. Mar. 16, 2022) ("[I]f a party seeks to compel arbitration, then refuses an opportunity to advance costs to ensure that the arbitration takes place, it acts

---

[13] *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods., Co.*, 969 F.2d 585, 590 (7th Cir. 1992). Indeed, Petitioners' own authorities recognize this as the Seventh Circuit's position. *See Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 648, 651 (7th Cir. 2000) (cited in MTC Reply at 10) ("[W]e held that 'a court may find waiver even if [the decision to forego arbitration] did not prejudice the non-defaulting party." (quoting *St. Mary's*, 969 F.2d at 590)); *Iowa Grain Co. v. Brown*, 171 F.3d 504, 509 (7th Cir. 1999) (cited in MTC Reply at 10) ("[T]he party asserting waiver need not show that it would be prejudiced by an order compelling arbitration.").

inconsistently with its contractual arbitration right"); *see also In re Parkland Props., LLC*, 605 B.R. 509, 522-523 (Bankr. N.D. Ill. 2019) (a party's failure to take steps to invoke contractual option to finance sale impliedly waived any rights to exercise such option). Petitioners thus waived any rights they might have had to compel arbitration.

Petitioners variously suggest that a waiver could only be found if a business refuses to advance fees allocated to a consumer and not the other way around (MTD Opp. at 21), but no authority so holds. Petitioners also argue that a party must make a showing of financial hardship to avoid imposition of a waiver (MTC Reply at 13-14), asserting that arbitration was not compelled in *Cota* because the non-paying party demonstrated it was unable to pay the fees at issue. (*See* MTD Opp. at 20-21.) But *Cota* did not hold that a waiver could only be premised on an inability to pay fees—as the court explained, the "key factor" is simply "whether the party fails to take [] action available to it to keep the arbitration alive and thus acts inconsistently with the right to arbitrate." 2021 WL 4864588, at *10. Nor, in view of *Morgan*, could a court "invent special, arbitration-preferring procedural rules" requiring such a showing in order "to tilt the playing field in favor of (or against) arbitration." *Id.* at 1713, 1714.[14]

## II. NO EQUITABLE RELIEF IS APPROPRIATE BECAUSE PETITIONERS HAVE ADEQUATE REMEDIES AT LAW

Petitioners are effectively seeking an equitable remedy—an order directing Samsung to

---

[14] Petitioners also contend that to hold that a party waives its right to arbitrate if it declines to advance fees under Supplementary Rule MC-10(d) "would conflict with the express language of AAA Rule 37 and Rule 49(a)." (MTC Reply at 12.) But those rules state that certain actions a party takes *in court* will not be deemed a waiver of its arbitration rights. Those rules do not address steps that a party may or may not take *in the arbitration*—here, Petitioners' decision to not to advance filing fees and instead to request that the AAA "close the cases so Claimants can proceed to court." (Pet., Ex. O.) And even if MC-10(d) did conflict with AAA Rules 37 and 49(a)—which it does not—the Supplementary Rules further provide that "[w]here inconsistencies exist among these Supplementary Rules and other AAA rules [that apply to the dispute], these Supplementary Rules shall govern." Supplementary Rule MC-1(d); *see id.*, MC-1(a).

pay arbitration fees—but they are not entitled to such relief given that they had adequate remedies at law: advance the fees and seek to recoup them in the arbitration, or proceed in court.  Petitioners' contentions to the contrary are not well taken:

(i)     Petitioners assert that "[a]dvancing $200 million in arbitration fees" is not "a sufficient remedy at law."  (MTC Reply at 15.)  But no individual Petitioner would have had to pay $200 million: rather, individual Petitioners could have advanced the fees relating to their own individual demand if they wished to press their claims in arbitration.  Alternatively, Petitioners' counsel could have advanced the fees (for some or all of the arbitrations), just as they advanced all 49,986 Petitioners' initial filing fees.

(ii)    Petitioners' putative concern that the proposed class action pending in this District may not provide them with any recovery (*see* MTC Reply at 16) does not mean that it is an inadequate alternative to arbitration.  They would not be assured of recovery in arbitration either: Samsung has asserted in both the *G.T.* Action and these arbitrations that Petitioners' claims are without merit.  Dismissal of equitable claims depends on "whether an adequate remedy is available, not whether the plaintiff … will be successful in that pursuit."  *Mullins v. Premier Nutrition Corp.*, Case No. 13-cv-01271-RS, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018).

(iii)   Petitioners' contention that the arbitrations will be more efficient than any class action (*see id.*) is unconvincing: the costs associated with a class action would be significantly lower and resolution of all claims would likely occur earlier.[15]  This position is also contrary to the position that their counsel have taken in numerous other putative class actions.  (*See* MTC Opp. at 27.)  Petitioners' counsel do not dispute that a consolidated putative class action complaint is

---

[15]   It is also disingenuous because Petitioners refused to consider any procedures to make resolution of the claims in arbitration more efficient, such as streamlining or bellwethering.

pending in this District against Samsung with substantively identical claims. The consolidated amended complaint in the *G.T.* Action—which was filed by the Keogh and Lowey firms, the latter of whom also serves with Labaton as co-counsel in the *Baker* action (*see* MTC Opp. at 20)— emphasizes that a "[c]lass action is superior to other available methods for the fair and efficient adjudication of this controversy." *G.T. v. Samsung Elecs. Am., Inc.*, No. 1:21-cv-04976, ECF No. 50 at ¶ 224 (N.D. Ill. Sep. 20, 2021).

Notably, in the *Baker* litigation (*see* n.3 *supra*), when JAMS determined that the claims asserted in arbitration should proceed individually before small claims courts—thereby eliminating the specter of tens of millions of dollars of arbitral fees—Labaton swiftly changed tactics and filed a putative class action complaint, arguing (contrary to their current position) that the defendants "waived their right to arbitration" after requesting "administrative closure of all claims." (Compl., *Baker*, ECF No. 1-2, ¶¶ 33, 38, 52 (N.D. Ill. Dec. 09, 2022).)

## III. PETITIONERS HAVE NOT SUFFICIENTLY PLEADED A PROPER BASIS FOR VENUE IN THIS COURT AS TO ALL PETITIONERS

Petitioners inexplicably devote six full pages of their Opposition (MTD Opp. at 21-27) to arguing that this Court has subject matter jurisdiction over this action because diversity jurisdiction is present. But Samsung's motion to dismiss is directed not to jurisdiction, but to venue. Samsung simply pointed out—in a section entitled "CORRECTIVE NOTE ON JURISDICTION"—that Petitioners pleaded the incorrect basis for jurisdiction and that "this Court ***does*** have subject matter jurisdiction over this action under Section 203 of the FAA." (MTD at 9 (emphasis added).) 9 U.S.C. § 203 is the only basis for subject matter jurisdiction over this action, and Petitioners' contention that the prerequisites of diversity jurisdiction have been satisfied is just wrong: Samsung Electronics America, Inc. is organized under New York law (*see* Pet., ECF No. 1, ¶ 22), and one of the Petitioners is represented to reside in New York. (*See* MTD Opp. Ex. D, ECF No.

19

36-4, at 1072 (entry for "Claimant City" of "Brooklyn, NY").)  Diversity is therefore not present here.  28 U.S.C. § 1332 (a)(1).[16]

Here, Petitioners have failed to sufficiently plead that venue is proper as to each individual Petitioner under both the pertinent FAA venue provision, 9 U.S.C. § 204, and the general venue statute, 28 U.S.C. § 1391.  That independently warrants dismissal of the Petition.

### A.  Petitioners Have Not Pleaded A Sufficient Basis For Venue Under The Pertinent Venue Provision of the FAA, 9 U.S.C. § 204

The analysis under Section 204 of the FAA is straightforward.  That section provides that an action to enforce an arbitration agreement—like this Arbitration Agreement—that falls within the category of agreements described in 9 U.S.C. § 202:

> may be brought [i] in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought, or [ii] in such court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States.

9 U.S.C. § 204.  Neither of those criteria is satisfied here.  Petitioners could not bring this action in this Court absent reliance on the Arbitration Agreement because the only basis for subject matter jurisdiction is 9 U.S.C. § 203.  Petitioners also concede that "an arbitration proceeding is not

---

[16]  For diversity to be satisfied, "there must be 'complete diversity between all plaintiffs and all defendants,'" *Montgomery v. Markel Int'l Ins. Co. Ltd.*, 259 F. Supp. 3d 857, 864 (N.D. Ill. 2017) (citation omitted), and in that analysis a corporation is deemed to be a resident of both "its state of incorporation and the state where it maintains its principal place of business." *Qin v. Deslongchamps*, 31 F.4th 576, 579 (7th Cir. 2022).  Complete diversity is not present where, as here, residents of the same state are on both sides of the "v."  *See* 28 U.S.C. § 1332 (a)(1).

In addition, Petitioners' effort to establish the amount in controversy by referring to their BIPA claims ignores that their Petition does not allege those claims: rather, it demands the payment of arbitral fees, which albeit substantial in the aggregate fall far short of $75,000 for each Petitioner.  Petitioners' alternative suggestion that the equitable relief requested by their arbitral demands "would cost Samsung far in excess of $75,000" (MTD Opp., at 25-27) is mere speculation and cannot serve as a basis for establishing the amount in controversy. *See Golin v. Neptune Mgmt. Corp.*, 704 F. App'x 591, 595 (7th Cir. 2017).

currently pending in any particular judicial district" and that "the arbitration clause here does not mandate that the arbitration proceed in any particular venue." (MTD Opp. at 28.) Accordingly, Petitioners have failed to plead a sufficient basis for venue under Section 204.[17]

**B.** **Petitioners Have Not Pleaded A Basis For Venue Under The General Venue Statute, 28 U.S.C. § 1391**

Petitioners also fail to establish venue pursuant to the general venue statute because they do not adequately plead that for each Petitioner's claims, this District is either "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred" or "a judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(2)-(3). Petitioners' responses lack merit:

(i) Petitioners are wrong to assert that "Samsung does not dispute that a 'substantial part of the events giving rise' to Petitioners' claim occurred in this District" (MTD Opp. at 30). Samsung's motion plainly stated that Petitioners failed to allege for each individual Petitioner that "a substantial part of the events giving rise to the claim occurred" in this District. (MTD at 15.) Petitioners' conclusory assertions to the contrary (MTD Opp. at 30-31) do not suffice to establish venue.[18] There is no allegation that any part of the parties' dispute over arbitration took place in

---

[17] Petitioners contend—without citation to any authority—that venue in this Court is proper because "every Petitioner designated Illinois as the locale to hear their individual arbitration claim." (MTD Opp., at 28.) Petitioners' desire to have their claims heard in a specific venue, without more, does not satisfy their burden of establishing venue. *E.g.*, *Dong v. Garcia*, 553 F. Supp. 2d 962, 964 (N.D. Ill. 2008) ("Plaintiff bears the burden of establishing venue is proper.").

[18] *E.g.*, *Turner v. Lam Rsch. Corp.*, No. 22 C 810, 2022 WL 4356759, at *2 (N.D. Ill. Sept. 20, 2022) ("Conclusory allegations in an opposition brief unsupported by any admissible evidence are insufficient to meet [plaintiff]'s burden of" establishing venue.); *Pheasant Run, Inc. v. Hutto*, No. 98 C 4198, 1998 WL 401545, at *1 (N.D. Ill. July 13, 1998) (to establish venue, "something more than that barebones conclusory assertion is certainly needed to demonstrate a good faith predicate for haling [the defendant] into court in the Northern District of Illinois"); *Moran Indus., Inc. v. Mr. Transmission of Chattanooga, Inc.*, No. 09-CV-5563, 2010 WL 11713534, at *2 (N.D. Ill. Feb. 9, 2010) (rejecting "conclusory assertions that venue is proper").

this District. Even if it were appropriate to look through to the BIPA claims alleged in Petitioners' arbitral demands to determine whether venue is proper in this District—and Petitioners offer no authority suggesting that is proper—those allegations also fall short. The Court may not simply assume that each of the 49,986 Petitioners "are Samsung Galaxy device users" (Pet. ¶ 21), let alone assume that each of them used their Samsung devices (which is the activity purportedly giving rise to their BIPA claims) in this District, particularly given that it is admitted that 14,335 Petitioners do not even reside in this district. (MTD Opp. at 30.) Their further speculation that all Petitioners may have used their devices "while residing in and traveling throughout this District" (*id.*) is mere guesswork.

(ii)     Petitioners suggest that because Samsung has not disputed venue in the *G.T.* Action, it should be deemed to have agreed to venue in this action. (MTD Opp. at 30-31.) Petitioners offer no authority for this proposition and it has been rejected elsewhere. *E.g.*, *Doe v. Rumsfeld*, No. 07 C 6220, 2008 WL 11518112, at *2 (N.D. Ill. May 9, 2008).

(iii)     Petitioners suggest that venue is appropriate because "Samsung has been registered to do business within the state of Illinois." (MTD Opp. at 31, 33.) But it is well settled that registration with state authorities is insufficient by itself to establish venue.[19]

(iv)     Petitioners contend that venue is established because Samsung is subject to this Court's specific personal jurisdiction over each individual Petitioner's claims. (MTD Opp. at 32-33.) But allegations about Samsung's activity directed at Illinois generally—such as "advertising and selling smartphone devices in Illinois, maintaining and employing people in an office within

---

[19]  *See BillingNetwork Pat., Inc. v. Modernizing Med., Inc.*, No. 17 C 5636, 2017 WL 5146008, at *2 (N.D. Ill. Nov. 6, 2017) (holding venue improper and noting "[t]hat a defendant is registered to do business in a particular state has no bearing on whether it has the requisite 'physical place' of business in the state, let alone in a particular judicial district"); *accord Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 931 (E.D. Va. 2017).

the state, and registering to do business in Illinois" (*id.* at 33)—that are not meaningfully tethered to Petitioners' demands for arbitration or their putative BIPA claims cannot suffice to establish personal jurisdiction as to each individual Petitioner's claims.[20]

## IV.   PETITIONERS CANNOT PROCEED COLLECTIVELY VIA THEIR PETITION

Petitioners do not dispute that the Arbitration Agreement expressly provides that they may not seek relief via a class or collective proceeding.   Indeed, that is their counsel's putative justification for filing 50,000 individual demands for arbitration.   Nonetheless, their counsel brought this collective action on behalf of 49,986 individuals in violation of that very same agreement.   Petitioners now contend that Samsung's argument "that each Petitioner seeks improper collective ***arbitration***" is a "gateway issue[]" that has been "delegated by the parties' agreement to arbitrators."   (MTD Opp. at 34 (emphasis added).)   But Samsung's argument is not that Petitioners violated this provision in the now-closed arbitrations before the AAA: rather, this Petition itself, brought in this Court on behalf of nearly 50,000 Petitioners, violates the Arbitration Agreement's collective action waiver.   That is an independent ground for dismissal.

## V.   PETITIONERS FAIL TO SHOW THAT EACH OF THEM HAS A VALID ARBITRATION AGREEMENT WITH SAMSUNG

Petitioners acknowledge, as they must, that even where an arbitration agreement contains a delegation clause, a court must still "determine that the parties entered into a valid arbitration

---

[20]   *E.g., Heard v. Jenkins*, No. 1:21-CV-01374, 2022 WL 4482765, at *3 (N.D. Ill. Sept. 27, 2022) (plaintiff "fail[ed] to sufficiently allege any of the elements necessary to show specific jurisdiction" by relying on "broad and general statements about the Defendants' business activities"); *BMN Ent., LLC v. Je'Caryous Johnson Ent. LLC*, No. 22 C 03741, 2022 WL 4094164, at *5 (N.D. Ill. Sept. 7, 2022) ("because the sale of tickets . . . is not tied to [plaintiff]'s claims, such conduct is unrelated to this suit and irrelevant for purposes of specific personal jurisdiction"); *Faxel v. Wilderness Hotel & Resort, Inc.*, No. 19 C 4649, 2019 WL 6467317, at *4 (N.D. Ill. Dec. 2, 2019) ("the Court is not aware of any case holding that a plaintiff's injury . . . is sufficiently connected to the defendant's advertising contacts in the forum state to support personal jurisdiction").

23

agreement." (MTD Opp. at 7; *see also* MTC at 9 (notwithstanding delegation clause, the Court must still "determine that the parties have entered into a valid arbitration agreement" before it can grant a motion to compel).). *Accord Gilbert v. I.C. Sys., Inc.*, No. 19-CV-04988, 2021 WL 292852, at *7 (N.D. Ill. Jan. 28, 2021) (Valderrama, J.). While the Court need not reach this question for all the reasons articulated above, Petitioners' failure to show that each of them entered into an arbitration agreement with Samsung also warrants dismissal.

Petitioners have presented no evidence to show that each of them entered into an arbitration agreement with Samsung. Their Petition is entitled "Verified Petition," but no verifications are attached. Exhibit A to the Petition contained only the first and last name and "Claimant City" of each Petitioner, which is not evidence each of them had an arbitration agreement with Samsung. (*See* MTD at 15-16, 19.) The fact that Samsung has previously sought to enforce arbitration agreements that it has with **others** (*see* MTD Opp. at 7-9) also does not show that any of **these** Petitioners entered into an arbitration agreement with Samsung.

Nor is the claimant list that Petitioners submitted to the AAA sufficient evidence that any of them, let alone all of them, have an arbitration agreement with Samsung.[21] Petitioners assert that list contains information that "is more than sufficient for **Samsung** to identify each claimant." (MTD Opp. at 9 (emphasis added).) Even if that list had been presented in full here, Samsung identified various deficiencies with both the initial and revised claimant lists submitted to the AAA, including that they contained deceased individuals, individuals purporting to be represented by other counsel for the same claims, and individuals who had submitted multiple demands. (*See*

---

[21] Petitioners filed redacted versions of this list as Exhibit A to their Petition (ECF No. 1-1) and Exhibit D to their Opposition (ECF No. 36-4) that include only a name, city, state, ZIP code, and "Claim Date" for each Petitioner. None of that information shows the existence of an arbitration agreement and it does not remedy the deficiencies in that list described herein.

MTC Opp. at 14-15.)[22]  Courts addressing this issue in the context of a mass filing have required more substantive evidence, such as affidavits, declarations, or similarly substantiated individualized proof.  *See Abernathy v. DoorDash, Inc.,* 438 F. Supp. 3d 1062, 1065-1066 (N.D. Cal. 2020) ("witness statements" generally averring food delivery service workers had arbitration agreements with DoorDash failed to satisfy movant's burden of proof).

Nor does the AAA's self-described "***administrative*** determination that claimants have now met the AAA's ***administrative*** filing requirements on each of the 50,000 cases filed" (MTD Opp. Ex. B; ECF No. 36-2) (emphases added) establish that each Petitioner entered into a valid arbitration agreement with Samsung.  *See Chase Bank USA, N.A. v. Swanson*, No. 10-CV-06972, 2011 WL 529487, at *2 n.2 (N.D. Ill. Feb. 4, 2011) (declining to rely on AAA determination that filing requirements had been satisfied).  Had those arbitrations proceeded, Samsung would have been entitled to contest whether there was an arbitration agreement with each claimant (and Samsung reserved its rights on that question).

## CONCLUSION

Accordingly, the Petition (ECF No. 1) should be dismissed in its entirety with prejudice and Petitioners' Motion to Compel Arbitration (ECF No. 2) should be denied.

Dated: February 9, 2023                          Respectfully submitted,


                                                 */s/ Randall W. Edwards*
Mark Howard Boyle                                Randall W. Edwards
DONOHUE BROWN MATHEWSON &                        Matthew D. Powers (*pro hac vice*)
   SMYTH LLC                                      O'MELVENY & MYERS LLP
131 South Dearborn Street, Suite 1600            Two Embarcadero Center, 28th Floor
Chicago, Illinois 60603                          San Francisco, California 94111-3823
Telephone: (312) 422-0900                        Telephone: (415) 984-8700

---

[22]  Petitioners' complaint that "Samsung did not identify (and to date has still not identified) to whom or how many Petitioners its allegation applied" (MTD Opp. at 3) ignores that it is their burden here to establish that each of them has a valid arbitration agreement with Samsung.

James L. Kopecky
KOPECKY SCHUMACHER
   ROSENBURG LLC
120 North LaSalle Street, Suite 2000
Chicago, Illinois 60601
Telephone: (312) 380-6552

Michael W. McTigue Jr. (*pro hac vice*)
Meredith C. Slawe (*pro hac vice*)
Kurt Wm. Hemr (*pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Telephone: (212) 735-3000

*Attorneys for Respondents*
*Samsung Electronics America, Inc. and*
*Samsung Electronics Co., Ltd.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 9th day of February, 2023, he caused the

foregoing Respondents' Reply In Further Support Of Their Motion To Dismiss Petition To

Compel Arbitration to be filed with the Clerk of the District Court via the CM/ECF system,

which will send notification of such filing to all counsel of record at the email addresses on file

with the Court.

Dated: February 9, 2023

*/s/ Randall W. Edwards*
Randall W. Edwards
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone: (415) 984-8700

*Attorney for Respondents*
*Samsung Electronics America, Inc. and*
*Samsung Electronics Co., Ltd.*