# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MELANIE HOEG, ANGELA DAVIS,
MELINDA GARCIA, and 1,025 OTHER
INDIVIDUALS[1],

     Petitioners,

  vs.

SAMSUNG ELECTRONICS AMERICA,
INC., and SAMSUNG ELECTRONICS CO.,
LTD. (d/b/a Samsung Electronics America,
Inc.),

     Respondents.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:23-cv-1951

**PETITION TO COMPEL ARBITRATION
UNDER THE FEDERAL ARBITRATION ACT – 9 U.S.C. §4**

---

[1] A list containing the full names and locations of each of the 1,028 Individual Petitioners is attached to this Petition as <u>Exhibit A</u>.

Petitioners Melanie Hoeg, Angela Davis, and Melinda Garcia (collectively with the 1,025 Individual Petitioners listed in Exhibit A, "Petitioners"), by and through their undersigned counsel, hereby file this Petition to Compel Arbitration Under the Federal Arbitration Act ("FAA") – 9 U.S.C. §4, and seek an order compelling Respondents Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd. (d/b/a Samsung Electronics America, Inc.) (collectively, "Samsung" or "Respondents") to proceed to arbitration in accordance with the terms of the Parties' agreements as follows:

### NATURE OF THE PETITION

1.     This Petition raises the important question of whether, after Corporate America's calculated, decades-long drive – "in courtrooms, legislative chambers, and boardrooms"[2] – designed to force aggrieved consumers, insureds, and employees into individual arbitrations to vindicate their rights,[3] corporations are now free to ignore ***their own*** draconian, adhesive arbitration contracts when consumers fight back in the very arbitrations corporations forced upon

---

[2]    F. Paul Bland et. al., *From the Frontlines of the Modern Movement to End Forced Arbitration and Restore Jury Rights an Essay in Three Parts*, 95 CHI.-KENT L. REV. 585, 588 (2020) (discussing Corporate America's thirty-year push to force consumers and employees into "one-on-one, private arbitral proceeding[s].").

[3]    *See, e.g., Lamps Plus, Inc. v. Varela*, 587 U.S. __, 139 S. Ct. 1407 (2019); *Epic Sys. Corp. v. Lewis*, 584 U.S. __, 138 S. Ct. 1612 (2018); *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013); *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010); *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63 (2010); *AT&T Mobility LLC v. Concepcion*, 563 U. S. 333 (2011); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U. S. 1 (1983); *see also* Katherine V.W. Stone, *The arbitration epidemic, Mandatory arbitration deprives workers and consumers of their rights*, ECON. POLICY INST. (Dec. 7, 2015), https://www.epi.org/publication/the-arbitration-epidemic/ ("In the past three decades, the Supreme Court has engineered a massive shift in the civil justice system that is having dire consequences for consumers and employees. The Court has enabled large corporations to force customers and employees into arbitration to adjudicate practically all types of alleged violations of countless state and federal laws designed to protect citizens against consumer fraud, unsafe products, employment discrimination, nonpayment of wages, and other forms of corporate wrongdoing.").

them in the first place. This Court should not countenance such blatant gamesmanship – and do so loudly.

2.      Petitioners are Samsung Galaxy device users who demanded arbitration of their individual claims against Samsung for generating, collecting, and/or storing their biometric information in violation of Illinois' Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA").

3.      By opening the Samsung Galaxy device's ("Device") packaging or using the Device (even if not the purchaser), every Device user, including Petitioners here, agreed to Samsung's Terms & Conditions, which were provided with the Device and contained, among other things: (1) Samsung's "Arbitration Agreement;" (2) Samsung's "Standard Limited Warranty;" (3) Samsung's "End User License Agreement (EULA);" and (4) Samsung's "Health & Safety Information." These agreements are attached to this Petition as <u>Exhibit B</u>. Crucially for this Petition, these agreements contain a binding legal agreement requiring mandatory individual arbitration of any dispute with Samsung and a class action waiver (the "Mutual Arbitration Provisions"). *See* Ex. B. at 4, 9-12.

4.      The Mutual Arbitration Provisions require that the parties arbitrate all disputes between the user and Samsung. *See id.* at 9. It also requires that arbitration be administered by the American Arbitration Association ("AAA") under AAA's Commercial Arbitration Rules applicable to consumer disputes (the "Consumer Rules"). *See id.* at 10-11.

5.      The Consumer Rules, attached to this Petition as <u>Exhibit C</u>, authorize AAA to require that each party pay certain fees before AAA will empanel an arbitrator and proceed with the parties' arbitration. Ex. C at pp. 32-34 (providing that each party pay filing fees and providing Multiple Case Filing Fee Schedule). Moreover, the Mutual Arbitration Provisions between

Petitioners and Samsung expressly require that Samsung pay a portion of these fees and costs necessary to commence arbitration. Ex. B. at 10.

6.      On June 13, 2022, prior to commencing any arbitrations, counsel for Petitioners provided notice to Samsung by letter of the intention of at least 15,000 of their clients, who are individual Illinois Device users, to pursue claims in arbitration against Samsung for violating BIPA.  Attached to this Petition as Exhibit D is a true and correct copy of the notice letter that Petitioners sent to Samsung.

7.      On June 30, 2022, Samsung's counsel sent a response letter, wherein they suggested that Petitioners did not have viable claims against Samsung for BIPA violations and requested a list of all of Petitioners' counsel's clients.  Samsung's counsel further threatened Petitioners' counsel with sanctions under Rule 11 of the Federal Rules of Civil Procedure if Petitioners filed their arbitration demands.  Samsung's counsel further made veiled threats against Petitioners' law firms if they continued to represent Petitioners in legitimate arbitration claims against Samsung. This, despite the fact that Samsung's counsel was already aware of tens of thousands of other claims pending against Samsung arising out of the same conduct as well as a pending class action lawsuit.

8.      Petitioners' counsel informed Samsung's counsel that the veiled threats against his clients and his co-counsel's law firms were improper and that it appeared Samsung and its counsel were attempting to restrict Petitioner's counsel's right to practice law. *See, e.g.,* ABA Model Rule of Professional Conduct Rule 5.6.

9.      Undeterred, starting on October 11, 2022, Petitioners began formally demanding arbitration with Samsung pursuant to the Mutual Arbitration Provisions.  To date, 1,044 Petitioners filed Demands for Arbitration with AAA and paid filing fees totaling $38,600.00.  Attached to this Petition as Exhibit E is a true and correct copy of one of the Demands for Arbitration which

Petitioners sent to Samsung and AAA, which is substantially similar to the Demands for Arbitration sent on behalf of the 1,044 Petitioners that have thus far formally demanded arbitration.

10.     On November 18, 2022, counsel for Petitioners were notified by AAA that they fulfilled the administrative filing requirements, which included, among other things, Petitioners' payment of their portion of AAA's administrative fees. Attached to this Petition as <u>Exhibit F</u> is a true and correct copy of the correspondence from AAA addressed to both counsel for Petitioners and counsel for Samsung. The correspondence also stated that "Samsung is now responsible for payment of the initial administrative filing fees totaling $311,000," and provided a due date of "**December 19, 2022**." Ex. F. at 1 (emphasis in original).

11.     By December 19, 2022, Samsung had not paid any portion of its initial administrative filing fees due and owed to AAA. Instead, on that date, Samsung's counsel replied to AAA that it "will provide a substantive response to [AAA's November 18, 2022] communication shortly." Attached to this Petition as <u>Exhibit G</u> is a true and correct copy of the correspondence from Samsung to AAA and copying Petitioners' counsel.

12.     On December 20, 2022, counsel for Petitioners inquired of AAA regarding the status of Samsung's payment, which was due the day prior. On December 23, 2022, AAA replied and informed counsel for Petitioners that Samsung had not yet made payment; that AAA was now requesting Samsung provide its payment by the extended deadline of January 11, 2022 (sic); and that "[a]bsent receipt of a payment from the Respondent, the AAA will be closing our files administratively." Attached to this Petition as <u>Exhibit H</u> is a true and correct copy of the correspondence between counsel for Petitioners and AAA, and copying counsel for Samsung.

13.     On January 11, 2023, instead of paying the initial administrative filing fees due and owed to AAA, Samsung sent a letter to AAA and copying Petitioners' counsel, stating that the parties had agreed to a mediation on March 22, 2023 and requesting that AAA "stay the matter

and all related deadlines concerning the 1,044 individual consumer demands…" Attached to this Petition as <u>Exhibit I</u> is a true and correct copy of the correspondence between Samsung's counsel and AAA and copying Petitioners' counsel.

14.     On January 18, 2023, AAA advised the Parties through their counsel that, due to Samsung's failure to pay its initial filing fees, the filing requirements for the 1,044 individual arbitrations initiated by Petitioners had not been met; AAA would, accordingly, not place the matters on hold; and AAA would administratively close the 1,044 cases. Attached to this Petition as <u>Exhibit J</u> is a true and correct copy of the correspondence from AAA to counsel for Petitioners and Samsung.

15.     On January 25, 2023, AAA sent a letter to Petitioners' counsel, informing them that AAA had administratively closed its files for the 1,044 Petitioners who formally brought Demands for Arbitration against Samsung. Attached to this Petition as <u>Exhibit K</u> is a true and correct copy of the correspondence from AAA to counsel for Petitioners and Samsung.

16.     On February 16, 2023, AAA sent an email to Petitioners' counsel, informing them that AAA had issued and mailed a refund check in the amount of Petitioners' initial filing fees.

17.     Samsung's refusal to honor its contractual agreements and pay its share of the arbitration fees deprived all Petitioners of the ability to proceed with their individual arbitrations under the very terms that Samsung unilaterally drafted and imposed. Samsung is in clear breach of its agreements with the 1,044 Petitioners who formally brought Demands for Arbitration against Samsung, and Samsung has stated that it will not honor its contractual agreements or pay its share of the arbitration fees for the remaining approximately 58,956 Petitioners who have not yet perfected their respective demands for arbitration.[4]

---

[4] As of the date of this filing, counsel for Petitioners represents approximately 60,000 Illinois Device users, all of whom have identical claims against Samsung for its violations of BIPA.

18.     Petitioners have filed this Petition to compel Samsung to abide by the arbitration agreement it drafted, and to proceed to arbitration in accordance with the terms of the Parties' agreements.

## PARTIES

19.     Petitioners are Samsung Galaxy Device users who had their biometric data surreptitiously collected in violation of BIPA.  The full names and locations of each of the Individual Petitioners are listed in Exhibit A.

20.     Respondent Samsung Electronics America, Inc., is the designer, manufacturer, and vendor of Samsung smartphones, tablets, and apps, and is a corporation existing under the laws of State of New York with its headquarters at 85 Challenger Road, Ridgefield Park, New Jersey 07660.  Samsung Electronics America, Inc. regularly conducts business in this District and throughout the United States, and is a wholly owned subsidiary of Samsung Electronics Co., Ltd.

21.     Respondent Samsung Electronics Co., Ltd. (f/k/a Samsung Electronics Industries), is a South Korean multinational electronics corporation headquartered in the Yeongtong District of Suwon, and was incorporated under the laws of the Republic of Korea in 1969.  Samsung Electronics Co., Ltd. lists its shares on the Korean Stock Exchange, and is the parent company to Samsung Electronics America, Inc.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this action pursuant to 9 U.S.C. §4 and 28 U.S.C. §§1331 and 1367 because the underlying controversy involves a claim arising under federal law, specifically the Federal Arbitration Act ("FAA"), 9 U.S.C. §4.

- 6 -

23.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and § 1332(a)(2), in that this is a civil action between citizens of Illinois and citizens of New Jersey, California, and the Republic of Korea, and the amount in controversy exceeds $75,000, exclusive of interest and costs.[5]

24.     This Court has personal jurisdiction over Respondents because each of them regularly conducts business in Illinois and a substantial part of the harm, events, and conduct giving rise to Petitioners' claims occurred in Illinois.

25.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because many of the Petitioners live in this District and the arbitrations were venued to take place in this District.

## BACKGROUND

26.     Samsung has nearly a 30% market share of the smartphone market in the United States, and a 17.6% market share of the tablet market.  Since 2009, Samsung has sold over 2 billion "Samsung Galaxy" (formerly stylized as "Samsung GALAXY") smartphone devices and more than 50 million "Galaxy Tab" devices (collectively "Samsung Devices") within the last two years. The Samsung Galaxy product line includes the popular Galaxy S, Galaxy Note, Galaxy Z, Galaxy A (Alpha), and Galaxy M (Millennial) series.  Samsung is the designer, manufacturer, and vendor of Samsung smartphones, tablets, and apps.

27.     Petitioners are purchasers of Samsung's Devices who have taken photographs of themselves using their Samsung Devices, including photographs of their faces and other physical

---

[5]     In *Cothron v. White Castle Sys., Inc.*, 2023 IL 128004, 2023 WL 2052410 (Ill., 2023), the Supreme Court of Illinois ruled that a separate claim accrues under BIPA "each time a private entity scans or transmits an individual's biometric identifier or information in violation of section 15(b) and 15(d)." *See id*. *1 (emphasis added). Therefore, BIPA allows for a new and separate accrual of a claim each time Petitioners uploaded a picture, entitling Petitioners to recover $1,000 or $5,000 for each separate BIPA violation. This decision supports Petitioners' argument that each Petitioner's claim exceeds the jurisdictional minimum ($75,000) because each Petitioner will seek the full amount of damages allowable under BIPA, including statutory damages of $5,000 for every scan of biometric data collected by Samsung in violation of Section 14/15.

- 7 -

attributes, while residing in the State of Illinois and, as a result, had their biometric data surreptitiously collected in violation of Illinois law.

28. Samsung entered into a binding agreement with each Petitioner requiring that Samsung and the Petitioner individually arbitrate any claim arising from the performance of the Devices, including a claim that Samsung's technology surreptitiously generates and collects Petitioners' biometric data in violation of Illinois law. *See* Ex. B at 4, 9-12. The agreement further requires the arbitration be administered by AAA under the Consumer Rules. *Id*. at 10-11.

29. Under the AAA Consumer Rules, "[w]hen parties have provided for the AAA's rules or AAA administration as part of their consumer agreement, they shall be deemed to have agreed that the application of the AAA's rules and AAA administration of the consumer arbitration shall be an essential term of their consumer agreement." Ex. C, R. 1.

30. Where no arbitrator is yet available, or where a rule does not involve the "arbitrator's powers and duties," Consumer Rule 53 states that the rules "shall be interpreted and applied by the AAA." *Id.*

31. Consumer Rule 6 further authorizes AAA to "require the parties to deposit in advance of any hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's fee[.]" *Id.*

32. The Consumer Rules also state that AAA's Multiple Consumer Case Filing Fee Schedule applies where, as here, twenty-five (25) or more similar claims for arbitration are filed against the same party and counsel for the parties is consistent across all cases. AAA Administrative Fees at 35. And the Multiple Consumer Case Filing Fee states that "[t]he business's share of the filing fees is due as soon as the AAA confirms in writing that the individual filing meets the filing requirements, even if the matter is settled or withdrawn." *Id.* at 34.

33.    Between October 11 and October 25, 2022, in accordance with Samsung's Terms of Service, counsel for Petitioners served individual Demands for Arbitration on Samsung and AAA on behalf of each Petitioner.  *See* Ex. E.  Each Petitioner promptly satisfied his or her fee obligations and otherwise performed all conditions precedent to demanding arbitration against Samsung.  *See* Ex. F.

34.    Samsung's payment of its share of the fees was originally due on December 19, 2022, and was later extended to January 11, 2023.  *See* Ex. G.

35.    Samsung refused and/or failed to pay its share of the fees by the due date established by AAA, and as a result, AAA administratively closed each of Petitioner's proceedings.  *See* Ex. L.

36.    Samsung's material breach of its own adhesive arbitration contract with Petitioners is directly opposite of Samsung's prior actions.  When class actions have been filed in federal court against Samsung, Samsung did not hesitate to seek enforcement of its broad arbitration agreement to preclude users from pursuing their claims in court or on a class-wide basis.  *See*, e.g., *Vasadi v. Samsung Elecs. Am., Inc.*, No. 21-cv-10238-WJM-AME, 2021 WL 5578736, at *1 (D.N.J. Nov. 29, 2021).  Attached as Exhibit L is a true and correct copy of the court's order granting Samsung's motion to compel arbitration as to all named consumer plaintiffs who did not opt out of agreement. *See also, Velasquez-Reyes v. Samsung Elecs. Am., Inc*., No. 16-cv-1953 DMG (KKX), 2020 WL 6528422, at *5 (C.D. Cal. Oct. 20, 2020).  Attached as Exhibit M is a true and correct copy of the court's order compelling arbitration in *Velasquez-Reyes*.  See also, *Schmidt v. Samsung Elecs. Am., Inc.,* No. 16-cv-1725 JCC, 2017 U.S. Dist. LEXIS 80768 (W.D. Wash. May 25, 2017).  Attached as Exhibit N is a true and correct copy of the court's order compelling arbitration in *Schmidt*.  *See also*, *G.T. v. Samsung Elecs. Am., Inc.,* No. 21-cv-04976 (N.D. Ill. Oct. 29, 2021), ECF No. 17. Attached as Exhibit O is a true and correct copy of Samsung's motion to compel arbitration in *G.T.*

37.     In all the above-cited cases, Samsung's motion to compel arbitration was granted except in *G.T.*, where on September 26, 2022, Samsung withdrew its motion to compel that it had earlier filed.

<u>**COUNT I**</u>
**FAILURE TO ARBITRATE UNDER AGREEMENT – 9 U.S.C. §4**

38.     Petitioners repeat and reallege the allegations of Paragraphs 1 through 38 as if fully set forth herein.

39.     Each Petitioner and Samsung entered into a valid and enforceable agreement requiring them to arbitrate all claims related to the sale, condition, or performance of the Samsung product, before AAA.  This agreed arbitration requirement included all claims related to the surreptitious collection of biometric data in violation of Illinois law, as Petitioners allege.

40.     Samsung materially breached that agreement because it refused and/or failed to pay the fees required by AAA.

41.     Due to Samsung's refusal and/or failure to pay the fees, AAA administratively closed Petitioners' arbitration proceedings and they did not proceed.  As such, Petitioners have been aggrieved by Samsung's refusal and/or failure to proceed with arbitration under the terms of the Parties' agreements.

42.     The FAA, 9 U.S.C. §4, provides that, "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court … for an order directing that such arbitration ***proceed in the manner provided for in such agreement.***"  (emphasis added).

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Petitioners respectfully request that this Court enter an order granting the following relief:

43.    Requiring that Samsung arbitrate each Petitioner's claims in accordance with the terms of the Mutual Arbitration Provisions, pursuant to 9 U.S.C. §4, which includes paying the arbitration fees and costs necessary to empanel arbitrators and proceed with the arbitrations;

44.    Awarding Petitioners' reasonable attorneys' fees, costs, and expenses; and

45.    Granting all such other relief that the Court deems just and proper.[6]

DATED:  March 28, 2023                          /s/ *Gary M. Klinger*
                                                Gary M. Klinger
                                                **MILBERG COLEMAN BRYSON
                                                PHILLIPS GROSSMAN PLLC**
                                                221 W. Monroe Street, Suite 2100
                                                Chicago, IL 60606
                                                866.252.0878
                                                gklinger@milberg.com

                                                Jonathan B. Cohen
                                                **MILBERG COLEMAN BRYSON
                                                PHILLIPS GROSSMAN PLLC**
                                                3833 Central Ave.
                                                St. Petersburg, FL 33713
                                                (813) 699-4056
                                                jcohen@milberg.com

                                                **ROBBINS GELLER RUDMAN
                                                & DOWD LLP**
                                                Stuart A. Davidson (*pro hac vice**)
                                                Mark Dearman (*pro hac vice**)
                                                Alexander C. Cohen (*pro hac vice**)
                                                225 NE Mizner Boulevard, Suite 720
                                                Boca Raton, FL  33432
                                                Telephone:  561/750-3000
                                                561/750-3364 (fax)
                                                sdavidson@rgrdlaw.com
                                                mdearman@rgrdlaw.com
                                                acohen@rgrdlaw.com

                                                **pro hac vice forthcoming*

---

[6] In light of Samsung's undeniable gamesmanship and multiplication of proceedings by forcing Petitioners to file this Petition, Petitioners expressly preserve their right to seek appropriate relief from this Court against Samsung or its counsel under Rule 11, 28 U.S.C. §1927, and the Court's inherent authority.

# EXHIBIT A

## Individual Petitioners

| First Name | Last Name | City | State |
|---|---|---|---|
| Tenoch | Abarca | Kenilworth | IL |
| David | Abbott | Mackinaw | IL |
| Lisa | Adams | Bourbonnais | IL |
| David | Adams | Crete | IL |
| Eric | Adams | Moline | IL |
| DaNeal | Adams | Oswego | IL |
| Angie | Affrunti | Lockport | IL |
| Gloria | Aguirre | Aurora | IL |
| Vickie | Aiello | Ofallon | IL |
| Joseph | Akers | Edwardsville | IL |
| Jaime | Albor | Montgomery | IL |
| Grace | Alcaraz | Chicago | IL |
| Ahmad | Alexander | Naperville | IL |
| Sequoia | Alexander | Peoria | IL |
| Omar | Alhayek | Schaumburg | IL |
| Michael | Allen | Granite City | IL |
| Marlene | Allen | Park Forest | IL |
| Brian | Allerding | Centralia | IL |
| Ali | Al-Sahili | Oak Lawn | IL |
| Keyonna | Alston | Chicago | IL |
| Lisa | Alvarado | Hobart | IL |
| Miguel | Alvarez | Chicago | IL |
| Stephen | Alvin | Henry | IL |
| Anthony | Amaker | Zion | IL |
| Omar | Amaya | Chicago | IL |
| Andrea | Andersom | Chicago | IL |
| Christina | Andes | Brookfield | IL |
| Dawn | Arians | Sterling | IL |
| Phyllis | Armour | Forest Park | IL |
| Ashley | Armstead | Springfield | IL |
| Suzan | Armstrong | Urbana | IL |
| Jeff | Aronson | La Grange Park | IL |
| Rhonda | Artman | Freeport | IL |
| Jacob | Atkinson | Urbana | IL |
| Ashley | Atkinson-Leon | Buffalo Grove | IL |
| Michael | Atkinson-Leon | Buffalo Grove | IL |
| Sherry | Augenstein | Canton | IL |

| | | | |
|---|---|---|---|
| David | Austin | Ullin | IL |
| William | Avery | Grayslake | IL |
| Patricia | Axelson | Downers Grove | IL |
| Anson | Babb | Downers Grove | IL |
| Patricia | Babbitt | Matteson | IL |
| Eileen | Bacon | Kingston | IL |
| Ralph | Badtke | Saint Charles | IL |
| David | Bailey | Hinsdale | IL |
| Colin | Balsbaugh | Urbana | IL |
| Andrea | Banks | Chicago | IL |
| Brittany | Banks | Chicago | IL |
| Chandra | Barber | Chicago | IL |
| Michael | Barker | Dekalb | IL |
| Warren | Barnett | University Park | IL |
| Adam | Barnhart | Montgomery | IL |
| Adam | Barr | Cobden | IL |
| Vianey | Barreto | Summit | IL |
| Wayne | Bartosiak | Romeoville | IL |
| Angshuman | Baruah | Champagne | IL |
| David | Bassin | Chicago | IL |
| William | Bast | Glendale Heights | IL |
| Renae | Battista | Huntley | IL |
| Martin | Bauer | Naperville | IL |
| Heather | Baxter | Lindenwood | IL |
| Catherine | Bayne | Bourbonnais | IL |
| Felicia | Beals | Kankakee | IL |
| Anthony | Beaver | Chicago | IL |
| Francisco | Becerra | Aurora | IL |
| Leann | Beckman | Deerfield | IL |
| Anthony | Behrends | Deerfield | IL |
| Brent | Beighley | Luka | IL |
| Christopher | Bell | Chicago | IL |
| Alice | Bell | Springfield | IL |
| Stephanie | Benavente | Ingleside | IL |
| Joseph | Benicky | Plainfield | IL |
| Daniel | Benke | Crystal Lake | IL |
| Sean | Bennett | Bloomington | IL |
| Jeremy | Bennett | Westfield | IL |
| Colleen | Benson | Braidwood | IL |
| Bobbie | Bentley | Flora | IL |
| David | Berkshire | Hebron | IL |
| Erasmo | Berrios | Downers Grove | IL |

| William | Berry | Colona | IL |
| Bianca | Bess | Steger | IL |
| Jeffrey | Bessent | Streamwood | IL |
| El Malik | Bey | Posen | IL |
| Barbara | Bielach | Wood Dale | IL |
| Eric | Biesecker | Peoria | IL |
| Douglas | Biller | Milledgevillle | IL |
| Jessica | Bingham | Moline | IL |
| Jacqueline | Bishop | Chicago | IL |
| Sara | Blair | Caseyville | IL |
| Angel | Blalock-Tidwell | Rockford | IL |
| Dana | Blanchard | Chicago | IL |
| Eddie | Blanchett | Quincy | IL |
| Joshua | Blanford | Moline | IL |
| Karen | Bodie | Westmont | IL |
| Kristina | Boettcher | Cairo | IL |
| Brian | Bogs | Lansing | IL |
| Michelle | Bohannon | Cicero | IL |
| Melissa | Bolino | Jacksonville | IL |
| Anthony | Bollman | Walnut | IL |
| Adam | Bonifaciuk | Norridge | IL |
| Kalen | Booth | Chicago | IL |
| Daniel | Borke | Ingleside | IL |
| Brian | Boss | Granite City | IL |
| Todd | Boudreau | Mahomet | IL |
| Eric | Bowers | Carbondale | IL |
| David | Bowman | Sumner | IL |
| Stacey | Boyce | Aurora | IL |
| Vernon | Boyd | Elgin | IL |
| Betty | Boyd | Ingleside | IL |
| Ryan | Boyd | Wilmington | IL |
| Nicole | Boyer | Peoria | IL |
| Felicia | Bradford | East Moline | IL |
| Stephanie | Breeze | Granite City | IL |
| Amy | Brennan | Oak Lawn | IL |
| Susan | Brewer | Chicago | IL |
| Wendy | Brimm | Decatur | IL |
| Amy | Brinkman | Collinsville | IL |
| Adam | Bristow | Bloomington | IL |
| Kimberly | Britt | Chicago | IL |
| Isaac | Brockman | Ottawa | IL |
| Daniel | Brodin | Berwyn | IL |

| | | | |
|---|---|---|---|
| Zachary | Broshous | Rock Falls | IL |
| Aleksei | Brovikov | Elmwood Park | IL |
| Anthony | Brown | Chicago | IL |
| Aaron | Brown | Galesburg | IL |
| Aarion | Brown | Hazel Crest | IL |
| Holly | Brown | Port Byron | IL |
| Stephanie | Brown | Sterling | IL |
| David | Bruce | Calumet | IL |
| Frederick | Brunson | Glenwood | IL |
| Joshua | Bryant | Hampshire | IL |
| Andrea | Buechsenschuetz | Carbondale | IL |
| Pamela | Burditt | Wilmington | IL |
| Jackie | Burns | Glendale Heights | IL |
| Jessica | Burt | Palatine | IL |
| Anna | Burzawa | Harwood Heights | IL |
| Eric | Buschick | Lakemoor | IL |
| Carrington | Bush | Bourbonnais | IL |
| Michael | Butler | O'Fallon | IL |
| Mitchell | Buzzell | Warrenville | IL |
| Terri | Cacioppo | Palatine | IL |
| Louis | Caesar | Channahon | IL |
| Mitchell | Cain | Beecher | IL |
| Cristina | Calderon | Blue Island | IL |
| Matthew | Calhoun | Chicago | IL |
| Joanna | Callahan | Normal | IL |
| Andres | Calvillo | Naperville | IL |
| Anthony | Cameron | Country Club Hills | IL |
| Brent | Cameron | Hampshire | IL |
| Nicholas | Campanella | Chicago | IL |
| William | Campbell | Rockford | IL |
| Jennifer | Carajohn | Morris | IL |
| Bianca | Carbajal | Chicago | IL |
| Aric | Cardwell | Chicago | IL |
| Shanda | Carlson | Rockford | IL |
| Juan | Carlstrom | Rockford | IL |
| Danielle | Carrell | Homewood | IL |
| Michael | Carroll | Joliet | IL |
| Regine | Carter | Berwyn | IL |
| Ashley | Carter | Chicago | IL |
| Kalib | Carter | Ottawa | IL |
| Rashida | Carter | Riverdale | IL |
| Willie | Carter Jr | Evergreen Park | IL |

| | | | |
|---|---|---|---|
| Brendan | Casey | Aurora | IL |
| Natasha | Caudle | Towanda | IL |
| Shane | Chaplin | Pittsfield | IL |
| Kaharie | Charles | Chicago | IL |
| Colene | Chastang | Evanston | IL |
| Angelica | Chestleigh | Chicago | IL |
| Ashlee | Chladek | Champaign | IL |
| Wendy | Christman | West Chicago | IL |
| Louis | Cirar | Lockport | IL |
| Gordon | Clanton | Cave In Rock | IL |
| Regina | Clark | Chicago | IL |
| Penny | Clause | Macomb | IL |
| James | Clendening | Fox Lake | IL |
| Robert | Cochran | Westchester | IL |
| Chiquita | Coffey | Chicago | IL |
| Alice | Coffey | Rantoul | IL |
| Daniel | Coil | La Grange Park | IL |
| Flora | Coleman | Chicago Heights | IL |
| Jacqueline | Coleman | University Park | IL |
| Caleb | Collines | Chicago | IL |
| Booker | Collins | Chicago | IL |
| Jermaine | Collins | Chicago | IL |
| Maurice | Collins | La Grange | IL |
| William | Colman | Cairo | IL |
| Danielle | Colon | Joliet | IL |
| Kathleen | Comella | Woodstock | IL |
| Anthony | Conrad | Woodstock | IL |
| Timothy | Cordani | Kincaid | IL |
| Amber | Cotter | Carpentersville | IL |
| Susan | Cotter | Saint Joseph | IL |
| Darryl | Cotton | Chicago | IL |
| Blake | Couch | Peoria | IL |
| Airrin | Coy | Forreston | IL |
| Dave | Craglione | Lombard | IL |
| David | Cramer | Decatur | IL |
| Brittany | Crandall | Monmouth | IL |
| Angela | Crockett | Swansea | IL |
| Anthony | Crowder | Chicago | IL |
| Virgen | Cruzado | Melrose Park | IL |
| David | Cusack | Chicago | IL |
| Charles | Cuthbertson | Machesney Park | IL |
| Karen | Czipo | Loves Park | IL |

| | | | |
|---|---|---|---|
| Edmund | Czosek | Mchenry | IL |
| Archer | Dadpaas | Plainfield | IL |
| Bryant | Dailey | Crest Hill | IL |
| Amy | Damewood | Walnut | IL |
| Angel | Darville | Spring Grove | IL |
| Tammi | Davis | Berwyn | IL |
| Dorian | Davis | Chicago | IL |
| Margaret | Davis | Chicago | IL |
| Angela | Davis | Chicago | IL |
| Angela | Davis | Girard | IL |
| John | Davis | Granite City | IL |
| Darren | Davis | Westchester | IL |
| Shondel | Dawn | Belvidere | IL |
| Albert | Dawood | Niles | IL |
| James | Dawson | Watanda | IL |
| Angelique | De Jesus | Chicago | IL |
| Jamie | Deitcher | Milford | IL |
| Martha | Delancey | Dekalb | IL |
| Carrah | Demos | Palatine | IL |
| Emily | Denbo | Lindenhurst | IL |
| Amit | Desai | Bartlett | IL |
| Joe | Desimone | Glen Ellyn | IL |
| Julio | Diaz | Bolingbrook | IL |
| Nicholas | Diaz | Orland Park | IL |
| Freddie | Dickerson | Carterville | IL |
| Joshua | Diding | Ottawa | IL |
| Jerry | Dillon | Palatine | IL |
| Kari | Dimock | Lockport | IL |
| Jeff | Dolce | North Aurora | IL |
| James | Donovan | Arlington Heights | IL |
| Kristin | Douglas | Chicago | IL |
| Michael | Douglas | Collinsville | IL |
| Anna | Doukas | Chicago | IL |
| Durbin | Downey | Princeton | IL |
| Brett | Downs | Granite City | IL |
| Vasiliki | Dremonas | Chicago | IL |
| Gricelda | Duarte | Berwyn | IL |
| Miguel | Duarte | Cicero | IL |
| Diane | Duggins | Shorewood | IL |
| Donny | Dukes | Chicago | IL |
| Daniel | Durkin | Mokena | IL |
| Andrew | Durkin | Palos Heights | IL |

| | | | |
|---|---|---|---|
| Frank | Dutkovich | Geneva | IL |
| Darlene | Dyson | Chicago | IL |
| Althea | Earl | Forest Park | IL |
| Holly | Edwards | Shattuc | IL |
| William | Ehnert | Frankfort | IL |
| Sara | Elliott | Aurora | IL |
| Bobby | Ellis Sr | Swansea | IL |
| Shawntay | Emery | Country Club Hill | IL |
| Morgan | Enburg | Moline | IL |
| Leif | Epperson | Mattoon | IL |
| Jesus | Espinoza | Oak Lawn | IL |
| Lily | Estrada | Chicago | IL |
| Anthony | Euell | Freeport | IL |
| Craig | Everhart | Addison | IL |
| Kimberly | Everly | Lindenhurst | IL |
| William | Ewell | Canton | IL |
| Quittman | Farmer | Wheeling | IL |
| Lisa | Farris | Joliet | IL |
| Alberto | Felix | Cicero | IL |
| Sean | Ferguson | Belleville | IL |
| Robert | Fernandez | Marseilles | IL |
| Carol | Ferrari | Harrin | IL |
| Andrew | Fey | Riverton | IL |
| Barry | Filerman | Northbrook | IL |
| Ryan | Finley | Woodstock | IL |
| Jonathan | Fischer | Jacksonville | IL |
| Zach | Fisher | Beecher | IL |
| Darin | Flaska | Hoffman Estates | IL |
| Erin | Fletcher | Chicago | IL |
| Daniel | Flores | Chicago | IL |
| Alicia | Florez | Wilmington | IL |
| Darren | Flynn | Pekin | IL |
| Stephen | Foley | Lake Zurich | IL |
| Jeff | Fordice | Evergreen Park | IL |
| Charles | Forsythe | Belleville | IL |
| Brittany | Fox | Peoria | IL |
| William | Franklin | Crest Hill | IL |
| Claudia | French | Granite City | IL |
| Don | Frieders | Batavia | IL |
| Ashley | Friesz | Galesburg | IL |
| Hansel | Fritzgerald | Matteson | IL |
| Ernest | Fromer | Lombard | IL |

| | | | |
|---|---|---|---|
| Rolanda | Fu | Chicago | IL |
| Tameika | Fuller | Bourbonnais | IL |
| Beth | Fusco | Roundlake | IL |
| Tony | Gagliano | Roselle | IL |
| Enrique | Gaitan | Chicago | IL |
| Ethan | Galecki | Round Lake Beach | IL |
| Amy | Garbaciak | New Lenox | IL |
| Yosari | Garcia | Bellwood | IL |
| Melinda | Garcia | Kankakee | IL |
| Martin | Garcia | Naperville | IL |
| Linc | Garcia Jr | Galesburg | IL |
| Jordan | Gardner | Chicago | IL |
| Walter | Garmon | Bellwood | IL |
| Dedra | Garreffa | Mchenry | IL |
| Daniel | Garvin | Matteson | IL |
| Patrick | Gaughan | Aurora | IL |
| Bobbie Jo | Gear | Mt Caroll | IL |
| Sommer | Gilker | Quincy | IL |
| Ann | Gilliam | Ava | IL |
| Travis | Gipson | Chicago | IL |
| Cynthia | Girouard | Kinmundy | IL |
| Shelley | Glover-Williams | Chicago | IL |
| Alisha | Goff | Lawrenceville | IL |
| Eric | Goldberg | Hampshire | IL |
| Anthony | Gonzalez | Cicero | IL |
| Melissa | Gonzalez | Macomb | IL |
| Allison | Goodson | Chicago | IL |
| Barbara | Goodwin | Calumat | IL |
| William | Gordon | Bartlett | IL |
| Faith | Gordon Bridges | Calumet Chicago | IL |
| Margaret | Gorski | Belvidere | IL |
| Patrick | Grady | Peoria | IL |
| Jeffrey | Graf | Woodstock | IL |
| Jon | Graskewicz | West Frankfort | IL |
| Blair | Gray | Oswego | IL |
| Alan | Gredell | Des Plaines | IL |
| William | Green | Belleville | IL |
| Heather | Greenier | Westmont | IL |
| Danielle | Gregory | Chicago | IL |
| Danny | Griffin | Crete | IL |
| Laura | Grimes | Pana | IL |
| Colton | Griswald | Momence | IL |

| | | | |
|---|---|---|---|
| Amorette | Groen | Sterling | IL |
| Shannon | Gross | New Lenox | IL |
| Bolivar | Guaman | Chicago | IL |
| Nicole | Gullickson | Loves Park | IL |
| Michelle | Gunning | Christopher | IL |
| Bobby | Guy | Pekin | IL |
| Felicia | Haar | Elk Grove Village | IL |
| Linda | Hackley | Cicero | IL |
| Jerry | Haeffner | Sterling | IL |
| Kimberly | Hagedorn | Lebanon | IL |
| Lindsay | Haglauer | Decatur | IL |
| Elizabeth | Haines | Saint David | IL |
| Benjamin | Halfar | Champaign | IL |
| Brandon | Hall | Glen Carbon | IL |
| Jenna | Hall | Machesney Park | IL |
| Amanda | Hamilton | Champaign | IL |
| Cynthia | Hansen | Chicago | IL |
| Matt | Hansen | Huntley | IL |
| William | Hanson | Hoffman Estates | IL |
| Anthony | Harden | Joliet | IL |
| Gwen | Harden | Lansing | IL |
| Michael | Harmon | Oswego | IL |
| Amber | Harold | Sterling | IL |
| Andre | Harris | Chicago Ridge | IL |
| Angela | Harris | Kankakee | IL |
| Archie | Harris | Woodridge | IL |
| Beth | Harvey | Carmi | IL |
| Robert J | Harvey Bey | Chicago | IL |
| Ebanah | Hasanat | Orland Park | IL |
| Elizabeth | Hatton | Dekalb | IL |
| William | Hay | Chicago | IL |
| Glendon | Hayes | Wheaton | IL |
| Melissa | Hearn | Edwardsville | IL |
| Angelique | Heckard | Joliet | IL |
| Heather | Heihn | Normal | IL |
| Beth | Helsley | Carbondale | IL |
| Laura | Henneberry | Buffalo Grove | IL |
| Whitney | Henry | Chicago | IL |
| Stuart | Hermodson | Medinah | IL |
| Javier | Hernandez | Arlington Heights | IL |
| Cheryl | Hernandez | Belleville | IL |
| Catalina | Herrera | Woodstock | IL |

| | | | |
|---|---|---|---|
| Marie | Heuser | Mount Prospect | IL |
| Katherine | Hicks | Bolingbrook | IL |
| Fatina | Hicks | Chicago | IL |
| Fabian | Higgins | Evanston | IL |
| Lawrence | Higgins | Wood Dale | IL |
| Edna | Hill | Chicago | IL |
| Alexis | Hill | Chicago | IL |
| Samantha | Hill | Joliet | IL |
| Natasha | Hill | Urbana | IL |
| Hanon | Hines | Wadsworth | IL |
| Brandon | Hinke | Chicago | IL |
| Alex | Hinote | O'Fallon | IL |
| Casey | Hnatiuk | Montgomery | IL |
| Melanie | Hoeg | Aurora | IL |
| Karen | Hoffman | Du Bois | IL |
| Eric | Hofmann | Aledo | IL |
| Julie | Holda | Manteno | IL |
| Andrea | Holland | Peoria | IL |
| M Akiba | Hollins-Thomas | Chicago | IL |
| Eric | Hollis | Oak Forest | IL |
| Andrea | Holloway | Homewood | IL |
| Erica | Holmer | Woodstock | IL |
| Ariel | Holmes | Clinton | IL |
| Angela | Homminga | Murphysboro | IL |
| Christian | Hoover | Mchenry | IL |
| Courtney | Howard | Chicago | IL |
| Mario | Howard | Chicago | IL |
| Eric | Howard | Cicero | IL |
| Lacey | Howell | Rockford | IL |
| Tahisha | Hudson | Bellwood | IL |
| William | Hudson | Mendon | IL |
| Daniel | Hudson | South Holland | IL |
| Brad | Hughes | Machesney Park | IL |
| Blaine | Huls | Danville | IL |
| Danielle | Humes | Maywood | IL |
| Bobbie | Hunter | Taylorville | IL |
| James | Hunter | Waukegan | IL |
| Breanna | Hurst | Springfield | IL |
| Jane | Hutton | Worden | IL |
| Kathryn | Hynes | Collinsville | IL |
| Kimberly | Ibarra | Oak Forest | IL |
| Mark | Ick | Glen Ellyn | IL |

| | | | |
|---|---|---|---|
| Janet | Iler | Swansea | IL |
| Amanda | Ipema | Midlothian | IL |
| Lucia | Irwin | Huntley | IL |
| Joyce | Isaacs | Carmi | IL |
| Anthony | Jackson | Chicago | IL |
| Suzanne | Jacobs | Decatur | IL |
| Jeremy | Jacoby | South Elgin | IL |
| Adrienne | Jacquot | Basco | IL |
| Carl | Jannusch | Vernon Hills | IL |
| Anglia | Jasper-Linzy | Burwood | IL |
| Elizabeth | Jean | Bondville | IL |
| Jennifer | Jeffris | Chicago | IL |
| Mikahel | Jenkins | Chicago | IL |
| Amber | Jeralds | Marion | IL |
| Brian | Johnson | Beecher | IL |
| Gary | Johnson | Chicago | IL |
| Tiffie | Johnson | Chicago | IL |
| Savannah | Johnson | Collinsville | IL |
| Deborah | Johnson | Kewanee | IL |
| Katrina | Johnson | Lombard | IL |
| Samuel | Johnson | Northlake | IL |
| Charles | Johnson | Oak Park | IL |
| Jeremiah | Johnson | Peoria | IL |
| Tracey | Johnson | Rockford | IL |
| Monica | Johnson | Rockford | IL |
| Samantha | Johnson | Streator | IL |
| Fitzgerald | Jones | Chicago | IL |
| Sharon | Jones | Decatur | IL |
| Cathi | Journey | Bethalto | IL |
| Adam | Juodis | Saint Charles | IL |
| Dani | Juskiv | Princeville | IL |
| Anna | Kacso | Antioch | IL |
| Randy | Kakara | Streator | IL |
| Neelu Kaur | Kalada | Naperville | IL |
| John | Kalec | Naperville | IL |
| Karen | Kalejs | North Aurora | IL |
| Fred | Kappel | Chicago | IL |
| Dennis | Karau | Chicago | IL |
| Angela | Kardell | Hainesville | IL |
| Christina | Karpowicz | Downers Grove | IL |
| Donna | Keca | Aurora | IL |
| Naomi | Keep | Markham | IL |

| | | | |
|---|---|---|---|
| Lavonne | Kemmerer | Louisville | IL |
| Antonina | Kessel | Chicago | IL |
| Adam | Key | Naperville | IL |
| Kristin | Kick | Palatine | IL |
| Julie | Kilburg | Mokena | IL |
| Darcy | Kilka | Joliet | IL |
| Charles | Kimmel | Charleston | IL |
| Danielle | King | Breese | IL |
| Brenda | King | Rushville | IL |
| Alyssa | Kinnaird | Antioch | IL |
| Lakaiya | Kippers | Alsip | IL |
| Amanda | Kirk | Lisle | IL |
| Paul | Kisler | Galesburg | IL |
| Nicholas | Klein | Rantoul | IL |
| Bernadette | Knapik | Indian Head Park | IL |
| Vivian | Knell | Hampshire | IL |
| Andrew | Knight Jr | South Collin | IL |
| Sara | Kniss | Peoria | IL |
| Christina | Koester | Beecher City | IL |
| Brittany | Kokas | Rushville | IL |
| Zach | Kolozsy | Pierron | IL |
| Monika | Komperda | Hickory Hills | IL |
| Carol | Koreba | Huntley | IL |
| Steve | Kosior | Elburn | IL |
| Joyce | Koster | Bartlett | IL |
| Ruth | Kotek | Naperville | IL |
| Eleonora | Kozak | Schaumburg | IL |
| Marcin | Kozlowski | Chicago | IL |
| Daniel | Kozubal | Algonquin | IL |
| William | Kraklau | Rockford | IL |
| Ashley | Krutsinger | Salem | IL |
| Anna | Kulapina | Mount Prospect | IL |
| Marguerite | Kurowski | Crest Hill | IL |
| Melissa | Kurtenbach | Marshall | IL |
| Christine | Kuttnauer | Elgin | IL |
| Emil | Lach | Chicago | IL |
| Adam | LaCour | Hazel Crest | IL |
| Michael | Lady | Chillicothe | IL |
| Karen | LaFleur | Downers Grove | IL |
| Ella | Lakin | White Hall | IL |
| Andrea | Lampley | Chicago | IL |
| Amy | Lander | Davis | IL |

| | | | |
|---|---|---|---|
| Dennis | Lang | Bloomingdale | IL |
| Bryce | Langendorf | Rockford | IL |
| Karen | Lawson | Hanna City | IL |
| Kaden | Leach | Bloomington | IL |
| Kacie | Leckbee | South Elgin | IL |
| Jaewon | Lee | Chicago | IL |
| Jen | Leffler | Oak Forest | IL |
| Anthony | Lentino | Elgin | IL |
| Angela | Leonard | Elwood | IL |
| Jason | Lewis | Belleville | IL |
| Tina | Lewis | Lakemoor | IL |
| Jennifer | Lewis | Springfield | IL |
| Brandi | Lewis | Urbana | IL |
| Connie | Limon | Joliet | IL |
| Wendi | Lindley | Steger | IL |
| Jeremy | Linke | Mount Prospect | IL |
| Belem | Lino | Harwood Heights | IL |
| Avrom | Litin | Chicago | IL |
| Anthony | Locascio | Downers Grove | IL |
| Eileen | Loechel | Oak Park | IL |
| Chip | Loghry | Belleville | IL |
| Denise | Long | Chicago | IL |
| Alejandra | Lopez | Berwyn | IL |
| Alexander | Lopez | Chicago | IL |
| Maria | Lopez | Chicago | IL |
| Wendy | Lopez | Chicago | IL |
| Brian | Lopez | East Peoria | IL |
| Kelly | Lovett | Chicago | IL |
| Jose | Lozano | Berwyn | IL |
| Joe | Luckey | Lockport | IL |
| Martha | Lucking | Batavia | IL |
| Brian | Lunardon | Dixon | IL |
| Daniel | Luszowiak | Rolling Meadows | IL |
| Charlene | Lyda | Bolingbrook | IL |
| Dakota | Mackall | Warren | IL |
| Rachel | Maddox | Rockford | IL |
| William | Madley | Chicago | IL |
| Angelina | Madrigal | Aurora | IL |
| Chon | Magee | Chicago | IL |
| Wayne | Majors | Chicago | IL |
| Bilal | Malik | Northbrook | IL |
| Chris | Maness | Chicago | IL |

| | | | |
|---|---|---|---|
| Fabio | Mantoanelli | Chicago | IL |
| Fernanda | Marcalain | Gurnee | IL |
| Michael | Marchetti | Chicago | IL |
| Marilyn | Marinas | Chicago | IL |
| Stephanie | Maritato | Lyons | IL |
| Barbara | Markovitz | Skokie | IL |
| Carolyn | Marmion | Pekin | IL |
| Joshua | Maroon | Greenville | IL |
| Bryan | Marroquin | Chicago | IL |
| Tylor | Martin | Lyons | IL |
| Richard | Martinez | Schaumburg | IL |
| Ana Maria | Martinez Montero | East St Louis | IL |
| Tonya | Masek | Clifton | IL |
| Nicole | Mathias | North Pekin | IL |
| Brian | Mathias | Rockford | IL |
| Michelle | Matteson | Toledo | IL |
| Felicia | Matthews | Calumet City | IL |
| Robert | Maxwell | Chicago | IL |
| Malaika | Mayfield | Richton Park | IL |
| Wanda | Maysonet | Chicago | IL |
| James | Mcadam | Rock Island | IL |
| Michael | Mccarthy | Oaklawn | IL |
| Ashaneke | Mcclain | Wood River | IL |
| Lawrence | Mcclellan | Riverdale | IL |
| Lee | Mcclendon | Chicago | IL |
| Will | Mcclung | Clarendon Hills | IL |
| Ethel | Mccraley | Rockford | IL |
| Erica | Mcdonald | Chicago | IL |
| Angela | Mcdonald | Riverdale | IL |
| Annie | Mcelligott | Chicago | IL |
| Daniel | Mcgee | Chicago | IL |
| Matthew | Mcgowan | Martinsville | IL |
| Katherine | Mcgregor | Carbondale | IL |
| Krysta | Mcintyre | Villa Park | IL |
| Joe | Mckee | Belvidere | IL |
| Raymond | Mckeel | Chicago | IL |
| Christie | Mckinney | East St Louis | IL |
| Jessie | Mcknight | Chicago | IL |
| Edward | Mcle | Cambridge | IL |
| Tina | Mclees | Woodridge | IL |
| Heather | Mcmillan | Wauconda | IL |
| Stephen | Mcmillen | Freeport | IL |

| Lisa | Mcnanna | Montgomery | IL |
| Andrew | Mcnett | Chicago | IL |
| Brian | Meadowcroft | Aurora | IL |
| Angel | Meares | Harvey | IL |
| Bobbe | Meehan | Moline | IL |
| Laura | Melendez | Chicago | IL |
| Charlene | Melton | Morrison | IL |
| Elliot | Mendelson | Berwyn | IL |
| Laurel | Mercado | Oak Forest | IL |
| Guy | Merola | Schaumburg | IL |
| Darrin | Meyer | Algonquin | IL |
| Andrew | Meyer | Evergreen Park | IL |
| Heather | Meyer | Joliet | IL |
| Elizabeth | Meyers | Summit Argo | IL |
| Clyneil | Mickey | Arlington Heights | IL |
| Nicole | Migliore | Rockford | IL |
| Dalid | Mikho | Arlington Heights | IL |
| Kevin | Miles | New Athens | IL |
| Walter | Miller | Blue Island | IL |
| Michele | Miller | Lombard | IL |
| Sheila | Miller | Oak Lawn | IL |
| Lexene | Miller | Palestine | IL |
| James | Miller | Palos Heights | IL |
| Dallas | Miller | Wheaton | IL |
| Alicia | Miller-Crosswell | West Chester | IL |
| Grzegorz | Milon | New Lenox | IL |
| Jennifer | Mitchaner | Champaign | IL |
| Hilliary | Mitchell | Chicago | IL |
| Caitlin | Mizeur | Springfield | IL |
| Will | Moffett | Glen Ellyn | IL |
| Funmi | Moka | Chicago | IL |
| Alfredo | Molina | Chicago | IL |
| Abiezer | Molina | Posen | IL |
| Mark | Molnar | Chicago | IL |
| Carmen | Monique | Chicago | IL |
| Barbara | Monson | Catlin | IL |
| Grace | Montalvo | Chicago | IL |
| Christina | Montalvo | Rockford | IL |
| William | Moore | Bourbonnais | IL |
| Ericka | Moore | Buffalo Grove | IL |
| Yolanda | Moore | Chicago | IL |
| Leslie | Moore | Chicago | IL |

| Mary | Moore | Effingham | IL |
|------|-------|-----------|-----|
| Sarah | Moore | Marion | IL |
| Patrick | Moore | Pierson Station | IL |
| Samantha | Moore | Sandoval | IL |
| Ioannis | Moraitis | Warrenville | IL |
| Caroline | Morales | Lockport | IL |
| Dan | Moran | Lockport | IL |
| Kenneth | Morgan | Chicago | IL |
| Pamela | Morgan | Park Ridge | IL |
| Katherine | Morris | Villa Park | IL |
| Viola | Morrison | Gallsburg | IL |
| Anthony | Moses | Riverdale | IL |
| Kamil | Moskal | Mundelein | IL |
| Sharon | Moss | Chicago | IL |
| Karie | Moss | Riverton | IL |
| Greta | Moss | Tinley Park | IL |
| Andre | Moten | Bolingbrook | IL |
| Marilyn | Mowder | Peoria | IL |
| Megan | Mowers | Joliet | IL |
| Steven | Mowers | Joliet | IL |
| Craig | Mowers | Moline | IL |
| Kamil | Mozwecz | Chicago | IL |
| Michael | Mrozowski | Palatine | IL |
| Shayna | Muench | Loami | IL |
| John | Muffley | El Paso | IL |
| Candy | Mulica | Rock Island | IL |
| Angel | Muniz | Chicago | IL |
| Angel | Munoz | Chicago | IL |
| Jeff | Murphy | Farmington | IL |
| Jonathan | Murrie | Vienna | IL |
| Toquetta | Murry | Chicago | IL |
| Michele | Musillami | Saint Charles | IL |
| Cris | Myers | Dekalb | IL |
| Brett | Nagl | Westchester | IL |
| Daniel | Nagler | Chicago | IL |
| Lisa | Nance | Chicago | IL |
| Billy | Nash | Urbana | IL |
| Stephen | Nawrocki | Matteson | IL |
| Sydnie | Neblock | Wheaton | IL |
| John | Neeland | Flossmoor | IL |
| Daniel | Neniskis | Chicago | IL |
| Anees | Nesamony | Naperville | IL |

| | | | |
|---|---|---|---|
| William | Nicholson | Chicago | IL |
| Adam | Nicolai | Lombard | IL |
| Christine | Nielsen | Woodridge | IL |
| Mary | Nienaber | Winfield | IL |
| Josiah | Norman | Wheaton | IL |
| Bernard | Norwood | Chicago | IL |
| Keith | Nowlan | Elk Grove Village | IL |
| Ndubuisi Vince | Obah | Chicago | IL |
| Aaron | O'Claire | Chicago | IL |
| Elliot | Offenbach | Glenview | IL |
| Karen | Ogden | Herrin | IL |
| Sarah | Ognibene | Cedarville | IL |
| Shannon | Oliva | Yorkville | IL |
| Moises | Olivan | Thornton | IL |
| Maria | Olsen | Chicago | IL |
| Roy | Orr | Chicago | IL |
| Dahlia | Ortiz | Niles | IL |
| Edwin | Ortiz | Streamwood | IL |
| Marsha | Outly | Chicago | IL |
| Jose | Pacheco | Carpentersville | IL |
| Christina | Pagan | Joliet | IL |
| Jorie | Palmer | Elmhurst | IL |
| Ayelet | Palmore | Chicago | IL |
| Rose | Panieri | Braidwood | IL |
| Nicole | Panopoulos Sims | Roselle | IL |
| Bart | Papiez | Burbank | IL |
| Candi | Pappas | Crete | IL |
| Michelle | Paramore | Glenwood | IL |
| Ronald | Parilla | Oak Brook | IL |
| John | Parisi | Chicago | IL |
| Erica | Parker | Yorkville | IL |
| Ryshika | Parker-Collins | Galesburg | IL |
| Mark | Parkey | Oak Lawn | IL |
| Jessica | Parrill | Paris | IL |
| Michael | Parrish | Chicago | IL |
| Bo | Patel | Bloomingdale | IL |
| Hetal | Patel | Mchenry | IL |
| Austin | Patterson | Chicago | IL |
| Cheryl | Patterson | Tinley Park | IL |
| Anglean | Payton | Rockdale | IL |
| Jason | Pemberton | Peoria | IL |
| Lauire | Penman | Crete | IL |

| | | | |
|---|---|---|---|
| Christopher | Perez | Wheeling | IL |
| Amy | Perino | Downers Grove | IL |
| Marilyn | Perry | Bellwood | IL |
| Felicia | Perteet | Chicago | IL |
| Deetreena | Perteet | Chicago | IL |
| Eric | Peterman | Manteno | IL |
| Arika | Pettigrew | Matteson | IL |
| Crystal | Piccioli | Minooka | IL |
| Nicole | Piwowarski | Plainfield | IL |
| Jessica | Plant | Mulberry Grove | IL |
| Loretta | Podeszwa | Fox Lake | IL |
| Kimberly | Podolak | Plainfield | IL |
| Peggy | Poe | Effingham | IL |
| Amanda | Polk | Rantoul | IL |
| Jacob | Pollock | Pekin | IL |
| Larry | Porter | Mapleton | IL |
| Matt | Powell | Bloomington | IL |
| Tiffany | Powell | Chicago | IL |
| Shawn | Prate | Volo | IL |
| Marianne | Pratl | Oak Lawn | IL |
| Barry | Press | Woodstock | IL |
| Anthony | Pretto | New Lenox | IL |
| Dudlita | Prewitt | Chicago | IL |
| David | Price | Washington | IL |
| Amber | Pruitt | Greenville | IL |
| John | Pruitt | Sidney | IL |
| Wanda | Pulliam | Altgeld | IL |
| Kevin | Puma | Athens | IL |
| Julio | Puma | Chicago | IL |
| Scott | Punke | Bloomington | IL |
| Andrew | Pypno | Peru | IL |
| Billie Jo | Quincy | Beardstown | IL |
| Andres | Quinones | South Elgin | IL |
| Christina | Ragsdale | Alton | IL |
| Cindy | Ralston | Matoon | IL |
| Amisha | Rama | Evergreen Park | IL |
| Mario | Ramirez | Glenview | IL |
| Danny | Randleman | Pekin | IL |
| Cheryl | Ratulowski | Chicago | IL |
| Adrian | Reczek | Oak Lawn | IL |
| Keith | Redmond | Chicago | IL |
| Michael | Redwick | Chicago | IL |

| Jennifer | Reed | Murphysboro | IL |
| Christina | Reed | Rockford | IL |
| Bianca | Reeves | Chicago | IL |
| Kevin | Rehlander | Rolling Meadows | IL |
| James | Rein | Ogden | IL |
| Kathy | Reppin | Peru | IL |
| Christina | Respass | Westchester | IL |
| Alfredo | Reyes | Chicago | IL |
| Will | Reynolds | Chicago | IL |
| Racine | Reynolds | Dixmoor | IL |
| Chantel | Richard | Havana | IL |
| Alexandria | Richards | Bradley | IL |
| Daryl | Richardson | Hillside | IL |
| Joseph | Richmond | Chicago | IL |
| Ramie | Ricksy | Danville | IL |
| Terry | Riggins | Paxton | IL |
| Michele | Rinehart | Rock Falls | IL |
| Chris | Rinne | Creve Coeur | IL |
| Zachary | Risley | Atwood | IL |
| Enoelia | Rivera | Chicago | IL |
| Roberta | Robbs | Staunton | IL |
| Samantha | Roberts | Chicago | IL |
| Cris | Roberts | Willow Spring | IL |
| Kisha | Roby | Chicago | IL |
| Brett | Rodgers | Franklin Park | IL |
| William | Rodriguez | Berwyn | IL |
| Jon | Rohan | Chicago | IL |
| Erica | Rojas | Chicago | IL |
| Scot | Romack | Bement | IL |
| Fernando | Roman | Mundelein | IL |
| Jessica | Romanowski | Wheaton | IL |
| Filip | Romel | Palos Hills | IL |
| Michael | Rose | Oak Park | IL |
| Andrea | Rosenbrock | Chebanse | IL |
| Max | Rosner | Lake In The Hills | IL |
| Jennifer | Ross | Ingleside | IL |
| Eric | Ross | Sandwich | IL |
| Betty | Rossiter | Macomb | IL |
| Jeremy | Roth | Athens | IL |
| Erika | Rothbard | Darien | IL |
| Jeanne | Rowe | Cuba | IL |
| Connie | Rubush | Sullivan | IL |

| Ian | Ruggiero | Lombard | IL |
|------|----------|---------|----|
| Steven | Russell | Peoria | IL |
| Terry | Russell | Stillman Valley | IL |
| Danita | Rymek | Aurora | IL |
| William | Sahagian | Bartlett | IL |
| Rami | Said | Chicago | IL |
| Christopher | Sajpel | New Lenox | IL |
| John | Salata | Chicago | IL |
| Raymundo | Salgado | Chicago | IL |
| Jamal | Sally | Chicago | IL |
| Zoila | Sanchez | Chicago | IL |
| Samantha | Sanchez | Chicago | IL |
| Dario | Sanchez | Mount Prospect | IL |
| Danielle | Sanders | Godfrey | IL |
| Jennifer | Sanson | Chillicothe | IL |
| Jeffrey | Santucci | Tinley Park | IL |
| Anastasia | Sarantopoulos | Chicago Ridge | IL |
| Christian | Saucedo | Cicero | IL |
| Blair | Savage | Chicago | IL |
| John | Schaffer | Chicago | IL |
| William | Schenk | Bloomington | IL |
| Alex | Schierer | Princeville | IL |
| Allyse | Schiller | Naperville | IL |
| Rebecca | Schmakel | Downers Grove | IL |
| Matthew | Schmit | Chicago | IL |
| Andrew | Schmitz | Rushville | IL |
| Jenna | Schnauber | Collinsville | IL |
| Carl | Schuenke | Mchenry | IL |
| Zachary | Schuetz | Malden | IL |
| Kristofer | Schuldt | Hampshire | IL |
| Patricia | Schwartz | Chicago | IL |
| Benjamin | Schwiderski | Washington | IL |
| Thaddeus | Scott | Chicago | IL |
| Brandon | Scott | Rankin | IL |
| Floyd | Scott Jr | Oakwood | IL |
| Annie | Scott-Harris | Chicago | IL |
| Lorenzo | Segura | Chicago | IL |
| Ivelisse | Sepulveda | Chicago | IL |
| Marco | Sepulveda | Chicago | IL |
| Larry | Shafer | Springfield | IL |
| Angela | Shaffer | Quincy | IL |
| Vishal | Shah | Schaumburg | IL |

| | | | |
|---|---|---|---|
| Spencer | Shanks | Byron | IL |
| Jason | Shaver | Jacksonville | IL |
| Wilma | Shaw | Chicago | IL |
| William | Shephard | Hazel Crest | IL |
| Daniel | Shepherd | Hazel Crest | IL |
| Lee | Shibley | Chicago | IL |
| Aidan | Shillin | Schaumburg | IL |
| Michael | Shrpless | Rantoul | IL |
| Travis | Shull | Gibson City | IL |
| Louie | Sigalos | Chicago | IL |
| Daniel | Simpson | Momence | IL |
| Andre | Sims | Chicago | IL |
| Charles | Sims | Pittsburg | IL |
| Eleanore | Skopek | Chicago | IL |
| Daniel | Slack | Champaign | IL |
| Chris | Smith | Albers | IL |
| Rita | Smith | Belleville | IL |
| Lisa | Smith | Casey | IL |
| Lucinda | Smith | Cerro Gordo | IL |
| Myranda | Smith | East Peoria | IL |
| James | Smith | Huntley | IL |
| Kathleen | Smith | Oak Lawn | IL |
| Dustin | Smith | Pontoon Beach | IL |
| Amber | Smith | Rockford | IL |
| Cassandra | Snyder | Joliet | IL |
| James | Snyder | New Berlin | IL |
| Natalia | Soldra | Chicago | IL |
| Felicia | Solebo | Chicago | IL |
| Raymond | Sonntag | Tinley Park | IL |
| Tina | Sorrells | Patterson | IL |
| Adam | Soyak | New Lennox | IL |
| Lynette | Spencer | Chicago | IL |
| Carrie | Stabenow | Rockford | IL |
| Katelin | Stacey | Marion | IL |
| Danny | Stafford | Benton | IL |
| William | Stafford | Chester | IL |
| Bobette | Staley | Carol Stream | IL |
| Dusty | Stamm | Swansea | IL |
| Becky | Stanley | Lacon | IL |
| Will | Stanley | Streator | IL |
| Alexander | Stark | Richmond | IL |
| William | Stelzer | Belleville | IL |

| | | | |
|---|---|---|---|
| Dan | Stephens | Collinsville | IL |
| Brandon | Stetzler | Mackinaw | IL |
| Courtney | Stevenson | Crystal Lake | IL |
| Luz | Stewart | Rockford | IL |
| Elizabeth | Stewart | Urbana | IL |
| Erik | Stokes | Woodridge | IL |
| Sarah | Stone | Channahon | IL |
| Chris | Stovall | Chicago | IL |
| Candi | Straub | Plato Center | IL |
| Marisa | Strong | Chicago Heights | IL |
| Darneice | Strozier | Chicago | IL |
| Angela | Sturges | Lynwood | IL |
| Brian | Svenonius | Elk Grove Village | IL |
| Angela | Swenney | Brook Port | IL |
| Robert Scott | Swenson | Hoffman Estates | IL |
| Chasity | Sydnor | Peoria | IL |
| Joshua | Taapken | Decatur | IL |
| Tabatha | Taggart | Chicago | IL |
| Carla | Taico | Bolingbrook | IL |
| Daniel | Tallarico | Chicago | IL |
| Melissa | Tanner | Pekin | IL |
| Amber | Taraszka | Crystal Lake | IL |
| Brandy | Tarpinian | Winnebago | IL |
| Wilbert | Taylor Jr | Chicago | IL |
| Erma | Taylor-Campbell | Chicago | IL |
| Anthony | Tazelaar | Belvidere | IL |
| Ahlem | Tekamera | Lombard | IL |
| Freddie | Terry | Chicago | IL |
| Anne | Teutsch | Danvers | IL |
| Affan | Tharani | Carol Stream | IL |
| Adam | Theobald | Batavia | IL |
| Joel | Thomas | Chicago | IL |
| Robert | Thomas | Dixon | IL |
| Fred | Thomas | Lynwood | IL |
| David | Thomas | Marion | IL |
| Alphonso | Thomas Jr | Chicago | IL |
| Linda | Thompson | Godfrey | IL |
| Tina | Thompson | Belvidere | IL |
| Darbie | Thompson | Casey | IL |
| Carolyn | Thompson | Chicago | IL |
| Bob | Thompson | Effingham | IL |
| Virginia | Thompson | Elgin | IL |

| | | | |
|---|---|---|---|
| Rishu | Thukral | Chicago | IL |
| Jason | Tincher | Streator | IL |
| Tyron | Tipton | Carbondale | IL |
| Micah | Tolbert | Metropolis | IL |
| Christopher | Toney | Rockford | IL |
| Cynthia | Toyne | Washington | IL |
| Genaro | Trejo | Bartlett | IL |
| Christina | Trejo | Crystal Lake | IL |
| Paul | Trippett | Carol Stream | IL |
| Frances | Troesch | Monee | IL |
| Daniel | Trujillo | Mchenry | IL |
| Ross | Tumbarello | Moro | IL |
| Daphne | Turner | Chicago | IL |
| Lawrence | Turner | Chicago | IL |
| Tuxford | Turner | Chicago | IL |
| Cassandra | Vanbibber | Roscoe | IL |
| Mary | VanCleave | Urbana | IL |
| Eugene | Vandyke | Moline | IL |
| Derek | VanWyhe | Hoffman Estates | IL |
| Philip | Varughese | Naperville | IL |
| Vanessa | Vasile-Johnson | Lockport | IL |
| Andrea | Vasquez | Granite City | IL |
| Yolanda | Vazquez | Chicago | IL |
| Carrie | Veile | Liberty | IL |
| Emiliano | Velazquez | Chicago | IL |
| Scott | Venard | Oswego | IL |
| Edgar | Vera | Oaklawn | IL |
| Cory | Villani | Ashton | IL |
| David | Vogwill | Chicago | IL |
| Anthony | Vore | Fairfield | IL |
| Charles | Walker | Chicago | IL |
| Lashawn | Walker | Evergreen Park | IL |
| Barbara | Walker | Joliet | IL |
| Ethan | Walter | Wood River | IL |
| Joshua | Wanland | Woodstock | IL |
| Rode | Warchol | Chicago Ridge | IL |
| Andrea | Ward | Chicago | IL |
| Steven | Warren | Aurora | IL |
| Barb | Wasielewski | Spring Valley | IL |
| Candace | Watkins | Chicago | IL |
| Kalyb | Watkins | Mendota | IL |
| Barbara | Watley | Chicago | IL |

| Andrea | Webber | Kewanne | IL |
|---|---|---|---|
| Jennifer | Wedeking | Beardstown | IL |
| Steven | Weglarz | Lombard | IL |
| Diane | Weidner | Hawthorn Woods | IL |
| Dave | Weigal | Mokena | IL |
| Claudia | Weinberg | Chicago | IL |
| Darryll | Weinstock | Anntioch | IL |
| Tricia | Wendt | Teutopolis | IL |
| Jeff | Werner | Batrington | IL |
| Bill | Whaley | Lake Villa | IL |
| Laura | White | Bellwood | IL |
| Ralph | White | Bloomington | IL |
| Sterling | White | Champaign | IL |
| Erika | Whitehead | Chicago | IL |
| Bonita | Whitt | Chicago | IL |
| Craig | Wiesenfarth | Tinley Park | IL |
| Debbie | Wike | Naperville | IL |
| Edward | Wild | Westmont | IL |
| Danny | Wildman | Mattoon | IL |
| Steve | Wilhoyt | Kankakee | IL |
| Alisha | Williams | Chicago | IL |
| Katyna | Williams | Belleville | IL |
| Abrillia | Williams | Chicago | IL |
| Kari | Williams | Chicago | IL |
| Diana | Williams | Chicago | IL |
| Dante | Williams | East Peoria | IL |
| Christopher | Williams | Hazel Crest | IL |
| Emily | Williams | Jacksonville | IL |
| Dawn | Williams | Maywood | IL |
| Wayne | Williams | Urbana | IL |
| Jason | Williams | Villa Park | IL |
| Jimmie | Williams Jr | Lyons | IL |
| Leslie | Williamson | Chicago | IL |
| Christopher | Wills | Troy | IL |
| Darius | Wilson | Chicago | IL |
| Michelle | Wimmer | Elburn | IL |
| Angela | Winfield | Country Club Hills | IL |
| Annette | Wingert | Rock Island | IL |
| Bart | Winkler | Antioch | IL |
| Ben | Winston | Beach Park | IL |
| Danielle | Winters | Berwyn | IL |
| Nicholas | Wittenbrink | Red Bud | IL |

| Andy | Wolf | Oak Lawn | IL |
|---|---|---|---|
| Linda | Wong | Chicago | IL |
| Debra | Woodlief | Mchenry | IL |
| Todd | Woodrow | Flora | IL |
| Benjamin | Woolford | Centralia | IL |
| Charisma | Wright | Belleville | IL |
| Mark | Wright | Dunlap | IL |
| Ann | Wright | Orland Park | IL |
| Jack | Wu | Chicago | IL |
| Alexandria | Yanders | Sidney | IL |
| Brian | Yarbrough | Peoria | IL |
| Daniel | Yepez Perez | Cicero | IL |
| Angela | Young | Chicago | IL |
| Andy | Yuen | Chicago | IL |
| Robin | Zachary | Aurora | IL |
| Karla | Zamorano | Markham | IL |
| Albert | Zaragoza | Chebanse | IL |
| Dale | Zeisset | Waterloo | IL |
| Valerie | Zeisset | Waterloo | IL |
| Edward | Zelechowski | Fairview Heights | IL |
| Qiyuan | Zhou | Chicago | IL |
| Andy | Zieren | Carlyle | IL |
| Greer | Zummo | Chicago | IL |
| Frank | Zummo | Peotone | IL |
| Lindsey | Zwick | Quincy | IL |

# EXHIBIT B-1

SAMSUNG Galaxy S10

# Terms & Conditions / Health & Safety Information

Read this document before operating the mobile device, accessories, or software (defined collectively and individually as the "Product") and keep it for future reference. This document contains important Terms and Conditions. Electronic acceptance, opening the Product packaging, use of the Product, or retention of the Product constitutes acceptance of these Terms and Conditions.

Revised 05/09/2018

- Arbitration Agreement
- Standard Limited Warranty
- End User License Agreement (EULA)
- Health & Safety Information



GH68-49900A
Printed in Korea

# Table of Contents

Document #: 1-2 Filed: 03/28/23 Pac

Important Legal information ........................... **4**

    Find legal information online .................................. 4

    Find legal information on the Mobile Device ...... 5

    Intellectual Property ................................................. 5

    Open source software ............................................. 6

    Samsung Knox ........................................................... 6

    Modification of software ......................................... 6

    Diagnostic Software ................................................. 7

    Disclaimer of warranties; Exclusion of liability .... 7

Section 1: Arbitration Agreement ........................ **9**

Section 2: Standard Limited Warranty ............... **13**

Section 3: End User License Agreement ........... **14**

Section 4: Health & Safety Information .............. **15**

    Maintaining dust and water resistance .............. 15

    Heart rate sensor .................................................... 17

    Specific Absorption Rate (SAR) Certification
    Information ............................................................... 17

    FCC Part 15 Information and Notices .................. 20

    FCC Notice ................................................................ 21

    Samsung mobile products and recycling .......... 22

2

Document #: 1-2 Filed: 03/28/23 Pag

GPS & AGPS..........................................................22

Your location.......................................................23

Use of AGPS in emergency calls.......................23

Navigation ...........................................................24

Commercial Mobile Alerting System (CMAS)....24

Emergency calls..................................................25

FCC Hearing Aid Compatibility (HAC)
regulations for wireless devices .......................26

Card tray removal tool.......................................28

Device temperature ...........................................28

Sound and hearing.............................................29

Restricting children's access to your mobile
device....................................................................29

# Important Legal Information

Document #: 1-23 Filed: 03/28/23 Pag

READ THIS INFORMATION BEFORE USING YOUR
MOBILE DEVICE.

**Arbitration Agreement – This Product is subject
to a binding arbitration agreement between you
and SAMSUNG ELECTRONICS AMERICA, INC.
("Samsung"). You can opt out of the agreement
within 30 calendar days of the first consumer
purchase by emailing optout@sea.samsung.com or
calling 1-800-SAMSUNG (726-7864) and providing
the applicable information. For complete terms
and conditions that bind you and Samsung, refer
to the "Arbitration Agreement" section of this
document.**

## Find legal information online

The full Arbitration Agreement, Standard Limited
Warranty, End User License Agreement (EULA),
and Health & Safety Information for your device
are available online:

Arbitration Agreement, Standard Limited
Warranty, and Health & Safety Information:

> English: **www.samsung.com/us/Legal/
> Phone-HSGuide**

> Spanish: **www.samsung.com/us/Legal/
> Phone-HSGuide-SP**

End User License Agreement:

> English: **www.samsung.com/us/Legal/
> SamsungLegal-EULA4**

> Spanish: **www.samsung.com/us/Legal/
> SamsungLegal-EULA4/#SPANISH**

4

**Find legal information on the Mobile Device**

Document #: 1-2 Filed: 03/28/23 Pag

The full Arbitration Agreement, Standard Limited Warranty, End User License Agreement (EULA) and Health & Safety Information are also available on the device, in the Samsung legal section of Settings. The location depends on the device, and is usually in the "About device" or "About phone" or "About tablet" section, for example:

**Settings** › **About phone** or **About device** or **About tablet** › **Legal information** › **Samsung legal**

Or, use the Search feature to search for "Legal".

## Intellectual Property

All Intellectual Property, as defined below, owned by or which is otherwise the property of Samsung or its respective suppliers relating to the Product, including but not limited to, accessories, parts, or software relating thereto, is proprietary to Samsung and protected under federal laws, state laws, and international treaty provisions. Intellectual Property includes, but is not limited to, inventions (patentable or unpatentable), patents, trade secrets, copyrights, software, computer programs, and related documentation and other works of authorship.

You may not infringe or otherwise violate the rights secured by the Intellectual Property. Moreover, you agree that you will not (and will not attempt to) modify, prepare derivative works of, reverse engineer, decompile, disassemble, or otherwise attempt to create source code from the software.

5

No title to or ownership in the Intellectual Property is transferred to you. All applicable rights of the Intellectual Property shall remain with Samsung and its suppliers.

### Open source software

Some software components of this Product, including but not limited to 'PowerTOP' and 'e2fsprogs', incorporate source code covered under GNU General Public License (GPL), GNU Lesser General Public License (LGPL), OpenSSL License, BSD License and other open source licenses. To obtain the source code covered under the open source licenses, please visit:
**http://opensource.samsung.com**

### Samsung Knox

Samsung Knox is Samsung's security platform and is a mark for a Samsung Product tested for security with enterprise use in mind. Additional licensing fee may be required. For more information about Knox, please refer to: **www.samsung.com/us/knox**

### Modification of software

**Samsung is not liable for performance issues or incompatibilities caused by your editing of registry settings, or your modification of Operating System (OS) software. Using custom OS software may cause your Product and applications to work improperly. Your carrier may not permit users to download certain software, such as custom OS.**

**If your carrier prohibits this, and if you attempt to download software onto the device without authorization, you will be notified on the screen that unauthorized software has been detected.**

6

Document #: 1-2 Filed: 03/28/23 Pag

You should then power down the device and contact your carrier to restore the device to the carrier-authorized settings.

### Diagnostic Software

This device is equipped with diagnostic software reporting usage and performance information used solely to deliver improved network quality and overall device experience to AT&T customers. Please refer to your AT&T Wireless Customer Agreement and/or the AT&T Privacy Policy (www.att.com/privacy) for more information.

### Disclaimer of warranties; Exclusion of liability

The information below explains that a user accepts this Product as sold, including the hardware and software components as created and packaged for sale. If the user changes these parameters through a unique modification, Samsung will not be held responsible for damages or issues that result from these end-user changes.

Except as set forth in the Standard Limited Warranty that accompanies the Product, the purchaser takes the Product "as is", and Samsung makes no express or implied warranty of any kind whatsoever with respect to the Product, including but not limited to the:

    merchantability of the Product or its fitness for any particular purpose or use;

    design, condition or quality of the Product;

    performance of the Product;

    workmanship of the Product or the components contained therein; or

7

compliance of the Product with the requirements of any law, rule, specification or contract pertaining thereto.

Nothing contained in the User Manual or any other document shall be construed to create an express or implied warranty of any kind whatsoever with respect to the Product. Neither Samsung nor the wireless carrier are responsible for, and the Standard Limited Warranty does not apply to, any damage or injury arising from disassembly or repairs by persons not authorized or approved by Samsung to service this Product. In addition, Samsung shall not be liable for any damages of any kind resulting from the purchase or use of the Product or arising from the breach of the express warranty, including incidental, special or consequential damages, or loss of anticipated profits or benefits.

Samsung Electronics America, Inc.

85 Challenger Road

Ridgefield Park, NJ 07660

Phone: 1-800-SAMSUNG (726-7864)

Internet: **www.samsung.com**

©2019 Samsung Electronics America, Inc. Samsung is a registered trademark of Samsung Electronics Co., Ltd.

## Section J: Arbitration Agreement

ocument #: 1-2 Filed: 03/28/23 Pag

THIS IS A BINDING LEGAL AGREEMENT ("AGREEMENT") BETWEEN YOU (EITHER AN INDIVIDUAL OR ENTITY) AND SAMSUNG ELECTRONICS AMERICA, INC. ("SAMSUNG"). ELECTRONIC ACCEPTANCE OF THE AGREEMENT, OPENING THE PRODUCT PACKAGING, USE OF THE PRODUCT, OR RETENTION OF THE PRODUCT CONSTITUTES ACCEPTANCE OF THIS AGREEMENT, REGARDLESS OF WHETHER YOU ARE THE ORIGINAL PURCHASER, USER, OR OTHER RECIPIENT OF THE PRODUCT.

YOU AND SAMSUNG EACH AGREE THAT ALL DISPUTES BETWEEN YOU AND SAMSUNG RELATING IN ANY WAY TO OR ARISING IN ANY WAY FROM THE STANDARD LIMITED WARRANTY OR THE SALE, CONDITION OR PERFORMANCE OF THE PRODUCT SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, AND NOT BY A COURT OR JURY. ANY SUCH DISPUTE SHALL NOT BE COMBINED OR CONSOLIDATED WITH A DISPUTE INVOLVING ANY OTHER PERSON'S OR ENTITY'S PRODUCT OR CLAIM, AND SPECIFICALLY, WITHOUT LIMITATION OF THE FOREGOING, SHALL NOT UNDER ANY CIRCUMSTANCES PROCEED AS PART OF A CLASS ACTION. THE ARBITRATION SHALL BE CONDUCTED BEFORE A SINGLE ARBITRATOR, WHOSE AWARD MAY NOT EXCEED, IN FORM OR AMOUNT, THE RELIEF ALLOWED BY THE APPLICABLE LAW.

ocument #: 1-2 Filed: 03/28/23 Pag

The arbitration shall be conducted according
to the American Arbitration Association (AAA)
Commercial Arbitration Rules applicable to
consumer disputes. The AAA Rules are available
online at **adr.org** or by calling the AAA at
1-800-778-7879. This Agreement is entered
into pursuant to the Federal Arbitration Act.
The laws of the State of New York, without
reference to its choice of law principles, shall
govern the application and interpretation of the
Agreement and all disputes that are subject to
this Agreement. The arbitrator shall decide all
issues of interpretation and application of this
Agreement.

For any arbitration in which your total damage
claims, exclusive of attorney fees and expert
witness fees, are $5,000.00 or less ("Small Claim"),
the arbitrator may, if you prevail, award your
reasonable attorney fees, expert witness fees
and costs as part of any award, but may not grant
Samsung its attorney fees, expert witness fees
or costs unless it is determined that the claim
was brought in bad faith. In a Small Claim case,
you shall be required to pay no more than half
of the total administrative, facility and arbitrator
fees, or $50.00 of such fees, whichever is less, and
Samsung shall pay the remainder of such fees.
Administrative, facility and arbitrator fees for
arbitrations in which your total damage claims,
exclusive of attorney fees and expert witness
fees, exceed $5,000.00 ("Large Claim") shall be
determined according to AAA rules.

10

ocument #: 1-2 Filed: 03/28/23 Pag

In a Large Claim case, the arbitrator may grant to the prevailing party, or apportion among the parties, reasonable attorney fees, expert witness fees and costs to the extent allowed by the applicable law. Judgment may be entered on the arbitrator's award in any court of competent jurisdiction.

This Agreement also applies to claims against Samsung's employees, representatives, parents and other affiliates if any such claim relates in any way to or arises in any way from the Standard Limited Warranty or the Product's sale, condition or performance.

**You may opt out of this Agreement by providing notice to Samsung no later than 30 calendar days from the date of the first consumer purchaser's purchase of the Product. To opt out, you must send notice by e-mail to optout@sea.samsung.com, with the subject line: "Arbitration Opt Out." You must include in the opt-out email (a) your name and address; (b) the date on which the Product was purchased; (c) the Product model name or model number; and (d) the IMEI or MEID or Serial Number, as applicable, if you have it (the IMEI or MEID or Serial Number can be found (i) on the Product box; (ii) on the Product information screen which can be found under "Settings;" (iii) on a label on the back of the Product beneath the battery, if the battery is removable; and (iv) on the outside of the Product if the battery is not removable).**

Alternatively, you may opt out by calling 1-800-SAMSUNG (726-7864) no later than 30 calendar days from the date of the first consumer purchaser's purchase of the Product and providing the same information. These are the only two forms of notice that will be effective to opt out of this Agreement. Opting out of this Agreement will not affect in any way the benefits to which you would otherwise be entitled, including the benefits of the Standard Limited Warranty.

12

## Section 2: Standard Limited Warranty

ocument #: 1-2 Filed: 05/26/23 Pag

The full Standard Limited Warranty for your device is available online and on the device:

Online:

English: **www.samsung.com/us/Legal/Phone-HSGuide**

Spanish: **www.samsung.com/us/Legal/Phone-HSGuide-SP**

On the device:

**Settings** > **About phone** or **About device** or **About tablet** > **Legal information** > **Samsung legal**

Or, use the Search feature to search for "Legal"

## Section 3: End User License Agreement

ocument #: 1-2 Filed: 09/20/23 Pag

The full End User License Agreement (EULA) for your device can be found online and on the device:

Online:

English: **www.samsung.com/us/Legal/ SamsungLegal-EULA4**

Spanish: **www.samsung.com/us/Legal/ SamsungLegal-EULA4/#SPANISH**

The full End User License Agreement (EULA) is also available on the device, in the Samsung legal section of Settings. The location depends on the device, and is usually in the "About device" or "About phone" or "About tablet" section, for example:

**Settings** > **About phone** or **About device** or **About tablet** > **Legal information** > **Samsung legal**

Or, use the Search feature to search for "Legal"

14

## Section 4: Health & Safety Information

ocument #: 1-2 Filed: 03/28/23 Pag

This section outlines important safety precautions associated with using your device. The terms "device" or "mobile device" or "cell phone" are used in this section to refer to your device. **Read this information before using your mobile device.**

**WARNING!** To avoid electric shock and damage to your device, do not charge device while it is wet or in an area where it could get wet. Do not handle device, charger or cords with wet hands while charging.

### Maintaining dust and water resistance

This device is rated IP68 using the Ingress Protection rating system. The device has been tested in a controlled environment and shown to be water and dust resistant in certain circumstances (meets requirements of classification IP68 as described by the international standard IEC 60529 - Degrees of Protection provided by Enclosures [IP Code]; test conditions: 15–35°C, 86–106 kPa, 5.0 feet, for 30 minutes). Despite this classification, the device is not impervious to water damage in any situation. It is important that all compartments are closed tightly.

**Note:** If any liquid is found to have entered the device components or an internally sealed system, this condition will void your device warranty.

Follow these tips carefully to prevent damage to the device:

Any device which uses accessible compartments or ports that can be opened should have these sealed or closed tightly to prevent liquid from entering the system.

Whenever the device gets wet, dry it thoroughly with a clean, soft cloth.

Water resistant based on IP68 rating, which tests submersion in fresh water up to 5 feet for up to 30 minutes. If device is exposed to fresh water, dry it thoroughly with a clean, soft cloth; if exposed to liquid other than fresh water, rinse with fresh water and dry as directed.

**Note:** Liquid other than fresh water may enter the device faster. Failure to rinse the device in fresh water and dry it as instructed may cause the device to suffer from operability or cosmetic issues.

Do not expose the device to water at high pressure.

If the device is dropped or receives an impact, the water and dust resistant features of the device may be damaged.

The touchscreen and other features may not work properly if the device is used in water or in other liquids.

16

**Heart rate sensor**

ocument #: 1-2 Filed: 03/28/23 Pag

**Note:** The information gathered from this device, Samsung Health, or related software is not intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment or prevention of disease.

The accuracy of the information and data provided by this device and its related software, including heart rate readings, may be affected by factors such as environmental conditions, skin condition, specific activity performed while using/wearing the device, settings of the device, user configuration/user-provided information, placement of the sensor on the body, and other end-user interactions. Please refer to the User Manual for more information on proper wear and use, or see **www.samsung.com/us/heartratesensor**

**Specific Absorption Rate (SAR) Certification Information**

Your device is a radio transmitter and receiver. It is designed and manufactured not to exceed the exposure limits for Radio Frequency (RF) energy set by the Federal Communications Commission (FCC) of the U.S. Government.

These FCC RF exposure limits are derived from the recommendations of two expert organizations: the National Council on Radiation Protection and Measurement (NCRP) and the Institute of Electrical and Electronics Engineers (IEEE). In both cases, the recommendations were developed by scientific and engineering experts drawn

17

ocument #: 1-2 Filed: 03/28/23 Pag

from industry, government, and academia offer extensive reviews of the scientific literature related to the biological effects of RF energy.

The RF exposure limit set by the FCC for wireless mobile devices employs a unit of measurement known as the Specific Absorption Rate (SAR). The SAR is a measure of the rate of absorption of RF energy by the human body expressed in units of watts per kilogram (W/kg). The FCC SAR limit incorporates a substantial margin of safety to give additional protection to the public and to account for any variations in measurements.

SAR tests are conducted using standard operating positions accepted by the FCC with the device transmitting at its highest certified power level in all tested frequency bands. Although the SAR is determined at the highest certified power level, the actual SAR level of the device while operating can be well below the maximum reported value. This is because the device is designed to operate at multiple power levels so as to use only the power required to reach the network. In general, the closer you are to a wireless base station antenna, the lower the power output of the device.

For more information about SAR, visit:

**https://www.fcc.gov./general/ radio-frequency-safety-0**

**www.fcc.gov/encyclopedia/specific-absorption- rate-sar-cellular-telephones**

ocument #: 1-2 Filed: 03/28/23 Pag

Before a new model device is available for sale to the public, it must be tested and certified to the FCC that it does not exceed the SAR limit established by the FCC. Tests for each model are performed in positions and locations (for example, at the ear, worn on the body, or worn on the wrist) as required by the FCC. Use of other accessories may not ensure compliance with FCC RF exposure guidelines.

For typical operation, this device has been tested and meets FCC SAR guidelines. The FCC has granted an Equipment Authorization for this device with all reported SAR levels evaluated as in compliance with the FCC RF exposure guidelines.

SAR values for body-worn operations are measured when used with an accessory that contains no metal and that positions the device a minimum of 1.5 cm from the body.

The FCC safety limit for body-worn SAR is 1.6 watts per kilogram (1.6 W/kg).

This device has FCC ID: A3LSMG973U and Model Number: SM-G973U. The FCC ID is also printed somewhere on the mobile device. Depending on the device, you may need to remove the battery to find the FCC ID.

SAR information for this and other devices can be found on the FCC website at: **www.fcc.gov/oet/ea/**

Follow the instructions on the website to use the FCC ID to find SAR values for the device.

SAR information for this device can also be found on Samsung's website at: **www.samsung.com/sar**

19

### FCC Part 15 Information and Notices

**Note:** Any device that uses Bluetooth or Wi-Fi is subject to FCC Part 15. Any device with a power supply is subject to Part 15 which also covers both intentional radiators (Bluetooth and Wi-Fi) and unintentional radiators (such as emissions from power supplies and circuit boards).

Pursuant to Part 15.21 of the FCC Rules, you are cautioned that changes or modifications not expressly approved by Samsung could void your authority to operate the device. This device complies with Part 15 of the FCC Rules. Operation is subject to the following two conditions: (1) This device may not cause harmful interference, and (2) this device must accept any interference received, including interference that may cause undesired operation.

**Note:** This equipment has been tested and found to comply with the limits for a Class B digital device, pursuant to Part 15 of the FCC Rules. These limits are designed to provide reasonable protection against harmful interference in a residential installation. This equipment generates, uses and can radiate radio frequency energy and, if not installed and used in accordance with the instructions, may cause harmful interference to radio communications.

However, there is no guarantee that interference will not occur in a particular installation. If this equipment does cause harmful interference to radio or television reception, which can be determined by turning the equipment off and on, the user is encouraged to try to correct the interference by one or more of the following measures:

ocument #: 1-2 Filed: 03/28/23 Pag

 Reorient or relocate the receiving antenna.

 Increase the separation between the equipment and receiver.

 Connect the equipment into an outlet on a circuit different from that to which the receiver is connected.

 Consult the dealer or an experienced radio/ TV technician for help.

Responsible party - U.S. Contact Information

Samsung Electronics America, Inc.

QA Lab America

19 Chapin Rd. Building D, Pine Brook NJ 07058

Tel : 1-973-808-6375 Fax : 1-973-808-6361

**FCC Notice**

The device may cause TV or radio interference if used in close proximity to receiving equipment. The FCC can require you to stop using the mobile device if such interference cannot be eliminated.

This equipment complies with FCC RF Radiation exposure limits set forth for an uncontrolled environment.

When using the wireless power sharing function, this equipment should be operated with a minimum distance of 20 centimeters between the device and your body.

21

**Samsung mobile products and recycling**

ocument #: 1-2 Filed: 03/28/23 Pag

**WARNING!** Never dispose of batteries in a fire because they may explode.

Samsung cares for the environment and encourages its customers to properly dispose of Samsung Mobile Devices and Samsung accessories in accordance with local regulations. In some areas, disposal of these items in household or business trash may be prohibited.

Proper disposal of your Device and its battery is not only important for safety, it benefits the environment. We've made it easy for you to recycle your old Samsung Mobile Devices and batteries by working with respected take-back companies in every state in the country.

Help us protect the environment - recycle! For battery and cell phone recycling, go to **call2recycle.org** or call 1-800-822-8837. 

In addition, most carriers will provide a take-back option for proper disposal of products when purchasing new products.

Dispose of other unwanted electronics through an approved recycler. To find the nearest recycling location, go to our website:
**www.samsung.com/recycling** or call 1-800-SAMSUNG.

## GPS & AGPS

Certain Samsung Mobile Devices can use a Global Positioning System (GPS) signal for location-based applications. GPS uses satellites controlled by the U.S. Government that are subject to changes

22

ocument #: 1-2 Filed: 03/28/23 Pag

implemented in accordance with the Department of Defense policy and the 2008 Federal Radio navigation Plan (FRP). Changes may affect the performance of location-based technology on your mobile device.

Certain Samsung Mobile Devices can also use an Assisted Global Positioning System (AGPS), which obtains information from the cellular network to improve GPS performance. AGPS uses your wireless service provider's network and therefore airtime, data charges, and/or additional charges may apply in accordance with your service plan. Contact your wireless service provider for details.

### Your location

Location-based information includes information that can be used to determine the approximate location of a mobile device. Mobile devices which are connected to a wireless network transmit location-based information. Additionally, if you use applications that require location-based information (e.g., driving directions), such applications transmit location-based information. The location-based information may be shared with third-parties, including your wireless service provider, applications providers, Samsung, and other third-parties providing services.

### Use of AGPS in emergency calls

When you make an emergency call, the cellular network may activate AGPS technology in your mobile device to tell the emergency responders your approximate location.

23

AGPS has limitations and **might not work in your area.**

ocument #: 1-2 Filed: 03/28/23 Pag

Therefore:

Always tell the emergency responder your location to the best of your ability; and

Remain on the mobile device for as long as the emergency responder instructs you.

**Navigation**

Maps, directions, and other navigation data, including data relating to your current location, may contain inaccurate or incomplete data, and circumstances can and do change over time. In some areas, complete information may not be available. Therefore, you should always visually confirm that the navigational instructions are consistent with what you see before following them. All users should pay attention to road conditions, closures, traffic, and all other factors that may impact safe driving or walking. Always obey posted road signs.

**Commercial Mobile Alerting System (CMAS)**

This device is designed to receive Wireless Emergency Alerts from CMAS. If your wireless provider participates in CMAS, alerts are available while in the provider's coverage area. If you travel outside the coverage area, alerts may not be available. For more information, please contact your wireless provider.

**Emergency calls**

This device, like any wireless mobile device, operates using radio signals, wireless and landline networks, as well as user-programmed functions, which cannot guarantee connection in all conditions, areas, or circumstances. Therefore, you should never rely solely on any wireless mobile device for essential communications (medical emergencies, for example). Before traveling in remote or underdeveloped areas, plan an alternate method of contacting emergency services personnel. Remember, to make or receive any calls, the mobile device must be switched on and in a service area with adequate signal strength.

Emergency calls may not be possible on all wireless mobile device networks or when certain network services and/or mobile device features are in use. Check with local service providers. If certain features are in use (call blocking, for example), you may first need to deactivate those features before you can make an emergency call. Consult your User Manual and your local cellular service provider. When making an emergency call, remember to give all the necessary information as accurately as possible. Remember that your mobile device may be the only means of communication at the scene of an accident; do not end the call until given permission to do so.

**To make an emergency call:**

1. If the mobile device is not on, turn it on.
2. Open the phone dialer.
3. Enter the emergency number for your current

25

ocument #: 1-2 Filed: 03/28/23 Pag

location (for example, 911 or other official emergency number), then tap Call/Send. Emergency numbers vary by location.

**FCC Hearing Aid Compatibility (HAC) regulations for wireless devices**

The U.S. Federal Communications Commission (FCC) has established requirements for digital wireless mobile devices to be compatible with hearing aids and other assistive hearing devices.

When individuals employing some assistive hearing devices (hearing aids and cochlear implants) use wireless mobile devices, they may detect a buzzing, humming, or whining noise. Some hearing devices are more immune than others to this interference noise, and mobile devices also vary in the amount of interference they generate.

The wireless telephone industry has developed a rating system for wireless mobile devices to assist hearing device users find mobile devices that may be compatible with their hearing devices. Not all mobile devices have been rated. Mobile devices that are rated have the rating on their box or a label located on the box.

The ratings are not guarantees. Results will vary depending on the user's hearing device and hearing loss. If your hearing device happens to be vulnerable to interference, you may not be able to use a rated mobile device successfully. Trying out the mobile device with your hearing device is the best way to evaluate it for your personal needs.

26

ocument #: 1-2 Filed: 03/28/23 Pag

**M-Ratings:** Wireless mobile devices rated M3 or M4 meet FCC requirements and are likely to generate less interference to hearing devices than mobile devices that are not labeled. M4 is the better/higher of the two ratings. M-ratings refer to enabling acoustic coupling with hearing aids that do not operate in telecoil mode.

**T-Ratings:** Mobile devices rated T3 or T4 meet FCC requirements and are likely to generate less interference to hearing devices than mobile devices that are not labeled. T4 is the better/higher of the two ratings. T-ratings refer to enabling inductive coupling with hearing aids operating in telecoil mode.

Hearing devices may also be rated. Your hearing aid manufacturer or hearing health professional may help you find this rating. Higher ratings mean that the hearing device is relatively immune to interference noise. Under the current industry standard, American National Standards Institute (ANSI) C63.19, the hearing aid and wireless mobile device rating values are added together to indicate how usable they are together. For example, if a hearing aid meets the M2 level rating and the wireless mobile device meets the M3 level rating, the sum of the two values equals M5.

Under the standard, this should provide the hearing aid user with normal use while using the hearing aid with the particular wireless mobile device. A sum of M6 or more would indicate excellent performance.

27

ocument #: 1-2 Filed: 03/28/23 Pag

However, these are not guarantees that all users will be satisfied. T-ratings work similarly.



The HAC rating and measurement procedure are described in the American National Standards Institute (ANSI) C63.19 standard.

**Card tray removal tool**

**Caution!** Exercise care when using the card tray removal tool to eject the internal card tray.

**Device temperature**

**Caution! Some applications or prolonged usage may increase device temperature.**

Prolonged skin contact with a device that is hot to the touch may produce skin discomfort or redness, or low temperature burns. If the device feels hot to the touch, discontinue use and close all applications or turn off the device until it cools.

Always ensure that the device has adequate ventilation and air flow. Covering the device can significantly affect air flow, may affect the performance of the device, and poses a possible risk of fire or explosion, which could lead to serious bodily injuries or damage to property. Covering the device can trap any dissipating heat and redirect it back to the device while it is active.

28

Although the device might not currently be in full use, background applications and functions can generate heat that can accidentally be trapped when covered.

**Sound and hearing**

**Caution!** Avoid potential hearing loss by not exposing yourself to loud sounds for a prolonged period of time.

The risk of hearing loss increases as sound is played louder and for longer durations. The amount of sound produced by a portable audio device (including headsets, earbuds, and Bluetooth® or other wireless devices) varies depending on the nature of the sound, the device settings, and the headphones that are used. As a result, there is no single volume setting that is appropriate for everyone or for every combination of sound, settings and equipment.

**Restricting children's access to your mobile device**

Your device is not a toy. Do not allow children to play with it because they could hurt themselves and others, damage the device, or make calls that increase your mobile device bill.

Keep the device and all its parts and accessories out of the reach of small children.

ocument #: 1-2 Filed: 03/28/23 Pag

# EXHIBIT B-2

# Weqwyrk□Wivzmgiw□X        ivaw□erh□Gsrhmxmsrw

xivqw2eggsyrx2weqwyrk2gsq        /contents/legal/usa/eng/general.html

Weqwyrk□Wivzmgiw□Xivqw□erh□Gsrhmxmsr

Tswxih□hexi>□Witxiqfiv□740□

□IPGSQI

[ipgsqi%□Xlero□}sy□jsv□}syv□mrxiviwx□mr□syv□wivzmgiw2

[i0□Weqwyrk□Ipigxvsrmgw□Gs20□Pxh2□,÷{i□0□÷syv◊0□sv□÷Weqwyrk◊-0□xskixliv□{mxl□syv□
tvszmhi□e□zevmix}□sj□jiexyviw0□ettw0□erh□wivzmgiw□xlex□}sy□ger□irns}□{□[m
XZw0□erh□sxliv□tvshygxw0□livi□□□,÷Wivzmgiw◊-0□erh□xliwi□Xivqw□erh□Gsrhmxmsr
{mpp□gsziv□}syv□ywi□sj□xli□Wivzmgiw2

EGGITXMRK□SYV□XIVQW

F}□gviexmrk□er□eggsyrx□sv□ywmrk□syv□Wivzmgiw0□}sy□gsrjmvq□xlex□}sy□e
epws□gsrimvq□,

    ꜱ. 52□]sy□lezi□vieglih□xli□eki□sj□[
    ᖯ. 62□]sy□evi□57□sv□sphiv□fyx□}syrkiv□xler□5<□,÷Qmrsv◊-0□xlex□
       xliwi□Xivqw□{mxl□}syv□tevirx□sv□pikep□kyevhmer□fijsvi□ywmrk□xli□W
       }sy□erh□}syv□tevirx□sv□kyevhmer□yrhivwxerh□erh□gsrwirx□xs□xliwi□Xivqw2□Mj□}s
       evi□e□tevirx□sv□kyevhmer□sj□e□Qmrsv□{ls□mw□ywmrk□xli□Wiv
       ekvii□xs□,m-□wytivzmwi□xli□Qmrsr+w□ywi□sj□xli□Wivzmgiw?□
       ewwsgmexih□{mxl□xli□QmrsrVw□ywi□sj□xli□Wivzmgiw0□,mmm-□ewwy
       jvsq□xli□QmrsrYw□ywi□sj□xli□Wivzmgiw?□,mz-□irwyvi□xli□eggyveg}□
       epp□mrjsvqexmsr□wyfqmxxih□f}□□}sv□xli□Qmrsr?□erh□,z-□ewwyqi□
       evi□fsyrh□f}□xliwi□Xivqw□jsv□xli□QmrsrVw□eggiww□erh□ywi□
    ᴄ. 72□]sy□qe}□fi□tvizirxih□jvsq□gviexmrk□er□eggsyrx□sv□ywmrk□syv□[
       syv□glmphvir□eggiwwmfmpmx}□□tspmg}□mr□eggsvhergi□{mxl□xli□
       vikypexmsrw□mr□}syv□nyrm

[i□qe}□wsqixmqiw□riih□xs□glerki□xliwi□Xivqw2□[i□{mpp□pix□}sy□ors{□sj□er}□glerkiw□f}
tswxmrk□xli□ythexih□Xivqw□s ifwmxi2□Mj□{i□xlmro□xli□glerkiw□evi□qexivmep0□□
e□rsxmjmgexmsr□xs□xli□iqemp□ehhviww□pmroih□xs□}syv□Weqwyrk□eggsyrx□fijs
figsqi□ijjigxmzi2□Mj□}sy□hs□rsx□ekvii□xs□xli□glerkiw0□}sy□qe}□wxst□ywmrk□syv□Wivzmgiw
hipixi□}syv□Weqwyrk□eggsyrx2□F}□gsrxmrymrk□xs□ywi□syv□Wivzmgiw□ejxiv□
figsqi□ijjigxmzi0□}sy□gsrjmvq□xlex□}sy□yrhivwxerh□erh□eggitx□xli□ythexih□Xivqw2

1/12

Xliwi□Xivqw□sj□Wivzmgi□gsrwxmxyxi□e□fmrhmrk□pikep□ekviiqirx□fix{iir□}sy□erh□Weqwyrk0 mrgpyhmrk□xli□xivqw□erh□gsrhmxmsrw□vikevhmrk□hmwtyxi□viwspyxmsr**□**Kszivrmrk□Pe{□erh□jsvxl□sr□xli□
Pe□{3Hmwtyxi□Viwspyxmsr□Wigxmsr0□fips{2

KSZIVRMRK□PE[3□HMWTYXI□VIWSPYXMSR □Å□Xli□jsvqexmsr0□i|mwxirgi0□gsrwxvygxmsr□ tivjsvqergi0□zepmhmx}0□erh□epp□ewtigxw□{lexwsiziv□sj□xliwi□Xivqw□{mpp□fi□kszivrih□f}□xli sj□xli□Wxexi□sj□Ri{□]svo0□{mxlsyx□vijivirgi□xs□mxw□glsmgi□sj□pe{□tvmrgmtpiw□Xliwi□Xivqw rsx□fi□kszivrih□f}□xli□YR□Gsrzirxmsr□sr□Gsrxvegxw□jsv□xli□Mrxivrexmsrep□Wepi□sj□Ksshw0 ettpmgexmsr□sj□{lmgl□mw□i|tviwwp}□i|gpyhih2□Rsx□mxlwxerhmrk□xli□jsviksmrk0□{i□qe}□ettp}□ mrnyrgxmzi□viqihmw□,sv□er□iuymzepirx□x}ti□sj□yvkirx□pikep□vipmej-□mr□er}□gsyvx□sj□gsqt nyvmwhmgxmsr2

EPP□HMWTYXIW□[MXL□WEQWYRK□EVMWMRK□MR□ER]□[E]□JVSQ□XLIWI□XIVQW□WLEPP FI□VIWSPZIH□I\GPYWMZIP]□XLVSYKL□JMREP□ERH□FMRHMRK□EVFMXVEXMSR0□ERH RSX□F]□E□GSYVX□SV□NYV]2□Er}□wygl□hmwtyxi□wlepp□rsx□fi□gsqfmrih□sv□gsrwspmhexih□ hmwtyxi□mrzspzmrk□wivzmgi□tvszmhih□xs□er}□sxliv□tivwsr□sv□irxmx}0□erh□wtigmjmgepp}0□s¬— pmqmxexmsr□sj□xli□jsviksmrk0□wlepp□rsx□yrhiv□er}□gmvgyqwxergiw□tvsgiih□ew□tevx□sj□e□ egxmsr2□Xli□evfmxvexmsr□wlepp□fi□gsrhygxih□fijsvi□e□wmrkpi□evfmxvexsv0□{lsvi□e{evh□qe} i|giih0□mr□jsvq□sv□eqsyrx0□xli□vipmij□epps{ih□ih□f}□xli□ettpmgefpi□pe{2□Xli□evfmxvexsr□wle gsrhygxih□eggsvhmrk□xs□xli□Eqivmger□Evfmxvexmsr□Ewwsgmexmsr□,EEE-□Gsqqivgmep□Evfmxvex Vypiw□ettpmgefpi□xs□gsrwyqiv□hmwtyxiw0□erh□mw□irxivih□tyvwyerx□xs□xli□Jihivep□Evfmxvex Egx2□Xli□evfmxvexsv□wlepp□higmhi□epp□mwwyiw□sj□mrxivtvixexmsr□erh□ettpmgexmsr□sj□xlri tvszmwmsr□erh□xliwi□Xivqw2□Nyhkqirx□qe}□fi□irxivih□sr□xli□evfmxvexsvŸw□e{evh□mr□er}□gs sj□gsqtixirx□nyvmwhmgxmsr2

Xlmw□evfmxvexmsr□tvszmwmsr□epws□ettpmiw□xs□gpemqw□ekemrwx□syv□iqtps}iiw0□vitviwirxex ejjmpmexiw□mj□er}□wygl□gpemq□evmwiw□jvsq□xliwi□Xivqw2□Jsv□er}□evfmxvexmsr□mr□{lmgl heqeki□gpemqw0□i|gpywmzip}□sj□exxsvri}□jiiw□erh□i|tivx□{mxriww□jiiw0□evi□(90444244□sv□pi ,÷Wqepp□Gpemq¢-0□xli□evfmxvexsv□qe}0□mj□}sy□tvizemp0□e{evh□}syv□viewsrefpi□exxsvri}□jiiw□i i|tivx□{mxriww□jiiw□erh□gswxw□ew□tevx□sj□er}□e{evh0□fyx□qe}□rsx□kverx□yw□syv□exxsvri} i|tivx□{mxriww□jiiw□sv□gswxw□yrpiww□mx□mw□hixivqmrih□xlex□xli□gpemq□{ew□fvsyklx□mr□feh□ Mr□e□Wqepp□Gpemq□gewi0□}sy□wlepp□fi□viuymvih□xs□te}□rs□qsvi□xler□lepj□sj□xli□xsxep□ehqmr ehqmrmwxvexmzi□jiigmpmx}0□sv□(94244□,jsv□wygl□jiiw0□Mr□ep□sxliv□evfmxvexsr□{lepp□te}□xli□viqemrhiv□sj□wygl□jiiw2□Mr□Ehqmrmwxvexmzi□jigmpmx}0□sv□erh□evfmxvexsr□{lmgl□ evfmxvexmsrw□mr□{lmgl}□syv□xsxep□heqeki□gpemqw□i|giih□er}□ettpmgefpi□pe{2□Nyhkqirx□qe} jiiw0□i|giih□(90444244□,,÷Pevki□Gpemq¢-□wlepp□fi□hixivqmrih□eggsvhmrk□xs□EEE□vypiw2□Mr Pevki□Gpemq□gewi0□xli□evfmxvexsv□qe}□kverx□xs□xli□tvizempmrk□tevx}0□sv□sv□ettsvxmsrw□eqs tevxmiw0□viewsrefpi□exxsvri}□jiiw0□i|tivx□{mxriww□jiiw□erh□gswxw□xs□xli□i|xirx□epps{ih□f} ettpmgefpi□pe{2□Nyhkqirx□qe}□fi□irxivih□sr□xli□evfmxvexsvŸw□e{evh□mr□er}□gsyvx□sj□gsqt nyvmwhmgxmsr2

]sy□qe}□stx□syx□sj□xlmw□hmwtyxi□viwspyxmsr□tvsgihyvi□f}□tvszmhmrk□rsxmgi□xs□yw□rs□pe xlmwx}□,74-□gepirhev□he}w□jvsq□xli□hexi□sj□xlmw□Wivzmgi□Eyklsvm~exmsr2□Xs□stx□syx0□}sy□ wirh□rsxmgi□f}□iqemp□xs□stxsyxDwie2weqwyrk2gsq0□{mxl□xli□wyfnigx□pmri>□÷Evfmxvexmsr

Syx2◇□]sy□qywx□mrgpyhi□mr□xli□stx□syx□iqemp□,e-□}syv□reqi□erh□ehhviww?□,f-□xli□hex
Wivzmgi□Eyxlsvm~exmsr?□,g-□xli□qship□reqi□sv□qship□ryqfiv□sj□}syv□Hizmgi□sr□{lmgl□xli
ettpmgefpi□Wivzmgi□mw□ywih?□erh□,h-□xli□MQIM□sv□QIMH□sv□Wivmep□Ryqfivw0□ew□ettp
lezi□xliq□,xli□MQIM□sv□QIMH□sv□Wivmep□Ryqfivw□ger□fi□jsyrh□,m-□sr□xli□Tvshygx□fs|?□
xli□Tvshygx□mrjsvqexmsr□wgviir0□{lmgl□ger□fi□jsyrh□yrhiv□÷Wixxmrkw?◇□,mmm-□sr□e□pefin
fego□sj□xli□Tvshygx□firiexl□xli□fexxiv}0□mj□xli□fexxiv}□mw□viqszefpi?□erh0□mz-□sr□xli□syx
xli□Tvshygx□mj□xli□fexxiv}□mw□rsx□viqszefpi-2□Epxivrexmzip}0□}sy□qe}□stx□}syv□sf}□geppmr
WEQWYRK□,;6:1;<:8-□rs□pexiv□xler□74□gepirhev□he}w□jvsq□xli□mrmxmep□hexi□sj□xlmw□W
tvszmhmhmrk□xli□weqi□mrjsvqexmsr2□Xliwi□evi□xli□srp}□x{s□jsvqw□sj□rsxmgi□xlex□{mpp□fi□efi
xs□stx□syx□sj□xlmw□hmwtyxi□viwspyxmsr□tvsgihyvi2□Stxmrk□syx□sj□xlmw□hmwtyxi□viwspyxmsr
tvsgihyvi□{mpp□rsx□ejjigx□xli□Xivqw□sj□Wivmgi0□erh□}sy□{mpp□gsrxmryi□xs□irns}□xli□firin
xli□Xivqw□sj□Wivmgi2

YWMRK□SYV□WIVZMGIW

PMGIRWI□Ä□[i□kverx□}sy□e□pmqmxih0□rsr1i|gpywmzi0□rsr1xverwjivefpi0□erh□vizsgefpi□pmgmvx
xs□ywi□syv□Wivmgiw2□]sy□qe}□srp}□ywi□syv□Wivmgiw□jsv□tivwsrep□erh□rsr1gsqqivgmep
tyvtswiw0□eggswvhmrk□xs□xliwi□Xivqw□erh□xli□mrwxvygxmsrw□{i□tvszmhi□mr□syv□Wivmgiw2□
vijivirgiw□xs□syv□Wivmgiw□mrgpyhi□mrgpyhi□vipexih□gsrxirx□erh□er}□sxliv□qexivmep□{i□qe}
mqtpiqirx□erh□tvszmhi□eggirww□xs□syv□Wivmgiw0□mrgpyhmrk□ythexiw0□ytkvehiw0□irlergiqir
qshmjmgexmsrw0□vizmswmsrw□sv□ehhmxmsrw□xs□syv□Wivmgiw□{i□qeoi□ezempefpi□xs□.}sy2
egors{pihki□erh□ekvii□xlex□syv□Wivmgiw□fipsrk□xs□syw□erh□syv□tevxrivw□erh□evi□tvsxigxi
yrhiv□ettpmgefpi□gst□vmklx□0□xvehiqevo0□xvehi□wigvix0□texirx0□erh□sxliv□mrxippigxyep□tvstivx
pe{w□erh□xviexmiw2□Xliwi□Xivqw□hs□rsx□kverx□}sy□er}□s{rivlmt□mrxiviwx□mr□sv□xs□syv□
fyx□srp}□e□pmqmxih□vmklx□sj□ywi□xlex□ger□fi□vizsoih□eggsvhmrk□xs□xliwi□Xivqw2□Xli□e
erh□jiexyviw□sj□syv□Wivmgiw□qe}□zev}□hitirhmrk□sr□{livi□}sy□pmzi0□{lmgl□hizmgi□}sy□e
ywmrk0□sv□{lmgl□wsjx{evi□sv□stivexmrk□w}wxiq□zivwmsr□}sy□lezi2

YWIV□KYMHIPMRIW□Ä□[i□{svo□levh□xs□tvsxigx□xli□wigyvmx}□erh□wejix}□sj□epp□ywivw□sj
Wivmgiw2□[i□epws□wxvmzi□xs□qeoi□syv□Wivmgiw□ezempefpi□{mxlsyx□mrxivvytxmsr2□Xs□□
xliwi□ksepw0□}sy□ekvii□xlex>

    52□52□]sy□{mpp□rsx□vizivwi□irkmriiv0□higsqtmpi0□hmwewwiqfpi0□sv□qeoi□er}□exxiq
     hmwgsziv□xli□wsyvgi□gshi□sv□epksvmxlqw□sj□syv□Wivmgiw2
    62□62□]sy□{mpp□rsx□qshmj}□sv□hmwefpi□er}□jiexyviw□sj□syv□Wivmgiw2
    72□72□]sy□{mpp□rsx□gviexi□er}□hivmzexmzi□{svow□fewih□sr□syv□Wivmgiw2
    82□82□]sy□{mpp□rsx□virx0□piewi0□pirh0□wyf1pmgirwi0□sv□tvszmhi□er}□gsqqivgmep□□
     wivmgiw□ywmrk□syv□Wivmgiw2
    92□92□]sy□{mpp□rsx□mrjvmrki□syv□mrxippigxyep□tvstivx}□vmklxw□sv□xli□vmklxw□s□□
     {lmpi□ywmrk□syv□Wivmgiw2

:2□:2□]sy□{mpp□rsx□ywi□syv□Wivzmgiw□mr□er}□{e}□xlex□zmspexiw□xliwi□Xivqw□
vypiw0□vikypexmsrw0□gshiw□sj□tvegxmgiw□kymhipmriw0□sv□er}□sxliv□viuymviqirxw□
vikypexsv}□eyxlsvmxmiw0□ew□eqirhih□jvsq□xmqi□xs□xmqi0□{mxlmr□xli□nyvmwhmgx□
{lmgl□}sy□evi□e□viwmhirx□sv□jvsq□{lmgl□}sy□evi□ywmrk□xli□Wivzmgiw□,÷Ettpmg□
Pe{◇-2

;2□;2□]sy□{mpp□rsx□ywi□syv□Wivzmgiw□mr□er}□jveyhypirx□sv□qepmgmsyw□{e}0□
mrxvshygi□zmvywiw0□qepmgmsyw□gshi0□sv□levqjyp□hexe2

<2□<2□]sy□{mpp□rsx□ywi□syv□Wivzmgiw□mr□er}□{e}□xlex□gsyph□heqeki0□hmwef□
szivfyvhir0□mqtemv0□sv□gsqtvsqmwi□{syv□w}wxiqw□sv□wigyvmx}0□sv□mrxivjivi□{mxl□
sxliv□ywivivw□sj□syv□Wivzmgiw2

=2□=2□]sy□{mpp□rsx□gsppigx□sv□levziwx□er}□mrjsvqexmsr□sv□hexe□jvsq□syv□Wiv□
w}wxiqw□sv□exxiqtx□xs□higmtliv□er}□xverwqmwwmsrw□xs□sv□jvsq□xli□wivzivw□vy□
syv□Wivzmgiw0□i|gitx□xs□xli□i|xirx□epps{ih□f}□Ettpmgefpi□Pe{2

MRXIVIX□Å□Syv□Wivzmgiw□qe}□viuymvi□Mrxivrix□eggiww□xs□tvszmhi□givxemr□jiexyviw□xs□
]sy□egors{pihki□xlex□eggiww□xs□xli□Mrxivrix□qe}□viuympx□mr□glevkiw□hitirhmrk□sr□}syv□
te}qirx□tper0□erh□xlex□{i□evi□rsx□viwtsrwmfpi□er}□wygl□glevkiw□rsv□jsv□xli□ezempefmpmpx□
wtiih□sj□xli□Mrxivrix2

YTHEXIW□Å□[i□evi□ep{e}w□{svomrk□xs□qeoi□syv□Wivzmgiw□fixxiv2□Xs□wlevi□mqtvsziqirxw□
erh□ri{□jiexyviw□{mxl□]sy0□{i□qe}□tvszmhi□ythexiw□sv□ytkvehiw□xs□syv□Wivzmgiw2□Xliwi□
ythexiw□erh□ytkvehiw□evi□hiwmknih□xs□mqtvszi0□irlergi0□erh□jyvvliv□hizipst□syv□Wivzmgiw□
erh□qe}□mrgpyhi□fyk□jm|iw0□texgliw0□irlergih□jiexyviw□tyk1mrw0□erh□ri{□zivwmsrw2□Iww□
ythexiw□wygl□ew□gvmxmgep□fyk□jm|iw□sv□wigyvmx}□ythexiw□qe}□fi□hs□{rpsehih□erh□mr□
eyxsqexmgepp}□{mxlsyx□]syv□gsrwirx□xs□tvsxigx□]sy□erh□sxliv□ywivw2□Jsv□sxliv□rsr1iwwirx□
ythexiw0□]sy□{mpp□fi□rsxmjmih□mr□ehzergi□erh□fi□efpi□xs□glsswi□{lixliv□xs□hs□{rpseh□erh□
egxmzexi□xli□ythexi2

XLMVH□TEVX]□WIVZMGIW□Å□[i□{svo□{mxl□e□kpsfep□rix{svo□sj□tevxrivw□xs□tvszmhi□}sy□
{mxl□ywijyp□gsrxirx□mr□syv□Wivzmgiw2□Xlmw□qe}□mrgpyhi□mrjsvqexmsr0□pmrow0□ehzivxmwmrv□
sxliv□gsrxirxw□tvszmhih□f}□xlmvh□tevxmiw□,÷Xlmvh1Tevx}□Wivzmgiw◇-2□[i□evi□rsx□viwtsrwmv□
erh□lezi□rs□gsrxvsp□sziv0□er}□Xlmvh1Tevx}□Wivzmgiw0□erh□{i□evi□rsx□pmefpi□jsv□er}□he□
pswwiw□xlex□evi□geywih□f}□er}□Xlmvh1Tevx}□Wivzmgiw2

EHZIVXMWIQIRXW□Å□[i□tvszmhi□qsws□jiexyviw□sj□syv□Wivzmgiw□jsv□jvii2□Xs□oiit□xliwi□
jiexyviw□jvii0□{i□qe}□wls{□}sy□ehw□sv□tvsqsxmsrw□tvszmhih□f}□yw□sv□xlmvh□tevxmiw□,{□
ywi□syv□Wivzmgiw2

TVMZEG]□TSPMG]□Å□]syv□ywi□sj□xli□Wivzmgiw□mw□wyfnigx□xs□WeqyvykŸw□Tvmzeg}□Tsr□
Y2W20□psgexih□ex>□lxxt>33eggsyrx2weqyvyk2gsq3qiqfivwlmt3xivqw3tvmzeg}tspmg}2□[i□tvszmhi□
ehhmxmsrep□mrjsvqexmsr□efsyx□syv□tvmzeg}□tvegxmgiw□vipexih□xs□tevxmgypev□Wivzmgiw□{□

ettvstvmexi2□Xs□xli□i|xirx□e□Wivzmgmi□lew□mxw□s{r□tvmzeg}□rsxmgi0□xlex□tvmzeg}□rsxmgi□
ettp}□xs□}syv□ywi□sj□wygl□Wivzmgmi2□[i□vigsqqirh□xlex□}sy□vizmi{□xli□tvmzeg}□rsxmgi□sj□
Wivzmgi□jsv□qsvi□mrjsvqexmsr□efsyx□syv□tvmzeg}□tvegxmgiw2

## WEQWYRK□EGGSYRX

]sy□qe}□riih□xs□gviexi□er□eggsyrx□xs□ywi□wsqi□sj□syv□Wivzmgiw□,÷Weqwyrk□eggsyrx◊-2□Xs□
gviexmrk□e□Weqwyrk□eggsyrx0□]sy□ekvii□xlex>

    52□52□]sy□{mpp□tvszmhi□eggyvexi□erh□gsqtpixi□mrjsvqexmsr□{lir□]sy□gviexi□}syv□
      eggsyrx2
    62□62□]sy□{mpp□ythexi□}syv□eggsyrx□mj□er□}sj□}syv□mrjsvqexmsr□glerkiw2
    72□72□]sy□{mpp□wejikyevh□}syv□teww{svh□erh□{mpp□rsx□wlevi□mx□{mxl□er}sri2
    82□82□]sy□{mpp□gsrxegx□yw□mqqihmexip}□mj□]sy□wywtigx□er}□sri□ipwi□mw□}swmr□
      eggsyrx2

]sy□ger□hipixi□}syv□Weqwyrk□eggsyrx□ex□er}□x<u>mjqi mx2</u>□]syv□

## MHIRXMX]□ZIVMJMGEXMSR□GSHIW

Ew□er□ehhih□pe}iv□sj□wigyvmx}□hiwmkrih□xs□lipt□oiit□]syv□eggsyrx□weji□jvsq□yreyxlsvm~ih□
ywivw0□{i□ywi□x{s1wxit□zivmjmgexmsr□xs□zivmj}□]syv□mhirxmx}□2□Jsv□i|eqtpi0□x{s1wxit□ziv□
qe}□fi□viuymvih□{lir□]sy□evi□mrmxmepp}□wixxmrk□yt□]syv□eggsyrx0□sv□{lir□]sy□evi□exxiq□
xs□eggiww□]syv□eggsyrx□jvsq□e□ri{□sv□yrvigskrm~ih□hizmgi□sv□psgexmsr2□[lir□mx□mw□ w□
{i□{mpp□kiriviei□erh□wirh□]sy□e□wmrkpi1ywi□mhirxmx}□zivmjmgexmsr□gshi□xs□irxiv□srxs□
{livi□tvsqtxih□mr□svhiv□xs□kemr□eggiww□xs□}syv□eggsyrx2□Xlivi□mw□rs□riih□xs□wmkr□yt□
jiexyvi2□Mx□mw□er□eyxsqexmg□wivzmgi□sj□}syv□ehhih□wigyvmx}□erh□tvsxigxmsr2□Tpiewi□
wxerhevh□{mvipiww□gevvmiv□qiwweki□erh□hexe□vexiw□qe}□ettp}□jsv□WQW□xi|x□qiwweki2□
evi□rsx□pmkfpi□jsv□er}□hipe}ih□sv□yrhipmzivih□qiwweki2

## YWIV□GSRXIRX

Wsqi□sj□syv□Wivzmgiw□epps{□}sy□xs□wlevi□xlmrkw□pmoi□gsqqirxw0□tlsxsw0□qiwwekiw0□sv□
hsgyqirxw□{mxl□yw□sv□{mxl□sxliv□ywivw2□[lir□]sy□wlevi□gsrxirx0□]sy□gsrxmryi□xs□s{r□xli□s{r□xli□
mrxippigxyep□tvstivx}□vmklxw□xs□}syv□gsrxirx□erh□]sy□evi□jvii□xs□wlevi□xli□gsrxirx□{mxl□
ipwi□ls{iziv□]sy□{syph□pmoi2□Ls{iziv0□xs□}syv□]syv□gsrxirx□mr□syv□Wivzmgiw0□]sy□riih□xs
yw□e□pmgiriw□jsv□er}□gsrxirx□xlex□]sy□gviexi□sv□ytpseh□ywmrk□syv□Wivzmgiw2□[lir□]sy□
xvervwqmx0□gviexi0□tswx□0□hmwtpe}0□sv□sxliv{mwi□tvszmhi□er}□mrjsvqexmsr0□qexivepw0□hs□
qihme□gsrxirx□mr□syv□Wivzmgiw□,÷Ywiv□Gsrxirx◊-0□]sy□kverx□
mvvizsgefpi0□yrpmqmxih0□{svph{mhi□sv□epx}1jvii0□erh□rsr1i|gpywmzi□pmgiriw□xs□ywi0□gst}0□vitvsh□
ehetx0□qshmj}0□ihmx0□hmwxvmfyxi0□xverwpexi0□tyfpmwl0□tyfpmgp}□tivjsvq0□erh□tyfpmgp}□L
Ywiv□Gsrxirx□,÷Ywiv□Gsrxirx□Pmgiriw◊-□xs□xli□jypp□i|xirx□ipps{if□f}□Ettpmgefpi□Pe{2□[i□mh

syv□fiwx□xs□oiit□Ywiv□Gsrxirx□weji0□fyx□{i□evi□rsx□viwtsrwmfpi□mj□er}□sj□}syv□Ywiv□G
sxliv□hexe□mw□pswx2□]sy□wlsyph□oiit□psgep□gstmiw□sv□qeoi□fegoytw□sj□gsrxirxw□erh□sx
nywx□mr□gewi□wsqixlmrk□ksiw□{vsrk2

]SY□EVI□IRXMVIP]□VIWTSRWMFPI□JSV□XLI□YWIV□GSRXIRX□TVSZMHIH□F]□]SY□ERH□
JSV□ER}□GSRWIUYIRGIW□EVMWMRK□MR□GSRRIGXMSR□[MXL□XLEX□YWIV□GSRXIRX
,MRGPYHMRK□ER]□PSWW□SV□HEQEKI□WYJJIVIH□SV□MRGYVVIH□F]□YW□SV□SXLIV
YWIVW-2]SY□VITVIWIRX□ERH□[EVVERX□XLEX□,M-□]SY□EVI□XLI□S[RIV□SJ□EPP□
VMKLXW□TIVXEMRMRK□XS□XLI□YWIV□GSRXIRX0□SV□SXLIV[MWI□EYXLSVM^IH□XS□
KVERX□YW□XLI□YWIV□GSRXIRX□PMGIRWI?□,MM-□XLI□YWIV□GSRXIRX□[MPP□RSX□
MRJVMRKI□ER]□MRXIPPIGXYEP□TVSTIVX]□SV□SXLIV□XLMVH□TEVX]□VMKLXW?□,MMM-
XLI□YWIV□GSRXIRX□[MPP□GSQTP]□ERH□GSRJSVQ□XS□ER]□EKI□GPEWWMJMGEXMSR
VYPIW□ERH□VIUYMVIQIRXW?,MRGPYHMRK□EGGYVEXI□ERH□EHIUYEXI
GPEWWMJMGEXMSR□ERH□VEXMRK□SJ□ER]□YWIV□GSRXIRX0□EW□XLI□GEWI□QE]□FI-
YRHIV□ETTPMGEFPI□PE[2

GLERKI□3□XIVQMREXMSR

GLERKI□Å□□[i□qe}0□ex□er}□xmqi>

        52□52□Glerki0□ehh0□wywtirh0□sv□viqszi□jiexyviw□jvsq□syv□Wivzmgiw2
        62□62□Wywtirh□sv□xivqmrexi□}syv□vmklx□xs□ywi□syv□Wivzmgiw0□mrgpyhmrk□eggiw
        eggsyrx□sv□hexe2
        72□72□Tvi1wgviir0□vizmi{0□jpek0□jimpxiv0□qshmj}0□vijywi0□vinigx0□fpsgo□eggiww□xs
        er}□sv□epp□gsrxirx□jvsq□syv□Wivzmgiw2

IRHMRK□XLIWI□XIVQW□Å□F]□]SY□Å□□]sy□qe}□xivqmrexi□xliwi□Xivqw□ex□er}□xmqi□f}
hipixmrk□}syv□Weqyvrk□eggsyrx□erh□wxsttmrk□}syv□ywi□sj□syv□Wivzmgiw2

IRHMRK□XLIWI□XIVQW□Å□F]□WEQWYRK□Å□□[i□qe}□wywtirh□sv□hipixi□}syv□Weqyvrk
eggsyrx□sv□wxst□tvszmhmrk□}sy□{mxl□epp□sv□tevx□sj□syv□Wivzmgiw□ex□er}□xmqi0□mj>

        52□52□[i□viewsrefp}□wywtigx□xlex□]sy□lezi□zmspexih□xliwi□Xivqw□sv□xli□mrwxvygx
        {i□tvszmhi□mr□syv□Wivzmgiw2
        62□62□]sy□lezi□gpievp}□hiqsrwvexih□,mMxliv□hmvigxp}□sv□xlvsykl□}syv□egxmsrw0
        wxexiqirxw0□sv□sxliv{mwi□xlex□]sy□hs□rsx□mrxirh□xs□gsqtp}□{mxl□xliwi□Xivqw2
        72□72□[i□higmhi□xs□irh□epp□sv□tevx□sj□syv□Wivzmgiw,mMxliv□{svph{mhi□sv□mr□
        {livi□]sy□evi□e□viwmhirx□sv□jvsq□{livi□]sy□evi□ywmrk□syv□Wivzmgiw-2
        82□82□[i□evi□viuymvih□f}□Ettpmgefpi□Pe{□xs□irh□epp□sv□tevx□sj□syv□Wivzmgiw□
        i|eqtpi0□mj□hyi□xs□glerkiw□mr□Ettpmgefpi□Pe{□sv□hyi□xs□gsyvx□vypmrkw□sv□n
        {lmgl□qeoi□xli□Wivzmgiw□sv□tevxw□sj□xliq□figsqi□sv□fi□gsrwmhivih□yrpe{jyp-2
        Mj□{i□wywtirh□sv□hipixi□}syv□Weqyvrk□eggsyrx0□{i□{mpp□xv}□xs□rsxmj}□}sy□y
        iqemp□ehhviww□ewwsgmexih□{mxl□syv□eggsyrx□sv□xli□ri|x□xmqi□}sy□exxiqtx□xs□
        }syv□eggsyrx□sv□syv□Wivzmgiw0□hitirhmrk□sr□xli□gmvgyqwxergiw2□Mr□epp□wygl□

xliwi□Xivqw□{mpp□xivqmrexi0□mrgpyhmrk0□{mxlsyx□pmqmxexmsr0□}syv□pmgirwi□xs□
Wivzmgiw2□Xlmw□qierw□xlex□}sy□{mpp□lezi□xs□wxst□ywmrk□epp□sj□syv□Wivzmg
xivqmrexsr□sj□xliwi□Xivqw□wlepp□lezi□rs□tvinyhmgi□xs□er}□vmklxw0□sfpmkexmsr
pmefmpmxmiw□xlex□}sy□sv□{i□lezi□eggvyih□sv□mrgyvvih□hyvmrk□xli□xivq□sj□xliw

RSXMGI□Å□[i□{mpp□tvszmhi□}sy□{mxl□viewsrefpi□rsxmgi□sj□er}□glerki0□wywtirwmsr0□sv□
hmwgsrxmryexmsr□sj□syv□Wivzmgiw0□yrpiww□mx□mw□yvkirxp}□viuymvih0□mr□{lmgl□gewi□{
}sy□ex□xli□weqi□xmqi□ew□xli□glerki0□wywtirwmsr0□sv□hmwgsrxmryexmsr2□Xs□xli□qe|mqyq□
tivqmxxih□f}□Ettpmgefpi□Pe{0□{i□{mpp□rsx□fi□pmefpi□xs□}sy□sv□xs□er}□xlmvh□tevx}□mj
wygl□vmklxw2

HMWGPEMQIV3PMEFMPMX]

HMWGPEMQIV□SJ□[EVVERX] □Å□□XS□XLI□QE\MQYQ□I\XIRX□TIVQMXXIH□F]
ETTPMGEFPI□PE{0□SYV□WIVZMGIW□EVI□TVSZMHIH□÷EW□MW◊□ERH□SR□ER□÷EW
EZEMPEFPI◊□FEWMW0□[MXLSYX□[EVVERXMIW□SJ□ER]□OMRH□JVSQ□YW0□IMXLIV
I\TVIWW□SV□MQTPMIH2□XS□XLI□QE\MQYQ□I\XIRX□TIVQMXXIH□F]□ETTPMGEFPI
PE{0□[I□HMWGPEMQ□EPP□[EVVERXMIW□SV□SXLIV□XIVQW0□I\TVIWW□SV
WXEXYXSV}0□MRGPYHMRK0□FYX□RSX□PMQMXIH□XS0□MQTPMIH□[EVVERXMIW□SV□XIVQW
SJ□QIVGLERXEFMPMX}0□WEXMWJEGXSV}□UYEPMX}0□[SVOQERWLMO□IJJSVX0□JMXRIWW
JSV□E□TEVXMGYPEV□TYVTSWI0□VIPMEFMPMX}□SV□EZEMPEFMPMX}0□EGGYVEG}0□PEGO□SJ
ZMVYWIW0□RSR1MRJVMRKIQIRX□SJ□XLMVH□TEVX}□VMKLXW□SV□SXLIV□ZMSPEXMSR
SJ□VMKLXW2□WSQI□NYVMWHMGXMSRW□HS□RSX□EPPS□[I\GPYWMSRW□SV□PMQMXEXMSRW
SJ□MQTPMIH□[EVVERXMIW0□WS□XLI□EFSZI□I\GPYWMSRW□SV□PMQMXEXMSRW□QE]□RSX
ETTP]□XS□]SY2□SR□EHZMGI□SV□MRJSVQEXMSR0□[LIXLIV□SVEP□SV□[VMXXIR0□
SFXEMRIH□F]□]SY□JVSQ□YW□SV□SYV□EJJMPMEXIW□WLEPP□FI□HIIQIH□XS□EPXIV
SYV□HMWGPEMQIV□SJ□[EVVERX]□VIKEVHMRK□SYV□WIVZMGIW0□SV□XS□GVIEXI□ER]
[EVVERX]□SJ□ER]□WSVX□JVSQ□YW2

[MXLSYX□PMQMXMRK□XLI□TVIZMSYW□HMWGPEMQIV0□ERH□XS□XLI□QE\MQYQ□I\XIRX
TIVQMXXIH□F]□ETTPMGEFPI□PE{0□[I□HS□RSX□VITVIWIRX0□[EVVERX0□SV□
KYEVERXII□XLEX□SYV□WIVZMGIW□SV□XLI□GSRXIRX□XLIVIMR□[MPP□,m-□STIVEXI□MR
ER□YRMRXIVVYTXIH0□XMQIP}0□WIGYVI0□SV□IVVSV1JVII□QERRIV?□,mm-□[MPP□FI
JVII□JVSQ□EPP□LEVQJYP□GSQTSRIRXW□SV□IVVSVW?□,mmm-□[MPP□FI□WIGYVI□SV
MQGQYRI□,MRGPYHMRK□XLI□GSRXIRX□HIPMZIVIH□XS□]SY□SV□XLI□MRJSVQEXMSR
]SY□TVSZMHIH-□JVSQ□YREYXLSVM^IH□EGGIWW?□SV□,mz-□[MPP□FI□EGGYVEXI0
GSQTPIXI0□SV□VIPMEFPI0□XLEX□XLI□UYEPMX]□SJ□XLI□WIVZMGIW□[MPP□FI
WEXMWJEGXSV]□XS□]SY0□SV□XLEX□IVVSVW□[MPP□FI□GSVVIGXIH2□MR□EHHMXMSR0□[I
HS□RSX□[EVVERX0□IRHSVWI0□KYEVERXII0□SV□EWWYQI□VIWTSRWMFMPMX]□JSV
XLMVH1TEVX]□WIVZMGIW0□EHZIVXMWIQIRXW0□GSRXIRX0□SV□ER]□SXLIV□TVSHYGX
SV□WIVZMGIW□EHZIVXMWIH□SV□SJJIVIH□F]□E□XLMVH□TEVX]□SR□SV□XLVSYKL□SYV
WIVZMGIW2

PMQMXEXMSR□SJ□PMEFMPMPMXXXXS□XLI□QE\MQYQ□I\XIRX□TIVQMXXIH□F]
ETTPMGEFPI□PE[0□[I□[MPP□RSX□FI□PMEFPI□JSV□ER]□MRHMVIGX0□MRGMHIRXEP0
WTIGMEP0□GSRWIUYIRXMEP0□SV□TYRMXMZI□HEQEKIW0□SV□ER]□PSWW□SJ□TVSJMX0
VIZIRYI0□KSSH[MPP0□FYWMRIWW0□STTSVXYRMX]0□SV□HEXE0□[LIXLIV□MRGYVVIH
HMVIGXP]□SV□MRHMVIGXP]0□SV□ER]□SXLIV□MRXERKMFPI□PSWWIW2□MR□RS□IZIRX
WLEPP□SYV□EKKVIKEXI□PMEFMPMX]□JSV□EPP□GPEMQW□VIPEXMRK□XS□WTIGMJMG
WIVZMGIW□I\GIIH□XLI□EQSYRX]□]SY□TEMH□YW□JSV□WYGL□WTIGMJMG□WIVZMGI2□XLI
PMQMXEXMSRW□SJ□XLMW□WIGXMSR□WLEPP□ETTP]□XS□ER]□XLISV]□SJ□PMEFMPMX]0
[LIXLIV□FEWIH□SR□[EVVERX]0□GSRXVEGX0□WXEXYXI0□XSVX□,MRGPYHMRK
RIKPMKIRGI-0□SV□SXLIV[MWI0□ERH□[LIXLIV□SV□RSX□[I□LEZI□FIIR□MRJSVQIH
SJ□XLI□TSWWMFMPMX]□SJ□ER]□WYGL□HEQEKI0□ERH□IZIR□MJ□E□VIQIH]□WIX□JSVXL
LIVIMR□MW□JSYRH□XS□LEZI□JEMPIH□SJ□MXW□IWWIRXMEP□TYVTSWI0□ERH□IZIR□XS□ER]
GPEMQW□]SY□QE]□FVMRK□EKEMRWX□ER]□SXLIV□TEVX]□XS□XLI□I\XIRX□XLEX□[I
[SYPH□FI□VIUYMVIH□XS□MRHIQRMJ]□XLEX□TEVX]□JSV□WYGL□GPEMQ2□WSQI
NYVMWHMGXMSRW□HS□RSX□EPPS[□PMQMXEXMSRS□SJ□PMEFMPMX]0□JSV□TIVWSREP□MRNYV]
SV□SJ□MRGMHIRXEP□SV□GSRWIUYIRXMEP□HEQEKIW0□WS□XLMW□PMQMXEXMSR□QE]□RSX
ETTP]□XS□]SY2□]SY□EGRS[PIHKI□ERH□EKVII□XLEX□XLIWI□PMQMXEXMSRW□EVI
VIEWSREFPI□KMZIR□XLI□FIRIJMXW□SJ□XLI□WIVZMGIW□ERH□]SY□[MPP□EGGITX
WYGL□VMWO□ERH3SV□MRWYVI□EGGSVHMRKP]2

MRHIQRMJMGEXMSR□A□]sy□ekvii□e□gst}vmklx□xs□mrhiqrmj]0□hijirih0□erh□lsph□levqpiww□yw0□syv
pmgirwsvw0□syv□ekirxws0□erh□epp□sjjmgivw0□hmvigxsvw0□erh□iqtps}iiw□jvsq□er]□erh□epp□
gpemqw0□egxmsrw0□pswwiw0□heqekis0□pmefmpmxmiw0□nyhkqirxw0□kverxw0□gswxw0□erh□i\t-
viewsrefpi□exxsvri]wŸ□jiiw-□evmwmrk□jvsq□,□m-□]syv□ywi□sj□syv□Wivzmgiw□sv□syv□f}□er]
}sy□epps{□xs□ywi□syv□Wivzmgiw□xlex□mw□rsx□mr□eggsvhergi□{mxl□xliwi□Xivqw0□,mm-□e-
xlmw□Ekviiqirx□f}□]sy□sv□f}□er]□tivwsr□xlex□}sy□epps{□xs□ywi□syv□Wivzmgiw0□sv□,mmm-
zmspexmsr□sj□er]□pe[w□sv□vikypexmsrs□sv□xli□vmklxw□sj□er]□xlmvh□tevx]□f}□]sy□sv□f-
xlex□]sy□epps{□xs□ywi□syv□Wivzmgiw2

KIRIVEP

MRJVMRKMRK□GSRXIRX□A□Mj□]sy□evi□e□gst}vmklx□s{riv□sv□er□ekirx□xlivisj□erh□fipmizi
xlex□er]□gsrxirx□sr□xli□Wivzmgiw□mrjvmrki□ytsr□}syv□gst}vmklx0□]sy□qe]□wyfqmx□e□rsx-
tyvwyerx□xs□xli□Hmkmxep□Qmppirrmyq□Gst}vmklx□Egx□,÷HQGE◇-f}□tvszmhmrk□syv□Gst}vm-
Ekirx□{mxl□xli□jspps{mrk□mrjsvqexmsr□mr□{vmxmrk>

     52□52□E□tl}wmgep□sv□ipigxvsrmg□wmkrexyvi□sj□e□tivwsr□eyxlsvm~ih□xs□egx□sr□-
        s{riv□sj□er□ei|gpywmz□vmklx□xlex□mw□eppikihp]□mrjvmrkih?
     62□62□Mhirxmjmgexmsr□sj□xli□gst}vmklxih□{svo□gpemqih□xs□lezi□fiir□mrjvmrkih0□sv
        qypxmtpi□gst}vmklxih□{svow□ex□e□wmrkpi□srpmri□wmxi□evi□gszivih□f}□e□wmrkpi
        rsxmjmgexmsr0□e□vitviwirxexmzi□pmwx□sj□wygl□{svow□ex□xlex□wmxi?
     72□72□Mhirxmjmgexmsr□sj□xli□qexivmep□xlex□mw□gpemqih□xs□fi□mrjvmrkmrk□erh□-
        viewsrefp]□wyjjmgmirx□xs□tivqmx□yw□xs□psgexi□xli□qexivmep?

82□82□□Mrjsvqexmsr□viewsrefp}□wyjjmgmirx□xs□tivqmx□xli□wivzmgi□tvszmhiv□xs□gsrxe□
wygl□ew□er□ehhviww0□xipitlsri□ryqfiv0□erh□iqemp□ehhviww?

92□92□□E□wxexiqirx□xlex□]sy□fipmizi0□mr□kssh□jemxl0□xlex□ywi□sj□xli□qexivmep□□
qerriv□gsqtpemrih□sj□mw□rsx□eyxlsvm~ih□f}□xli□gst}vmklx□s{riv0□mxw□ekirx0□svl□
pe{?□erh□e□wxexiqirx□xlex□xli□mrjsvqexmsr□mr□xli□rsxmjmgexmsr□mw□eggyvexi0□□
yrhiv□tirepx}□sj□tivnyry}0□xlex□]sy□evi□eyxlsvm~ih□xs□egx□sr□filepj□sj□xli□s{riv□
er□i|gpywmzi□vmklx□xlex□mw□eppikihp}□mrjvmrkih2

]sy□ger□wirh□}syv□rsxmgi□xs□WeqwyrkHQGEDwie2weqwyrk2gsq2

E□gst}□sj□]syv□HQGE□Rsxmjmgexmsr□{mpp□fi□wirx□xs□xli□tivwsr□{ls□ytpsehih□xli□qexivm□
ehhviwwih□mr□xli□Rsxmjmgexmsr2□Tpiewi□fi□ehzmwih□xlex□yrhiv□Wigxmsr□956,j-□sj□xli□HQG□
qe□fi□liph□pmefpi□jsv□heqekiw□erh□exxsvri}wŸ□jiiw□mj□}sy□qeoi□qexivmep□qmwvitviwirxex□
mr□e□HQGE□Rsxmjmgexmsr2

IRXMVI□EKVIIQIRX□3□WIZIVEFMPMX]□Â□□Xliwi□Xivqw0□syv□Tvmzeg}□Tspmg}0□er□
ehhmxmsrep□xivqw□xlex□eggsqter}□syv□Wivzmgiw0□er}□eqirhqirxw0□erh□er}□ehhmxmsrep□
ekviiqirxw□]sy□qe□irxiv□mrxs□{mxl□yw□wleep□gsrwxmxyxi□xli□irxmvi□ekviiqirx□fix{iir□]sy□
erh□yw□{mxl□viwtigx□xs□syv□Wivzmgiw□erh□wytivwihi□epp□tvmsv□sv□gsrxiqtsverisyw□svep□
{vmxxir□gsqqyrmgexmsrw0□tvstswep0□erh□vitviwirxexmsrw□{mxl□viwtigx□xs□syv□Wivzmgiw□svl□
wyfnigx□qexxiv□gsizivih□f}□xliwi□Xivqw2□Mj□er}□tvszmwmsr□sj□xliwi□Xivqw□mw□hiiqih□xs□f□
mrzepmh0□mppikep0□sv□yrirjsvgiefpi□,mr□{lspi□sv□mr□tevx-□xlir□xlex□tvszmwmsr□{mpp□fil□
ipmqmrexih□xs□xli□qmrmqyq□i|xirx□rigiwwev}0□erh□xli□viqemrmrk□tvszmwmsrw□sj□xliwi□Xivq□
{mpp□viqemr□mr□jypp□jsvgi□erh□ijjigx2□]sy□qe□fi□wyfnigx□xs□ehhmxmsrep□xivqw□erh□gs□
xlex□kszivr□]syv□ywi□sj□xlmvh1tevx□wivzmgiw□gsrxirx0□sv□wsjx{evi2

RS□[EMZIV□Â□□Mj□{i□hs□rsx□i|ivgmwi□sv□irjsvgi□er}□pikep□vmklx□sv□viqih}□{lmgl□mw□w□
xliwi□Xivqw□sv□{lmgl□{i□lezi□xli□firijmx□sj□yrhiv□er}□Ettpmgefpi□Pe{0□xlmw□{mpp□rsx□fi□
gsrwxvyih□ew□e□jsvqep□{emzivm□sj□syv□vmklxw□sv□viqihmiw0□erh□wygl□vmklxw□sv□viqihmi□
viqemr□ezempefpi□xs□yw2

VIWIVZEXMSR□SJ□VMKLXW□ERH□JIIHFEGO□Â□□Rsxlmrk□mr□xliwi□Xivqs□kmziw□}sy□e□
vmklx□xs□ywi□xli□Weqwyrk□reqi□sv□er}□sj□xli□Weqwyrk□xvehiqevov0□psksw0□hsqemr□reqi□
sxliv□hmwxmrgxmzi□fverh□jiexyviw2□Epp□vmklxw0□xmxpiw0□erh□mrxiviwx□mr□erh□xs□syv□W□
,i|gpywmrk□gsrxirx□tvszmhih□f}□xlmvh□tevxmiw□evi0□erh□{mpp□viqemr0□xli□i|gpywmzi□tvstiv□
Weqwyrk□erh□mxw□pmgirswvw2□Mj□]sy□glsswi□xs□qeoi□ezempefpi□er}□gsqqirx0□mhiew0□□
wykkiwxmsrw0□{i□{mpp□fi□jvii□xs□ywi□wygl□gsqqirxs0□mhiew0□jiihfego0□sv□wykkiwxmsrw□□
jmx□erh□{mxlsyx□er□sfpmkexmsr□xs□□]sy2

I□TSVX□□PE[□Â□□]sy□egros{pihki□erh□ekvii□xs□gsmtp□□{mxl□er□erh□epp□Ettpmgefpi□Pe{□wh□
ywmrk□syv□Wivzmgi0□mrgpyhmrk0□{mxlsyx□pmqmxexmsr0□epp□ettpmgefpi□i|tsvx□viwxvmgxmsrs□□
vikypexmsrw2

WYVZMZEP□Å□Er□tvszmwmsrw□{mxlmr□xliwi□Xivqw□xlex□f}□xlimv□rexyvi□wlsyph□gsrxmryi□
mr□ijjigx0□mrgpyhmrk□{mxlsyx□pmqmxexmsr□xli□jspps□mrk□Wigxmsrw>□Pmgirwi0□Hmwgpemqi□
[evvexr}0□Pmqmxexmsr□sj□Pmefmpmx}0□Mrhiqrmjmgexmsr0□erh□Kirivep0□wlepp□wyvzmzi□xli□
sv□xivqmrexmsr□sj□xliwi□Xivqw0□erh□viqemr□zepmh□erh□fmrhmrk2

IPIGXVSVRMG□GSQQYRMGEXMSRW□Å□]sy□ekvii□xs□vigimzi□epp□ekviiqirxw0□rsxmgiw0□
hmwgpswyviw0□erh□sxliv□gsqqyrmgexmsrw□ipigxvsrmgepp}0□mrgpyhmrk□f}□iqemp0□tywl□rsxmj
tst1yt0□sv□xi□x2

WIVZMGIW□WTIGMEP□XIVQW

Xliwi□Xivqw□kirivepp}□ettp}□xs□epp□Wiv□migw□00□{lmpi□xli□xivqw□mr□xlmw□Wigxmsr□,÷Wtigme
Xivqw◇-□srp}□ettp}□xs□xli□wtigmjmih□Wivzmgiw2□Mj□xliv□mw□er}□gsrjpmgx□fix{iir□xliwi□W
Xivqw□erh□xli□viwx□sj□xliwi□Xivqw0□xli□Wtigmep□Xivqw□{mpp□ettp}0□□i|gitx□{mxl□viwtigx□
Kszivrmrk□Pe{3Hmwtyxi□Viwspyxmsr2□[i□qe}□ehhmxmsrepp}□tvszmhi□witevexi□xivqw0□tspmgm
erh□kymhipmriw□{mxlmr□iegl□Wivzmgi2

Weqwyrk□Gpsyh□Å□Mj□]sy□hs□rsx□ywi□Weqwyrk□Gpsyh□jsv□qsvi□xler□x{ipzi□,56-□qsrxlw0□
viwivzi□xli□vmklx□xs□hipixi□epp□sj□]syv□gsrxirxw□wxsvih□sr□Weqwyrk□Gpsyh2□Izir□mj□]sy
Weqwyrk□Gpsyh0□mj□]sy□hs□rsx□ywi□gsrxirx□mr□e□wtigmjmg□gexiksv}□sj□Weqwyrk□Gpsyh
gsrxegxw□gepirhevw0□tlsxsw0□zmhisw0□oi}fsevh□hexe□jsv□qsvi□xler□x{ipzi□,56-□qsrxlw0□{i□
viwivzi□xli□vmklx□xs□hipixi□xli□viwtigxmzi□gexiksv}□erh□xli□gsrxirx□xlivimr2□[i□{mpp□tvszmh
]sy□{mxl□xlmvx}□,74-□he}w□ehzergi□rsxmgi□tvmsv□xs□er}□wygl□hipixmsr□sj□]syv□gsrxirx□
tyvtswiw□sj□xlmw□tvszmwmsr0□÷ywi◇□sv□÷ywih◇□wlepp□qier□eggiwwmrk□xs□ytpsehmrk□xs0□
hs□rps□sehmrk□gsrxirxw□jvsq□Weqwyrk□Gpsyh2□Tpiewi□rsxi□xlex□xlmw□tvszmwmsr□hsiw□rsx□e
{lmpi□]sy□evi□wyfwgvmfih□xs□e□temh□stxmsr□sj□Weqwyrk□Gpsyh2□Mj□]sy□hs□rsx□fego□
gsrxirx□jvsq□}syv□hizmgi□xs□Weqwyrk□Gpsyh□jsv□qsvi□xler□x{ipzi□,56-□qsrxlw0□{i□viwivz
vmklx□xs□hipixi□er}□gsrxirx□fegoih□yt□jvsq□wygl□hizmgi□xs□Weqwyrk□Gpsyh□,i2k2□WQW0□
ett□mrwxeppexmsr□tegoeki□hexe0□ett□wixxmrkw0□qywmg□jmpiw□0□hsgyqirxs□jmpiw□0□zsmgi□vig
hizmgi□wixxmrkw-2□[i□{mpp□tvszmhi□]sy□{mxl□xli□fegoyt□□i|tmvexmsr□hexi□{mxlmr□xli□Weq
Gpsyh□ettpmgexmsr□wxsvevk□jvsq□xlmvx}□,74-□he}w□mr□ehzergi□sj□er}□wygl□hipixmsr□sj□
gsrxirx2□]sy□evi□viwtsrwmfpi□jsv□fegomrk□yt□}syv□gsrxirx□xs□}syv□s{r□wxsveki□hizmgiw
qihme0□ew□{i□hs□rsx□kyeverxii□sv□{evverx□xlex□]sy□{mpp□ep{e}w□fi□efpi□xs□vixvmmzi□
}sy□wxsvi□sv□fego□yt□xlvsykl□Weqwyrk□Gpsyh2□]sy□egsrs{pihki□erh□ekvii□xlex□Weqwyrk□r
rsx□pmefpi□sv□viwtsrwmfpi□jsv□er}□psww□xlex□sggyvw□hyi□xs□]sy□rsx□xeomrk□egxmsr□xs
fego□yt□sv□wxsvi□}syv□gsrxirx2

Weqwyrk□Liepxl□Å□WEQWYRK□LIEPXL□MW□RSX□MRXIRHIH□JSV□YWI□MR□XLI
HMEKRSWMW□SJ□HMWIEWI□SV□SXLIV□GSRHMXMSRW0□SV□MR□XLI□GYVI0□QMXMKEXMSR0
XVIEXQIRX0□SV□TVIZIRXMSR□SJ□HMWIEWI2□WEQWYRK□LIEPXL□MW□RSX□MRXIRHIH
JSV□YWI□MR□XLI□HIXIGXMSR0□HMEKRSWMW0□QSRMXSVMRK0□QEREKIQIRX0□SV
XVIEXQIRX□SJ□ER□QIHMGEP□GSRHMXMSR0□HMWIEWI0□SV□ZMKEP□TL]WMSPSKMGEP
TVSGIWWIW□SV□JSV□XLI□XVERWQMWWMSR□SJ□XMQI1WIRWMXMZI□LIEPXL

MRJSVQEXMSR2□ER]□MRJSVQEXMSR□JSYRH0□EGUYMVIH0□SV□EGGIWWIH□XLVSYKL
WEQWYRK□LIEPXL□MW□QEHI□EZEMPEFPI□SRP]□JSV□]SYV□GSRZIRIRGI0□ERH
WLSYPH□RSX□FI□XVIEXIH□EW□QIHMGEP□EHZMGI2□]SY□WLSYPH□WIIO□QIHMGEP
EHZMGI□JVSQ□E□HSGXSV□FIJSVI□WXEVXMRK□E□RI[□JMXRIWW□SV□PMJIWX]PI
VIKMQIR2□]SY□YRHIVWXERH□ERH□EKVII□XLEX□ER]□MRJSVQEXMSR□]SY□SFXEMR
JVSQ□WEQWYRK□LIEPXL□QE]□RSX□FI□WYMXEFPI0□EGGYVEXI0□GSQTPIXI0□SV
VIPMEFPI□ERH□XLEX□WEQWYRK0□I\GITX□EW□SXLIV[MWI□TVSZMHIH□JSV□MR□XLIWI
XIVQW0□[MPP□RSX□FI□LIPH□PMEFPI□JSV□ER]□MRNYVMIW0□HEQEKIW0□PSWWIW0
ERH3SV□GSWXW□EWWSGMEXIH□[MXL□WEQWYRK□LIEPXL0□RSV□JSV□XLI□EGGYVEG]
SV□VIPMEFMPMX]□SJ□ER]□MRJSVQEXMSR□JSYRH0□EGUYMVIH0□SV□EGGIWWIH
XLVSYKL□WEQWYRK□LIEPXL2□]SY□EGORS[PIHKI□ERH□EKVII□XLEX□WEQWYRK□MW
RSX□IRKEKIH□MR□XLI□TVEGXMGI□SJ□QIHMGMRI0□ERH□XLEX□WEQWYRK□HSIW□RSX
HIXIVQMRI□XLI□ETTVSTVMEXI□QIHMGEP□YWI□SJ□WEQWYRK□LIEPXL2□WEQWYRK
LIEPXL□HSIW□RSX□KIRIVEXI□ER]□MRHMZMHYEP□FIRIJMX□JSV□TEXMIRXW2

Weqwyrk□Tewww□Å]]SY□EVI□WSPIP]□VIWTSRWMFPI□JSV□ER]□HEQEKI□SV□PSWW□MJ
]SY□EPPS[□ER]SRI□XLEX□MW□RSX□]SY□XS□YWI□SV□LERHPI□]SYV□HIZMGI0□]SYV
WEQWYRK□TEWW0□SV□]SYV□WEQWYRK□EGGSYRX2□MX□MW□]SYV□VIWTSRWMFMPMX]□XS
QEMRXEMR□XLI□WIGYVMX]□SJ□]SYV□HIZMGI□ERH□]SYV□EGGSYRX2□[I□EVI□RSX
PMEFPI□JSV□ER]□PSWWIW□SV□HEQEKIW□WYJJIVIH□F]□]SY□HYI□XS□]SYV□PSWX0
WXSPIR0□SV□HEQEKIH□HIZMGI2□]SY□QE]□VIKMWXIV□]SYV□FMSQIXVMG
MRJSVQEXMSR□XS□ZIVMJ]□]SYV□MHIRXMX]□[LIR□]SY□YWI□WEQWYRK□TEWW2□XLMW
LIPTW□TVIZIRX□SXLIVW□JVSQ□YWMRK□WEQWYRK□TEWW□MJ□]SY□PSWI□]SYV□HIZMGI2
]SY□EKVII□XS□RSXMJ]□YW□MQQIHMEXIP]□MJ□]SYV□EGGSYRX□FIGSQIW□ORS[R□XS
WSQISRI□IPWI□SV□MW□SXLIV[MWI□GSQTVSQMWIH2

Weqwyrk□WqevxXlmrkw□Å□GIVXEMR□TVSHYGXW□ERH3SV□XLMVH□TEVX□TVSHYGXW
QE]□RSX□[SVO□SV□QE]□GIEWI□XS□[SVO□[MXL□WQEVXXLMRKW□HIWTMXI
WYTTSVXMRK□XLI□WEQI□WXERHEVHW2□[I□HS□RSX□TVSZMHI□ER]□KYEVERXII□SV
[EVVERX]□SJ□GSQTEXMFMPMX]□JSV□XLMVH□TEVX]□TVSHYGXW0□IZIR□MJ□WYGL
XLMVH□TEVX]□TVSHYGXW□EVI□GSGGIWWMFPI□XLVSYKL□WQEVXXLMRKW2□TPIEWI
RSXI□XLEX□MJ□]SY□EHH□QIQFIVW0□WYGL□QIQFIVW□[MPP□LEZI□JYPP□EGGIWW□ERH
GSRXVSP□SZIV□ER]□ERH□EPP□SJ□]SYV□GSRRIGXIH□TVSHYGXW2

Weqwyrk□Hmkmxep□Oi}□Å]sy□evi□viwtsrwmfpi□jsv□oiitmrk□]syv□Hmkmxep□Oi}□wigyvi2□Er}sri
{mxl□eggiww□xs□]syv□hizmgi□sv□Weqwyrk□eggsyrx□{mpp□fi□efpi□xs□ywi□]syv□Hmkmxep□Oi}□
vipexih□wivzmgiw0□ws□qeoi□wyvi□rsx□xs□wlevi□]syv□hizmgi□sv□Weqwyrk□eggsyrx□{mxl□sxl
evi□rsx□epps{ih□xs□ywi□wsqisri□ipwiŸw□Hmkmxep□Oi}□{mxlsyx□xlimv□tivqmwwmsr2□Fi□gevi
pswi□]syv□Hmkmxep□Oi}□sv□xs□epps{□mx□xs□fi□wxspir□sv□heqekih2□Weqwyrk□mw□rsx□
er}□pswwiw□sv□heqekiw□geywih□f}□]sy□sv□wsqisri□ipwi□ywmrk□]syv□Hmkmxep□Oi}0□{lixliv
}sy□kezi□xliq□tivqmwwmsr2

Weqwyrk□Mrxivrix□Å□□XLMW□TVSHYGX□MW□PMGIRWIH□YRHIV□XLI□EZG□TEXIRX
TSVXJSPMS□PMGIRWI□JSV□XLI□TIVWSREP□ERH□RSR1GSQQIVGMEP□YWI□SJ□E
GSRWYQIV□XS□,m-□IRGSHI□E□ZMHIS□MR□GSQTPMERGI□[MXL□XLI□EZG□WXERHEVH
,÷EZG□ZMHIS◇-□ERH3SV□,mm-□HIGSHI□ER□EZG□ZMHIS□XLEX□[EW□IRGSHIH□F]□E
GSRWYQIV□IRKEKIH□MR□E□TIVWSREP□ERH□RSR1GSQQIVGMEP□EGXMZMX]□ERH3SV
[EW□SFXEMRIH□JVSQ□E□ZMHIS□TVSZMHIV□PMGIRWIH□XS□TVSZMHI□WYGL□EZG□ZMHIS2
RS□PMGIRWI□MW□KVERXIH□SV□WLEPP□FI□MQTPMIH□JSV□ER]□SXLIV□YWI2□EHHMXMSREP
MRJSVQEXMSR□QE]□FI□SFXEMRIH□JVSQ□QTIK□PE0□P2P2G2□WII
LXXT>33[[[2QTIKPE2GSQ2

Ehhmxmsrep□Xivqw□Å□Ehhmxmsrep□xivqw0□tspmgmiw0□sv□kymhipmriw□{mpp□fi□ettpmih□jsv□
jspps{mrk□Wivzmgiw>
□

- ©□Kepe|}□Wxsvi
- ©□Weqwyrk□Te}
- ©□Weqwyrk□Vi{evhw
- ©□Weqwyrk□Gevi/

□
Mj□}sy□lezi□er}□uyiwxmsrw□efsyx□syv□Wivzmgiw0□gsrxegx□yw□0
□
□
□

# EXHIBIT B-3

# EXHIBIT E

# <u>END USER LICENSE AGREEMENT FOR SAMSUNG SOFTWARE (EULA)</u>

READ THIS INFORMATION BEFORE USING YOUR PRODUCT.

**Please read this document before operating your device, accessories or software (for purposes of this document, defined collectively and individually as "Product") and keep it for future reference. This document contains important terms and conditions with respect to the Product. Retaining or using this Product constitutes acceptance of these terms and conditions and agreement to be bound by them.**

# Table of Contents

Important Legal Information
1. GRANT OF LICENSE
2. RESERVATION OF RIGHTS AND OWNERSHIP
3. LIMITATIONS ON END USER RIGHTS
4. SAMSUNG SOFTWARE UPDATES
5. CONSENT TO USE OF DATA
6. INTERNET ACCESS
7. EXPORT RESTRICTIONS
8. TERMINATION
9. LIMITED WARRANTY
10. THIRD-PARTY MATERIALS
11. SAMSUNG SERVICES
12. DIGITAL CERTIFICATE
13. LIMITATION OF LIABILITY
14. U.S. GOVERNMENT END USERS RESTRICTED RIGHTS
15. APPLICABLE LAW
16. ARBITRATION AGREEMENT
17. ENTIRE AGREEMENT; SEVERABILITY

# Important Legal Information

Important legal and health and safety information can also be accessed in writing on the mobile device or on https://www.samsung.com/us

Samsung Electronics America, Inc.
85 Challenger Road, Ridgefield Park, New Jersey 07660
Phone: 1-800-SAMSUNG (726-7864)
Internet Address: https://www.samsung.com/us

© 2017 Samsung Electronics America, Inc.
Samsung is a registered trademark of Samsung Electronics Co., Ltd.

**IMPORTANT. READ CAREFULLY:**

This End User License Agreement ("EULA") is a legal agreement between you (either an individual or a single entity) and Samsung Electronics Co., Ltd. ("Samsung", "we", "us") for software, whether pre-installed or downloaded, that is owned by Samsung and/or its affiliated companies and its third party suppliers and licensors, that accompanies this EULA, which includes software, associated media, content, data, printed materials, and electronic documentation in connection with your use of the Samsung Product, which will be defined below ("Samsung Software").

By using this device or any other Samsung Product, including wearable devices, accessories, and mobile phones and tablets running on the Android or other Samsung operating system ("Product"), you accept the terms of this EULA. If you do not accept these terms, do not use the Product or the Samsung Software.

If you are under the age of 13, you may not license or use this software. If you are a Minor 13 or older but younger than 18 ("Minor"), you represent that you have reviewed this EULA with your parent or legal guardian and that you and your parent or guardian understand and consent to the terms and conditions of this EULA. If you are a parent or guardian permitting a Minor to use the Product, you agree to: (i) supervise the Minor's use of the Product; (ii) assume all risks associated with the Minor's use of the Product, (iii) assume any liability resulting from the Minor's use of the Product; (iv) ensure the accuracy and truthfulness of all information submitted by the Minor; and (v) assume responsibility and are bound by this EULA for the Minor's access and use of the Product.

1. **GRANT OF LICENSE.**
   Samsung grants you a limited non-exclusive license to install, use, access, display and run one copy of the Samsung Software on a single Product, local hard disk(s) or other permanent storage media of one computer and you may not make Samsung Software available over a network where it could be used by multiple computers or Products at the same time. You may make one copy of the Samsung Software in machine readable form for backup purposes only; provided that the backup copy must include all copyright or other proprietary notices contained on the original. Certain items of the Samsung Software may be subject to open source licenses. The open source license provisions may override some of the terms of this EULA. We will make the applicable open source licenses available to you on the legal notices section of the Settings menu of your Product.

2. **RESERVATION OF RIGHTS AND OWNERSHIP.**
   Samsung reserves all rights not expressly granted to you in this EULA. The Samsung Software is protected by copyright and other intellectual property laws and treaties. Samsung or its suppliers own the title, copyright and other

intellectual property rights in the Samsung Software. The Samsung Software is licensed, not sold.

3.  **LIMITATIONS ON END USER RIGHTS.**
    You shall not, and shall not enable or permit others to, copy, reverse engineer, decompile, disassemble, or otherwise attempt to discover the source code or algorithms of, the Samsung Software (except and only to the extent that such activity is expressly permitted by applicable law not withstanding this limitation), or modify, or disable any features of, the Samsung Software, or create derivative works based on the Samsung Software. You may not rent, lease, lend, sublicense or provide commercial hosting services with the Samsung Software. You may not transfer this EULA or the rights to the Samsung Software granted herein to any third party unless it is in connection with the sale of the Product which the Samsung Software accompanied. In such event, the transfer must include all of the Samsung Software (including all component parts, the media and printed materials, any upgrades, this EULA) and you may not retain any copies of the Samsung Software. The transfer may not be an indirect transfer, such as a consignment. Prior to the transfer, the end user receiving the Samsung Software must agree to all the EULA terms. Where Product is being used by your employee or other person using the Product as part of your undertaking ("Your Staff"), that member of Your Staff is licensed to use the Samsung Software as if it were you and must comply with these terms on the same basis. Any failure to comply with these terms by Your Staff shall be deemed to a failure to comply with these terms by you.

4.  **SAMSUNG SOFTWARE UPDATES.**
    Samsung may make available to you updates, upgrades, supplements and add-on components (if any) of the Samsung Software, including bug fixes, service upgrades (parts or whole), and updates, the removal of, or enhancements and feature improvements to any Samsung Software (including entirely new versions), (collectively "Updates") after the date you obtain your initial copy of the Samsung Software. This EULA applies to all and any component of the Updates, unless we provide other terms along with such Updates. To use Samsung Software provided through the Updates, you must first be licensed for the Samsung Software identified by Samsung as eligible for the Updates.

    While the Updates will be generally available, in some limited circumstances, the Updates will only be offered by your network carrier, and such Updates will be governed by your contractual relationship with your network carrier. This EULA will not affect your legal relationship with your network carrier. Your SIM card stores information about your service plan with your provider, and this information is tied to the device on which the SIM is activated. If you move your SIM to another device, you will not receive Updates unless you update your service plan with the new device.

    Your Product may download certain Updates automatically from time to time through Wi-Fi or other network connection. You may change the settings in your

Product to manually download the Updates, however, given the importance of receiving Updates for security or safety related software in a timely manner, to resolve critical problems reported to Samsung, and to defend against new threats and vulnerabilities, these Updates may be automatically downloaded and installed which may limit the usage of some software and/or hardware. Where an Update will materially alter the Samsung Software, Samsung will provide you with notice of the Update, where practicable. Updates may result in data consumption, and we recommend you switch to a free Wi-Fi or free network connection to avoid any unintended data charges. We recommend you check availability of any new Updates periodically for optimal use of your Product.

5.      **CONSENT TO USE OF DATA.**

a.      Privacy Policy. Collection of data using software or applications on your device will be performed in accordance with the provisions of this section and as set forth in Samsung's Privacy Policy. For your reference, Samsung's Privacy Policy can be viewed at: http://account.samsung.com/membership/pp.

b.      To provide Updates, you agree that Samsung and its affiliates may collect and use technical information gathered as part of the product support services related to the Software provided to you, if any, such as IMEI (your device's unique identification number), device number, model name, customer code, access recording, your device's current software version, MCC (Mobile Country Code), and MNC (Mobile Network Code). Samsung may use this information to improve their products or to provide customized services or technologies to you and will not disclose this information in a form that personally identifies you.

c.      Diagnostic and Usage Data. If you opt in to diagnostic and usage collection, Samsung and its affiliates may collect maintain, process and use diagnostic, technical and usage related information ("Diagnostic and Usage Data"), that is gathered to provide and improve Samsung products and services, facilitate the provision of Updates, product support and other services to you, if any, related to the Samsung Software, and to verify compliance with the terms of this License. Samsung may use this information for the purposes described above and in accordance with its Privacy Policy available at the hyperlink above.

d.      Location Data. As described in the Samsung Privacy Policy, available for view at the hyperlink above, Samsung and its partners, licensees and third party developers may provide certain services that rely upon location information, such as your device's GPS signal or information about nearby Wi-Fi access points and cell towers that may be transmitted to us, with your consent, when you use such location enabled services.

e.  Device Identifier-based Services. To facilitate the use of enhanced messaging and file sharing functions with a simplified set up process, device identifier-based services for file sharing features and messaging features ("Device Identifier-based Services") are provided within the Samsung Software. These features are available through existing interfaces of Contacts and Messages, respectively, as additional features to them. If you opt-in to Device Identifier-based Services, certain unique identifiers for your Product are needed to set up and use these features. These unique identifiers may include hardware identifiers, subscription information and telephone number for your Product. If you allow sharing of Contacts information, the telephone numbers of the people in your Contacts are collected by Samsung to facilitate file sharing and messaging with the people in your Contacts. You may turn off this sharing feature or restrict the scope of the sharing under your profile settings. If your message cannot be sent as a message using the Device Identifier-based Services, your message may be sent as an SMS or MMS message, for which carrier messaging rates may apply.

f.  Voice-based Features. As described in the Samsung Privacy Policy, available for view at the hyperlink above, in order to provide Voice-based features we may require the collection of your voice information. Some voice-based services may not be available in all languages or in all countries.

g.  Samsung Keyboard. If you opt in to the Predictive text feature, the words that you type are collected and stored on your Product to provide a word suggestion that you would be typing. You can clear the collected typing data anytime under the Predictive text settings. This feature may be offered in connection with your Samsung Account to synchronize the data for use on your other Products and you can also clear the server side data under the Predictive text settings.

6.  **INTERNET ACCESS.**
Some features of the Samsung Software may require your Product to have access to the Internet and may be subject to restrictions imposed by your network or Internet provider. Unless your Product is connected to the Internet through Wi-Fi connection, the Samsung Software will access the internet through your mobile network, which may result in additional charges depending on your payment plan. In addition, your enjoyment of some features of the Samsung Software may be affected by the suitability and performance of your device hardware or data access.

7.  **EXPORT RESTRICTIONS.**
You acknowledge that the Samsung Software is subject to export restrictions of various countries. You agree to comply with all applicable international and national laws that apply to the Samsung Software, including all the applicable export restriction laws and regulations.

8.  **TERMINATION.**
    This EULA is effective until terminated. Your rights under this License will terminate automatically without notice from Samsung if you fail to comply with any of the terms and conditions of this EULA. Upon termination of this EULA, you must cease all use of the Samsung Software and destroy all copies, full or partial, of the Samsung Software. Section 5, 9, 10, 13, 14, 15, 16 and 17 of this EULA shall survive any such termination.

9.  **LIMITED WARRANTY.**
    SAMSUNG WARRANTS THAT SAMSUNG'S DEVICES AND ACCESSORIES ARE FREE FROM DEFECTS IN MATERIAL AND WORKMANSHIP UNDER NORMAL USE AND SERVICE. UNLESS SEPARATELY STATED IN A WRITTEN EXPRESS LIMITED WARRANTY ACCOMPANYING YOUR PRODUCT, ALL SAMSUNG SOFTWARE PROVIDED BY SAMSUNG WITH THIS MOBILE DEVICE (WHETHER INCLUDED WITH THE DEVICE, DOWNLOADED, OR OTHERWISE OBTAINED) IS PROVIDED "AS IS" AND ON AN "AS AVAILABLE" BASIS, WITHOUT WARRANTIES OF ANY KIND FROM SAMSUNG, EITHER EXPRESS OR IMPLIED. TO THE FULLEST EXTENT POSSIBLE PURSUANT TO APPLICABLE LAW, SAMSUNG DISCLAIMS ALL WARRANTIES EXPRESS, IMPLIED OR STATUTORY, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY, SATISFACTORY QUALITY OR WORKMANLIKE EFFORT, FITNESS FOR A PARTICULAR PURPOSE, RELIABILITY OR AVAILABILITY, ACCURACY, LACK OF VIRUSES, QUIET ENJOYMENT, NON INFRINGEMENT OF THIRD PARTY RIGHTS OR OTHER VIOLATION OF RIGHTS. SOME JURISDICTIONS DO NOT ALLOW EXCLUSIONS OR LIMITATIONS OF IMPLIED WARRANTIES, SO THE ABOVE EXCLUSIONS OR LIMITATIONS MAY NOT APPLY TO YOU. NO ADVICE OR INFORMATION, WHETHER ORAL OR WRITTEN, OBTAINED BY YOU FROM SAMSUNG OR ITS AFFILIATES SHALL BE DEEMED TO ALTER THIS DISCLAIMER BY SAMSUNG OF WARRANTY REGARDING SAMSUNG SOFTWARE, OR TO CREATE ANY WARRANTY OF ANY SORT FROM SAMSUNG.

    YOU EXPRESSLY ACKNOWLEDGE AND AGREE THAT, TO THE EXTENT PERMITTED BY APPLICABLE LAW, USE OF THE SAMSUNG SOFTWARE AND ANY SERVICES PERFORMED BY OR ACCESSED THROUGH THE SAMSUNG SOFTWARE IS AT YOUR SOLE RISK AND THAT THE ENTIRE RISK AS TO SATISFACTORY QUALITY, PERFORMANCE, ACCURACY AND EFFORT IS WITH YOU. SAMSUNG DOES NOT GUARANTEE OR WARRANT THAT ANY INFORMATION, DATA OR CONTENT YOU MAY TRANSFER, STORE OR ACCESS THROUGH USE OF THE SAMSUNG SOFTWARE WILL NOT BE SUBJECT TO INADVERTENT DAMAGE, CORRUPTION, LOSS, OR REMOVAL, AND SAMSUNG SHALL NOT BE RESPONSIBLE SHOULD SUCH DAMAGE, CORRUPTION, LOSS, OR REMOVAL OCCUR. IT IS SOLELY YOUR RESPONSIBILITY TO MAINTAIN APPROPRIATE ALTERNATE BACKUP OF YOUR INFORMATION AND DATA.

10.  **THIRD-PARTY MATERIALS.**
Certain third party applications or services may be included with, or downloaded to your Product. Such third party applications or services may display, include or make available content, data, information, applications or materials from third parties ("Third Party Materials") or provide links to certain third party websites. By using the Samsung Software, you acknowledge and agree that Samsung is not responsible for the availability of such Third Party Materials and is not responsible or liable for any content, advertising, products, services, or other materials on or available from such Third Party Materials.

You expressly acknowledge and agree that use of Third Party Materials is at your sole risk and that the entire risk of unsatisfactory quality, performance, accuracy and effort is with you. You agree not to modify, rent, lease, loan, sell, distribute, or create derivative works based on the Third Party Materials), in any manner, and you shall not exploit the Third Party Materials in any unauthorized way whatsoever, including but not limited to, using the Third Party Materials to transmit any computer viruses, worms, Trojan horses or other malware, or by trespassing or burdening network capacity. You further agree not to use the Third Party Materials in any manner to harass, abuse, stalk, threaten, defame or otherwise infringe or violate the rights of any other party, and that Samsung is not in any way responsible for any such use by you, nor for any harassing, threatening, defamatory, offensive, infringing or illegal messages or transmissions that you may receive as a result of using any of the Third Party Materials. References on this Product to any names, marks, products, or services of any third-parties are provided solely as a convenience to you, and do not constitute or imply an endorsement, sponsorship, or recommendation of, or affiliation with the third party or its products and services. You acknowledge and agree that the use of any Third Party Materials is governed by such Third Party Materials provider's terms of use, license agreement, privacy policy, or other such agreement and that any information or personal data you provide, whether knowingly or unknowingly, to such Third Party Materials provider, will be subject to such Third Party Materials provider's privacy policy, if such a policy exists. This EULA will not affect your legal relationship with such third party providers.

**SAMSUNG DISCLAIMS ANY RESPONSIBILITY FOR ANY DISCLOSURE OF INFORMATION OR ANY OTHER PRACTICES OF ANY THIRD PARTY MATERIALS PROVIDER. SAMSUNG EXPRESSLY DISCLAIMS ANY WARRANTY REGARDING WHETHER YOUR PERSONAL INFORMATION IS CAPTURED BY ANY THIRD PARTY MATERIALS PROVIDER OR THE USE TO WHICH SUCH PERSONAL INFORMATION MAY BE PUT BY SUCH THIRD PARTY MATERIALS PROVIDER.**

11.  **SAMSUNG SERVICES.**
Certain Samsung applications and services may be included with, or downloaded to, your Product. The Samsung Software may enable access to Samsung Galaxy Apps Store or other Samsung and third party services and web sites (collectively and individually, "Services"). Some of the Services and applications may not be

available in all languages or in all countries. Many of them may require Samsung Services membership registration ("Samsung Account"), and your rights and obligations in relation to the Samsung Services will be set forth in separate Samsung Account terms and conditions. There are non-Samsung Account applications and services that may require your consent to their separate terms and conditions before accessing or using those applications and services. You expressly acknowledge and agree that your use of such applications and services will be subject to the applicable terms and conditions of the non-Samsung Account applications and services. This EULA will not affect your legal relationship with such non-Samsung Account applications and services providers. Your use of a Samsung Account is subject to the latest terms and conditions, which you may access and review at http://account.samsung.com/membership/terms.

12.  **DIGITAL CERTIFICATE.**
You acknowledge and agree that you are solely responsible for your decision to rely on a digital certificate issued by either Samsung or a third party and your use of such certificate. Samsung makes no express or implied warranties or representations as to merchantability or fitness for any particular purpose, accuracy, security, or non-infringement of third party rights with respect to digital certificates.

13.  **LIMITATION OF LIABILITY.**
SAMSUNG WILL NOT BE LIABLE FOR ANY DAMAGES OF ANY KIND ARISING OUT OF OR RELATING TO THE USE OR THE INABILITY TO USE THE SAMSUNG SOFTWARE OR ANY THIRD PARTY APPLICATION, ITS CONTENT OR FUNCTIONALITY, INCLUDING BUT NOT LIMITED TO DAMAGES CAUSED BY OR RELATED TO ERRORS, OMISSIONS, INTERRUPTIONS, DEFECTS, DELAY IN OPERATION OR TRANSMISSION, COMPUTER VIRUS, FAILURE TO CONNECT, NETWORK CHARGES, IN-APP PURCHASES, AND ALL OTHER DIRECT, INDIRECT, SPECIAL, INCIDENTAL, EXEMPLARY, OR CONSEQUENTIAL DAMAGES EVEN IF SAMSUNG HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND YOU AGREE THAT YOU WILL USE THE SOFTWARE PRODUCT AT YOUR OWN RISK. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, OR FOR SOME OTHER TYPES OF LOSS, SO THE ABOVE EXCLUSIONS OR LIMITATIONS MAY NOT APPLY TO YOU. NOTWITHSTANDING THE FOREGOING, SAMSUNG'S TOTAL LIABILITY TO YOU FOR ALL LOSSES, DAMAGES, CAUSES OF ACTION, INCLUDING BUT NOT LIMITED TO THOSE BASED ON CONTRACT, TORT, OR OTHERWISE, ARISING OUT OF YOUR USE OF THE SAMSUNG SOFTWARE OR THIRD PARTY APPLICATIONS ON THIS MOBILE DEVICE, OR ANY OTHER PROVISION OF THIS EULA, SHALL NOT EXCEED THE AMOUNT PURCHASER PAID SPECIFICALLY FOR THIS MOBILE DEVICE OR ANY SUCH THIRD PARTY APPLICATION THAT WAS INCLUDED WITH THIS MOBILE DEVICE. THE FOREGOING LIMITATIONS, EXCLUSIONS, AND DISCLAIMERS (INCLUDING SECTIONS 9, 10, 11, 12 AND

13) SHALL APPLY TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, EVEN IF ANY REMEDY FAILS ITS ESSENTIAL PURPOSE.

14. **U.S. GOVERNMENT END USERS RESTRICTED RIGHTS.**
The Samsung Software is licensed only with "restricted rights" and as "commercial items" consisting of "commercial software" and "commercial software documentation" with only those rights as are granted to all other end users pursuant to the terms and conditions herein. All Samsung Software is provided only with "restricted rights" with only those rights as are granted to all other end users pursuant to the terms and conditions herein. All Samsung Software are provided subject to Federal Acquisition Regulation (FAR) 52.227.19.

15. **APPLICABLE LAW.**
This EULA shall be governed by and interpreted in accordance with the laws of the State of New York, USA without reference to its conflict of law provisions. This EULA shall not be governed by the UN Convention on Contracts for the International Sale of Goods, the application of which is expressly excluded. Samsung may apply for injunctive remedies (or an equivalent form of urgent legal relief) in any jurisdiction.

16. **ARBITRATION AGREEMENT.**
This is a binding legal agreement ("Agreement") between you (either an individual or entity) and Samsung. Opening the Product packaging, use of the Product, or retention of the Product constitutes acceptance of this Agreement, regardless of whether you are the original purchaser, user, or other recipient of the Product.

You and Samsung each agree that, subject to Samsung's right to apply for injunctive remedies set forth in Paragraph 15 above, all disputes between you and Samsung relating in any way to or arising in any way from the Standard Limited Warranty or the sale, condition or performance of the Product shall be resolved exclusively through final and binding arbitration, and not by a court or jury. Any such dispute shall not be combined or consolidated with a dispute involving any other person's or entity's product or claim, and specifically, without limitation of the foregoing, shall not under any circumstances proceed as part of a class action. The arbitration shall be conducted before a single arbitrator, whose award may not exceed, in form or amount, the relief allowed by the applicable law.

The arbitration shall be conducted according to the American Arbitration Association (AAA) Commercial Arbitration Rules applicable to consumer disputes. The AAA Rules are available online at adr.org or by calling the AAA at 1-800-778-7879. This Agreement is entered into pursuant to the Federal Arbitration Act. The laws of the State of New York, without reference to its choice of law principles, shall govern the interpretation of the Agreement and all

disputes that are subject to this Agreement. The arbitrator shall decide all issues of interpretation and application of this Agreement.

For any arbitration in which your total damage claims, exclusive of attorney fees and expert witness fees, are $5,000.00 or less ("Small Claim"), the arbitrator may, if you prevail, award your reasonable attorney fees, expert witness fees and costs as part of any award, but may not grant Samsung its attorney fees, expert witness fees or costs unless it is determined that the claim was brought in bad faith. In a Small Claim case, you shall be required to pay no more than half of the total administrative, facility and arbitrator fees, or $50.00 of such fees, whichever is less, and Samsung shall pay the remainder of such fees. Administrative, facility and arbitrator fees for arbitrations in which your total damage claims, exclusive of attorney fees and expert witness fees, exceed $5,000.00 ("Large Claim") shall be determined according to AAA rules. In a Large Claim case, the arbitrator may grant to the prevailing party, or apportion among the parties, reasonable attorney fees, expert witness fees and costs to the extent allowed by the applicable law. Judgment may be entered on the arbitrator's award in any court of competent jurisdiction.

This Agreement also applies to claims against Samsung's employees, representatives, parents, and other affiliates if any such claim relates to or arises from the EULA, Standard Limited Warranty, or the Product's sale, condition or performance.

**You may opt out of this Agreement by providing notice to Samsung no later than 30 calendar days from the date of the first consumer purchaser's purchase of the Product. To opt out, you must send notice by e-mail to optout@sea.samsung.com, with the subject line: "EULA Arbitration Opt Out." You must include in the opt out e-mail (a) your name and address; (b) the date on which the Product was purchased; (c) the Product model name or model number; and (d) the IMEI or MEID or Serial Number, as applicable, if you have it (the IMEI or MEID or Serial Number can be found (i) on the Product box; (ii) on the Product information screen, which can be found under "Settings;" (iii) on a label on the back of the Product beneath the battery, if the battery is removable; and (iv) on the outside of the Product if the battery is not removable).**

Alternatively, you may opt out by calling 1-800-SAMSUNG (726-7864) no later than 30 calendar days from the date of the first consumer purchaser's purchase of the Product and providing the same information. These are the only two forms of notice that will be effective to opt out of this Agreement. Opting out of this Agreement will not affect in any way the benefits to which you would otherwise be entitled, including the benefits of the Standard Limited Warranty.

17. **ENTIRE AGREEMENT; SEVERABILITY.**
This EULA is the entire agreement between you and Samsung relating to the Samsung Software and supersedes all prior or contemporaneous oral or written

communications, proposals and representations with respect to the Samsung Software or any other subject matter covered by this EULA. If any provision of this EULA is held to be void, invalid, unenforceable or illegal, the other provisions shall continue in full force and effect.

# EXHIBIT C

# CONSUMER

# Consumer
Arbitration Rules

 American Arbitration Association®

Available online at **adr.org/consumer**

Rules Amended and Effective September 1, 2014

## Table of Contents

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

    About the AAA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

    The Arbitrator. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

    The AAA's Consumer Arbitration Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

    Availability of Mediation through AAA Mediation.org . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

    Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

    Arbitrator's Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

    Notification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Filing a Case and Initial AAA Administrative Steps . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

    R-1. Applicability (When the AAA Applies These Rules)  . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

    R-2. Starting Arbitration under an Arbitration Agreement in a Contract  . . . . . . . . . . . .  11

    R-3. Agreement to Arbitrate When There is No AAA Arbitration Clause . . . . . . . . . . . . .  13

    R-4. AAA Administrative Fees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

    R-5. Neutral Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

    R-6. Depositing Neutral Arbitrator's Compensation with the AAA . . . . . . . . . . . . . . . . . .  14

    R-7. Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

    R-8. Changes of Claim  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

    R-9. Small Claims Option for the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

    R-10. Administrative Conference with the AAA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

    R-11. Fixing of Locale (the city, county, state, territory and or country where the
    arbitration will take place). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

    R-12. Business Notification and Publicly-Accessible Consumer Clause Registry. . . . . . .  16

    R-13. AAA and Delegation of Duties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

    R-14. Jurisdiction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Appointing the Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

    R-15. National Roster of Arbitrators. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

    R-16. Appointment from National Roster . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

    R-17. Number of Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

    R-18. Disclosure  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

    R-19. Disqualification of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

    R-20. Vacancies  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

Pre-Hearing Preparation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    R-21. Preliminary Management Hearing with the Arbitrator . . . . . . . . . . . . . . . . . . . . . . . 20

    R-22. Exchange of Information between the Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    R-23. Enforcement Powers of the Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    R-24. Written Motions (except for Dispositive Motions—see R-33) . . . . . . . . . . . . . . . . . 21

    R-25. Representation of a Party. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    R-26. Setting the Date, Time, and Place (the physical site of the hearing within the
    designated locale) of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    R-27. Written Record of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    R-28. Interpreters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    R-29. Documents-Only Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Hearing Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    R-30. Attendance at Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    R-31. Oaths . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    R-32. Conduct of Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    R-33. Dispositive Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    R-34. Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    R-35. Evidence by Affidavit and Post-Hearing Filing of Documents or Other
    Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    R-36. Inspection or Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    R-37. Interim Measures (a preliminary decision made by the arbitrator involving part
    or all of the issue(s) in dispute in the arbitration). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    R-38. Postponements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    R-39. Arbitration in the Absence of a Party or Representative . . . . . . . . . . . . . . . . . . . . . 26

Conclusion of the Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    R-40. Closing of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    R-41. Reopening of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    R-42. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    R-43. Form of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    R-44. Scope of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    R-45. Award upon Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    R-46. Delivery of Award to Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    R-47. Modification of Award for Clerical, Typographical, or Mathematical Errors . . . . . . 29

Post Hearing ........................................................................ 30

R-48. Release of Documents for Judicial Proceedings ........................... 30

R-49. Applications to Court and Exclusion of Liability .......................... 30

General Procedural Rules ........................................................... 31

R-50. Waiver of Rules .............................................................. 31

R-51. Extensions of Time .......................................................... 31

R-52. Serving of Notice and AAA and Arbitrator Communications ................. 31

R-53. Interpretation and Application of Rules .................................... 32

R-54. Remedies for Nonpayment ................................................... 32

R-55. Declining or Ceasing Arbitration ........................................... 32

Costs of Arbitration ............................................................... 33

Procedures for the Resolution of Disputes through Document Submission ...... 33

D-1. Applicability .................................................................. 33

D-2. Preliminary Management Hearing ............................................ 33

D-3. Removal from the Procedures ................................................ 33

D-4. Time of Award ................................................................ 34

Glossary of Terms ................................................................. 35

Administrator ...................................................................... 35

ADR Agreement .................................................................... 35

ADR Process ....................................................................... 35

ADR Program ...................................................................... 35

Arbitration ......................................................................... 35

Arbitration Agreement ............................................................ 36

Arbitrator .......................................................................... 36

Case Administrator ................................................................ 36

Claimant ........................................................................... 36

Demand for Arbitration (also referred to as "Demand") ......................... 36

Documents-Only Arbitration ...................................................... 37

Independent ADR Institution ..................................................... 37

In-Person Hearing ................................................................. 37

Mediation .......................................................................... 37

Neutral ............................................................................. 37

Party ............................................................................... 37

Parties ............................................................................. 38

Opposing Party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Respondent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Telephone Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38



# Consumer Arbitration Rules

## Introduction

Millions of consumer purchases take place each year. Occasionally, these transactions lead to disagreements between consumers and businesses. These disputes can be resolved by arbitration. Arbitration is usually faster and cheaper than going to court.

The American Arbitration Association® ("AAA®," "the Association") applies the *Consumer Arbitration Rules* ("Rules") to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA has the discretion to apply or not to apply the *Consumer Arbitration Rule*, and the parties are able to bring any disputes concerning the application or non-application of the Rules to the attention of the arbitrator. Consumers and businesses are permitted to seek relief in a small claims court for disputes or claims within the scope of the small claims court's jurisdiction. These Rules were drafted and designed to be consistent with the minimum due process principles of the *Consumer Due Process Protocol*.

## About the AAA

The administrator's role is to manage the administrative aspects of the arbitration, such as the appointment of the arbitrator, preliminary decisions about where hearings might take place, and handling the fees associated with the arbitration. As administrator, however, the AAA does not decide the merits of a case or make any rulings on issues such as what documents must be shared with each side. Because the AAA's role is only administrative, the AAA cannot overrule or change an arbitrator's decisions or rulings. The administrator will comply with any court orders issued from litigation involving the parties to the dispute.

The American Arbitration Association, founded in 1926, is a neutral, independent, and private not-for-profit organization. We offer a broad range of conflict management services to businesses, organizations, and individuals. We also provide education, training, and publications focused on methods for settling disputes out of court.

## The Arbitrator

Except where the parties to a case reach their own settlement, the arbitrator will make the final, binding decision called the Award on the dispute and render it in writing. The Arbitrator makes all the procedural decisions on a case not made by the Administrator or not decided jointly by the parties. The arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with the law or laws that apply to the case.

Arbitrators are neutral and independent decision makers who are not employees of the AAA. Once appointed to a case, an arbitrator may not be removed by one party without the other party's consent or unless the Administrator determines an arbitrator should be removed and replaced by another arbitrator chosen by the Administrator in a manner described in these Rules.

## The AAA's Consumer Arbitration Rules

The AAA has developed the *Consumer Arbitration Rules* for consumers and businesses that want to have their disagreements resolved through arbitration.

## Availability of Mediation through AAA Mediation.org

Mediation in consumer disputes is also available to help parties resolve their disputes. Parties interested in participating in mediation may find a mediator through **www.aaamediation.org.**

## Administrative Fees

The Association charges a fee for its services under these Rules. A fee schedule is included at the end of these Rules in the Costs of Arbitration section.

### Arbitrator's Fees

Arbitrators are paid for the time they spend resolving disputes. The business makes deposits as outlined in the fee schedule in the Costs of Arbitration section of these Rules. Unused deposits are refunded at the end of the case.

### Notification

A business intending to incorporate these Rules or to refer to the dispute resolution services of the AAA in a consumer alternative dispute resolution ("ADR") plan should, at least 30 days prior to the planned effective date of the program,

> notify the Association of its intention to do so, and
>
> provide the Association with a copy of the consumer dispute resolution plan.

If a business does not comply with this requirement, the Association reserves the right to withhold its administrative services. For more information, please see R-12 below.

## Filing a Case and Initial AAA Administrative Steps

### R-1. Applicability (When the AAA Applies These Rules)

**(a)** The parties shall have made these *Consumer Arbitration Rules* ("Rules") a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association ("AAA"), and

1) have specified that these *Consumer Arbitration Rules* shall apply;

2) have specified that the *Supplementary Procedures for Consumer-Related Disputes* shall apply, which have been amended and renamed the Consumer Arbitration Rules;

3) the arbitration agreement is contained within a consumer agreement, as defined below, that does not specify a particular set of rules; or

4) the arbitration agreement is contained within a consumer agreement, as defined below, that specifies a particular set of rules other than the *Consumer Arbitration Rules*.

When parties have provided for the AAA's rules or AAA administration as part of their consumer agreement, they shall be deemed to have agreed that the application of the AAA's rules and AAA administration of the consumer arbitration shall be an essential term of their consumer agreement.

The AAA defines a consumer agreement as an agreement between an individual consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use.

Examples of contracts that typically meet the criteria for application of these Rules, if the contract is for personal or household goods or services and has an arbitration provision, include, but are not limited to the following:

Credit card agreements

Telecommunications (cell phone, ISP, cable TV) agreements

Leases (residential, automobile)

Automobile and manufactured home purchase contracts

Finance agreements (car loans, mortgages, bank accounts)

Home inspection contracts

Pest control services

> Moving and storage contracts
>
> Warranties (home, automobile, product)
>
> Legal funding
>
> Health and fitness club membership agreements
>
> Travel services
>
> Insurance policies
>
> Private school enrollment agreements

Examples of contracts that typically do not meet the criteria for application of these Rules, should the contract contain an arbitration provision, include, but are not limited to the following:

> Home construction and remodeling contracts
>
> Real estate purchase and sale agreements
>
> Condominium or homeowner association by-laws
>
> Business insurance policies (including crop insurance)
>
> Commercial loan and lease agreements
>
> Commercial guaranty agreements

**(b)** When parties agree to arbitrate under these Rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these Rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in the agreement of the parties and in these Rules and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices. Arbitrations administered under these Rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

**(c)** The consumer and the business may agree to change these Rules. If they agree to change the Rules, they must agree in writing. If the consumer and the business want to change these Rules after the appointment of the arbitrator, any changes may be made only with the approval of the arbitrator.

**(d)** The AAA administers consumer disputes that meet the due process standards contained in the *Consumer Due Process Protocol* and the *Consumer Arbitration Rules*. The AAA will accept cases after the AAA reviews the parties' arbitration agreement and if the AAA determines the agreement substantially and materially complies with the due process standards of these Rules and the *Consumer Due Process Protocol*. Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

**(e)** The AAA has the initial authority to apply or not to apply the *Consumer*

*Arbitration Rules.* If either the consumer or the business disagrees with the AAA's decision, the objecting party must submit the objection by the due date for filing an answer to the demand for arbitration. If an objection is filed, the arbitrator shall have the authority to make the final decision on which AAA rules will apply.

**(f)** If, within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 30 days to permit the party to obtain a stay of arbitration from the court.

**(g)** Where no disclosed claims or counterclaims exceed $25,000, the dispute shall be resolved by the submission of documents only/desk arbitration (see R-29 and the *Procedures for the Resolution of Disputes through Document Submission* below). Any party, however, may ask for a hearing. The arbitrator also may decide that a hearing is necessary.

### R-2. Starting Arbitration under an Arbitration Agreement in a Contract

**(a)** Arbitration filed under an arbitration agreement naming the AAA shall be started in the following manner:

**(1)** The party who starts the arbitration (referred to as the "claimant" throughout the arbitration) must contact, in writing, the party that the case is filed against (referred to as the "respondent" throughout the arbitration) that it wishes to arbitrate a dispute. This written contact is referred to as the Demand for Arbitration ("Demand"). The Demand must do the following:

Briefly explain the dispute

List the names and addresses of the consumer and the business, and, if known, the names of any representatives of the consumer and the business

Specify the amount of money in dispute, if applicable

Identify the requested location for the hearing if an in-person hearing is requested

State what the claimant wants

**(2)** The claimant must also send one copy of the Demand to the AAA at the same time the demand is sent to the respondent. When sending a Demand to the AAA, the claimant must also send the following:

A copy of the arbitration agreement contained in the contract and/or agreement and/or purchase document

The proper filing fee; the amount of the filing fee can be found in the Costs of Arbitration section at the end of these Rules.

**(3)** If the arbitration is pursuant to a court order, the claimant must send one copy of the Demand to the AAA at the same time the Demand is sent to the respondent. When sending a demand to the AAA, the claimant must also send the following:

> A copy of the court order
>
> A copy of the arbitration agreement contained in the contract and/or agreement and/or purchase document
>
> The proper filing fee

The filing fee must be paid before a matter is considered properly filed. If the court order directs that a specific party is responsible for the filing fee, it is the responsibility of the filing party either to make such payment to the AAA and seek reimbursement as directed in the court order or to make other such arrangements so that the filing fee is submitted to the AAA with the Demand.

The claimant may file by mail. The mailing address of the AAA's Case Filing Services is:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Or, the claimant may file online using AAA WebFile: **https://www.adr.org**

Or, the claimant may file at any of the AAA's offices.

**(b)** The AAA will send a written notice letting the consumer and the business know the Demand for Arbitration has been received.

**(c)** The respondent may submit a written response to the Demand, known as an "answer," which describes how the respondent responds to the claimant's claim. The answer must be sent to the AAA within 14 calendar days after the date the AAA notifies the parties that the Demand for Arbitration was received and all filing requirements were met. The answer must be

> in writing,
>
> sent to the AAA, and
>
> sent to the claimant at the same time.

**(d)** The respondent may also file a counterclaim, which is the respondent filing a Demand against the claimant. If the respondent has a counterclaim, the counterclaim must briefly explain the dispute, specify the amount of money involved, and state what the respondent wants.

**(e)** If no answer is filed within 14 calendar days, the AAA will assume that the respondent does not agree with the claim filed by the claimant. The case will move forward after 14 days regardless of whether an answer is filed.

**(f)** When sending a Demand or an answer, the consumer and the business are encouraged to provide enough details to make the dispute clear to the arbitrator.

## R-3. Agreement to Arbitrate When There is No AAA Arbitration Clause

If the consumer and business do not have an arbitration agreement or their arbitration agreement does not name the AAA, the parties may agree to have the AAA arbitrate their dispute. To start the arbitration, the parties must send the AAA a submission agreement, which is an agreement to arbitrate their case with the AAA, signed by the consumer and the business (email communications between all parties to a dispute reflecting an agreement to arbitrate also is acceptable). The submission agreement must

> be in writing (electronic communication is acceptable);
>
> be signed by both parties;
>
> briefly explain the dispute;
>
> list the names and addresses of the consumer and the business;
>
> specify the amount of money involved;
>
> specify the requested location for the hearing if an in-person hearing is requested; and
>
> state the solution sought.

The parties should send one copy of the submission agreement to the AAA. They must also send the proper filing fees. A fee schedule can be found in the Costs of Arbitration section at the end of these Rules.

## R-4. AAA Administrative Fees

As a not-for-profit organization, the AAA charges fees to compensate it for the cost of providing administrative services. The fee schedule in effect when the case is filed shall apply for all fees charged during the administration of the case. The AAA may, in the event of the consumer's extreme hardship, defer or reduce the consumer's administrative fees.

AAA fees shall be paid in accordance with the Costs of Arbitration section found at the end of these Rules.

### R-5. Neutral Arbitrator's Compensation

**(a)** Arbitrators serving under these Rules shall be compensated at a rate established by the AAA.

**(b)** Any arrangement for the compensation of an arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

**(c)** Arbitrator compensation shall be paid in accordance with the Costs of Arbitration section found at the end of these Rules.

### R-6. Depositing Neutral Arbitrator's Compensation with the AAA

The AAA may require the parties to deposit in advance of any hearings such sums of money as it decides are necessary to cover the expense of the arbitration, including the arbitrator's fee, and shall render an accounting to the parties and return any unused money at the conclusion of the case.

### R-7. Expenses

Unless otherwise agreed by the parties or as provided under applicable law, the expenses of witnesses for either side shall be borne by the party producing such witnesses.

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne in accordance with the Costs of Arbitration section found at the end of these Rules.

### R-8. Changes of Claim

Once a Demand has been filed, any new claims or counterclaims, or changes to the claim or counterclaim, must be made in writing and sent to the AAA. The party making the new or different claim or counterclaim shall send a copy to the opposing party. As with the original Demand or counterclaim, a party shall have 14 calendar days from the date the AAA notifies the parties it received the new or different claim or counterclaim to file an answering statement with the AAA.

If an arbitrator has already been appointed, a new or different claim or counterclaim may only be considered if the arbitrator allows it.

### R-9. Small Claims Option for the Parties

If a party's claim is within the jurisdiction of a small claims court, either party may choose to take the claim to that court instead of arbitration as follows:

**(a)** The parties may take their claims to small claims court without first filing with the AAA.

**(b)** After a case is filed with the AAA, but before the arbitrator is formally appointed to the case by the AAA, a party can send a written notice to the opposing party and the AAA that it wants the case decided by a small claims court. After receiving this notice, the AAA will administratively close the case.

**(c)** After the arbitrator is appointed, if a party wants to take the case to small claims court and notifies the opposing party and the AAA, it is up to the arbitrator to determine if the case should be decided in arbitration or if the arbitration case should be closed and the dispute decided in small claims court.

### R-10. Administrative Conference with the AAA

At the request of any party or if the AAA should so decide, the AAA may have a telephone conference with the parties and/or their representatives. The conference may address issues such as arbitrator selection, the possibility of a mediated settlement, exchange of information before the hearing, timing of the hearing, the type of hearing that will be held, and other administrative matters.

### R-11. Fixing of Locale (the city, county, state, territory and or country where the arbitration will take place)

If an in-person hearing is to be held and if the parties do not agree to the locale where the hearing is to be held, the AAA initially will determine the locale of the arbitration. If a party does not agree with the AAA's decision, that party can ask the arbitrator, once appointed, to make a final determination. The locale determination will be made after considering the positions of the parties, the circumstances of the parties and the dispute, and the *Consumer Due Process Protocol*.

### R-12. Business Notification and Publicly-Accessible Consumer Clause Registry

Beginning September 1, 2014, a business that provides for or intends to provide for these Rules or another set of AAA Rules in a consumer contract (as defined in R-1) should

1. notify the AAA of the existence of such a consumer contract or of its intention to do so at least 30 days before the planned effective date of the contract.

2. provide the AAA a copy of the arbitration agreement.

Upon receiving the arbitration agreement, the AAA will review the agreement for material compliance with due process standards contained in the *Consumer Due Process Protocol* and the *Consumer Arbitration Rules* (see Rule 1(d)). There is a nonrefundable fee to conduct this initial review and maintain a publicly-available clause registry, which is detailed in the Costs of Arbitration section found at the end of these Rules. Any subsequent changes, additions, deletions, or amendments to a currently-registered arbitration agreement must be resubmitted for review and a review fee will be assessed at that time. The AAA will decline to administer consumer arbitrations arising out of that arbitration agreement where the business fails to pay the review fee.

If a business does not submit its arbitration agreement for review and a consumer arbitration then is filed with the AAA, the AAA will conduct an expedited review at that time. Along with any other filing fees that are owed for that case, the business also will be responsible for paying the nonrefundable review and Registry fee (including any fee for expedited review at the time of filing) for this initial review, which is detailed in the Costs of Arbitration section found at the end of these Rules. The AAA will decline to administer consumer arbitrations arising out of that arbitration agreement if the business declines to pay the review and Registry fee.

After the AAA reviews the submitted consumer clause, receives the annual consumer registry fee, and determines it will administer consumer-related disputes filed pursuant to the consumer clause, the business will be included on the publicly-accessible Consumer Clause Registry. This Consumer Clause Registry maintained by the AAA will contain the name of the business, the address, and the consumer arbitration clause, along with any related documents as deemed necessary by the AAA. The AAA's review of a consumer arbitration clause and determination whether or not to administer arbitrations pursuant to that clause is only an administrative determination by the AAA and cannot be

relied upon or construed as a legal opinion or advice regarding the enforceability of the arbitration clause. Consumer arbitration agreements may be registered at: **www.adr.org/ClauseRegistry** or via email at **consumerreview@adr.org.**

For more information concerning the Consumer Clause Registry, please visit the AAA's website at **www.adr.org/ClauseRegistry.**

The Registry fee to initially review a business's agreement and maintain the clause registry list is a yearly, non-refundable fee for the business's arbitration agreement. Any different arbitration agreements submitted by the same business or its subsidiaries must be submitted for review and are subject to the current review fee.

If the AAA declines to administer a case due to the business's non-compliance with this notification requirement, the parties may choose to submit their dispute to the appropriate court.

### R-13. AAA and Delegation of Duties

When the consumer and the business agree to arbitrate under these Rules or other AAA rules, or when they provide for arbitration by the AAA and an arbitration is filed under these Rules, the parties also agree that the AAA will administer the arbitration. The AAA's administrative duties are set forth in the parties' arbitration agreement and in these Rules. The AAA will have the final decision on which office and which AAA staff members will administer the case. Arbitrations administered under these Rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

### R-14. Jurisdiction

**(a)** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

**(b)** The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**(c)** A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

## Appointing the Arbitrator

### R-15. National Roster of Arbitrators

The AAA maintains a National Roster of Arbitrators ("National Roster") and shall appoint arbitrators from this National Roster to resolve the parties' dispute(s).

### R-16. Appointment from National Roster

**(a)** If the parties have not appointed an arbitrator and have not agreed to a process for appointing the arbitrator, immediately after the filing of the submission agreement or the answer, or after the deadline for filing the answer, the AAA will administratively appoint an arbitrator from the National Roster.

**(b)** If the parties' arbitration agreement provides for three or more arbitrators and they have not appointed the arbitrators and have not agreed to a process for appointing the arbitrators, immediately after the filing of the submission agreement or the answer, or after the deadline for filing the answer, the AAA will administratively appoint the arbitrators from the National Roster. The AAA will appoint the chairperson.

**(c)** Arbitrator(s) serving under these Rules will be neutral and must meet the standards of R-19 with respect to being impartial and independent.

### R-17. Number of Arbitrators

If the arbitration agreement does not specify the number of arbitrators and the parties do not agree on the number, the dispute shall be heard and decided by one arbitrator.

### R-18. Disclosure

**(a)** Any person appointed or to be appointed as an arbitrator, as well as the parties and their representatives, must provide information to the AAA of any circumstances likely to raise justifiable doubt as to whether the arbitrator can remain impartial or independent. This disclosure of information would include

  **(1)** any bias;

  **(2)** any financial interest in the result of the arbitration;

  **(3)** any personal interest in the result of the arbitration; or

  **(4)** any past or present relationship with the parties or their representatives.

Such obligation to provide disclosure information remains in effect throughout the arbitration. A failure on the part of a party or a representative to comply with the requirements of this rule may result in the waiver of the right to object to an arbitrator in accordance with Rule R-50.

**(b)** If the AAA receives such information from the arbitrator or another source, the AAA will communicate the information to the parties. If the AAA decides it is appropriate, it will also communicate the information to the arbitrator and others.

**(c)** In order to encourage disclosure by arbitrators, disclosing such information does not mean that the arbitrator considers the disclosed information will likely affect his or her ability to be impartial or independent.

## R-19. Disqualification of Arbitrator

**(a)** Any arbitrator shall be impartial and independent and shall perform his or her duties carefully and in good faith. The AAA may disqualify an arbitrator who shows

**(1)** partiality or lack of independence;

**(2)** inability or refusal to perform his or her duties with diligence and in good faith; or

**(3)** any grounds for disqualification provided by applicable law.

**(b)** If a party objects to the continued service of an arbitrator, or if the AAA should so decide to raise the issue of whether the arbitrator should continue on the case, the AAA will decide if the arbitrator should be disqualified. After gathering the opinions of the parties, the AAA will decide and that decision shall be final and conclusive.

## R-20. Vacancies

If for any reason an arbitrator cannot or is unwilling to perform the duties of the office, the AAA may declare the office vacant. Any vacancies shall be filled based on the original procedures used to appoint the arbitrator. If a substitute arbitrator is appointed, the substitute arbitrator will decide if it is necessary to repeat all or part of any prior ruling or hearing.

## Pre-Hearing Preparation

### R-21. Preliminary Management Hearing with the Arbitrator

**(a)** If any party asks for, or if the AAA or the arbitrator decides to hold one, the arbitrator will schedule a preliminary management hearing with the parties and/or their representatives as soon as possible. The preliminary management hearing will be conducted by telephone unless the arbitrator decides an in-person preliminary management hearing is necessary.

**(b)** During the preliminary management hearing, the parties and the arbitrator should discuss the future conduct of the case, including clarification of issues and claims, scheduling of the hearings, and any other preliminary matters.

**(c)** The arbitrator shall promptly issue written orders that state the arbitrator's decisions made during or as a result of the preliminary management hearing. The arbitrator may also conduct additional preliminary management hearings if the need arises.

### R-22. Exchange of Information between the Parties

**(a)** If any party asks or if the arbitrator decides on his or her own, keeping in mind that arbitration must remain a fast and economical process, the arbitrator may direct

    **1)** specific documents and other information to be shared between the consumer and business, and

    **2)** that the consumer and business identify the witnesses, if any, they plan to have testify at the hearing.

**(b)** Any exhibits the parties plan to submit at the hearing need to be shared between the parties at least five business days before the hearing, unless the arbitrator sets a different exchange date.

**(c)** No other exchange of information beyond what is provided for in section (a) above is contemplated under these Rules, unless an arbitrator determines further information exchange is needed to provide for a fundamentally fair process.

**(d)** The arbitrator has authority to resolve any disputes between the parties about exchanging information.

### R-23. Enforcement Powers of the Arbitrator

The arbitrator may issue any orders necessary to enforce the provisions of rules R-21 and R-22 and to otherwise achieve a fair, efficient, and economical resolution of the case, including, but not limited to:

**(a)** an order setting the conditions for any exchange or production of confidential documents and information, and the admission of confidential evidence at the hearing in order to preserve such confidentiality;

**(b)** to the extent the exchange of information takes place pursuant to R-22, imposing reasonable search limitations for electronic and other documents if the parties are unable to agree;

**(c)** allocating costs of producing documentation, including electronically-stored documentation;

**(d)** in the case of willful non-compliance with any order issued by the arbitrator, drawing adverse inferences, excluding evidence and other submissions, and/or making special allocations of costs or an interim award of costs arising from such non-compliance; and

**(e)** issuing any other enforcement orders that the arbitrator is empowered to issue under applicable law.

## R-24. Written Motions (except for Dispositive Motions—see R-33)

The arbitrator may consider a party's request to file a written motion (except for Dispositive Motions— see R-33) only after the parties and the arbitrator conduct a conference call to attempt to resolve the issue that gives rise to the proposed motion. Only after the parties and the arbitrator hold the call may the arbitrator consider a party's request to file a written motion. The arbitrator has the sole discretion to allow or deny the filing of a written motion and his or her decision is final.

## R-25. Representation of a Party

Any party may participate in the arbitration without representation, or may be represented by counsel or other authorized representative, unless such choice is prohibited by applicable law. A party intending to be represented shall give the opposing party and the AAA the name, address, and contact information of the representative at least three business days before the hearing where that representative will first appear in the case. It will be considered proper notice if a representative files the arbitration demand or answer or responds for a party during the course of the arbitration.

While parties do not need an attorney to participate in arbitration, arbitration is a final, legally-binding process that may impact a party's rights. As such, parties may want to consider consulting an attorney.

### R-26. Setting the Date, Time, and Place (the physical site of the hearing within the designated locale) of Hearing

The arbitrator will set the date, time, and place for each hearing within the locale as determined in R-11. A hearing may be by telephone or in person. For their part, the parties commit to

**(1)** respond promptly to the arbitrator when he or she asks what dates the parties
    are available to have the hearings;

**(2)** cooperate in the scheduling of the hearing on the earliest possible date; and

**(3)** follow the hearing schedule set up by the arbitrator.

The AAA will send a notice of the hearing to the parties at least 10 days before the hearing date, unless the parties agree to a different time frame.

### R-27. Written Record of Hearing

**(a)** If a party wants a written record of the hearing, that party must make such arrangement directly with a stenographer (court reporter) and notify the opposing parties, the AAA, and the arbitrator of these arrangements at least three business days before the hearing. The party or parties who request the written record shall pay the cost of the service.

**(b)** No other type of recording will be allowed unless the parties agree or the arbitrator directs a different form of recording.

**(c)** The arbitrator may resolve disputes between the parties over who will pay the costs of the written record or other type of recording.

**(d)** The parties can agree or the arbitrator may decide that the transcript (written record) is the official record of the hearing. If it is the official record of the hearing, the transcript must be given to the arbitrator and made available to all the parties so that it can be reviewed. The date, time, and place of the inspection will be decided by the arbitrator.

### R-28. Interpreters

If a party wants an interpreter present for any part of the process, that party must make arrangements directly with the interpreter and shall pay for the costs of the service.

### R-29. Documents-Only Procedure

Disputes may be resolved by submission of documents and without in-person or telephonic hearings. For cases being decided by the submission of documents only, the *Procedures for the Resolution of Disputes through Document Submission* (found at the end of these Rules) shall supplement these Rules. These Procedures will apply where no disclosed claims or counterclaims exceed $25,000 (see R-1(g)), unless any party requests an in-person or telephonic hearing or the arbitrator decides that a hearing is necessary.

## Hearing Procedures

### R-30. Attendance at Hearings

The arbitrator and the AAA will keep information about the arbitration private except to the extent that a law provides that such information shall be shared or made public. The parties and their representatives in the arbitration are entitled to attend the hearings. The arbitrator will determine any disputes over whether a non-party may attend the hearing.

### R-31. Oaths

Before starting the hearing, each arbitrator may take an oath of office and, if required by law, shall do so. If the arbitrator determines that witnesses shall testify under oath, then the arbitrator will direct the oath be given by a duly-qualified person.

### R-32. Conduct of Proceedings

**(a)** The claimant must present evidence to support its claim. The respondent must then present evidence to support its defense. Witnesses for each party also must answer questions from the arbitrator and the opposing party. The arbitrator may change this procedure, as long as each party has the right to be heard and is given a fair opportunity to present its case.

**(b)** When the arbitrator decides it is appropriate, the arbitrator may also allow the parties to present evidence in alternative ways, including web conferencing, Internet communication, and telephonic conferences. All procedures must provide the parties with a full and equal opportunity to present any evidence that the arbitrator decides is material and relevant to deciding the dispute. If the alternative ways to present evidence involve witnesses, those ways may include that the witness submit to direct and cross-examination questioning.

**(c)** The arbitrator will use his or her discretion to resolve the dispute as quickly as possible and may direct the parties to present the evidence in a certain order, or may split the proceedings into multiple parts and direct the parties in the presentation of evidence.

**(d)** The hearing generally will not exceed one day. However, if a party shows good cause, the arbitrator may schedule additional hearings within seven calendar days after the initial day of hearing.

**(e)** The parties may agree in writing to waive oral hearings.

### R-33. Dispositive Motions

The arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.

### R-34. Evidence

**(a)** The parties may offer relevant and material evidence and must produce any evidence the arbitrator decides is necessary to understand and decide the dispute. Following the legal rules of evidence shall not be necessary. All evidence should be taken in the presence of the arbitrator and all of the parties, unless any of the parties is absent, in default, or has waived the right to be present.

**(b)** The arbitrator shall determine what evidence will be admitted, what evidence is relevant, and what evidence is material to the case. The arbitrator may also exclude evidence that the arbitrator decides is cumulative or not relevant.

**(c)** The arbitrator shall consider applicable principles of legal privilege, such as those that involve the confidentiality of communications between a lawyer and a client.

**(d)** An arbitrator or other person authorized by law to subpoena witnesses or documents may do so on the request of any party or on the arbitrator's own determination. If a party requests the arbitrator sign a subpoena, that party shall copy the request to the other parties in the arbitration at the same time it is provided to the arbitrator.

### R-35. Evidence by Affidavit and Post-Hearing Filing of Documents or Other Evidence

**(a)** The arbitrator may receive and consider the evidence of witnesses by declaration or affidavit rather than in-person testimony but will give this evidence only such credence as the arbitrator decides is appropriate. The arbitrator will consider any objection to such evidence made by the opposing party.

**(b)** If the parties agree or the arbitrator decides that documents or other evidence need to be submitted to the arbitrator after the hearing, those documents or other evidence will be filed with the AAA so that they can be sent to the arbitrator. All parties will be given the opportunity to review and respond to these documents or other evidence.

### R-36. Inspection or Investigation

An arbitrator finding it necessary to inspect property or conduct an investigation in connection with the arbitration will request that the AAA inform the parties. The arbitrator will set the date and time of the inspection and investigation, and the AAA will notify the parties. Any party who would like to be present at the

inspection or investigation may attend. If one or all parties are not present at the inspection or investigation, the arbitrator will make an oral or written report to the parties and allow them an opportunity to comment.

### R-37. Interim Measures (a preliminary decision made by the arbitrator involving part or all of the issue(s) in dispute in the arbitration)

**(a)** The arbitrator may grant whatever interim measures he or she decides are necessary, including granting an injunction and ordering that property be protected.

**(b)** Such interim measures may take the form of an interim award, and the arbitrator may require a security payment for the costs of such measures.

**(c)** When making a decision on an interim measure, the arbitrator may grant any remedy, relief, or outcome that the parties could have received in court.

**(d)** A party to an arbitration agreement under these Rules may instead file in state or federal court for interim relief. Applying to the court for this type of relief, including temporary restraining orders, is consistent with the agreement to arbitrate and will not be considered a waiver of the right to arbitrate.

### R-38. Postponements

The arbitrator may postpone any hearing

**(a)** if requested by a party, and the party shows good cause for the postponement;

**(b)** if all parties agree to a postponement;

**(c)** on his or her own decision.

### R-39. Arbitration in the Absence of a Party or Representative

The arbitration may proceed even if any party or representative is absent, so long as proper notice was given and that party or representative fails to appear or obtain a postponement from the arbitrator. An award cannot be made only because of the default of a party. The arbitrator shall require the party who participates in the hearing to submit the evidence needed by the arbitrator to make an award.

## Conclusion of the Hearing

### R-40. Closing of Hearing

The arbitrator must specifically ask all parties whether they have any further proofs to offer or witnesses to be heard. When the arbitrator receives negative replies or he or she is satisfied that the record is complete, the arbitrator will declare the hearing closed.

If briefs or other written documentation are to be filed by the parties, the hearing shall be declared closed as of the final date set by the arbitrator. Absent agreement of the parties, the time that the arbitrator has to make the award begins upon the closing of the hearing. The AAA may extend the time limit for the rendering of the award only in unusual and extreme circumstances.

### R-41. Reopening of Hearing

If a party requests, or if the arbitrator decides to do so, the hearing may be reopened at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. If the arbitrator reopens the hearing, he or she shall have 30 days from the closing of the reopened hearing within which to make an award.

### R-42. Time of Award

The award shall be issued promptly by the arbitrator and, unless the parties agree differently or the law indicates a different time frame, no later than 30 calendar days from the date the hearing is closed, or, if the case is a documents-only procedure, 14 calendar days from the date the arbitrator set for his or her receipt of the final statements and proofs. The AAA may extend the time limit for the rendering of the award only in unusual and extreme circumstances.

### R-43. Form of Award

**(a)** Any award shall be in writing and executed in the form and manner required by law.

**(b)** The award shall provide the concise written reasons for the decision unless the parties all agree otherwise. Any disagreements over the form of the award shall be decided by the arbitrator.

**(c)** The AAA may choose to publish an award rendered under these Rules; however, the names of the parties and witnesses will be removed from awards that are published, unless a party agrees in writing to have its name included in the award.

## R-44. Scope of Award

**(a)** The arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with the law(s) that applies to the case.

**(b)** In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and divide up the fees, expenses, and compensation related to such award as the arbitrator decides is appropriate, subject to the provisions and limitations contained in the Costs of Arbitration section.

**(c)** The arbitrator may also allocate compensation, expenses as defined in sections (v) and (vii) of the Costs of Arbitration section, and administrative fees (which include Filing and Hearing Fees) to any party upon the arbitrator's determination that the party's claim or counterclaim was filed for purposes of harassment or is patently frivolous.

**(d)** In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-4, R-5, and R-7 in favor of any party, subject to the provisions and limitations contained in the Costs of Arbitration section.

## R-45. Award upon Settlement

If the parties settle their dispute at any point during the arbitration and at the parties' request, the arbitrator may lay out the terms of the settlement in a "consent award" (an award drafted and signed by the arbitrator that reflects the settlement terms of the parties). A consent award must include a division of the arbitration costs, including administrative fees and expenses as well as arbitrator fees and expenses. Consent awards will not be made available to the public per Rule 43(c) unless the parties agree otherwise.

## R-46. Delivery of Award to Parties

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at the last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

R-47. Modification of Award for Clerical, Typographical, or Mathematical Errors

**(a)** Within 20 days after the award is transmitted, any party, upon notice to the opposing parties, may contact the AAA and request that the arbitrator correct any clerical, typographical, or mathematical errors in the award. The arbitrator has no power to re-determine the merits of any claim already decided.

**(b)** The opposing parties shall be given 10 days to respond to the request. The arbitrator shall make a decision on the request within 20 days after the AAA transmits the request and any responses to the arbitrator.

**(c)** If applicable law provides a different procedural time frame, that procedure shall be followed.

## Post Hearing

### R-48. Release of Documents for Judicial Proceedings

The AAA shall give a party certified copies of any records in the AAA's possession that may be required in judicial proceedings relating to the arbitration, except for records determined by the AAA to be privileged or confidential. The party will have to pay a fee for this service.

### R-49. Applications to Court and Exclusion of Liability

**(a)** No court or judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

**(b)** Neither the AAA nor any arbitrator in a proceeding under these Rules is a necessary or proper party in judicial proceedings relating to the arbitration.

**(c)** Parties to an arbitration under these Rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

**(d)** Parties to an arbitration under these Rules shall be deemed to have consented that neither the AAA, AAA employees, nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

**(e)** Parties to an arbitration under these Rules may not call the arbitrator, the AAA, or any AAA employee as a witness in litigation or any other proceeding relating to the arbitration. The arbitrator, the AAA, and AAA employees are not competent to and may not testify as witnesses in any such proceeding.

## General Procedural Rules

### R-50. Waiver of Rules

If a party knows that any of these Rules have not been followed, it must object in writing before proceeding with arbitration or it will lose its right to object that the rule has not been followed.

### R-51. Extensions of Time

The parties may agree to change any period of time provided for in the Rules, except that any such modification that negatively affects the efficient resolution of the dispute is subject to review and approval by the arbitrator. The AAA or the arbitrator may for good cause extend any period of time in these Rules, except as set forth in R-42. The AAA will notify the parties of any extension.

### R-52. Serving of Notice and AAA and Arbitrator Communications

**(a)** Any papers or notices necessary for the initiation or continuation of an arbitration under these Rules, or for the entry of judgment on any award made under these Rules, may be served on a party by mail or email addressed to the party or its representative at the last-known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

**(b)** The AAA, the arbitrator, and the parties also may use overnight delivery, electronic facsimile transmission (fax), or electronic mail (email) to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be sent by other methods of communication.

**(c)** Unless directed differently by the AAA or by the arbitrator, any documents and all written communications submitted by any party to the AAA or to the arbitrator also shall be sent at the same time to all parties to the arbitration.

**(d)** A failure to provide the other parties with copies of communications made to the AAA or to the arbitrator may prevent the AAA or the arbitrator from acting on any requests or objections contained within those communications.

**(e)** A party and/or someone acting on behalf of a party cannot have any communications with an arbitrator or a potential arbitrator about the arbitration outside of the presence of the opposing party. All such communications shall be conducted through the AAA.

**(f)** The AAA may direct that any oral or written communications that are sent by a party or their representative shall be sent in a particular manner. The failure of a party or its representative to do so may result in the AAA's refusal to consider the issue raised in the communication.

### R-53. Interpretation and Application of Rules

The arbitrator shall interpret and apply these Rules as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other Rules shall be interpreted and applied by the AAA.

### R-54. Remedies for Nonpayment

**(a)** If arbitrator compensation or administrative charges have not been paid in full, the AAA may inform the parties so that one of them may forward the required payment.

**(b)** Once the AAA informs the parties that payments have not been received, a party may request an order from the arbitrator directing what measures might be taken in light of a party's nonpayment.

Such measures may include limiting a party's ability to assert or pursue its claim. However, a party shall never be precluded from defending a claim or counterclaim. The arbitrator must provide the party opposing a request for relief with the opportunity to respond prior to making any determination. In the event that the arbitrator grants any request for relief that limits any party's participation in the arbitration, the arbitrator will require the party who is making a claim and who has made appropriate payments to submit the evidence required to make an award.

**(c)** Upon receipt of information from the AAA that full payments have not been received, the arbitrator, on the arbitrator's own initiative, may order the suspension of the arbitration. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

**(d)** If arbitrator compensation or AAA administrative fees remain unpaid after a determination to suspend an arbitration due to nonpayment, the arbitrator has the authority to terminate the proceedings. Such an order shall be in writing and signed by the arbitrator. The impact of the termination for nonpayment of the Consumer Clause Registry fee is the removal from the "Registered" section of the Registry.

### R-55. Declining or Ceasing Arbitration

The AAA in its sole discretion may decline to accept a Demand for Arbitration or stop the administration of an ongoing arbitration due to a party's improper conduct, including threatening or harassing behavior towards any AAA staff, an arbitrator, or a party or party's representative.

## Costs of Arbitration

FOR THE CURRENT ADMINISTRATIVE FEE SCHEDULE, PLEASE VISIT
***www.adr.org/consumerfeeschedule***.

## Procedures for the Resolution of Disputes through Document Submission

### D-1. Applicability

**(a)** In any case, regardless of claim size, the parties may agree to waive in-person/telephonic hearings and resolve the dispute through submission of documents to one arbitrator. Such agreement should be confirmed in writing no later than the deadline for the filing of an answer.

**(b)** Where no disclosed claims or counterclaims exceed $25,000, the dispute shall be resolved by these Procedures, unless a party asks for a hearing or the arbitrator decides that a hearing is necessary.

**(c)** If one party makes a request to use the Procedures for the Resolution of Disputes through Document Submission (Procedures) and the opposing party is unresponsive, the arbitrator shall have the power to determine whether to proceed under the Procedures. If both parties seek to use the Procedures after the appointment of an arbitrator, the arbitrator must also consent to the process.

**(d)** When parties agree to these Procedures, the procedures in Sections D-1 through D-4 of these Rules shall supplement other portions of these rules which are not in conflict with the Procedures.

### D-2. Preliminary Management Hearing

Within 14 calendar days of confirmation of the arbitrator's appointment, the arbitrator shall convene a preliminary management hearing, via conference call, video conference, or internet, to establish a fair and equitable procedure for the submission of documents, and, if the arbitrator deems appropriate, a schedule for one or more telephonic or electronic conferences.

### D-3. Removal from the Procedures

**(a)** The arbitrator has the discretion to remove the case from the Procedures if the arbitrator determines that an in-person or telephonic hearing is necessary.

**(b)** If the parties agree to in-person or telephonic hearings after a previous agreement to proceed under the Procedures, the arbitrator shall conduct such hearings. If a party seeks to have in-person or telephonic hearings after agreeing to the

Procedures, but there is not agreement among the parties to proceed with in-person or telephonic hearings, the arbitrator shall resolve the issue after the parties have been given the opportunity to provide their respective positions on the issue.

### D-4. Time of Award

**(a)** The arbitrator shall establish the date for either final written submissions or a final telephonic or electronic conference. Such date shall operate to close the hearing, and the time for the rendering of the award shall commence on that day as well.

**(b)** The arbitrator shall render the award within 14 calendar days from the date the hearing is closed.

**(c)** The award is subject to all other provisions of these Rules that pertain to awards.

## Glossary of Terms

### Administrator

The Administrator's role is to manage the administrative aspects of the arbitration, such as the appointment of the arbitrator, to make preliminary decisions about where hearings might take place, and to handle the fees associated with the arbitration. As Administrator, however, the Administrator does not decide the merits of a case or make any rulings on issues such as what documents must be shared with each side. Because the Administrator's role is only administrative, the Administrator cannot overrule or change an arbitrator's decisions or rulings. The Administrator will comply with any court orders issued from litigation involving the parties to the dispute.

### ADR Agreement

An ADR Agreement is an agreement between a business and a consumer to submit disputes to mediation, arbitration, or other ADR processes.

### ADR Process

An ADR (Alternative Dispute Resolution) Process is a method of resolving a dispute other than by court litigation. Mediation and Arbitration are the most widely used ADR processes.

### ADR Program

An ADR Program is any program or service set up or used by a business to resolve disputes out of court.

### Arbitration

In arbitration, the parties submit disputes to an impartial person (the arbitrator) for a decision. Each party can present evidence to the arbitrator. Arbitrators do not have to follow the Rules of Evidence used in court.

Arbitrators decide cases with written decisions or "awards." An award is usually binding on the parties. A court may enforce an arbitration award and the court's review of arbitration awards is limited.

## Arbitration Agreement

An arbitration agreement is a contract between parties to settle their disputes by binding arbitration. It is typically found in the parties' contract in a section entitled "Arbitration" or "Dispute Resolution." It gives the parties information about how they are choosing to settle any disputes that they might have.

## Arbitrator

Arbitrators are neutral and independent decision makers who are not employees of the administrator. Except where the parties to a case reach their own settlement, the Arbitrator will make the final, binding decision on the dispute and render it in writing, called the Award. The Arbitrator makes all the procedural decisions on a case not made by the administrator or not decided jointly by the parties. The Arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with the law(s) that applies to the case.

Once appointed to a case, an Arbitrator may not be removed by one party without the other party's consent or unless the administrator determines an Arbitrator should be removed and replaced by another Arbitrator chosen by the administrator in a manner described in these Rules.

## Case Administrator

The Case Administrator is the AAA's employee assigned to handle the administrative aspects of the case. He or she does not decide the case. He or she manages the case's administrative steps, such as exchanging documents, matching schedules, and setting up hearings. The Case Administrator is the parties' contact point for almost all aspects of the case outside of any hearings.

## Claimant

A Claimant is the party who files the claim or starts the arbitration. Either the consumer or the business may be the Claimant.

## Demand for Arbitration (also referred to as "Demand")

The written document created by the claimant that informs the respondent that it wishes to arbitrate a dispute. This document provides basic information about

the dispute, the parties involved and what the claimant wants as a result of the
arbitration.

### Documents-Only Arbitration

In a Documents-Only Arbitration, the parties submit their arguments and
evidence to the arbitrator in writing. The arbitrator then makes an award based
only on the documents. No in-person or telephone hearing is held.

### Independent ADR Institution

An Independent ADR Institution is an organization that provides independent
and impartial administration of ADR programs for consumers and businesses.
The American Arbitration Association is an Independent ADR Institution.

### In-Person Hearing

During an In-Person Hearing, the parties and the arbitrator meet in a conference
room or office and the parties present their evidence in a process that is
similar to going to court. However, an In-Person Hearing is not as formal as going
to court.

### Mediation

In Mediation, an impartial person (the mediator) helps the parties try to settle
their dispute by reaching an agreement together. A mediator's role is to help
the parties come to an agreement. A mediator does not arbitrate or decide
the outcome.

### Neutral

A "Neutral" is a mediator, arbitrator, or other independent, impartial person
selected to serve as the independent third party in an ADR process.

### Party

The party is the person(s) or business that is involved in the dispute in the
arbitration process. Usually, these are the people or businesses that have an
arbitration agreement between them that specifies that a dispute should be
resolved by arbitration.

## Parties

Parties are all the separate individuals, businesses, or organizations involved in the arbitration.

## Opposing Party

The opposing party is the other party that is on the opposite side of the arbitration from you. If you are the claimant, the Opposing Party is the respondent. If you are the respondent, the Opposing Party is the claimant. If you are the consumer, the Opposing Party is the business. If you are the business, the Opposing Party is the consumer.

## Respondent

The respondent is the party against whom the claim is filed. If a Respondent states a claim in arbitration, it is called a counterclaim. Either the consumer or the business may be the Respondent.

## Telephone Hearing

In a Telephone Hearing, the parties have the opportunity to tell the arbitrator about their case during a conference call. They also present their evidence to the arbitrator during the call. Often this is done after the parties have sent in documents for the arbitrator to review.



© 2023 American Arbitration Association®, Inc. All rights reserved. These rules are the copyrighted property of the
American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services.
Any unauthorized use or modification of these rules may violate copyright laws and other applicable laws.
Please contact 800.778.7879 or websitemail@adr.org for additional information.



800.778.7879 | websitemail@adr.org | adr.org

# EXHIBIT D



Gary M. Klinger
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
GKlinger@milberg.com

June 13, 2022

**VIA CERTIFIED MAIL**
Samsung Electronics America, Inc.
c/o General Counsel
85 Challenger Road
Ridgefield Park, New Jersey 07660

<b>For Settlement Purposes Only – FRE 408 and State Equivalents Apply</b>

*Re:*     *Notice of Claims Against Samsung*

Dear Samsung:

Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"), along with the Swigart Law Group, represents at least 15,000 individual claimants ("Claimants") who intend to initiate individual arbitrations, pursuant to the applicable terms and conditions, against Samsung Electronics America, Inc. ("Samsung") for violations of the Illinois Biometric Information Privacy Act (BIPA), 740 ILCS 14/1, et seq.

Claimants, who are (or were at the relevant time) Illinois residents, allege they purchased Samsung Galaxy mobile devices and had their photographs stored on the devices. Through Samsung's Gallery software application ("Gallery App"), Samsung created captured, collected and stored Claimants' unique "face templates" from the photos stored on the Samsung devices. Samsung's Gallery App, which comes pre-installed on Samsung devices and cannot be removed or modified, creates these face templates using sophisticated facial recognition technology that analyzes and extracts the points and contours of faces that appear in the photos stored on Samsung devices. All of this occurs automatically through a "background" process in the Gallery App, without the knowledge or informed written consent of the user in direct violation of BIPA.

In violation of BIPA § 15(a), Samsung does not have a written, publicly-available policy establishing a retention schedule or guidelines for permanently destroying the biometric identifiers and biometric information it collected or otherwise obtained from Claimants, and Samsung did not permanently destroy those within the statutorily-mandated timeframes.

In violation of BIPA § 15(b)(1), Samsung collected or otherwise obtained Claimants' biometric identifiers and biometric information without first informing them in writing that their biometric identifiers and biometric information were being collected or stored.

Samsung Electronics America, Inc.
June 13, 2022
Page 2

       In violation of BIPA §§ 15(b)(2) and 15(b)(3), Samsung collected or otherwise obtained Claimants' biometric identifiers and biometric information without first informing them in writing of the specific purpose and length of time for which their biometric identifiers and information would be collected, stored and used, and obtaining a written release executed by each of those individuals.

       We are open to exploring a resolution of Claimants' claims prior to the initiation of arbitration. If Samsung has any interest in doing so, please contact me at (847) 208-4585 or gklinger@milberg.com on or before July 1, 2022.

                  Sincerely,

                  *s/ Gary M. Klinger*
                  Gary M. Klinger

c.c. via email Matthew Powers (mpowers@omm.com)

EXHIBIT E



**American Arbitration Association®**

**DEMAND FOR ARBITRATION
CONSUMER ARBITRATION RULES**

Complete this form to start arbitration under an arbitration agreement in a contract.

| |
|---|
| 1. Which party is sending in the filing documents? *(check one)* ☑ Consumer ☐ Business |
| 2. Briefly explain the dispute:<br>This dispute arises out of Samsung Electronics America, Inc.'s unlawful collection, storage, and use of the Claimant's biometric identifiers and information without first obtaining informed written consent or providing the requisite data retention and destruction policies, in direct violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 et seq. Please refer to the attached notice for a more detailed account. |
| 3. Specify the amount of money in dispute, if any: $ 5,000.00 |
| 4. State any other relief you are seeking:<br>☑ Attorney Fees ☐ Interest ☑ Arbitration Costs ☑ Other; explain: Please refer to the attached notice for a more detailed account. |
| 5. Identify the requested city and state for the hearing if an in-person hearing is held:<br>City: Chicago, IL                    State: Illinois ▼ |
| 6. Please provide contact information for both the Consumer and the Business. Attach additional sheets or forms as needed. |

**Consumer:**

| | | |
|---|---|---|
| Name: Melinda Garcia | | |
| Address: 653 E River St #1 | | |
| City: Kankakee | State: Illinois ▼ | Zip Code: 60901 |
| Telephone: 773-971-9115 | Fax: | |
| Email Address: mfg0216@gmail.com | | |

**Consumer's Representative (if known):**

| | | |
|---|---|---|
| Name: Gary Klinger | | |
| Firm: Milberg Coleman Bryson Phillips Grossman PLLC | | |
| Address: 221 West Monroe Street Suite 2100 | | |
| City: Chicago | State: Illinois ▼ | Zip Code: 60606 |
| Telephone: 866-252-0878 | Fax: | |
| Email Address: gklinger@milberg.com | | |

**Business:**

| | | |
|---|---|---|
| Name: Samsung Electronics America, Inc. | | |
| Address: 85 Challenger Rd | | |
| City: Ridgefield Park | State: New Jersey ▼ | Zip Code: 07660 |
| Telephone: 1-800-SAMSUNG | Fax: | |
| Email Address: | | |

**AMERICAN ARBITRATION ASSOCIATION®**

**DEMAND FOR ARBITRATION**
**CONSUMER ARBITRATION RULES**

| Business' Representative (if known): | | |
|---|---|---|
| Name: Randall W. Edwards | | |
| Firm: O'Melveny & Myers LLP | | |
| Address: Two Embarcadero Center, 28th Floor | | |
| City: San Francisco | State: California | Zip Code: 94111 |
| Telephone: 415-984-8716 | Fax: | |
| Email Address: redwards@omm.com | | |
| Date: October 21, 2022 | | |

**7. Send a copy of this completed form to the AAA together with:**

- A clear, legible copy of the contract containing the parties' agreement to arbitrate disputes;
- The proper filing fee (filing fee information can be found in the Costs of Arbitration section of the Consumer Arbitration Rules); and
- A copy of the court order, if arbitration is court-ordered.

**8. Send a copy of the completed form and any attachments to all parties and retain a copy of the form for your records.**

To file by mail, send the initial filing documents and the filing fee to: AAA Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043.

To file online, visit **www.adr.org** and click on **File or Access Your Case** and follow directions. To avoid the creation of duplicate filings, the AAA requests that the filing documents and payment be submitted together. When filing electronically, no hard copies are required.

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit a completed Affidavit for Waiver of Fees, available on our website.

Pursuant to New Jersey Statutes § 2A:23B-1 et seq, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the New Jersey Arbitration Act, and to all consumer arbitrations conducted in New Jersey. If you believe that you meet these requirements, you must submit a completed Affidavit for Waiver of Fees, available on our website.

# Milberg.

COLEMAN BRYSON PHILLIPS GROSSMAN

October 21, 2022

**VIA ELECTRONIC MAIL**

American Arbitration Association
1101 Laurel Oak Rd., Suite 100
Voorhees, NJ 08043
casefiling@adr.org

Samsung Electronics America, Inc.
85 Challenger Rd
Ridgefield Park, NJ 07660

Randall W. Edwards
O'Melveny & Myers LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
redwards@omm.com

Re:     **Demand For Consumer Arbitration Regarding Samsung Electronics America, Inc.'s Violations Of The Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*.**

To Whom It May Concern,

I am writing on behalf of my client, Melinda Garcia ("Claimant" or "Garcia"), to demand the arbitration of an individual consumer dispute arising out of Samsung Electronics America, Inc.'s ("SEA") violation of Claimant's privacy rights under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. ("BIPA" or the "Act").

At all times relevant, Claimant has been a resident and citizen of Illinois and owns a Samsung Galaxy smartphone (the "Device") equipped with pre-installed software that automatically, and without first obtaining her informed consent, processed and analyzed images

1

in Claimant's photo library to generate a "facial template" of her that qualifies as a biometric identifier and biometric information (collectively, "biometric data"[1]) under BIPA.

Under both the Terms and Conditions that generally apply to the use of the Device and SEA's End User License Agreement ("EULA"), all disputes arising in any way from the use of the Device or its operating system must be resolved through individual arbitration conducted according to the American Arbitration Association's ("AAA") Consumer Arbitration Rules.

Claimant brings this action to seek redress and put a stop to SEA's unlawful collection, use, and storage of her biometric data. Specifically, and as further described below, SEA has created, collected, and stored highly detailed geometric maps of the Claimant's face through sophisticated facial recognition technology that extracts and analyzes data from the points and geometric contours of faces that appear in photos taken with and stored on Samsung Galaxy devices. SEA, through its pre-installed photo managing and viewing app, the Samsung Gallery app, violated–and continues to violate–BIPA, which prohibits private entities from doing exactly what SEA did here: collecting, capturing, purchasing, receiving through trade, or otherwise obtaining an individual's biometric data without first obtaining that individual's informed consent and failing to develop, publicly disclose, and comply with a retention schedule and guidelines for destroying the data within specified time limits as required by the Act. *See* 740 ILCS 14/15(a)-(b).

Additionally, SEA actively promotes the use of the Gallery app's face grouping feature and encourages users to apply "tags" to identify by name (e.g., "Jane") or alias (e.g., "Mom") the people they recognize in their photos, using this feature to market and distinguish itself within the mobile device and app markets. SEA, therefore, is in possession of and profits from Claimant's biometric data in violation of 740 ILCS 14/15(c).

---

[1] In this Notice, Claimant uses the catchall term "biometric data" to encompass the statutory terms "biometric information" and "biometric identifier."

Accordingly, Claimant seeks all available remedies under BIPA including, but not limited to, statutory liquidated damages of either $5,000 for each and every intentional or reckless violation of BIPA, or $1,000 for each and every negligent violation of BIPA, a permanent injunction prohibiting SEA from continuing to violate BIPA, and all reasonable attorneys' fees and costs incurred in connection with these proceedings.

## BACKGROUND

### THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT

The Illinois Biometric Information Privacy Act protects individuals' privacy interests in their biometric data. Biometrics are unique, physiologically-dictated characteristics that, unlike social security numbers, driver's license numbers, or credit-card numbers, are part of our personal identities as human beings. 740 ILCS 14/5(c). Once compromised, the individual has no recourse and is placed "at heightened risk for identity theft and is likely to withdraw from biometric-facilitated transactions." 740 ILCS 14/5. Therefore, in 2008, the Illinois Legislature enacted BIPA to address what it described as the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Session No. 276. In enacting BIPA, the Illinois legislature recognized that the full ramifications of biometric technology are not yet fully known and so the public will benefit from "regulations on the collection, use, safeguarding, handling, storage retention, and description of biometric identifiers and information." 740 ILCS 14/5(f) to (g). A true and correct copy of the Act is attached as Exhibit A.[2]

At the heart of BIPA's regulatory regime is informed consent and "the power to say no by withholding consent." *Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 34, 129 N.E.3d 1197,

---

[2] Available at https://www.ilga.gov/legislation/ilcs/ilcs3.asp?ActID=3004&ChapterID=57 (last visited Oct. 10, 2022).

1206 (citing *Patel v. Facebook Inc.*, 290 F.Supp.3d 948, 953 (N.D. Cal. 2018)). As the Supreme Court of Illinois has recognized, "[t]hrough the Act, our General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Id.* at ¶ 33 (citing *Patel*, 290 F.Supp.3d at 953). Under BIPA, a "biometric identifier" means "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 Ill. Comp. Stat. 14/10. Courts have interpreted this language to include "a set of measurements of a specified physical component (eye, finger, voice, hand, face) used to identify a person." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1096 (N.D. Ill. 2017). BIPA further provides that "biometric information" means any information—regardless of how it is captured, converted, stored, or shared—based on an individual's biometric identifier and used to identify an individual. Accordingly, if a business converts a biometric identifier into another form, such as a mathematical representation or a unique number assigned to the biometric identifier, that other form qualifies as biometric information under BIPA.

BIPA, therefore, prohibits private entities like SEA from capturing or collecting an individual's biometric identifiers or biometric information unless that entity first informs the individual and obtains the individual's written consent:

> No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
>
> > (1) informs the subject ... in writing that a biometric identifier or biometric information is being collected or stored;
> >
> > (2) informs the subject ... in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
> >
> > (3) receives a written release executed by the subject of the biometric identifier or biometric information....

740 ILCS 14/15(b).

Additionally, BIPA prohibits private entities from possessing biometric identifiers or information unless they create, publicize, and follow a written policy establishing a retention schedule and destruction guidelines for its possession of biometric identifiers and information. 740 ILCS 14/15(a). Section 15(c) further flatly prohibits private entities possessing biometric data from selling, leasing, trading, or otherwise profiting from that data. 740 ILCS 14/15(c).

Any person aggrieved by a violation of the statute's provisions has a private right of action and may seek statutory damages and injunctive relief:

> A prevailing party may recover for each violation:
>
> > (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;
> >
> > (2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater;
> >
> > (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and
> >
> > (4) other relief, including an injunction, as the State or federal court may deem appropriate.

740 ILCS 14/20.

### FACIAL RECOGNITION TECHNOLOGY

Generally, biometric technology refers to tools and techniques used to identify individuals by measuring and analyzing physical characteristics, such as biometric identifiers, and other behavioral characteristics. Facial recognition technology ("FRT") is one of several biometric technologies used to identify or verify individuals by their faces. For example, one of FRT's earliest use was to assist law enforcement in identifying a lead or person of interest in an investigation.

The software, code, and scripts underlying a facial recognition system rely on sophisticated and complex machine-learning processes and algorithms. At the simplest level, the technology can

be used to detect faces in an image or a still taken from a video source. Facial detection, for example, allows a camera to focus on a subject or a photo editing software to remove red eyes. The most sophisticated version of FRT allows companies like SEA to use proprietary technology to compare individuals' facial geometry across different images to identify them.

As shown in the figure below, FRT scans a still image for human faces by looking for the general shape of a human face. If the system detects that a face is present, the software measures and extracts data associated with the individual's unique facial points and contours, including the relative position and distance between the eyes, the width of the mouth and nose, and other characteristics known as "nodal points." Through the use of various algorithms, the nodal points are transformed into a unique mathematical formula or representation called a "facial template" or "facial signature." These facial templates qualify as biometric data under BIPA. *See* 740 ILCS 14/10. The facial templates are stored in a "face database," and a matching algorithm can then be used to compare the individual's facial template against other scans of face geometry already stored in the database. If a database match is found, an individual may be identified.

THIS SPACE INTENTIONALLY LEFT BLANK.



Source: Facial Recognition Technology - Current and Planned Uses by Federal Agencies, United States Government Accountability Office at pg. 5. Available at https://www.gao.gov/assets/gao-21-526.pdf (last visited October 7, 2022).

### THE PARTIES

Claimant Garcia is and has been at all times relevant to this proceeding an adult resident of Illinois. She currently owns a Samsung Galaxy that she used in Illinois to take photos of herself and other family and friends.

Respondent SEA is a New York corporation with headquarters at 85 Challenger Rd, Ridgefield Park, NJ 07660. SEA is a wholly owned subsidiary of Samsung Electronics Co., Ltd. ("SEC"), a Korean corporation. SEA markets, sells, and distributes Galaxy devices to consumers like Claimant in the United States and Illinois.

### THE ARBITRATION AGREEMENT

This dispute is subject to an arbitration agreement within the Terms and Conditions that generally apply to the use of the Device and SEA's End User License Agreement ("EULA"). Although there are slight variations in the Terms and Conditions based on carrier and exact Galaxy model, all versions contain virtually identical Arbitration Agreements. An exemplar of the Arbitration Agreement applicable to this dispute is attached hereto as Exhibit B. The relevant portion of that Arbitration Agreement states:

> THIS IS A BINDING LEGAL AGREEMENT ("AGREEMENT") BETWEEN YOU (EITHER AN INDIVIDUAL OR ENTITY) AND SAMSUNG ELECTRONICS AMERICA, INC. ("SAMSUNG"). ELECTRONIC ACCEPTANCE OF THE AGREEMENT, OPENING THE PRODUCT PACKAGING, USE OF THE PRODUCT, OR RETENTION OF THE PRODUCT CONSTITUTES ACCEPTANCE OF THIS AGREEMENT, REGARDLESS OF WHETHER YOU ARE THE ORIGINAL PURCHASER, USER, OR OTHER RECIPIENT OF THE PRODUCT.
>
> YOU AND SAMSUNG EACH AGREE THAT ALL DISPUTES BETWEEN YOU AND SAMSUNG RELATING IN ANY WAY TO OR ARISING IN ANY WAY FROM THE STANDARD LIMITED WARRANTY OR THE SALE, CONDITION OR PERFORMANCE OF THE PRODUCT SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, AND NOT BY A COURT OR

JURY. ANY SUCH DISPUTE SHALL NOT BE COMBINED OR CONSOLIDATED WITH A DISPUTE INVOLVING ANY OTHER PERSON'S OR ENTITY'S PRODUCT OR CLAIM, AND SPECIFICALLY, WITHOUT LIMITATION OF THE FOREGOING, SHALL NOT UNDER ANY CIRCUMSTANCES PROCEED AS PART OF A CLASS ACTION. THE ARBITRATION SHALL BE CONDUCTED BEFORE A SINGLE ARBITRATOR, WHOSE AWARD MAY NOT EXCEED, IN FORM OR AMOUNT, THE RELIEF ALLOWED BY THE APPLICABLE LAW.

The arbitration shall be conducted according to the American Arbitration Association (AAA) Commercial Arbitration Rules applicable to consumer disputes. The AAA Rules are available online at adr.org or by calling the AAA at 1-800-778-7879. This Agreement is entered into pursuant to the Federal Arbitration Act. The laws of the State of New York, without reference to its choice of law principles, shall govern the application and interpretation of the Agreement and all disputes that are subject to this Agreement. The arbitrator shall decide all issues of interpretation and application of this Agreement. For any arbitration in which your total damage claims, exclusive of attorney fees and expert witness fees, are $5,000.00 or less ("Small Claim"), the arbitrator may, if you prevail, award your reasonable attorney fees, expert witness fees and costs as part of any award, but may not grant Samsung its attorney fees, expert witness fees or costs unless it is determined that the claim was brought in bad faith. In a Small Claim case, you shall be required to pay no more than half of the total administrative, facility and arbitrator fees, or $50.00 of such fees, whichever is less, and Samsung shall pay the remainder of such fees. Administrative, facility and arbitrator fees for arbitrations in which your total damage claims, exclusive of attorney fees and expert witness fees, exceed $5,000.00 ("Large Claim") shall be determined according to AAA rules.

In a Large Claim case, the arbitrator may grant to the prevailing party, or apportion among the parties, reasonable attorney fees, expert witness fees and costs to the extent allowed by the applicable law. Judgment may be entered on the arbitrator's award in any court of competent jurisdiction.

This Agreement also applies to claims against Samsung's employees, representatives, parents and other affiliates if any such claim relates in any way to or arises in any way from the Standard Limited Warranty or the Product's sale, condition or performance.

The relevant Arbitration Agreement language is broad and requires arbitration of all disputes related to the device, the Gallery app, and other activities on the phone. Those terms

encompass Claimant's claims because those claims are all based on the use of the Device and the Gallery app, which is "Samsung Software" under the EULA.

## STATEMENT OF THE FACTS

**A. SEA's Software collected and used Claimant's biometric data without first obtaining her informed consent.**

The Samsung Galaxy is a series of computing and mobile computing devices. Samsung Galaxy devices use FRT to verify the owner's identity when attempting to unlock the phone[3] and as a feature of Samsung's photo organizing and viewing software, the Samsung Gallery app. By default, every photo and video an end user captures via the device's camera is managed through the Gallery app, which is included by default in Samsung's operating systems and is pre-installed on all Samsung Galaxy devices sold to consumers.

The application uses FRT, as described above, to, among other things, group users' photos by the faces of the people who appear in the photos. The software scans users' photos and photo libraries for human faces and calculates a unique digital representation of each face (*i.e.*, the face template) based on specific geometric attributes. Accordingly, these facial templates constitute a biometric identifier and biometric information under BIPA. *See* 740 ILCS 14/10.

After identifying an individual in end users' photos and creating a unique facial template, SEA stores the face templates in a facial recognition database, or facial database, in the solid-state memory of users' devices. The Gallery app then uses these face templates to organize and sort photos based on the particular individuals in the photos. This is accomplished through machine learning and algorithms that compare the face templates of individuals who appear in newly stored

---

[3] https://www.samsung.com/global/galaxy/what-is/face-recognition/.

images against those already saved in the facial database. If there is a match, the Gallery app groups the newly-stored photos with previously stored photos depicting the same individual.

The process described above is automated and is included by default in Samsung's operating systems; it occurs without the user's involvement or consent whenever a new photo is stored on the device. Users cannot disable this facial recognition technology, nor can they prevent SEA from harvesting the biometric identifiers (*i.e.*, scans of face geometry) from the photos stored on their devices because SEA provides no mechanism by which anyone may opt out of this process. This effectively denies end users' right to withhold consent in violation of BIPA.

**B. SEA is in possession of Claimant's biometric data and failed to publicize and comply with a retention-destruction policy.**

According to SEA's End User License Agreement ("EULA"), Galaxy device users are not the legal owners of the FRT at issue here. Instead, SEA is the owner and only grants a software license to Device users. Further, under the terms of the EULA, users cannot control the collection of biometric identifiers via the Gallery app and are actually *prohibited* from modifying SEA's software to prevent the collection of biometric identifiers. Specifically, the EULA states in relevant part that:

> Samsung grants you a limited non-exclusive license to install, use, access, display and run one copy of the Samsung Software on a single Samsung Mobile Device, local hard disk(s) …

> You shall not, and shall not enable or permit others to, copy, reverse engineer, decompile, disassemble, or otherwise attempt to discover the source code or algorithms of, the Software (except and only to the extent that such activity is expressly permitted by applicable law not withstanding this limitation), or modify, or disable any features of, the Software, or create derivative works based on the Software…

> Samsung or its suppliers own the title, copyright and other intellectual property rights in the Samsung Software. The Samsung Software is licensed, not sold.

Additionally, the Terms of Use, Privacy Policies, and other Terms and Conditions applicable to the software at issue here provide further details about how SEA has "control" of Claimant's biometric data or holds such data at its "disposal." For example, SEA controls: (1) whether biometric identifiers are collected; (2) what biometric identifiers are collected; (3) the format in which the biometric identifiers are stored; (4) what biometric identifiers are saved; (5) the facial recognition algorithm that is used to collect biometric identifiers; (6) whether information based on biometric identifiers is used to identify users (thus creating biometric information); (7) whether biometric identifiers are stored locally on users' Devices; (8) whether biometric identifiers are encrypted or otherwise protected; and (9) how long the biometric identifiers are stored.

Notwithstanding this, SEA did not have a written, publicly-available policy establishing a retention schedule or guidelines for permanently destroying the biometric identifiers and biometric information it collected or otherwise obtained, nor did SEA permanently destroy those within the statutorily-mandated timeframes, all in violation of BIPA § 15(a).

**C. Claimant's Experience**

While in Illinois, Claimant used her Device to take photos of herself, her family, and friends. Since, by default, every photo and video a user captures via the Device's camera will be saved and managed through the Device's preloaded Gallery app, SEA automatically applied its FRT to Claimant's photos and extracted her unique facial template. SEA now uses this unlawfully collected biometric data to locate and group all photos depicting Claimant. Moreover, after the Gallery app identified Claimant in the photos stored on her phone, the Gallery app encouraged her to "tag," *i.e.*, identify by name, the individuals who appear in the photos.

Notably, Claimant never consented, agreed, or gave permission–written or otherwise–to SEA before its collection, storage, or use of her biometric data through the Gallery app. Further,

SEA never provided Claimant with, nor did she ever sign a written release allowing SEA to collect or store her unique biometric identifiers or biometric information. Likewise, SEA never provided Claimant with an opportunity to prohibit or prevent the collection, storage, or use of her unique biometric identifiers or biometric information. Nevertheless, when Claimant took photos of herself, SEA located Claimant's face in the photos, scanned her facial geometry, and created a unique face template corresponding to Claimant, all in direct violation of her privacy rights under BIPA.

<u>**SEA'S BIPA VIOLATIONS**</u>

**A. Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(a).**

BIPA requires that "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of the individual's last interaction with the private entity, whichever occurs first." *See* 740 ILCS 14/15(a). SEA is a New York corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10. Claimant is a member of the public, an owner of the Device, and a user of SEA's Gallery app, who had her biometric identifiers collected (unlawfully) by SEA's facial recognition software (in the form of their facial geometries extracted from uploaded digital photographs), as explained in detail above.

SEA did not provide to Claimant a publicly available retention schedule or guidelines for permanently destroying users' biometric identifiers when the initial purpose for collecting such identifiers was satisfied or within three years of the Claimant's last interactions with SEA, as required by BIPA. Thus, SEA violated Section 15(a) of BIPA. SEA's violations actually harmed

or posed a material risk of harm to the privacy interests that BIPA seeks to protect. Further, SEA's violations of BIPA were intentional and/or reckless, or, alternatively, negligent.

**B. Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(b).**

BIPA requires that private entities such as SEA obtain informed written consent from individuals before acquiring their biometric data. The Act, therefore, makes it illegal for a private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers and biometric information unless the entity first: (1) informs the subject . . . in writing that biometric identifiers and biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . ." *See* 740 ILCS 14/15(b).

Here, in violation of section 15(b), SEA never: (1) informed Claimant in writing that her biometric identifier (face scan) was being collected or stored, (2) informed Claimant in writing of the specific purpose and length of term for which her face scan was being collected, stored, and used, or (3) obtained Claimant's written release to collect, store, and use her face scan. *Id.* In doing so, SEA's failure to make the requisite disclosures denied Claimant the ability to give informed written consent as required by section 15(b) and resulted in the loss of the right to control her biometric identifiers and information.

SEA's violations actually harmed or posed a material risk of harm to the privacy interests that BIPA seeks to protect, and the BIPA violations were intentional and/or reckless, or, alternatively, negligent.

**C. Violation of the Illinois Biometric Information Privacy Act, 740CS 14/15(c).**

BIPA § 15(c) prohibits a private entity in possession of biometric identifiers or biometric information from selling, leasing, trading, or otherwise profiting from a person's biometric data. As alleged above, SEA collects Galaxy end users' biometric identifiers, including Claimant's. The camera function and ability to store and organize photos on Galaxy devices are important drivers of SEA's revenues, profits, and growth in customer base. For example, SEA actively promotes the use of its photo organizing software in marketing materials and acknowledges in its privacy policies that it uses the data to evaluate and improve its business by, for example, developing new products and services. SEA, therefore, has directly profited from the collection of users' biometric identifiers, in violation of 740 ILCS 14/15(c). These violations actually harmed or posed a material risk of harm to the privacy interests that BIPA seeks to protect. Further, SEA's violations of BIPA were intentional and/or reckless, or, alternatively, negligent.

## CLAIMANT'S DEMAND

Pursuant to BIPA, 740 ILCS 14/1, *et seq*., Claimant hereby demands statutory liquidated damages in the amount of $5,000.00 for SEA's intentional and reckless violation of BIPA against Claimant. Alternatively, pursuant to BIPA, Claimant demands statutory liquidated damages in the amount of $1,000.00 for SEA's violation of BIPA committed against Claimant. Further, Claimant demands injunctive and equitable relief, as necessary to protect her rights under BIPA, as well as Claimant's attorneys' fees, reasonable litigation expenses to the extent allowable.

Additionally, Claimant demands that SEA produce all of her biometric identifiers in its possession, including any data regarding her facial geometry and/or facial landmarks, as well as all documentation in its possession regarding Claimant and her use of the Gallery app, and all other relevant usage data in connection with her use of the Device. In the event that this request for production is deemed premature in advance of the appointment of an arbitrator, Claimant requests

that SEA place a litigation hold on all biometric identifiers, information, and documentation pertaining to her, regardless of format.

Additionally, Claimant demands the immediate reimbursement from SEA of the filing fee paid by Claimant to initiate this arbitration in accordance with SEA's Terms of Use, which explicitly state that, "If you are the party initiating an arbitration against Samsung, you will be responsible for the first $100 toward the nonrefundable Initial Filing Fee, and Samsung will pay the remainder of your Initial Filing fee and both parties' Administrative Fee."

**REQUEST FOR HEARING**

Claimant requests the scheduling of a telephonic hearing in connection with this demand for arbitration.

Respectfully submitted,

/s/ *Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
221 West Monroe Street, Suite 2100
Chicago, IL 60606
Tel.: (866) 252-0878
gklinger@milberg.com

Jonathan B. Cohen
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
3833 Central Ave.
St. Petersburg, FL 33713
Tel.: (813) 786-8622
jcohen@milberg.com

Christian K. Torres, Esq.
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
100 Garden City Plaza Suite 500
Garden City, NY 11530
Tel.: (516) 842-6698
christian.torres@milberg.com

*Garcia Demand for Arbitration*                    16

Stuart A. Davidson
Mark J. Dearman
**ROBBINS GELLER RUDMAN & DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
(561) 750-3000
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com

# EXHIBIT A

**Information maintained by the Legislative Reference Bureau**
Updating the database of the Illinois Compiled Statutes (ILCS) is an ongoing process. Recent laws may not yet be included in the ILCS database, but they are found on this site as Public Acts soon after they become law. For information concerning the relationship between statutes and Public Acts, refer to the Guide.

Because the statute database is maintained primarily for legislative drafting purposes, statutory changes are sometimes included in the statute database before they take effect. If the source note at the end of a Section of the statutes includes a Public Act that has not yet taken effect, the version of the law that is currently in effect may have already been removed from the database and you should refer to that Public Act to see the changes made to the current law.

# CIVIL LIABILITIES
# (740 ILCS 14/) Biometric Information Privacy Act.

    (740 ILCS 14/1)
    Sec. 1. Short title. This Act may be cited as the Biometric
Information Privacy Act.
(Source: P.A. 95-994, eff. 10-3-08.)

    (740 ILCS 14/5)
    Sec. 5. Legislative findings; intent. The General Assembly
finds all of the following:
    (a) The use of biometrics is growing in the business and
security screening sectors and appears to promise streamlined
financial transactions and security screenings.
    (b) Major national corporations have selected the City of
Chicago and other locations in this State as pilot testing sites
for new applications of biometric-facilitated financial
transactions, including finger-scan technologies at grocery
stores, gas stations, and school cafeterias.
    (c) Biometrics are unlike other unique identifiers that are
used to access finances or other sensitive information. For
example, social security numbers, when compromised, can be
changed. Biometrics, however, are biologically unique to the
individual; therefore, once compromised, the individual has no
recourse, is at heightened risk for identity theft, and is
likely to withdraw from biometric-facilitated transactions.
    (d) An overwhelming majority of members of the public are
weary of the use of biometrics when such information is tied to
finances and other personal information.
    (e) Despite limited State law regulating the collection,

use, safeguarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions.

(f) The full ramifications of biometric technology are not fully known.

(g) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.
(Source: P.A. 95-994, eff. 10-3-08.)

(740 ILCS 14/10)
Sec. 10. Definitions. In this Act:
"Biometric identifier" means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. Biometric identifiers do not include writing samples, written signatures, photographs, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color. Biometric identifiers do not include donated organs, tissues, or parts as defined in the Illinois Anatomical Gift Act or blood or serum stored on behalf of recipients or potential recipients of living or cadaveric transplants and obtained or stored by a federally designated organ procurement agency. Biometric identifiers do not include biological materials regulated under the Genetic Information Privacy Act. Biometric identifiers do not include information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996. Biometric identifiers do not include an X-ray, roentgen process, computed tomography, MRI, PET scan, mammography, or other image or film of the human anatomy used to diagnose, prognose, or treat an illness or other medical condition or to further validate scientific testing or screening.

"Biometric information" means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.

"Confidential and sensitive information" means personal information that can be used to uniquely identify an individual

or an individual's account or property. Examples of confidential and sensitive information include, but are not limited to, a genetic marker, genetic testing information, a unique identifier number to locate an account or property, an account number, a PIN number, a pass code, a driver's license number, or a social security number.

   "Private entity" means any individual, partnership, corporation, limited liability company, association, or other group, however organized. A private entity does not include a State or local government agency. A private entity does not include any court of Illinois, a clerk of the court, or a judge or justice thereof.

   "Written release" means informed written consent or, in the context of employment, a release executed by an employee as a condition of employment.
(Source: P.A. 95-994, eff. 10-3-08.)

   (740 ILCS 14/15)
   Sec. 15. Retention; collection; disclosure; destruction.
   (a) A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.
   (b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
      (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
      (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

(c) No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information.

(d) No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

(1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;

(2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;

(3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or

(4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

(e) A private entity in possession of a biometric identifier or biometric information shall:

(1) store, transmit, and protect from disclosure all biometric identifiers and biometric information using the reasonable standard of care within the private entity's industry; and

(2) store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information.
(Source: P.A. 95-994, eff. 10-3-08.)


(740 ILCS 14/20)

Sec. 20. Right of action. Any person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party. A prevailing party may recover

for each violation:
     (1) against a private entity that negligently
violates a provision of this Act, liquidated damages of
$1,000 or actual damages, whichever is greater;
     (2) against a private entity that intentionally or
recklessly violates a provision of this Act, liquidated
damages of $5,000 or actual damages, whichever is greater;
     (3) reasonable attorneys' fees and costs, including
expert witness fees and other litigation expenses; and
     (4) other relief, including an injunction, as the
State or federal court may deem appropriate.
(Source: P.A. 95-994, eff. 10-3-08.)

    (740 ILCS 14/25)
    Sec. 25. Construction.
    (a) Nothing in this Act shall be construed to impact the
admission or discovery of biometric identifiers and biometric
information in any action of any kind in any court, or before
any tribunal, board, agency, or person.
    (b) Nothing in this Act shall be construed to conflict with
the X-Ray Retention Act, the federal Health Insurance
Portability and Accountability Act of 1996 and the rules
promulgated under either Act.
    (c) Nothing in this Act shall be deemed to apply in any
manner to a financial institution or an affiliate of a financial
institution that is subject to Title V of the federal Gramm-
Leach-Bliley Act of 1999 and the rules promulgated thereunder.
    (d) Nothing in this Act shall be construed to conflict with
the Private Detective, Private Alarm, Private Security,
Fingerprint Vendor, and Locksmith Act of 2004 and the rules
promulgated thereunder.
    (e) Nothing in this Act shall be construed to apply to a
contractor, subcontractor, or agent of a State agency or local
unit of government when working for that State agency or local
unit of government.
(Source: P.A. 95-994, eff. 10-3-08.)

    (740 ILCS 14/30)
    Sec. 30. (Repealed).
(Source: P.A. 95-994, eff. 10-3-08. Repealed internally, eff. 1-
1-09.)

(740 ILCS 14/99)
    Sec. 99. Effective date. This Act takes effect upon becoming
law.
(Source: P.A. 95-994, eff. 10-3-08.)

EXHIBIT B

**SAMSUNG** Galaxy S10

# Terms & Conditions / Health & Safety Information

Read this document before operating the mobile device, accessories, or software (defined collectively and individually as the "Product") and keep it for future reference. This document contains important Terms and Conditions. Electronic acceptance, opening the Product packaging, use of the Product, or retention of the Product constitutes acceptance of these Terms and Conditions.

Revised 05/09/2018

- Arbitration Agreement
- Standard Limited Warranty
- End User License Agreement (EULA)
- Health & Safety Information



GH68-49900A
Printed in Korea

# Table of Contents

ocument #: 19-1 Filed: 03/28/23 Page

**Important Legal information** ................................ **4**

Find legal information online ........................ 4

Find legal information on the Mobile Device ...... 5

Intellectual Property ........................................ 5

Open source software ................................... 6

Samsung Knox ............................................ 6

Modification of software ............................... 6

Diagnostic Software ...................................... 7

Disclaimer of warranties; Exclusion of liability ... 7

**Section 1: Arbitration Agreement** .......................... **9**

**Section 2: Standard Limited Warranty** ............... **13**

**Section 3: End User License Agreement** ........... **14**

**Section 4: Health & Safety Information** .............. **15**

Maintaining dust and water resistance .............. 15

Heart rate sensor ......................................... 17

Specific Absorption Rate (SAR) Certification
Information ................................................ 17

FCC Part 15 Information and Notices ................ 20

FCC Notice ................................................ 21

Samsung mobile products and recycling .......... 22

Document #: 1-7 Filed: 03/28/23 Page

GPS & AGPS ........................................ 22

Your location ........................................ 23

Use of AGPS in emergency calls ........................... 23

Navigation ........................................ 24

Commercial Mobile Alerting System (CMAS) .... 24

Emergency calls .................................... 25

FCC Hearing Aid Compatibility (HAC)
regulations for wireless devices ................... 26

Card tray removal tool ............................. 28

Device temperature ................................ 28

Sound and hearing ................................. 29

Restricting children's access to your mobile
device .............................................. 29

## Important Legal Information

ocument #: 1-1 Filed: 03/28/23 Page

READ THIS INFORMATION BEFORE USING YOUR
MOBILE DEVICE.

**Arbitration Agreement** – This Product is subject
to a binding arbitration agreement between you
and SAMSUNG ELECTRONICS AMERICA, INC.
("Samsung"). You can opt out of the agreement
within 30 calendar days of the first consumer
purchase by emailing optout@sea.samsung.com or
calling 1-800-SAMSUNG (726-7864) and providing
the applicable information. For complete terms
and conditions that bind you and Samsung, refer
to the "Arbitration Agreement" section of this
document.

### Find legal information online

The full Arbitration Agreement, Standard Limited
Warranty, End User License Agreement (EULA),
and Health & Safety Information for your device
are available online:

Arbitration Agreement, Standard Limited
Warranty, and Health & Safety Information:

English: **www.samsung.com/us/Legal/
Phone-HSGuide**

Spanish: **www.samsung.com/us/Legal/
Phone-HSGuide-SP**

End User License Agreement:

English: **www.samsung.com/us/Legal/
SamsungLegal-EULA4**

Spanish: **www.samsung.com/us/Legal/
SamsungLegal-EULA4/#SPANISH**

4

**Find legal information on the Mobile Device**

ocument #: 1-7 Filed: 03/28/23 Page

The full Arbitration Agreement, Standard Limited Warranty, End User License Agreement (EULA) and Health & Safety Information are also available on the device, in the Samsung legal section of Settings. The location depends on the device, and is usually in the "About device" or "About phone" or "About tablet" section, for example:

**Settings** › **About phone** or **About device** or **About tablet** › **Legal information** › **Samsung legal**

Or, use the Search feature to search for "Legal".

### Intellectual Property

All Intellectual Property, as defined below, owned by or which is otherwise the property of Samsung or its respective suppliers relating to the Product, including but not limited to, accessories, parts, or software relating thereto, is proprietary to Samsung and protected under federal laws, state laws, and international treaty provisions. Intellectual Property includes, but is not limited to, inventions (patentable or unpatentable), patents, trade secrets, copyrights, software, computer programs, and related documentation and other works of authorship.

You may not infringe or otherwise violate the rights secured by the Intellectual Property. Moreover, you agree that you will not (and will not attempt to) modify, prepare derivative works of, reverse engineer, decompile, disassemble, or otherwise attempt to create source code from the software.

5

Document #: 1-7 Filed: 03/28/23 Page

No title to or ownership in the Intellectual Property is transferred to you. All applicable rights of the Intellectual Property shall remain with Samsung and its suppliers.

### Open source software

Some software components of this Product, including but not limited to 'PowerTOP' and 'e2fsprogs', incorporate source code covered under GNU General Public License (GPL), GNU Lesser General Public License (LGPL), OpenSSL License, BSD License and other open source licenses. To obtain the source code covered under the open source licenses, please visit:
**http://opensource.samsung.com**

### Samsung Knox

Samsung Knox is Samsung's security platform and is a mark for a Samsung Product tested for security with enterprise use in mind. Additional licensing fee may be required. For more information about Knox, please refer to: **www.samsung.com/us/knox**

### Modification of software

**Samsung is not liable for performance issues or incompatibilities caused by your editing of registry settings, or your modification of Operating System (OS) software. Using custom OS software may cause your Product and applications to work improperly. Your carrier may not permit users to download certain software, such as custom OS.**

**If your carrier prohibits this, and if you attempt to download software onto the device without authorization, you will be notified on the screen that unauthorized software has been detected.**

6

ocument #: 1-7 Filed: 03/28/23 Page

You should then power down the device and contact your carrier to restore the device to the carrier-authorized settings.

### Diagnostic Software

This device is equipped with diagnostic software reporting usage and performance information used solely to deliver improved network quality and overall device experience to AT&T customers. Please refer to your AT&T Wireless Customer Agreement and/or the AT&T Privacy Policy (www.att.com/privacy) for more information.

### Disclaimer of warranties; Exclusion of liability

The information below explains that a user accepts this Product as sold, including the hardware and software components as created and packaged for sale. If the user changes these parameters through a unique modification, Samsung will not be held responsible for damages or issues that result from these end-user changes.

Except as set forth in the Standard Limited Warranty that accompanies the Product, the purchaser takes the Product "as is", and Samsung makes no express or implied warranty of any kind whatsoever with respect to the Product, including but not limited to the:

   merchantability of the Product or its fitness for any particular purpose or use;

   design, condition or quality of the Product;

   performance of the Product;

   workmanship of the Product or the components contained therein; or

7

compliance of the Product with the requirements of any law, rule, specification or contract pertaining thereto.

Nothing contained in the User Manual or any other document shall be construed to create an express or implied warranty of any kind whatsoever with respect to the Product. Neither Samsung nor the wireless carrier are responsible for, and the Standard Limited Warranty does not apply to, any damage or injury arising from disassembly or repairs by persons not authorized or approved by Samsung to service this Product. In addition, Samsung shall not be liable for any damages of any kind resulting from the purchase or use of the Product or arising from the breach of the express warranty, including incidental, special or consequential damages, or loss of anticipated profits or benefits.

Samsung Electronics America, Inc.

85 Challenger Road

Ridgefield Park, NJ 07660

Phone: 1-800-SAMSUNG (726-7864)

Internet: **www.samsung.com**

©2019 Samsung Electronics America, Inc. Samsung is a registered trademark of Samsung Electronics Co., Ltd.

## Section 1: Arbitration Agreement

ocument #: 1-7 Filed: 03/28/23 Page

THIS IS A BINDING LEGAL AGREEMENT ("AGREEMENT") BETWEEN YOU (EITHER AN INDIVIDUAL OR ENTITY) AND SAMSUNG ELECTRONICS AMERICA, INC. ("SAMSUNG"). ELECTRONIC ACCEPTANCE OF THE AGREEMENT, OPENING THE PRODUCT PACKAGING, USE OF THE PRODUCT, OR RETENTION OF THE PRODUCT CONSTITUTES ACCEPTANCE OF THIS AGREEMENT, REGARDLESS OF WHETHER YOU ARE THE ORIGINAL PURCHASER, USER, OR OTHER RECIPIENT OF THE PRODUCT.

YOU AND SAMSUNG EACH AGREE THAT ALL DISPUTES BETWEEN YOU AND SAMSUNG RELATING IN ANY WAY TO OR ARISING IN ANY WAY FROM THE STANDARD LIMITED WARRANTY OR THE SALE, CONDITION OR PERFORMANCE OF THE PRODUCT SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, AND NOT BY A COURT OR JURY. ANY SUCH DISPUTE SHALL NOT BE COMBINED OR CONSOLIDATED WITH A DISPUTE INVOLVING ANY OTHER PERSON'S OR ENTITY'S PRODUCT OR CLAIM, AND SPECIFICALLY, WITHOUT LIMITATION OF THE FOREGOING, SHALL NOT UNDER ANY CIRCUMSTANCES PROCEED AS PART OF A CLASS ACTION. THE ARBITRATION SHALL BE CONDUCTED BEFORE A SINGLE ARBITRATOR, WHOSE AWARD MAY NOT EXCEED, IN FORM OR AMOUNT, THE RELIEF ALLOWED BY THE APPLICABLE LAW.

9

Document #: 1-7 Filed: 03/28/23 Page

The arbitration shall be conducted according to the American Arbitration Association (AAA) Commercial Arbitration Rules applicable to consumer disputes. The AAA Rules are available online at **adr.org** or by calling the AAA at 1-800-778-7879. This Agreement is entered into pursuant to the Federal Arbitration Act. The laws of the State of New York, without reference to its choice of law principles, shall govern the application and interpretation of the Agreement and all disputes that are subject to this Agreement. The arbitrator shall decide all issues of interpretation and application of this Agreement.

For any arbitration in which your total damage claims, exclusive of attorney fees and expert witness fees, are $5,000.00 or less ("Small Claim"), the arbitrator may, if you prevail, award your reasonable attorney fees, expert witness fees and costs as part of any award, but may not grant Samsung its attorney fees, expert witness fees or costs unless it is determined that the claim was brought in bad faith. In a Small Claim case, you shall be required to pay no more than half of the total administrative, facility and arbitrator fees, or $50.00 of such fees, whichever is less, and Samsung shall pay the remainder of such fees. Administrative, facility and arbitrator fees for arbitrations in which your total damage claims, exclusive of attorney fees and expert witness fees, exceed $5,000.00 ("Large Claim") shall be determined according to AAA rules.

10

ocument #: 1-7 Filed: 03/28/23 Page

In a Large Claim case, the arbitrator may grant to the prevailing party, or apportion among the parties, reasonable attorney fees, expert witness fees and costs to the extent allowed by the applicable law. Judgment may be entered on the arbitrator's award in any court of competent jurisdiction.

This Agreement also applies to claims against Samsung's employees, representatives, parents and other affiliates if any such claim relates in any way to or arises in any way from the Standard Limited Warranty or the Product's sale, condition or performance.

**You may opt out of this Agreement by providing notice to Samsung no later than 30 calendar days from the date of the first consumer purchaser's purchase of the Product. To opt out, you must send notice by e-mail to optout@sea.samsung.com, with the subject line: "Arbitration Opt Out." You must include in the opt-out email (a) your name and address; (b) the date on which the Product was purchased; (c) the Product model name or model number; and (d) the IMEI or MEID or Serial Number, as applicable, if you have it (the IMEI or MEID or Serial Number can be found (i) on the Product box; (ii) on the Product information screen which can be found under "Settings;" (iii) on a label on the back of the Product beneath the battery, if the battery is removable; and (iv) on the outside of the Product if the battery is not removable).**

11

ocument #: 1-7 Filed: 03/28/23 Page

Alternatively, you may opt out by calling 1-800-SAMSUNG (726-7864) no later than 30 calendar days from the date of the first consumer purchaser's purchase of the Product and providing the same information. These are the only two forms of notice that will be effective to opt out of this Agreement. Opting out of this Agreement will not affect in any way the benefits to which you would otherwise be entitled, including the benefits of the Standard Limited Warranty.

## Section 2: Standard Limited Warranty

ocument #: 1-7 Filed: 03/28/23 Page

The full Standard Limited Warranty for your device is available online and on the device:

Online:

English: **www.samsung.com/us/Legal/Phone-HSGuide**

Spanish: **www.samsung.com/us/Legal/Phone-HSGuide-SP**

On the device:

**Settings** › **About phone** or **About device** or **About tablet** › **Legal information** › **Samsung legal**

Or, use the Search feature to search for "Legal"

## Section 3: End User License Agreement

ocument #: 1-7 Filed: 03/28/23 Page

The full End User License Agreement (EULA) for your device can be found online and on the device:

Online:

English: **www.samsung.com/us/Legal/ SamsungLegal-EULA4**

Spanish: **www.samsung.com/us/Legal/ SamsungLegal-EULA4/#SPANISH**

The full End User License Agreement (EULA) is also available on the device, in the Samsung legal section of Settings. The location depends on the device, and is usually in the "About device" or "About phone" or "About tablet" section, for example:

**Settings** > **About phone** or **About device** or **About tablet** > **Legal information** > **Samsung legal**

Or, use the Search feature to search for "Legal"

## Section 4 Health & Safety Information

ocument #: 11  Filed: 03/28/23  Page

This section outlines important safety precautions associated with using your device. The terms "device" or "mobile device" or "cell phone" are used in this section to refer to your device. **Read this information before using your mobile device.**

**WARNING!** To avoid electric shock and damage to your device, do not charge device while it is wet or in an area where it could get wet. Do not handle device, charger or cords with wet hands while charging.

### Maintaining dust and water resistance

This device is rated IP68 using the Ingress Protection rating system. The device has been tested in a controlled environment and shown to be water and dust resistant in certain circumstances (meets requirements of classification IP68 as described by the international standard IEC 60529 - Degrees of Protection provided by Enclosures [IP Code]; test conditions: 15-35°C, 86-106 kPa, 5.0 feet, for 30 minutes). Despite this classification, the device is not impervious to water damage in any situation. It is important that all compartments are closed tightly.

ocument #: 1-7 Filed: 03/28/23 Page

**Note:** If any liquid is found to have entered device components or an internally sealed system, this condition will void your device warranty.

Follow these tips carefully to prevent damage to the device:

Any device which uses accessible compartments or ports that can be opened should have these sealed or closed tightly to prevent liquid from entering the system.

Whenever the device gets wet, dry it thoroughly with a clean, soft cloth.

Water resistant based on IP68 rating, which tests submersion in fresh water up to 5 feet for up to 30 minutes. If device is exposed to fresh water, dry it thoroughly with a clean, soft cloth; if exposed to liquid other than fresh water, rinse with fresh water and dry as directed.

**Note:** Liquid other than fresh water may enter the device faster. Failure to rinse the device in fresh water and dry it as instructed may cause the device to suffer from operability or cosmetic issues.

Do not expose the device to water at high pressure.

If the device is dropped or receives an impact, the water and dust resistant features of the device may be damaged.

The touchscreen and other features may not work properly if the device is used in water or in other liquids.

16

**Heart rate sensor**

ocument #: 1-7 Filed: 03/28/23 Page

**Note:** The information gathered from this device, Samsung Health, or related software is not intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment or prevention of disease.

The accuracy of the information and data provided by this device and its related software, including heart rate readings, may be affected by factors such as environmental conditions, skin condition, specific activity performed while using/wearing the device, settings of the device, user configuration/user-provided information, placement of the sensor on the body, and other end-user interactions. Please refer to the User Manual for more information on proper wear and use, or see **www.samsung.com/us/heartratesensor**

**Specific Absorption Rate (SAR) Certification Information**

Your device is a radio transmitter and receiver. It is designed and manufactured not to exceed the exposure limits for Radio Frequency (RF) energy set by the Federal Communications Commission (FCC) of the U.S. Government.

These FCC RF exposure limits are derived from the recommendations of two expert organizations: the National Council on Radiation Protection and Measurement (NCRP) and the Institute of Electrical and Electronics Engineers (IEEE). In both cases, the recommendations were developed by scientific and engineering experts drawn

17

ocument #: 1-7 Filed: 03/28/23 Page

from industry, government and academia after extensive reviews of the scientific literature related to the biological effects of RF energy.

The RF exposure limit set by the FCC for wireless mobile devices employs a unit of measurement known as the Specific Absorption Rate (SAR). The SAR is a measure of the rate of absorption of RF energy by the human body expressed in units of watts per kilogram (W/kg). The FCC SAR limit incorporates a substantial margin of safety to give additional protection to the public and to account for any variations in measurements.

SAR tests are conducted using standard operating positions accepted by the FCC with the device transmitting at its highest certified power level in all tested frequency bands. Although the SAR is determined at the highest certified power level, the actual SAR level of the device while operating can be well below the maximum reported value. This is because the device is designed to operate at multiple power levels so as to use only the power required to reach the network. In general, the closer you are to a wireless base station antenna, the lower the power output of the device.

For more information about SAR, visit:

https://www.fcc.gov./general/
radio-frequency-safety-0

www.fcc.gov/encyclopedia/specific-absorption-
rate-sar-cellular-telephones

Before a new model device is available for sale to the public, it must be tested and certified to the FCC that it does not exceed the SAR limit established by the FCC. Tests for each model are performed in positions and locations (for example, at the ear, worn on the body, or worn on the wrist) as required by the FCC. Use of other accessories may not ensure compliance with FCC RF exposure guidelines.

For typical operation, this device has been tested and meets FCC SAR guidelines. The FCC has granted an Equipment Authorization for this device with all reported SAR levels evaluated as in compliance with the FCC RF exposure guidelines.

SAR values for body-worn operations are measured when used with an accessory that contains no metal and that positions the device a minimum of 1.5 cm from the body.

The FCC safety limit for body-worn SAR is 1.6 watts per kilogram (1.6 W/kg).

This device has FCC ID: A3LSMG973U and Model Number: SM-G973U. The FCC ID is also printed somewhere on the mobile device. Depending on the device, you may need to remove the battery to find the FCC ID.

SAR information for this and other devices can be found on the FCC website at: **www.fcc.gov/oet/ea/**

Follow the instructions on the website to use the FCC ID to find SAR values for the device.

SAR information for this device can also be found on Samsung's website at: **www.samsung.com/sar**

19

**FCC Part 15 Information and Notices**

**Note:** Any device that uses Bluetooth or Wi-Fi is subject to FCC Part 15. Any device with a power supply is subject to Part 15 which also covers both intentional radiators (Bluetooth and Wi-Fi) and unintentional radiators (such as emissions from power supplies and circuit boards).

Pursuant to Part 15.21 of the FCC Rules, you are cautioned that changes or modifications not expressly approved by Samsung could void your authority to operate the device. This device complies with Part 15 of the FCC Rules. Operation is subject to the following two conditions: (1) This device may not cause harmful interference, and (2) this device must accept any interference received, including interference that may cause undesired operation.

**Note:** This equipment has been tested and found to comply with the limits for a Class B digital device, pursuant to Part 15 of the FCC Rules. These limits are designed to provide reasonable protection against harmful interference in a residential installation. This equipment generates, uses and can radiate radio frequency energy and, if not installed and used in accordance with the instructions, may cause harmful interference to radio communications.

ocument #: 1-7 Filed: 03/28/23 Page

However, there is no guarantee that interference will not occur in a particular installation. If this equipment does cause harmful interference to radio or television reception, which can be determined by turning the equipment off and on, the user is encouraged to try to correct the interference by one or more of the following measures:

Reorient or relocate the receiving antenna.

Increase the separation between the equipment and receiver.

Connect the equipment into an outlet on a circuit different from that to which the receiver is connected.

Consult the dealer or an experienced radio/TV technician for help.

Responsible party - U.S. Contact Information

Samsung Electronics America, Inc.

QA Lab America

19 Chapin Rd. Building D, Pine Brook NJ 07058

Tel : 1-973-808-6375    Fax : 1-973-808-6361

**FCC Notice**

The device may cause TV or radio interference if used in close proximity to receiving equipment. The FCC can require you to stop using the mobile device if such interference cannot be eliminated.

This equipment complies with FCC RF Radiation exposure limits set forth for an uncontrolled environment.

When using the wireless power sharing function, this equipment should be operated with a minimum distance of 20 centimeters between the device and your body.

21

**Samsung mobile products and recycling**

ocument #: 1-7 Filed: 03/28/23 Page

**WARNING!** Never dispose of batteries in a fire because they may explode.

Samsung cares for the environment and encourages its customers to properly dispose of Samsung Mobile Devices and Samsung accessories in accordance with local regulations. In some areas, disposal of these items in household or business trash may be prohibited.

Proper disposal of your Device and its battery is not only important for safety, it benefits the environment. We've made it easy for you to recycle your old Samsung Mobile Devices and batteries by working with respected take-back companies in every state in the country.

Help us protect the environment - recycle! For battery and cell phone recycling, go to **call2recycle.org** or call 1-800-822-8837.



In addition, most carriers will provide a take-back option for proper disposal of products when purchasing new products.

Dispose of other unwanted electronics through an approved recycler. To find the nearest recycling location, go to our website: **www.samsung.com/recycling** or call 1-800-SAMSUNG.

### GPS & AGPS

Certain Samsung Mobile Devices can use a Global Positioning System (GPS) signal for location-based applications. GPS uses satellites controlled by the U.S. Government that are subject to changes

22

ocument #: 1-7 Filed: 03/28/23 Page

implemented in accordance with the Department of Defense policy and the 2008 Federal Radio navigation Plan (FRP). Changes may affect the performance of location-based technology on your mobile device.

Certain Samsung Mobile Devices can also use an Assisted Global Positioning System (AGPS), which obtains information from the cellular network to improve GPS performance. AGPS uses your wireless service provider's network and therefore airtime, data charges, and/or additional charges may apply in accordance with your service plan. Contact your wireless service provider for details.

**Your location**

Location-based information includes information that can be used to determine the approximate location of a mobile device. Mobile devices which are connected to a wireless network transmit location-based information. Additionally, if you use applications that require location-based information (e.g., driving directions), such applications transmit location-based information. The location-based information may be shared with third-parties, including your wireless service provider, applications providers, Samsung, and other third-parties providing services.

**Use of AGPS in emergency calls**

When you make an emergency call, the cellular network may activate AGPS technology in your mobile device to tell the emergency responders your approximate location.

23

AGPS has limitations and **might not work in your area.**

ocument #: 1-7 Filed: 03/28/23 Page

Therefore:

- Always tell the emergency responder your location to the best of your ability; and
- Remain on the mobile device for as long as the emergency responder instructs you.

### Navigation

Maps, directions, and other navigation data, including data relating to your current location, may contain inaccurate or incomplete data, and circumstances can and do change over time. In some areas, complete information may not be available. Therefore, you should always visually confirm that the navigational instructions are consistent with what you see before following them. All users should pay attention to road conditions, closures, traffic, and all other factors that may impact safe driving or walking. Always obey posted road signs.

### Commercial Mobile Alerting System (CMAS)

This device is designed to receive Wireless Emergency Alerts from CMAS. If your wireless provider participates in CMAS, alerts are available while in the provider's coverage area. If you travel outside the coverage area, alerts may not be available. For more information, please contact your wireless provider.

24

ocument #: 1-7 Filed: 03/28/23 Page

**Emergency calls**

This device, like any wireless mobile device, operates using radio signals, wireless and landline networks, as well as user-programmed functions, which cannot guarantee connection in all conditions, areas, or circumstances. Therefore, you should never rely solely on any wireless mobile device for essential communications (medical emergencies, for example). Before traveling in remote or underdeveloped areas, plan an alternate method of contacting emergency services personnel. Remember, to make or receive any calls, the mobile device must be switched on and in a service area with adequate signal strength.

Emergency calls may not be possible on all wireless mobile device networks or when certain network services and/or mobile device features are in use. Check with local service providers. If certain features are in use (call blocking, for example), you may first need to deactivate those features before you can make an emergency call. Consult your User Manual and your local cellular service provider. When making an emergency call, remember to give all the necessary information as accurately as possible. Remember that your mobile device may be the only means of communication at the scene of an accident; do not end the call until given permission to do so.

**To make an emergency call:**

1. If the mobile device is not on, turn it on.
2. Open the phone dialer.
3. Enter the emergency number for your current

25

location (for example, 911 or other official emergency number), then tap Call/Send. Emergency numbers vary by location.

**FCC Hearing Aid Compatibility (HAC) regulations for wireless devices**

The U.S. Federal Communications Commission (FCC) has established requirements for digital wireless mobile devices to be compatible with hearing aids and other assistive hearing devices.

When individuals employing some assistive hearing devices (hearing aids and cochlear implants) use wireless mobile devices, they may detect a buzzing, humming, or whining noise. Some hearing devices are more immune than others to this interference noise, and mobile devices also vary in the amount of interference they generate.

The wireless telephone industry has developed a rating system for wireless mobile devices to assist hearing device users find mobile devices that may be compatible with their hearing devices. Not all mobile devices have been rated. Mobile devices that are rated have the rating on their box or a label located on the box.

The ratings are not guarantees. Results will vary depending on the user's hearing device and hearing loss. If your hearing device happens to be vulnerable to interference, you may not be able to use a rated mobile device successfully. Trying out the mobile device with your hearing device is the best way to evaluate it for your personal needs.

26

Document #: 1-7 Filed: 03/28/23 Page

**M-Ratings:** Wireless mobile devices rated M3 or M4 meet FCC requirements and are likely to generate less interference to hearing devices than mobile devices that are not labeled. M4 is the better/higher of the two ratings. M-ratings refer to enabling acoustic coupling with hearing aids that do not operate in telecoil mode.

**T-Ratings:** Mobile devices rated T3 or T4 meet FCC requirements and are likely to generate less interference to hearing devices than mobile devices that are not labeled. T4 is the better/higher of the two ratings. T-ratings refer to enabling inductive coupling with hearing aids operating in telecoil mode.

Hearing devices may also be rated. Your hearing aid manufacturer or hearing health professional may help you find this rating. Higher ratings mean that the hearing device is relatively immune to interference noise. Under the current industry standard, American National Standards Institute (ANSI) C63.19, the hearing aid and wireless mobile device rating values are added together to indicate how usable they are together. For example, if a hearing aid meets the M2 level rating and the wireless mobile device meets the M3 level rating, the sum of the two values equals M5.

Under the standard, this should provide the hearing aid user with normal use while using the hearing aid with the particular wireless mobile device. A sum of M6 or more would indicate excellent performance.

27

Document #: 1-7 Filed: 03/28/23 Page

However, these are not guarantees that all users will be satisfied. T-ratings work similarly.



The HAC rating and measurement procedure are described in the American National Standards Institute (ANSI) C63.19 standard.

**Card tray removal tool**

**Caution!** Exercise care when using the card tray removal tool to eject the internal card tray.

**Device temperature**

**Caution!  Some applications or prolonged usage may increase device temperature.**

Prolonged skin contact with a device that is hot to the touch may produce skin discomfort or redness, or low temperature burns. If the device feels hot to the touch, discontinue use and close all applications or turn off the device until it cools.

Always ensure that the device has adequate ventilation and air flow. Covering the device can significantly affect air flow, may affect the performance of the device, and poses a possible risk of fire or explosion, which could lead to serious bodily injuries or damage to property. Covering the device can trap any dissipating heat and redirect it back to the device while it is active.

28

ocument #: 1-7 Filed: 03/28/23 Page

Although the device might not currently be in full use, background applications and functions can generate heat that can accidentally be trapped when covered.

**Sound and hearing**

**Caution!** Avoid potential hearing loss by not exposing yourself to loud sounds for a prolonged period of time.

The risk of hearing loss increases as sound is played louder and for longer durations. The amount of sound produced by a portable audio device (including headsets, earbuds, and Bluetooth® or other wireless devices) varies depending on the nature of the sound, the device settings, and the headphones that are used. As a result, there is no single volume setting that is appropriate for everyone or for every combination of sound, settings and equipment.

**Restricting children's access to your mobile device**

Your device is not a toy. Do not allow children to play with it because they could hurt themselves and others, damage the device, or make calls that increase your mobile device bill.

Keep the device and all its parts and accessories out of the reach of small children.

ocument #: 1-7 Filed: 03/28/23 Page

# EXHIBIT F



Neil Currie
Vice President
2355 Highway 36 W.
Suite 400
Roseville, MN 55113
Telephone: (612)332-6545
Fax: (612)342-2334

November 18, 2022

Gary M. Klinger, Esq.
Milberg Coleman Bryson Phillips Grossman, PLLC
221 West Monroe Street
Suite 2100
Chicago, IL 60606
Via Email to: gklinger@milberg.com

Randall W. Edwards, Esq.
O'Melveny & Myers, LLP
2 Embarcadero Center
28th Floor
San Francisco, CA 94411-3823
Via Email to: redwards@omm.com

Case Number: 01-22-0004-4024

Individual Claimants
-vs-
Samsung Electronics America, Inc

Dear Parties:

The American Arbitration Association (AAA) acknowledges receipt of 1,044 individual consumer demands for arbitration filed against Samsung Electronics America, LLC ("Samsung"). The consumers have now met the administrative filing requirements on each of the 1,044 cases filed. A list of these cases are enclosed.

Samsung is now responsible for payment of the initial administrative filing fees totaling $311,000. Payment from the Business should be received on or before **December 19, 2022**. The business' billing representative will separately receive an invoice.

Payment may be submitted by wire or check. Wire instructions are included on the invoice. If paying by check, please make it payable to the American Arbitration Association (AAA) and send it to the AAA at 13727 Noel Road, Suite 700, Dallas, TX 75240.

As the filing requirements were met after August 1, 2021, the Supplementary Rules for Multiple Case Filings will apply to these 1,044 individual cases. The parties may find additional information at: AAA Consumer Multiple Case Filing.

Sincerely,

/s/
Victoria Chandler
Director of ADR Operations

Direct Dial: (612)278-5124
Email: VictoriaChandler@adr.org
Fax: (612)342-2334

cc:     Jonathan B. Cohen, Esq.
        Christian K. Torres, Esq.
        Stuart W. Davidson, Esq.
        Mark J. Dearman

# EXHIBIT G

| | |
|---|---|
| **From:** | Edwards, Randall W. |
| **To:** | ConsumerMCFIntake |
| **Cc:** | Gary Klinger; sdavidson@rgrdlaw.com; mdearman@rgrdlaw.com; Christian Torres; Jonathan Cohen; AAA Victoria Chandler; Powers, Matt; Ormsby, Eric; Pavel, Ashley |
| **Subject:** | RE: Individual Claimants v. Samsung Electronics America, Inc - Case 01-22-0004-4024 |
| **Date:** | Monday, December 19, 2022 7:19:53 PM |
| **Attachments:** | image001.png |
| | image002.png |

Victoria,

We are in receipt of your November 18, 2022 communication regarding Case Number: 01-22-0004-4024. Samsung will provide a substantive response to your communication shortly.

## O'Melveny

**Randall W. Edwards**
(he, him, his)
redwards@omm.com
O: +1-415-984-8716

O'Melveny & Myers LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Website | LinkedIn | Twitter

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**From:** ConsumerMCFIntake <ConsumerMCFIntake@adr.org>
**Sent:** Friday, November 18, 2022 2:27 PM
**To:** gklinger@milberg.com; sdavidson@rgrdlaw.com; mdearman@rgrdlaw.com; christian.torres@milberg.com; jcohen@milberg.com; Edwards, Randall W. <redwards@omm.com>
**Cc:** AAA Victoria Chandler <VictoriaChandler@adr.org>
**Subject:** Individual Claimants v. Samsung Electronics America, Inc - Case 01-22-0004-4024

[EXTERNAL MESSAGE]

Counsel —

Please see the attached correspondence.

Sincerely,

Victoria

 **ConsumerMCFIntake**

American Arbitration Association

E: ConsumerMCFIntake@adr.org

adr.org | icdr.org | aaamediation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

# EXHIBIT H

| From: | Edwards, Randall W. |
|---|---|
| To: | ConsumerMCFIntake; Gary Klinger; sdavidson@rgrdlaw.com; mdearman@rgrdlaw.com; Christian Torres; Jonathan Cohen |
| Cc: | AAA Victoria Chandler; Ormsby, Eric; Pavel, Ashley; McDonald, Alexander K.; Powers, Matt |
| Subject: | RE: Individual Claimants v. Samsung Electronics America, Inc – Case 01-22-0004-4024 |
| Date: | Friday, December 23, 2022 12:57:25 PM |
| Attachments: | image001.png |
|  | image002.png |
|  | image004.png |
|  | image005.png |
|  | image006.png |
|  | image007.png |
|  | image009.png |
|  | image010.png |
|  | image011.png |
|  | image012.png |
|  | image013.png |

Victoria,

Received. Thank you.

Could you please add my colleagues Matt Powers, Ashley Pavel, Eric Ormsby, and Alex McDonald to the email list as well. I've copied them all here. Thanks again.

Randy

## O'Melveny

**Randall W. Edwards**
(he, him, his)
redwards@omm.com
O: +1-415-984-8716

O'Melveny & Myers LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Website | LinkedIn | Twitter

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**From:** ConsumerMCFIntake <ConsumerMCFIntake@adr.org>
**Sent:** Friday, December 23, 2022 6:09 AM
**To:** gklinger@milberg.com; sdavidson@rgrdlaw.com; mdearman@rgrdlaw.com; christian.torres@milberg.com; jcohen@milberg.com; Edwards, Randall W. <redwards@omm.com>
**Cc:** AAA Victoria Chandler <VictoriaChandler@adr.org>
**Subject:** RE: Individual Claimants v. Samsung Electronics America, Inc – Case 01-22-0004-4024

[EXTERNAL MESSAGE]

Counsel –

This will confirm receipt of Mr. Edwards' correspondence dated December 19, 2022 as well as Mr. Torres' correspondence below.

At this time the American Arbitration Association (AAA) is requesting that Respondent provide payment no later than January 11, 2022. Absent receipt of a payment from the Respondent, the AAA will be closing our files administratively.

Please contact me directly should you have any questions.

Sincerely,

Victoria

 **ConsumerMCFIntake**

American Arbitration Association

E: ConsumerMCFIntake@adr.org



adr.org | icdr.org | aaamediation.org

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** Christian Torres <Christian.Torres@milberg.com>
**Sent:** Tuesday, December 20, 2022 11:05 AM
**To:** ConsumerMCFIntake <ConsumerMCFIntake@adr.org>
**Subject:** RE: Individual Claimants v. Samsung Electronics America, Inc - Case 01-22-0004-4024

**\*\*\* External E-Mail – Use Caution \*\*\***

Hi,

Would it be possible to receive an update as to the status of Respondent's payment? I understand that the payment was due yesterday, Dec. 19, 2022, and was not made. Could you please confirm this and provide some information as to what happens now that Respondent did not pay?

Thank you,

Christian K. Torres
Attorney at Law
Associate



Main Line: 516-741-5600 Ext. 5251
Direct Line: 516-842-6698



Confidentiality Notice: This message contains information that may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail and delete the message.

**From:** Christian Torres
**Sent:** Tuesday, November 29, 2022 11:30 AM
**To:** ConsumerMCFIntake <ConsumerMCFIntake@adr.org>
**Subject:** RE: Individual Claimants v. Samsung Electronics America, Inc - Case 01-22-0004-4024

Hi,

Would it be possible to receive an update as to the status of Respondent's payment? I understand that the payment is due Dec. 19, 2022, but I was also wondering what happens in the event that Respondent does not pay on time.

Thank you,

Christian K. Torres
Attorney at Law
Associate



Main Line: 516-741-5600 Ext. 5251
Direct Line: 516-842-6698



Confidentiality Notice: This message contains information that may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail and delete the message.

**From:** ConsumerMCFIntake <ConsumerMCFIntake@adr.org>
**Sent:** Friday, November 18, 2022 5:27 PM
**To:** Gary Klinger <gklinger@milberg.com>; sdavidson@rgrdlaw.com; mdearman@rgrdlaw.com; Christian Torres <christian.torres@milberg.com>; Jonathan Cohen <jcohen@milberg.com>; redwards@omm.com
**Cc:** AAA Victoria Chandler <VictoriaChandler@adr.org>
**Subject:** Individual Claimants v. Samsung Electronics America, Inc - Case 01-22-0004-4024

Counsel –

Please see the attached correspondence.

Sincerely,

Victoria



**ConsumerMCFIntake**

American Arbitration Association

E: ConsumerMCFIntake@adr.org

adr.org | icdr.org | aaamediation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

# EXHIBIT I



O'Melveny & Myers LLP     T: +1 415 984 8700                    File Number:
Two Embarcadero Center     F: +1 415 984 8701
28th Floor                        omm.com
San Francisco, CA 94111-3823

January 11, 2023                                                       **Randall W. Edwards**
                                                               D: +1 415 984 8716
**VIA ELECTRONIC MAIL**                                             redwards@omm.com

Victoria Chandler
American Arbitration Association
120 Broadway
21st Floor
New York, NY 10271
VictoriaChandler@adr.org

Re:     _**Individual Claimants v. Samsung Electronics America, Inc - Case 01-22-0004-4024**_

Ms. Chandler,

        In response to your December 23, 2022 communication, I write to inform you that the parties have agreed to a mediation on March 22, 2023. The parties therefore jointly request that AAA stay the matter and all related deadlines concerning the 1,044 individual consumer demands filed by the Milberg Coleman firm against Samsung Electronics America (of which AAA acknowledged receipt November 18, 2022) pending the outcome of the March 22, 2023 mediation.

Sincerely,

Randall W. Edwards
Partner
of O'MELVENY & MYERS LLP

cc: Gary Klinger
     Partner
     Milberg Coleman Bryson Phillips Grossman, LLC

EXHIBIT J

| From: | ConsumerMCFIntake |
|---|---|
| To: | Edwards, Randall W.; Gary Klinger; sdavidson@rgrdlaw.com; mdearman@rgrdlaw.com; Christian Torres; Jonathan Cohen; Powers, Matt; Ormsby, Eric; Pavel, Ashley; McDonald, Alexander K. |
| Cc: | AAA Victoria Chandler |
| Subject: | RE: Individual Claimants v. Samsung Electronics America, Inc - Case 01-22-0004-4024 |
| Date: | Wednesday, January 18, 2023 2:51:37 PM |
| Attachments: | image014.png |
| | image015.png |
| | image017.png |
| | image018.png |
| | image019.png |
| | image020.png |
| | image022.png |
| | image023.png |
| | image024.png |
| | image025.png |
| | image026.png |
| | image0fbac0.PNG |
| | image61fed3.PNG |
| | 1-11-23 letter from Samsung to AAA re Milberg Coleman demands with BIPA claims.pdf |

Counsel -

This will confirm receipt of the attached correspondence from Randall Edwards dated, January 11, 2023, requesting these matters be placed on hold while parties pursue mediation. We support the parties attempt to resolve their disputes and wish the parties well in their mediation.

Pursuant to our correspondence dated November 18, 2022, and December 23, 2022, the American Arbitration Association (AAA) advised the Respondent their portion of the initial administrative filing fees were due no later than January 11, 2023. As the payment for the Respondent's initial filing fee has not been received, the filing requirements for the arbitrations have not been met. Accordingly, as these cases have not met the filing requirements, we will not place the matters on hold, and will be administratively closing our files. Claimant's filing fee, totaling $38,600.00 will be refunded. Should the parties not settle these matters through mediation, the Claimant may refile these cases.

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of electronic case documents that the AAA maintains indefinitely, electronic case documents will be destroyed 18 months after the date of this letter.

Sincerely,

Victoria

 **ConsumerMCFIntake**

American Arbitration Association

E: ConsumerMCFIntake@adr.org

adr.org | icdr.org | aaamediation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** Edwards, Randall W. <redwards@omm.com>
**Sent:** Wednesday, January 11, 2023 1:07 PM
**To:** ConsumerMCFIntake <ConsumerMCFIntake@adr.org>; AAA Victoria Chandler <VictoriaChandler@adr.org>
**Cc:** gklinger@milberg.com; sdavidson@rgrdlaw.com; mdearman@rgrdlaw.com; christian.torres@milberg.com; jcohen@milberg.com; Powers, Matt <mpowers@omm.com>; Ormsby, Eric <eormsby@omm.com>; Pavel, Ashley <apavel@omm.com>
**Subject:** RE: Individual Claimants v. Samsung Electronics America, Inc - Case 01-22-0004-4024

<span style="color:red">**\*\*\* External E-Mail – Use Caution \*\*\***</span>

Victoria,

Please see the attached letter, which I am sending on behalf of Samsung on these matters.

### O'Melveny

**Randall W. Edwards**
(he, him, his)
redwards@omm.com
O: +1-415-984-8716

O'Melveny & Myers LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Website | LinkedIn | Twitter

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**From:** ConsumerMCFIntake <ConsumerMCFIntake@adr.org>
**Sent:** Friday, December 23, 2022 6:09 AM
**To:** gklinger@milberg.com; sdavidson@rgrdlaw.com; mdearman@rgrdlaw.com; christian.torres@milberg.com; jcohen@milberg.com; Edwards, Randall W. <redwards@omm.com>
**Cc:** AAA Victoria Chandler <VictoriaChandler@adr.org>
**Subject:** RE: Individual Claimants v. Samsung Electronics America, Inc - Case 01-22-0004-4024

[EXTERNAL MESSAGE]

Counsel –

This will confirm receipt of Mr. Edwards' correspondence dated December 19, 2022 as well as Mr. Torres' correspondence below.

At this time the American Arbitration Association (AAA) is requesting that Respondent provide payment no later than January 11, 2022. Absent receipt of a payment from the Respondent, the AAA will be closing our files administratively.

Please contact me directly should you have any questions.

Sincerely,

Victoria

 **ConsumerMCFIntake**

American Arbitration Association

E: ConsumerMCFIntake@adr.org

adr.org | icdr.org | aaamediation.org



*The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.*

**From:** Christian Torres <Christian.Torres@milberg.com>
**Sent:** Tuesday, December 20, 2022 11:05 AM
**To:** ConsumerMCFIntake <ConsumerMCFIntake@adr.org>
**Subject:** RE: Individual Claimants v. Samsung Electronics America, Inc - Case 01-22-0004-4024

**\*\*\* External E-Mail – Use Caution \*\*\***

Hi,

Would it be possible to receive an update as to the status of Respondent's payment? I understand that the payment was due yesterday, Dec. 19, 2022, and was not made. Could you please confirm this and provide some information as to what happens now

that Respondent did not pay?

Thank you,

Christian K. Torres
Attorney at Law
Associate





Main Line: 516-741-5600 Ext. 5251
Direct Line: 516-842-6698

Confidentiality Notice: This message contains information that may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail and delete the message.

**From:** Christian Torres
**Sent:** Tuesday, November 29, 2022 11:30 AM
**To:** ConsumerMCFIntake <ConsumerMCFIntake@adr.org>
**Subject:** RE: Individual Claimants v. Samsung Electronics America, Inc - Case 01-22-0004-4024

Hi,

Would it be possible to receive an update as to the status of Respondent's payment? I understand that the payment is due Dec. 19, 2022, but I was also wondering what happens in the event that Respondent does not pay on time.

Thank you,

Christian K. Torres
Attorney at Law
Associate





Main Line: 516-741-5600 Ext. 5251
Direct Line: 516-842-6698

Confidentiality Notice: This message contains information that may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail and delete the message.

**From:** ConsumerMCFIntake <ConsumerMCFIntake@adr.org>
**Sent:** Friday, November 18, 2022 5:27 PM
**To:** Gary Klinger <gklinger@milberg.com>; sdavidson@rgrdlaw.com; mdearman@rgrdlaw.com; Christian Torres <christian.torres@milberg.com>; Jonathan Cohen <jcohen@milberg.com>; redwards@omm.com
**Cc:** AAA Victoria Chandler <VictoriaChandler@adr.org>
**Subject:** Individual Claimants v. Samsung Electronics America, Inc - Case 01-22-0004-4024

Counsel –

Please see the attached correspondence.

Sincerely,

Victoria



**ConsumerMCFIntake**

American Arbitration Association

E: ConsumerMCFIntake@adr.org

adr.org | icdr.org | aaamediation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

EXHIBIT K



Neil Currie
Vice President
2355 Highway 36 W.
Suite 400
Roseville, MN 55113
Telephone: (612)332-6545
Fax: (612)342-2334

January 24, 2023

Gary M. Klinger, Esq.
Milberg Coleman Bryson Phillips Grossman, PLLC
221 West Monroe Street
Suite 2100
Chicago, IL 60606
Via Email to: gklinger@milberg.com

Randall W. Edwards, Esq.
O'Melveny & Myers, LLP
2 Embarcadero Center
28th Floor
San Francisco, CA 94411-3823
Via Email to: redwards@omm.com

Case Number: 01-22-0004-4024

Individual Claimants
-vs-
Samsung Electronics America, Inc

Dear Parties:

On January 18, 2023, the American Arbitration Association (AAA) advised the parties that these cases would be administratively closed. As part of our review, we have determined that Milberg, Coleman Bryson Phillips Grossman, PLLC will receive a refund of $20,400.00 and Robbins, Geller, Rudman, & Dowd, LLP will receive a refund in the amount of $18,200.00, that will be mailed from our New York office in approximately one week.

These individual cases have now been administratively closed.

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of electronic case documents that the AAA maintains indefinitely, electronic case documents will be destroyed 18 months after the stated closing date.

Sincerely,
/s/
Victoria Chandler
Director of ADR Operations
Direct Dial: (612)278-5124
Email: VictoriaChandler@adr.org
Fax: (612)342-2334

cc:    Jonathan B. Cohen, Esq.
        Alexander K. McDonald
        Christian K. Torres, Esq.
        Stuart W. Davidson, Esq.
        Ashley Pavel
        Eric Ormsby, Esq.
        Matthew Powers, Esq.
        Mark J. Dearman

# EXHIBIT L

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEAN VASADI, et al., individually and on behalf of all others similarly situated, : : : : Plaintiffs, : : v. : : SAMSUNG ELECTRONICS AMERICA, INC., : : Defendant. : : : | **Civil Action No. 21-10238-WJM-AME**  **ORDER** |

**ESPINOSA**, Magistrate Judge

This matter having come before the Court on the motion by defendant Samsung Electronics America, Inc. ("SEA") to compel arbitration and stay this action [ECF No. 8]; and plaintiffs having opposed the motion; and the motion having been referred for decision by the Honorable William Martini pursuant to 28 U.S.C. § 636(b); and the Court ruling on the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78(b); and for the reasons expressed in the Opinion filed herewith,

**IT IS** on this 29th day of November 2021,

**ORDERED** that SEA's motion to compel arbitration and stay the action [ECF No. 8] is **GRANTED IN PART and DENIED IN PART**; and it is further

**ORDERED** that, as set forth in the accompanying Opinion, all named plaintiffs other than Justin and Amber O'Connor are compelled to arbitrate the claims asserted against SEA in this action, pursuant to 9 U.S.C. § 2; and it is further

 

 

     **ORDERED** that, pursuant to 9 U.S.C. § 3, the action shall be stayed as to the claims

brought by the named plaintiffs compelled to arbitrate; and it is further

     **ORDERED** that SEA's request to stay the claims asserted by the non-arbitrating

plaintiffs, Justin and Amber O'Connor, is denied.

                            /s/ *André M. Espinosa*
                            ANDRÉ M. ESPINOSA
                            United States Magistrate Judge

# EXHIBIT M

UNITED STATES DISTRICT COURT      **JS-6**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 16-1953-DMG (KKx)** | Date | October 20, 2020 |
|---|---|---|---|

| Title | ***Dulce Alondra Velasquez-Reyes, et al. v. Samsung Electronics America, Inc.*** | Page | 1 of 7 |
|---|---|---|---|

Present: The Honorable    DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

Proceedings:  **IN CHAMBERS—ORDER RE DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION TO COMPEL ARBITRATION [88]**

Before the Court is Defendant Samsung Electronics America, Inc.'s Motion to Compel ("MTC") Plaintiff Martin Baclija to submit his claims to arbitration. [Doc. 88.] The MTC is fully briefed. [Doc. # 99 ("Opp."), # 111 ("Reply")]. Having considered the parties' written submissions, the Court **GRANTS** Defendant's MTC.

**I.**
**PROCEDURAL HISTORY**

This action began on September 12, 2016 with a Complaint filed by Plaintiff Dulce Alondra Velasquez-Reyes, alleging fraud, false advertising, and related claims on behalf of a putative class based on the sale of Samsung's Galaxy S7 Edge smartphones ("S7"). [Doc. # 1.] Samsung moved to dismiss Velasquez-Reyes's Complaint and to compel arbitration, both of which the Court denied on September 13, 2017 (the "2017 Order"). [Doc. # 34], 2017 WL 4082419. Samsung appealed the 2017 Order to the Ninth Circuit shortly thereafter, and the Court stayed this action pending resolution of the appeal. [Doc. # 56.] On September 17, 2019, the Ninth Circuit affirmed the Court's 2017 Order denying Samsung's first motion to compel arbitration. *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, 777 F. App'x 241 (9th Cir. 2019).

On May 19, 2020, Plaintiffs filed their operative Second Amended Complaint ("SAC"), adding Baclija and Jill Clark as named Plaintiffs. [Doc. # 83.] On July 16, 2020, the Court granted the parties' stipulation to voluntarily dismiss Velasquez-Reyes from the action. [Doc. # 97.] On September 17, 2020, the Court transferred Clark's claims to the District of New Jersey. [Doc. # 115.] In the instant Motion, Samsung contends that Baclija's claims should be ordered

---

UNITED STATES DISTRICT COURT      **JS-6**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 16-1953-DMG (KKx)** | | Date | October 20, 2020 |
|---|---|---|---|---|

| Title | ***Dulce Alondra Velasquez-Reyes, et al. v. Samsung Electronics America, Inc.*** | Page | 2 of 7 |
|---|---|---|---|

to arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, and an agreement between Samsung and Baclija. *See* MTC at 2.[1]

## II.
## RELEVANT FACTUAL BACKGROUND

Sometime in the fall of 2018, Baclija purchased two S7s from eBay. Baclija Decl. at ¶ 2 [Doc. # 98-1]. Baclija took the S7s to a T-Mobile store to activate them on T-Mobile's network. *Id.* at ¶ 5. The phones' "set-up process" was completed by a sales representative at the store. *Id.* During this process, under the operating system available through T-Mobile at the time Baclija activated the phone, the S7 displays on its screen a page titled "Terms and conditions," advising users to "[r]ead the Terms and Conditions carefully, which include an arbitration agreement." Cantwell Decl. at ¶¶ 18-19 [Doc. 88-1]. The page includes a link to the phone's terms and conditions, which contain a clause stating that any disputes with Samsung "relating in any way to or arising in any way from" the S7's "Standard Limited Warranty or the sale, condition or performance" of the S7 "shall be resolved exclusively through final and binding arbitration, and not by a court or jury" (the "Arbitration Agreement"). *Id.* at ¶¶ 8, 20. The user cannot proceed with the set-up process and use the phone until clicking a bubble next to the words "Terms and Conditions or "Agree to all" and then clicking "Next." *Id.* at 19. Users can opt out of the Arbitration Agreement by "providing notice to Samsung no later than 30 calendar days from the date of the first consumer purchaser's purchase of the Product." *Id.* at ¶ 12.

The T-Mobile representative did not say anything to Baclija about the Arbitration Agreement or any other terms and conditions when setting up his phones. Baclija Decl. at ¶ 5. Nor did the representative tell him about any documents he would need to read before using the phone. *Id.*

Baclija purchased the S7s because of advertising he saw which represented that the S7 was water resistant. Baclija Decl. at ¶ 5. After using the phones, Baclija accidentally dropped one in the ocean briefly and got some tap water on the other, after which both stopped working. *Id.* at ¶ 7. Baclija returned to T-Mobile for help, and was told the S7s had water damage and would be costly to repair. *Id.* at ¶ 8. He also contacted Samsung for troubleshooting support, which was unsuccessful, and Samsung would not provide replacements. *Id.* at ¶ 9. In the SAC, Baclija brings claims for fraud, false advertising, unfair competition, and unjust enrichment.

---

[1] All page references herein are to page numbers inserted by the CM/ECF system.

---

Case 5:16-cv-01953-DMG-KK Document #1-154 Filed 03/28/23 Page 88 PageID #:5419

UNITED STATES DISTRICT COURT      **JS-6**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 16-1953-DMG (KKx)** | Date | October 20, 2020 |
|---|---|---|---|

| Title | ***Dulce Alondra Velasquez-Reyes, et al. v. Samsung Electronics America, Inc.*** | Page | 3 of 7 |
|---|---|---|---|

## II.
## LEGAL STANDARD

The FAA "provides that agreements to arbitrate disputes 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Jackson v. Rent-a-Center W., Inc.*, 581 F.3d 912, 915 (9th Cir. 2009) (citing 9 U.S.C. § 2). Section 2 of the FAA indicates a strong "federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 103 S. Ct. 927, 941 (1983). Accordingly, "courts of appeals have since consistently concluded that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.*

"[A]n agreement to arbitrate is a matter of contract." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Provided that the Court is satisfied with the arbitration agreement's formation, the Court must direct the parties to proceed to arbitration. 9 U.S.C. § 4. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); *see also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).

Thus, this Court's role under the Act is limited to ascertaining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130. Because arbitration is a creature of contract, the parties cannot be compelled to arbitrate absent a valid agreement to do so. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Where a valid arbitration agreement exists, the presumption will be in favor of arbitration and "federal law [will] govern[] its interpretation." *Turtle Ridge Media Grp., Inc. v. Pac. Bell Directory*, 140 Cal. App. 4th 828, 832 (2006), *as modified* (July 20, 2006); *see also AT&T Techs., Inc.*, 475 U.S. at 650; *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009).

The burden is on the party seeking to compel arbitration to prove the existence and applicability of an arbitration agreement by the preponderance of the evidence, and then the burden shifts to the non-moving party to prove a defense by the preponderance of the evidence. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996).

---

UNITED STATES DISTRICT COURT     **JS-6**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 16-1953-DMG (KKx)** | Date | October 20, 2020 |
|---|---|---|---|

| Title | ***Dulce Alondra Velasquez-Reyes, et al. v. Samsung Electronics America, Inc.*** | Page | 4 of 7 |

**IV.**
**DISCUSSION**

As an initial matter, it is worth noting the factual differences between the present case and those at issue in the Court's 2017 Order. In the 2017 Order, the arbitration agreement was contained only within a paper brochure inside the physical packaging of the S7. 2017 WL 4082419 at *2. The Court held that Velasquez-Reyes's silence in the presence of this brochure did not amount to her assent to the agreement. *Id.* at *6. By contrast, here the Agreement was a "clickwrap" agreement, in which "an entry on a webpage require[s] that the user consent to terms or conditions of the proposed agreement by clicking on a dialog box on the screen to proceed with the transaction." 15B Am. Jur. 2d Computers and the Internet § 105. Thus, the user does not manifest assent by silence, but by affirmatively clicking something on the screen to acknowledge the agreement and proceed.

So long as the user has access to the terms and conditions, "even if the terms are not presented on the same page as the acceptance button," clickwrap agreements have been consistently upheld by the courts and used to compel arbitration. *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011). Baclija does not contest Samsung's assertion that, had he clicked through the set-up process himself, he would be deemed to have assented to the Agreement. *See* Opp. at 10-11; MTC at 18-19. Rather, Baclija argues that because he did not click "Next" on the Terms and Conditions page himself, nor was he otherwise aware of it, he did not assent to the Agreement. Opp. at 10. Samsung counters that Baclija is bound under the theory that an implied agency relationship existed between him and the T-Mobile representative, which allowed the representative to assent to the Arbitration Agreement on Baclija's behalf. Reply at 11-17.

**A. Agency Relationship**

Under California law, agency relationships can be created informally through "conduct by each party manifesting acceptance of a relationship whereby one of them is to perform work for the other under the latter's direction." *Malloy v. Fong*, 37 Cal. 2d 356, 372 (1951). Agency can also be implied via conduct. *Frank Pisano & Assocs. v. Taggart*, 29 Cal. App. 3d 1, 15 (1972). This authority allows agents "[t]o do everything necessary or proper and usual, in the ordinary course of business, for effecting the purpose of his agency." Cal. Civ. Code § 2319. Moreover, "[t]he power of the principal to terminate the services of the agent gives him the means of controlling the agent's activities. *Malloy*, 37 Cal. 2d at 370.

Case: 1:22-cv-05506 Document #: 40-1 Filed: 03/30/23 Page 225 of 270 PageID #:3175
Case 1:23-cv-01951 Document #: 1-154 Filed 03/28/23 Page 6 of 8 PageID #:224
Case 5:16-cv-01953-DMG-KK Document #: 1-154 Filed 03/28/23 Page 6 of 8 PageID #:5421

UNITED STATES DISTRICT COURT     **JS-6**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 16-1953-DMG (KKx)** | Date | October 20, 2020 |
|---|---|---|---|

| Title | ***Dulce Alondra Velasquez-Reyes, et al. v. Samsung Electronics America, Inc.*** | Page | 5 of 7 |
|---|---|---|---|

Baclija contends that in order to demonstrate an agency relationship, he would have needed to (1) "indicate that the agent is to act for him" and (2) "the agent must act or agree to act on his behalf and subject to his control." Opp. at 13 (citing *van't Rood v. Cty. of Santa Clara*, 113 Cal. App. 4th 549, 571 (2003)). That is precisely what occurred here. Baclija asked the T-Mobile representative to activate the S7s on his behalf, a necessary step of which is clicking "Next" on the screen that contains the terms and conditions. Baclija Decl. at ¶ 5; Cantwell Decl. at ¶ 19-20. Baclija could have asked the representative to stop at any time or asked for his S7s back, meaning the representative was subject to his control. His decision not to exercise control over the representative during the set-up process does not negate the agency relationship. *See Malloy*, 37 Cal. 2d at 370. ("It is not essential that the right of control be exercised or that there be actual supervision of the work of the agent. The existence of the right of control and supervision establishes the existence of an agency relationship").

Baclija argues that, even if an agency relationship existed, assenting to arbitration was beyond the scope of the representative's authority. Opp. at 14. But as Baclija concedes, he gave the T-Mobile representative "authority to activate his phone." *Id.* at 13. The representative could not activate the phone without clicking "Next" on the terms and conditions page. Accepting the terms and conditions—and with it, the Arbitration Agreement—was "necessary . . . for effecting the purpose his agency." Cal. Civ. Code § 2319.

Samsung provides several highly analogous cases that confirm the T-Mobile representative acted as an agent within the scope of his authority when accepting the terms and conditions for Baclija.[2] For example, in *Nicosia v. Amazon.com, Inc.*, the plaintiff gave her account information to a friend to sign her up for the "Amazon Mom" program. *See* 384 F. Supp. 3d 254, 269 (E.D.N.Y. 2019). As part of the sign-up process, her friend consented to arbitration agreement on her behalf. *Id.* at 260. The court in *Nicosia* found that by giving this permission, a principal-agent relationship was established, and the plaintiff was bound to the arbitration agreement in Amazon's Conditions of Use. *Id.* at 268-70. Similarly, in *Hofer v. Gap, Inc.*, the plaintiff was bound to Expedia's terms and conditions by giving her friend permission to book her travel plans on the site. *See* 16 F. Supp. 2d 161, 175 (D. Mass. 2007).

---

[2] Baclija cites cases, on the other hand, which are easily distinguishable due to the absence of agency. In *Brown v. Comcast Corp.*, No. ED CV 16-00264-AB (SPx), 2016 WL 9109112, at *5-6 (C.D. Cal. Aug. 12, 2016), the plaintiff's temporary roommate used his phone number without his permission or knowledge to sign up for Comcast. And in *E & E Co. v. Light in the Box Ltd.*, No. 15-CV-00069-EMC, 2015 WL 5915432, at *6 (N.D. Cal. Oct. 9, 2015), the court found that the plaintiff's investigator, who purchased the defendant's product from its website, did not have authority to agree to arbitrate the plaintiff's copyright and trademark infringement claims that were wholly unrelated to the purchase itself.

UNITED STATES DISTRICT COURT     **JS-6**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 16-1953-DMG (KKx)** | | Date | October 20, 2020 |
|---|---|---|---|---|

| Title | ***Dulce Alondra Velasquez-Reyes, et al. v. Samsung Electronics America, Inc.*** | Page | 6 of 7 |
|---|---|---|---|

      In sum, the Court finds that Samsung has met its burden of showing that Baclija consented to the Arbitration Agreement through the clickwrap set-up process. That Baclija delegated authority to agree to arbitration to an agent does not undercut his manifestation of assent.

**B.**     **Opt-Out Provision**

      Separate from the question of an agency relationship, Baclija contends he is not bound by the arbitration agreement because he was unaware that it contained an opt-out provision. Baclija relies on the Court's 2017 Order, which held that a failure to opt out cannot bind a plaintiff to an agreement where the plaintiff does not know that an offer has been made. 2017 WL 4082419 at *6. But the Court's discussion there concerned contract formation and the plaintiff's assent. While failure to opt out *alone* cannot constitute assent, absent reasonable knowledge of the offer, here Baclija assented not by failing to opt out, but by having his agent accept the clickwrap agreement, as discussed above.

      Insofar as Baclija argues that, notwithstanding his assent, he is not bound by his failure to opt out because he was not aware of the arbitration provisions, his position is unavailing. In the absence of actual notice, a party "will still be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74–75 (2d Cir. 2017). Choosing not to read the terms and conditions does not negate inquiry notice. *Id.* at 79. ("While it may be the case that many users will not bother reading the additional terms, that is the choice the user makes; the user is still on inquiry notice"). The terms and conditions page plainly and conspicuously inform the user that the terms "include an arbitration agreement," without even needing to click to view the full terms. Cantwell Decl. at ¶¶ 18-19. That Baclija authorized the T-Mobile representative to click through this page for him does not mean he did not have reasonable inquiry notice as to its contents. *See Beture v. Samsung Elecs. Am., Inc.*, No. CV 17-5757 (SRC), 2018 WL 4621586, at *6 (D.N.J. July 18, 2018) ("Even when a carrier store representative performed the [] initialization, a smartphone user still has reasonable notice that use of the device is subject to terms and conditions.")

**C.**     **Arbitrability**

      Having established that Baclija entered into an Arbitration Agreement, the next question is "whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130. Baclija argues that his advertising-related claims are beyond the scope of the Agreement. Opp.

UNITED STATES DISTRICT COURT      **JS-6**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 16-1953-DMG (KKx)** | Date | October 20, 2020 |
|---|---|---|---|

| Title | ***Dulce Alondra Velasquez-Reyes, et al. v. Samsung Electronics America, Inc.*** | Page | 7 of 7 |
|---|---|---|---|

at 17. Samsung argues, *inter alia*, that this question is for the arbitrator to decide. MTC at 20-22.

Generally, courts decide this question of arbitrability; however, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, . . . a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). An agreement to arbitrate the issue of arbitrability must be made "clearly and unmistakably." *AT & T Techs., Inc.*, 475 U.S. at 649.

In *Momot v. Mastro*, the Ninth Circuit held that an agreement "delegating to the arbitrators the authority to determine 'the validity or application of any of the provisions of' the arbitration clause" constitutes a clear and unmistakable delegation of the issue of arbitrability. 652 F.3d 982, 988 (9th Cir. 2011). Similarly, here, the Arbitration Agreement states that "the arbitrator shall decide all issues of interpretation and application of this Agreement." Cantwell Decl., Ex. 1 at 27 [Doc. # 88-2]. The Agreement also incorporates the rules of the American Arbitration Association, *see id.*, and "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013).

Therefore, the Court cannot address whether Baclija's claims are governed by the Arbitration Agreement--that is for the arbitrator to decide.

**V.**
**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant Samsung's motion to compel arbitration. The Court hereby **STAYS** the proceedings in this case pursuant to 9 U.S.C. section 3. The case shall be administratively closed for the duration of the stay. The parties shall choose an arbitrator pursuant to the Arbitration Agreement. The parties shall file a joint status report with the Court within **10 days** after the conclusion of any arbitration proceedings or the resolution of the dispute between the parties to inform the Court whether the stay should be lifted and the case reopened. Plaintiff's motion for class certification [Doc. # 118] is **DENIED**, without prejudice, as moot and the January 15, 2021 hearing is **VACATED**.

**IT IS SO ORDERED.**

EXHIBIT N

THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GEORGE SCHMIDT, *et al.*, | CASE NO. C16-1725-JCC |
| Plaintiffs, | ORDER |
| v. | |
| SAMSUNG ELECTRONICS AMERICA, INC., *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendants' motions to compel arbitration, dismiss class claims, and stay proceedings (Dkt. Nos. 40, 43, 46). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion to compel arbitration in part, GRANTS the motion to dismiss class claims, and DENIES the motion to stay proceedings for the reasons explained herein.

## I.   BACKGROUND

Plaintiffs are all purchasers of Samsung Note7 smartphones. (Dkt. No. 37 at ¶¶ 26–32.) Plaintiff Schmidt, a Washington resident, purchased two Note7 phones on the Verizon network in Washington. (*Id.* at ¶¶ 15, 26–29, 32, 42–43.) Plaintiffs King and Richardson, California residents, purchased their Note7 phones on the Sprint network in California. (*Id.* at ¶¶ 16, 32.) After a partial, and then full, recall of all Note7 phones due to a fire risk, Plaintiffs grew

ORDER
PAGE - 1

frustrated with the recall process and refund compensation. (*Id.* at ¶¶ 53–61.) Plaintiffs filed a class action against Defendants for various alleged merchantability and products liability violations. (*Id.* at ¶¶ 64, 73–147.) Defendants Samsung Electronics America, Inc. (SEA), Samsung SDI America, Inc. (SDIA), and Samsung Electronics Co., LTD. (SEC), all separately moved to arbitrate pursuant to SEA's arbitration agreement contained within a brochure packaged inside Note7 boxes. (Dkt. Nos. 40, 43, 46.) Plaintiffs argue that the arbitration agreement is invalid on two grounds.

First, Plaintiffs argue that they did not receive notice of the arbitration agreement, nor of the ability to opt out. (Dkt. No. 59 at 10.) Note7 boxes from both Verizon and Sprint network stores state that the "[d]evice purchase [is] subject to additional Samsung terms and conditions," and that customers should "visit Samsung.com for more information on your device." (Dkt. No. 43 at 8–9.) Verizon boxes list contents, including a "Product Safety & Warranty Brochure." (*Id.* at 9.) Verizon box contents are weighed before shipping to ensure that all contents are included. (*Id.*) Inside Verizon boxes is a brochure titled "Product Safety and Warranty Information" (25 pages) and inside Sprint boxes is a brochure titled "Important Information" (37 pages). (*Id.*) Each brochure is "roughly 5.25 inches by 2.5 inches." (*Id.*) Within the first two pages, each brochure states in bold: "**[T]his document contains important terms and conditions with respect to your device. By using this device, you accept those terms and conditions.**" (*Id.* at 9–10.) Brochures also state in roughly the same location, in bold capitalized letters: "**READ THIS INFORMATION BEFORE USING YOUR MOBILE DEVICE.**" (*Id.* at 10.) The brochure proceeds to explain on the same page, in partial bold and capitalization (as indicated):

> **Samsung Limited Warranty -** This product is covered under the applicable Samsung Limited Warranty **INCLUDING ITS DISPUTE RESOLUTION PROCEDURE and your right to opt out of arbitration within 30 calendar days of the first consumer purchase. You may opt out by either sending an email to optout@sea.samsung.com with the subject line "Arbitration Opt-Out" or by calling 1-800-SAMSUNG (726-7864).** For more detailed procedures, please refer to the "Dispute Resolution Procedures and Arbitration and Opt-Out" section of the Limited Warranty.

ORDER
PAGE - 2

1    (*Id.*) On page 21 of the Verizon brochure and page 33 of the Sprint brochure, the arbitration

2    agreement is stated in capitalized font. (*Id.*) The agreement contains an opt-out provision at the

3    end in bold and partial underlined type. (*Id.* at 11.)

4          Second, Plaintiffs argue that the terms of the arbitration agreement contained in both

5    Sprint and Verizon boxes are unconscionable. (Dkt. No. 59 at 11.) The agreement states:

6          ALL DISPUTES WITH SAMSUNG ARISING IN ANY WAY FROM THIS
           LIMITED WARRANTY OR THE SALE, CONDITION OR PERFORMANCE
7          OF THE PRODUCTS SHALL BE RESOLVED EXCLUSIVELY THROUGH
           FINAL AND BINDING ARBITRATION, AND NOT BY A COURT OR
8          JURY. . . . ANY SUCH DISPUTE SHALL NOT BE COMBINED OR
           CONSOLIDATED WITH A DISPUTE INVOLVING ANY OTHER PERSON'S
9          OR ENTITY'S PRODUCT OR CLAIM, AND SPECIFICALLY, WITHOUT
           LIMITATION OF THE FOREGOING, SHALL NOT UNDER ANY
10         CIRCUMSTANCES PROCEED AS PART OF A CLASS
           ACTION. . . . [A]rbitration shall be conducted according to the American
11         Arbitration Association (AAA) Commercial Arbitration Rules applicable to
           consumer disputes, . . . [and] [t]he arbitrator shall decide all issues of interpretation
12         and application of this arbitration provision and the Limited Warranty.
13

14   (Dkt. No. 43 at 9–11.) The agreement states that "Texas law will govern the

15   interpretation of Samsung's limited warranty and disputes subject to arbitration." (*Id.* at

16   11.) The agreement provides an arbitration opt-out provision:

17         **You may opt out of this dispute resolution procedure by providing notice to
           SAMSUNG <u>no later than 30 calendar days from the date of the first consumer
18         purchaser's purchase of the Product</u>. . . . Opting out of this dispute resolution
           procedure will not affect the coverage of the Limited Warranty in any way,
19         and you will continue to enjoy the benefits of the Limited Warranty.**

20   (*Id.*) This Court must first decide whether the arbitration agreement is valid, and if so,

21   whether it is the Court's role to interpret it.

22   **II.    DISCUSSION**

23         **A.    Legal Standard**

24         In a motion to compel arbitration, the Court determines "(1) whether a valid agreement to

25   arbitrate exists and, if it does (2) whether the agreement encompasses the dispute at issue."

26   *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party

ORDER
PAGE - 3

1    seeking to compel arbitration "bears 'the burden of proving the existence of an agreement to

2    arbitrate by a preponderance of the evidence.'" *Norcia v. Samsung Telecomm. Am.*, 845 F.3d

3    1279, 1283 (9th Cir. 2017).

4         **B.    Arbitration Agreement Enforceability**

5         A valid agreement to arbitrate exists. For the reasons explained below, Defendants'

6    motions to compel arbitration are GRANTED IN PART, to the extent that the remaining

7    provisions are not substantively unconscionable.

8              1.    Plaintiffs have assented to arbitration.

9         Plaintiffs argue that they did not assent to the terms of arbitration.[1] (Dkt. No. 59 at 15,

10   20–21.) Under Washington law, a consumer "cannot successfully argue that the contract is

11   unenforceable as long as [he] was not *deprived of the opportunity* to read it." *Signavong v. Volt*

12   *Mgmt. Corp.*, 2007 WL 1813845, at *3 (W.D. Wash. June 21, 2007) (emphasis added) (citing

13   *Yakima County Fire Prot. Dist. No. 12 v. City of Yakima*, 858 P.2d 245, 255 (Wash. 1993)). For

14   instance, Washington law permits "shrink-wrap" contracts contained within a product box, even

15   if the consumer did not admit to reading that contract. In *M.A. Mortensen Company, Inc. v*

16   *Timberline Software Corp.*, the plaintiffs purchased software, and then challenged a limitation on

17   damages contained within a license that was written on the outside of diskette pouches and the

18   inside cover of the instruction manual within the software box. 998 P.2d 305, 308–09 (Wash.

19   2000). The plaintiff Mortensen argued that the purchase was an integrated contract, and thus the

20   "shrink-wrap" license was an extra term that was not assented to. *Id.* at 310–11. The court found

21   that Washington law "allow[ed] a contract to be formed 'in any manner sufficient to show

22   agreement,'" and this encompassed "layered contracts." *Id.* at 313. Thus "Mortensen's use of the

---

23   [1] As a threshold matter, Parties dispute whether California or Washington law applies to
24   Plaintiffs King and Richardson's claims. Washington courts adopt the law of the state with the
     "most significant relationship to the occurrence and the parties." *Barr v. Interbay Citizens Bank*
25   *of Tampa, Fla.*, 835 P.2d 441, 443 (Wash. 1981) (citing Restatement (Second) of Conflict of
     Laws § 6 (1971). (*See* Dkt. No. 59 at 12; Dkt. No. 65 at 10–11.) The Court need not resolve this
26   issue at this time, because the arbitration agreement is enforceable under either state's law.

ORDER
PAGE - 4

1    software constituted its assent to the agreement including the license terms." *Id.*

2         While on its facts, *Mortensen* applies to user license agreements, it applies more

3    generally to contract formation, including arbitration agreements. The court's holding relied on

4    two cases that dealt specifically with arbitration agreements that were inside packaging. In *Hill v.*

5    *Gateway 2000, Inc.*, the Seventh Circuit found that an arbitration agreement contained "in-the-

6    box" of a new computer bound the purchasers when they failed to timely return the computer

7    after receiving it. 105 F.3d 1147, 1148–50 (7th Cir. 1997); *see also Brower v. Gateway 2000,*

8    *Inc.*, 246 A.D.2d 246, 250–52 (N.Y. Sup. 1998) (finding the same with respect to the same

9    arbitration clause and packaging).

10        Here, Plaintiffs were provided at least the same notice of the agreement as the plaintiffs

11   in *Mortensen*. Plaintiffs were warned on the outside of the Note7 box that "additional Samsung

12   terms and conditions" applied to their devices. (Dkt. No. 43 at 8–9.) Each box contained a

13   brochure titled either "Product Safety and Warranty Information" (Verizon) or "Important

14   Information" (Sprint). (*Id.* at 9.) [2] At the beginning, each brochure warned the reader that "**by**

15   **using this device, you accept those [contained] terms and conditions,**" and instruct the viewer

16   to "**READ THIS INFORMATION BEFORE USING YOUR MOBILE DEVICE.**" (*Id.* at 9–

17   10.) Both the arbitration agreement and opt-out provisions were then contained within the

18   brochure. (*Id.* at 10–11.) Just like in *Mortensen*, Plaintiffs could have opened the box to find the

19   agreement, read and disagreed with the terms, and then returned the device (or opted out). While

20   the challenged agreements in *Mortensen* were directly viewable on the outside of the diskette

21   pouches within the box, 998 P.2d at 308–09, Plaintiffs had similar adequate notice that additional

22   terms and conditions existed, and should have read further to inquire. Thus, the Court finds that

23

24   [2] Plaintiff Schmidt claims that he never received a brochure in any of four Note7 boxes that he
     ultimately handled. (Dkt. No. 37 at ¶ 28). However, evidence of a consistent practice of
     delivering agreements is "prima facie evidence that [a consumer is] aware" of the offer. *Schwartz*
25   *v. Comcast Corp.*, 256 Fed. Appx. 515, 518 (3d Cir. 2007). Defendants have provided evidence
     of a consistent practice of including the brochure in every Note7 box. (Dkt. No. 43 at 16–17.)
26   Plaintiff Schmidt has not provided adequate evidence to overcome this presumption.

ORDER
PAGE - 5

1   Plaintiffs assented to arbitration under Washington law.

2        Plaintiffs' argument also fails to the extent that any claims fall under California law.

3   "[U]nder California law, mutual assent is a required element of contract formation." *Knutson v.*

4   *Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). While generally "silence or inaction

5   does not constitute acceptance of an offer," certain exceptions exist. *Norcia*, 845 F.3d at 1284.

6   Silence *may* constitute assent when (1) "the offeree has a duty to respond to an offer and fails to

7   act in the face of this duty," or (2) "the party retains the benefit offered." *Id.* at 1284–85; *see*

8   *Gentry v. Superior Court*, 165 P.3d 556, 571–72 (Cal. 2007), *abrogated on other grounds by*

9   *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (finding that the plaintiff employee

10  silently assented to arbitration when he failed to opt-out within 30 days in accordance with an

11  "easily readable, one-page form" that he signed). However, the silent offeree must

12  "reasonably . . . know that an offer ha[s] been made." *Norcia*, 845 F.3d at 1285; *see Windsor*

13  *Mills, Inc. v. Collins & Aikman Corp.*, 101 Cal. Rptr. 347, 351 (Ct. App. 1982) (finding that

14  when an arbitration agreement was "in small print" and "not conspicuous," and the plaintiff "was

15  not advised" of the agreement, the plaintiff's silence was not an assent).

16        In *Norcia*, the plaintiff purchased a Samsung phone; an arbitration agreement was in a

17  101-page "Product Safety and Warranty Information" brochure inside the phone box. 845 F.3d at

18  1282. The plaintiff's only notice that such an agreement was in the box was a statement on the

19  back of the box stating "Package Contains . . . Product Safety and Warranty Brochure," and a

20  note on the receipt stating "I understand that I am agreeing to . . . settlement of disputes by

21  arbitration." *Id.* The court found that the plaintiff had not assented to the arbitration agreement.

22  First, the plaintiff had no duty to act to avoid assent because "the outside of the . . . box did not

23  notify the consumer that opening the box would be considered agreement to the terms set forth in

24  the brochure." *Id.* at 1286–87. Second, the court found that California law had not adopted *Hill*

25  in-the-box contracts as enforceable, but even if it had, a "Product Safety and Warranty

26  Information" brochure did not notify a "reasonable person" "that the brochure contained a

1  freestanding obligation outside the scope of the warranty." *Id.* at 1287–90. *See also Noble v.*

2  *Samsung Electronics America, Inc.*, 2017 WL 838269 (3d Cir. Mar. 3, 2017) (finding that an

3  arbitration agreement located "on the ninety-seventh page of the 'Health and Safety and

4  Warranty Guide'" for a Samsung product was not binding under New Jersey law).

5     Presumably in review of an attempt to resolve the *Norcia* problems, the Ninth Circuit in

6  *Dang v. Samsung Electronics Co., Ltd.* once again considered under California law a Samsung

7  arbitration agreement that was contained within a brochure titled "Important Information for the

8  Samsung SPH-L710." 2017 WL 218896, at *1 (9th Cir. Jan. 19, 2017). The court again found

9  that Samsung failed "provide Dang with adequate notice that the information brochure contained

10  an offer to enter into a bilateral contract." *Id.* Thus, no agreement to arbitrate was formed. *Id.*

11     In the instant case, Defendants have cured many of the defects noted in *Norcia* and

12  *Dang*.[3] Whereas the *Norcia* packaging simply noted that the "Package Contains . . . Product

13  Safety & Warranty Brochure," 845 F.3d at 1282, the packaging at issue here stated that the

14  "Device purchase [is] subject to additional Samsung terms and conditions," (Dkt. No. 43 at 23),

15  thus giving the Plaintiffs notice of additional contractual *terms* and *conditions* that the *Dang*

16  plaintiff lacked. The brochure itself was labeled "Important Information," thus expanding the

17  reasonable scope of the brochure beyond just safety and warranty information. *See Norcia*, 845

18  F.3d at 1287–90. Defendants' brochure contained reference to arbitration in the table of contents

19  and on the second numbered page, (Dkt. No. 43 at 10, 21), neither of which is reflected in the

20  *Norcia* record. Plaintiffs have more notice of an arbitration agreement here than in either *Norcia*

21  or *Dang.* The Court finds that a "reasonable person" was on notice of the arbitration agreement,

22  and thus Plaintiffs assented under California law.

23     In sum, the Court finds that Plaintiffs assented under both Washington and California

24  law.

25
     _____

26  [3] Because only the Sprint Note7 phones purchased by Plaintiffs King and Richardson may be subject to California law, the Sprint packaging characteristics will be analyzed here.

ORDER
PAGE - 7

2.   <u>The arbitration agreement is unconscionable, but severable.</u>

Because Plaintiffs assented to the terms of arbitration, the Court next considers whether the terms of arbitration are unconscionable. Unconscionability is a high standard; "[t]he party resisting arbitration bears the burden of proving unconscionability." *Pinnacle Museum Tower Ass'n v. Pinnacle Market Development (US), LLC*, 282 P.3d 1217, 1232 (Cal. 2012). To find an agreement unconscionable, California law requires that both substantive *and* procedural unconscionability be present. *Id.* Under Washington law, either procedural *or* substantive unconscionability is sufficient. *Adler v. Fred Lind Manor*, 103 P.3d 773, 781–82 (Wash. 2004). The arbitration agreement at issue is substantively unconscionable, but is severable.

a.   *Procedural unconscionability*

Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *Pinnacle Museum*, 282 P.3d at 1232. However, "the mere existence of unequal bargaining power will not, standing alone, justify a finding of procedural unconscionability." *Adler*, 103 P.3d at 783. "Rather, the key inquiry for finding procedural unconscionability is whether [the plaintiff] lacked meaningful choice." *Id.*

Plaintiffs here did not "lack[] meaningful choice," whether by "oppression or surprise" or other means, when they agreed to arbitration. The agreement is not oppressive. Plaintiffs take issue that the arbitration agreement "pegs the 'arbitration to rules which might change'" by directing the reader to consult the American Arbitration Association (AAA) rules. (Dkt. No. 59 at 32–33.) However, this Court has previously held enforceable an arbitration agreement that "provide[d] the AAA's website and a toll-free telephone number, so that customers may obtain the governing rules." *Ekin v. Amazon Services, LLC*, 84 F. Supp. 3d 1172, 1174 (W.D. Wash. 2014).

Plaintiffs also argue that the agreement is "buried in the Warranty guide and its bilateral, contractual nature is hidden under the guise of a unilateral warranty that, by definition, is only

Case: 1:22-cv-05506 Document #: 40-1 Filed: 03/30/23 Page 237 of 270 PageID #:3187

Case: Case: 2:21-cv-01610 Document #: 01610 Document #: 16 Filed: 03/28/23 Page: 1 of 14 Filed: 03/28/23 Page 10 of 14 PageID #:236

1    binding on the seller." (Dkt. No. 59 at 32.) But, both Verizon and Sprint brochures state within

2    the first two pages, in bold: "**[T]his document contains important terms and conditions with**

3    **respect to your device. By using this device, you accept those terms and conditions."** (Dkt.

4    No. 43 at 9–10) (bold in original). In roughly the same location, the brochures also inform the

5    reader that the phone is "covered under the applicable Samsung Limited Warranty **INCLUDING**

6    **ITS DISPUTE RESOLUTION PROCEDURE**" and of the right to opt out. (Dkt. No. 43 at 10)

7    (bold and capitalization in original).

8         Plaintiffs also argue that procedural "surprise" exists because the agreement defines

9    "large claims" subject to AAA arbitration differently than the AAA does, and because it requires

10   the party making the claim to advance filing fees. (Dkt. No. 59 at 33.) However, this Court has

11   found that a requirement to "front the costs of arbitration" is not unconscionable. *GG v. Valve*

12   *Corp.*, 2017 WL 1210220, at *3 (W.D. Wash. Apr. 3, 2017); *see also Tompkins v. 23andMe,*

13   *Inc.*, 840 F.3d 1016, 1024–25 (9th Cir. 2016) (holding that California law did not prohibit

14   bilateral arbitration fee-shifting agreements as unconscionable).

15        As such, Plaintiffs have not shown that the arbitration agreement is procedurally

16   unconscionable.

17              b.  *Substantive unconscionability*

18        Plaintiffs point to two things as substantively unconscionable; they have met their burden

19   with at least one. The Court need not address the issue to the extent that "the claimant shall front

20   the administrative fee," because such fee can cost "$10,000 or more" if the consumer's claim is

21   over $5,000. (Dkt. No. 59 at 33.) Plaintiffs have not shown that any of them have a claim over

22   $5,000 that could potentially implicate such a fee. Rather, Plaintiffs would likely face a $200

23   filing fee, which this Court has previously upheld as enforceable. *See Valve Corp.*, 2017 WL

24   1210220, at *3; *Consumer Arbitration Rules: Costs of Arbitration*, American Arbitration

25   Association (Jan. 1, 2016), https://www.adr.org/sites/default/files/Consumer%20Fee%20

26   Schedule_0.pdf.

However, the agreement is substantively unconscionable to the extent it applies Texas law in "all disputes" subject to the agreement. (*See* Dkt. No. 59 at 34.) This Court will consider "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *See Bermudez v. PrimeLending*, 2012 WL 12893080, at *5 (C.D. Cal. Aug. 14, 2012). In *Gordon v. Lloyd Ward & Associates, P.C.*, the Washington Court of Appeals considered a Texas choice of law provision in an arbitration agreement between an online debt reduction legal services company and Washington consumer plaintiffs. 323 P.3d 1074, 1077 (Wash. Ct. App. 2014). The court found that the agreement created an attorney-client relationship, and thus it was procedurally unconscionable that the defendant company failed to advise the plaintiffs of the implications of applying Texas law. *Id.* at 1080. In dicta, the court noted without deciding that the provision was also "substantively questionable with regard to the harsh choice of law . . . provisions." *Id.*

Defendant SEA points to its "mobile division" with "operations in Texas" that render Texas a "reasonable basis for the parties' choice." (Dkt. No. 65 at 15.) This is unpersuasive. At best SEA's relationship with Texas is only tenuously established. Plaintiffs have no connection to Texas, nor is there another basis for which Texas law might reasonably apply. Thus, the term is substantively unconscionable. Severance is an appropriate remedy for a substantively unconscionable provision within a larger agreement. *See Adler*, 103 P.3d at 788. The Court accordingly SEVERS the Texas choice of law provision from the rest of the agreement. *See id.* The appropriate law to apply is determined by whichever state has the "most significant relationship" with the action. *See McKee v. AT&T Corp.*, 191 P.3d 845, 851–52 (Wash. 2008); *see also Nedlloyd Lines B.V. v. Superior Ct.*, 834 P.3d 1148, 1152 (Cal. 1992) (finding that, in the face of an invalid choice of law provision, California law would apply if California has a "materially greater interest" than the chosen state).

//

//

1      **C.      Scope of the Arbitration Agreement.**

2              1.    <u>The scope of the arbitration agreement is determined by the arbitrator.</u>

3              The Court must determine whether the arbitration agreement contemplates the dispute at

4      issue. *See Chiron Corp.*, 207 F.3d at 1130. However, "incorporation of the AAA rules constitutes

5      'clear and unmistakable' evidence that the parties intended to delegate the arbitrability question

6      to an arbitrator." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Such is the issue

7      here. The arbitration agreement incorporates the AAA rules. (Dkt. No. 43 at 26.) As discussed

8      above, such incorporation is not unconscionable. Thus, the Court finds that the agreement

9      provides "'clear and unmistakable' evidence that the parties" delegated the scope of arbitrability

10     to the arbitrator.

11             2.    <u>Plaintiffs' class claims are dismissed.</u>

12             The Federal Arbitration Act compels the Court to dismiss Plaintiffs' class claims.

13     California law does not forbid class action waivers in arbitration agreements. *AT&T Mobility*

14     *LLC v. Concepcion*, 563 U.S. 333, 352 (2011). In *AT&T* Mobility, the Supreme Court held that

15     the Federal Arbitration Act preempted the judicial rule against class action waivers. *See id.* at

16     340, 352. Plaintiffs assert that Washington law is not similarly governed. (Dkt. No. 59 at 35.)

17     The Washington Supreme Court has found that class action waivers are substantively

18     unconscionable. *Scott v. Cingular Wireless*, 161 P.3d 1000, 1008 (Wash. 2007). However, in

19     *Coneff v. AT&T Corp.*, the Ninth Circuit found that the rule in *Scott* had similar reasoning to the

20     preempted California rule, and that the "concerns underlying those two states' rules are 'almost

21     identical.'" 673 F.3d 1155, 1160 (9th Cir. 2012). Thus, the court reasoned, "if California's

22     substantive unconscionability rule is preempted by the FAA, then so is Washington's similarly

23     reasoned rule." *Id.* The Court thus GRANTS Defendant's motion to dismiss Plaintiffs' class

24     claims.

25             3.    <u>Plaintiffs' individual claims are dismissed.</u>

26             The Court has discretion to stay or dismiss litigation pending arbitration. *See Sparling v.*

ORDER
PAGE - 11

1    *Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988). While the Ninth Circuit has

2    expressed a strong preference that arbitrable cases be stayed rather than dismissed, *See Ekin v.*

3    *Amazon Services, LLC*, 2015 WL 11233144 (W.D. Wash. Feb. 10, 2015), other concerns can

4    override this preference and justify dismissal. As discussed above, to the extent that some claims

5    might be governed by California law, this Court has found that Defendants have adopted a more

6    reasonable arbitration agreement than that found in *Norcia*. However, *Norcia* ultimately

7    condemns a lower threshold of contract visibility; *Norcia* does not necessarily *approve* of

8    Defendants' current arbitration scheme. In addition, this Court interprets *Mortensen* to find that

9    Plaintiffs assented under Washington law. However, the Ninth Circuit has not properly

10    determined the scope of *Mortensen*. For these reasons, the Court finds that the potential appellate

11    value of this case overrides the "strong preference" to stay. Thus, the Court DISMISSES

12    Plaintiffs' individual claims.

13        **D.**     **SDIA and SEC are entitled to enforce SEA's arbitration agreement.**

14        A non-signatory may enforce an arbitration agreement
15        (1) when a signatory must rely on the terms of the written agreement in asserting
           its claims against the nonsignatory or the claims are intimately founded in and
16        intertwined with the underlying contract, [or] (2) when the signatory alleges
           substantially interdependent and concerted misconduct by the nonsignatory and
17        another signatory and the allegations of interdependent misconduct are founded in
           or intimately connected with the obligations of the underlying agreement.
18

19    *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (*quoting Kramer v. Toyota Motor*

20    *Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013); *see also McLeod v. Ford Motor Co.*, 2005 WL

21    3763354, at *4 (C.D. Cal. Apr. 14, 2005) (finding that when "charges against a parent company

22    and its subsidiary are based on the same facts" and the two companies are "inherently

23    inseparable," one such nonsignatory company could enforce the arbitration agreement that the

24    other signed); *cf. Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) (finding

25    that a third party could not enforce an arbitration agreement when it did not have more than an

26    "attenuated relation" to the issue or the parties).

ORDER
PAGE - 12

At least the second element is met here. Plaintiffs allege claims broadly against SEA, SEC, and SDIA. (*See* Dkt. No. 37 at ¶¶ 18–20.) The Plaintiff signatories have "allege[ed] substantially interdependent and concerted misconduct by the nonsignator[ies] and another signatory." In addition, the Court need not go beyond the terms of the agreement. The agreement applies to SEA's "affiliates." (Dkt. No. 49 at 36–37.) SEA's parent companies plainly fall within the realm of SEA's "affiliates." Thus, SEC and SDIA can enforce SEA's arbitration agreement, pursuant to both *Murphy* and the parties' own agreement.

**III.    CONCLUSION**

For the foregoing reasons, Defendants' motion to compel arbitration (Dkt. Nos. 40, 43, and 46) is GRANTED IN PART. As discussed above, the agreement's Texas choice of law provision is substantively unconscionable and SEVERED. Defendants' motion to dismiss class claims is GRANTED. Defendants' motion to stay proceedings is DENIED, and Plaintiffs' individual claims are hereby DISMISSED. Defendants' motion to dismiss (Dkt. No. 47) is DISMISSED as moot.

DATED this 25th day of May 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 13

# EXHIBIT O

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| G.T., by and through next friend Liliana T. Hanlon, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.<br><br>    Defendant. | Civil Action No: 1:21-cv-04976<br><br>Hon. Martha M. Pacold |

**DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION
AND DISMISS, OR, IN THE ALTERNATIVE, STAY PROCEEDINGS**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................... 2

    A.    The Arbitration Agreement ..................................................................... 3

    B.    The Scope of the Arbitration Agreement ................................................ 6

III.  LEGAL STANDARD ......................................................................................... 8

IV.  ARGUMENT ...................................................................................................... 8

    A.    Challenges to Enforceability Are Left to the Arbitrator ......................... 8

    B.    The Arbitration Agreement Is Valid and Enforceable ........................... 9

         1.    Plaintiff G.T. Is Bound by the Agreement Because She Did Not Disaffirm the Contract and Accepted Its Benefits ................................. 10

         2.    Plaintiff Is Bound by Her Guardian's Agreements ................................. 11

    C.    Plaintiffs Agreed to Arbitrate These Claims ......................................... 13

         1.    Plaintiffs Affirmatively Accepted the EULA and Its Arbitration Agreement ............................................................................................ 14

         2.    The Arbitration Agreement Was Explained on the Phone's Packaging and in the Terms and Conditions Insert ............................... 15

    D.    The Arbitration Agreement Encompasses Plaintiffs' BIPA Claims .................... 17

    E.    All Proceedings Should Be Dismissed, or in the Alternative, Stayed Pending Arbitration ............................................................................... 19

V.   CONCLUSION ................................................................................................. 19

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS, OR, IN THE ALTERNATIVE, STAY PROCEEDINGS

## TABLE OF AUTHORITIES

**Page**

**CASES**

*A.V., et al. v. IParadigms, LLC,*
  Civ. No. 07-0293 (E.D. Va. Mar. 11, 2008) ....................................................... 11

*Acaley v. Vimeo, Inc.,*
  464 F. Supp. 3d 959 (N.D. Ill. 2020) .................................................................. 15

*Adsit Co. v. Gustin,*
  874 N.E.2d 1018 (Ind. Ct. App. 2007) ............................................................... 12

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011) ............................................................................................... 8

*Barron v. Ford Motor Co. of Can.,*
  965 F.2d 195 (7th Cir. 1992) ................................................................................. 9

*Beture v. Samsung Elecs. Am., Inc.,*
  No. CV 17-5757 (SRC), 2018 WL 4621586 (D.N.J. July 18, 2018) ............... 13, 15

*Boomer v. AT & T Corp.,*
  309 F.3d 404 (7th Cir. 2002) .............................................................................. 13

*Buckeye Check Cashing, Inc. v. Cardegna,*
  546 U.S. 440 (2006) ............................................................................................... 8

*Bull v. Mitchell,*
  448 N.E.2d 1016 (Ill. App. Ct. 1983) ................................................................. 12

*Chopper Trading LLC v. Allston Trading LLC,*
  No. 19-CV-01674, 2021 WL 3709188 (N.D. Ill. Aug. 20, 2021) ......................... 9

*CK Witco Corp. v. Paper Allied Indus.,*
  272 F.3d 419 (7th Cir. 2001) .............................................................................. 18

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.,*
  58 F.3d 16 (2d Cir. 1995) ................................................................................... 18

*Cont'l Cas. Co. v. Am. Nat'l Ins. Co.,*
  417 F.3d 727 (7th Cir. 2005) .............................................................................. 11

*Dannewitz v. Equicredit Corp. of Am.,*
  333 Ill. App. 3d 370 (2002) ................................................................................ 13

*Dean Witter Reynolds, Inc. v. Byrd,*
  470 U.S. 213 (1985) ............................................................................................... 8

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

## TABLE OF AUTHORITIES
### (continued)

Page

*Doe #1 v. Coll. Bd.*,
    440 F. Supp. 3d 349 (S.D.N.Y. 2020)................................................................. 11

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
    885 F. Supp. 2d 894 (S.D. Ill. 2012)................................................................. 11

*Ervin v. Nokia, Inc.*,
    349 Ill. App. 3d 508 (2004) ............................................................................. 11

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995)......................................................................................... 17

*Fischer v. Instant Checkmate LLC*,
    No. 19 C 4892, 2021 WL 3033586 (N.D. Ill. July 19, 2021) .............................. 14

*Forby v. One Techs., LP*,
    2016 U.S. Dist. LEXIS 46141 (S.D. Ill. Apr. 5, 2016)......................................... 15

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012)................................................................ 14

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)........................................................................................... 19

*Hallock v. State*,
    64 N.Y.2d 224, 474 N.E.2d 1178 (1984)........................................................... 12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019)......................................................................................... 9

*Hill v. Gateway 2000, Inc.*,
    105 F.3d 1147 (7th Cir. 1997) .......................................................................... 16

*Hofer v. Gap, Inc.*,
    516 F. Supp. 2d 161 (D. Mass. 2007) ............................................................... 12

*I.C. ex rel. Solovsky v. Delta Galil USA*,
    135 F. Supp. 3d 196 (S.D.N.Y. 2015)............................................................... 10

*In re Reed*,
    532 B.R. 82 (Bankr. N.D. Ill. 2015) ................................................................. 12

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
    298 F. Supp. 3d 1285 (N.D. Cal. 2018) ........................................................... 17

## TABLE OF AUTHORITIES
### (continued)

<strong>Page</strong>

*Int'l Ins. Agency Servs., LLC v. Revios Reinsurance U.S., Inc.*,
   2007 WL 951943 (N.D. Ill. Mar. 27, 2007) .......................................................................... 13

*Jackson v. Payday Fin., LLC*,
   764 F.3d 765 (7th Cir. 2014) ............................................................................................... 8

*Johnson v. Noble*,
   240 Ill. App. 3d 731 (1992) ................................................................................................ 13

*K.F.C. v. Snap, Inc.*,
   2021 U.S. Dist. LEXIS 108695 (S.D. Ill. June 10, 2021) ..................................................... 9

*Kaufman v. Am. Express Travel Related Servs. Co.*,
   2008 WL 687224 (N.D. Ill.. Mar. 7, 2008) ......................................................................... 14

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*,
   174 F.3d 907 (7th Cir. 1999) ............................................................................................... 18

*McAllister Bros. v. A & S Transp. Co.*,
   621 F.2d 519 (2d Cir. 1980) ................................................................................................ 11

*McNamara v. Samsung Telecomms. Am., LLC*,
   No. 14 C 1676, 2014 WL 5543955 (N.D. Ill. Nov. 3, 2014) ............................................... 17

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017) .................................................................................................. 14

*Miracle-Pond v. Shutterfly, Inc.*,
   2020 WL 2513099 (N.D. Ill. May 15, 2020) ................................................................... 14, 15

*Moore v. Microsoft Corp.*,
   293 A.D.2d 587, 741 N.Y.S.2d 91 (2002) ........................................................................... 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ................................................................................................................ 18

*Motise v. Am. Online, Inc.*,
   346 F. Supp. 2d 563 (S.D.N.Y. 2004) .................................................................................. 12

*Ogden Power Dev.-Cayman, Inc. v. PMR Ltd.*,
   No. 14-cv-8169 (PKC), 2015 WL 2414581 (S.D.N.Y. May 21, 2015) ................................ 13

*ProCD v. Zeidenberg*,
   86 F.3d 1447 (7th Cir. 1996) ............................................................................................... 16

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS, OR, IN THE ALTERNATIVE, STAY
PROCEEDINGS

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004) ................................................................... 14

*Rent-A-Ctr. W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ............................................................................... 8, 9

*Schmidt v. Samsung Elecs. Am., Inc.*,
  No. C16-1725-JCC, 2017 WL 2289035 (W.D. Wash. May 25, 2017) .................................. 17

*Sheller by Sheller v. Frank's Nursery & Crafts*,
  957 F. Supp. 150 (N.D. Ill. 1997) ........................................................ 10

*Shepherd v. Shepherd*,
  97 N.E.2d 273 (Ill. 1951) ..................................................................... 10

*Smith v. Cavalry Portfolio Servs. LLC*,
  No. 20-cv-1375, 2020 WL 7682236 (N.D. Ill. Dec. 26, 2020) ............................. 8

*Soucy v. Capital Mgmt. Servs., L.P.*,
  No. 14 C 5935, 2015 WL 404632 (N.D. Ill. Jan. 29, 2015) ................................ 19

*Sportvision, Inc. v. MLB Advanced Media, LP*,
  2020 WL 1957450 (S.D.N.Y. 2020) ......................................................... 18

*Stone v. Doerge*,
  328 F.3d 343 (7th Cir. 2003) .............................................................. 14

*Taylor v. Samsung Elecs. Am.*,
  No. 16 C 50313, 2018 WL 3921145 (N.D. Ill. Aug. 16, 2018) ................... 12, 13, 17

*Tinder v. Pinkerton Sec.*,
  305 F.3d 728 (7th Cir. 2002) .............................................................. 3

*Velasquez-Reyes v. Samsung Elecs. Am., Inc.*,
  No. EDCV161953DMGKKX, 2020 WL 6528422 (C.D. Cal. Oct. 20, 2020) ..................... 13

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
  417 F.3d 682 (7th Cir. 2005) .............................................................. 8

**STATUTES**

740 ILCS 14/1 *et seq.*............................................................................ 1, 2

9 U.S.C. § 3 ......................................................................................... 8, 19

9 U.S.C. § 4 ......................................................................................... 8

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS, OR, IN THE ALTERNATIVE, STAY
PROCEEDINGS

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

9 U.S.C. §§ 1-14 ............................................................................................................ 1

**OTHER AUTHORITIES**

1 Restatement (Second) of Agency § 140) ................................................................ 12

**RULES**

Fed. R. Civ. P. 12(b)(3)................................................................................... 1, 2, 8, 19

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS, OR, IN THE ALTERNATIVE, STAY
PROCEEDINGS

Defendant Samsung Electronics America, Inc. ("Samsung") pursuant to Rule 12(b)(3) and the Federal Arbitration Act, 9 U.S.C. §§ 1-14, moves this Court for an order to compel arbitration and dismiss or stay this action.

## I.    INTRODUCTION

In this putative class action lawsuit, Plaintiff alleges that a software application ("Gallery App") on her Samsung Galaxy A20 phone ("A20") allegedly uses "biometric identifiers" or "biometric information" to sort photos she took with the phone, which Plaintiff claims violates the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*.  But under both Samsung's End User License Agreement for Software ("EULA") and the Terms and Conditions that generally apply to the use of the A20, all disputes arising in any way from the use of the A20 must be resolved through individual arbitration.

Plaintiff G.T. or the Plaintiff's guardian Liliana Hanlon (collectively, "Plaintiffs") expressly agreed to the EULA, including its Arbitration Agreement, when the A20 was activated. Specifically, as part of the A20's clickwrap set-up process—which must be completed *before* it can be used—Plaintiffs were presented with, and affirmatively accepted, Samsung's EULA.  That EULA includes an Arbitration Agreement, requiring Plaintiffs' claims to "be resolved exclusively through final and binding arbitration[.]"  And while the Arbitration Agreement allows users to opt out within 30 days, Plaintiffs did not do so.

In addition to the Arbitration Agreement that Plaintiffs electronically accepted as part of the A20's clickwrap set-up process, Plaintiffs are bound by a virtually identical agreement in the A20's Terms and Conditions.[1]  Plaintiffs were notified through multiple methods—in bold font on

---

[1] Collectively, the arbitration agreement in the EULA and virtually identical agreement in the Terms and Conditions will be referred to as the "Arbitration Agreement" for ease of use.  The only difference between the two arbitration provisions is a reference to Samsung's right to apply for injunctive relief in the EULA

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

the A20's exterior packaging, as well as in printed Terms and Conditions found in the phone's box and posted on Samsung's website—that by using the phone they were agreeing to arbitration. *See* Cantwell Decl. ¶ 8; Annex A ("**If you open the package, use or retain the device, you accept Samsung's Terms and Conditions, including an Arbitration Agreement.**").

Finally, Plaintiffs cannot use G.T.'s status as a minor to avoid the Arbitration Agreement. If G.T. set up the phone, she is bound under equitable principles because she has not disaffirmed the contract and, instead, continued to accept the contract's benefits by using the device. And if her guardian set up the phone, G.T. is bound by her guardian's acceptance of the Arbitration Agreement under both the theory of agency and the third-party beneficiary doctrine. Plaintiffs must arbitrate the claims in this case—as they explicitly agreed to do when they bought and activated Plaintiff's phone. Dismissal under Rule 12(b)(3), or a stay pending arbitration, is therefore warranted.

## II.     <u>FACTUAL BACKGROUND</u>

Plaintiff G.T. is an eleven-year-old who uses a Samsung Galaxy A20 phone. FAC ¶ 10. Plaintiff G.T., through her "next friend" and guardian Liliana Hanlon, purports to bring a class action based on the contention that her phone's pre-loaded Gallery software application, known as the "Gallery App," stored and sorted "face templates" from photos taken on her phone in violation of Illinois' Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.* Plaintiff's claims fail on the merits for a host of reasons: (1) the "face template" data used by the Gallery App on her phone does ***not*** constitute "biometric information" or "biometric identifiers" under BIPA, (2) Samsung does ***not*** collect or store that data, and (3) Plaintiffs' class allegations fail for multiple reasons, not least because the claims would require an individualized evaluation of pictures taken

---

that is not also contained in the Terms and Conditions. *See* Declaration of Nicole Cantwell ISO Samsung's Motion to Compel Arbitration ("Cantwell Decl.") ¶ 25.

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

on every Galaxy A20 phone.  However, this Court need not consider the merits of Plaintiffs' claims because the claims do not belong in court at all:  they belong in arbitration.

### A.   The Arbitration Agreement

The Complaint does not allege exactly when or how Plaintiffs came to own the A20.  But for the phone to be activated and used, Plaintiffs accepted Samsung's EULA (covering the device's operating system) because they were required to do so as part of the A20's clickwrap set-up process before using the phone.  Plaintiffs also accepted the Terms and Conditions (covering the product usage as a whole) when they opened the box and began using the device.  Both the Terms and Conditions and the EULA included the Arbitration Agreement.  *See* Cantwell Decl. ¶ 25.[2]  Plaintiffs were repeatedly informed on the box, inside the box, and during the clickwrap set-up process about the Arbitration Agreement, and they accepted that Arbitration Agreement by using the device and completing the clickwrap set-up process.

Plaintiffs were first explicitly told that they were agreeing to arbitration before they even opened the A20's box.  Plaintiffs do not allege which carrier (e.g., T-Mobile, Verizon) was affiliated with her A20, but the exterior packaging for all carriers' phones used substantially similar language.  *See* Cantwell Decl. ¶ 10.  For example, as set out in the image in Appendix A, the back of the T-Mobile[3] (the largest carrier in the country) A20 box notified Plaintiffs, under a bold, all-caps header:

**IMPORTANT INFORMATION**

---

[2] On a motion to compel arbitration under the FAA and ruling on a Rule 12(b)(3) motion to dismiss for improper venue, a district court may consider documents outside and integral to the pleadings, such as the agreements giving rise to the alleged obligation to arbitrate.  *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735–36 (7th Cir. 2002).

[3] Likewise, the exterior packaging of Verizon's Galaxy A20 states "**IMPORTANT INFORMATION If you use or retain the device, you accept Samsung's Terms and Conditions, including an Arbitration Agreement. Full terms, warranty and opt-out information are at www.samsung.com/us/Legal/Phone-HSGuide/, the enclosed materials & device settings.**" *Id.* ¶ 10.

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

> **If you open the package, use or retain the device, you accept Samsung's Terms and Conditions, including an Arbitration Agreement. Full terms, warranty and opt-out information are at www.samsung.com/us/Legal/Phone-HSGuide/, the enclosed materials & device settings.**

*Id.* ¶ 8. And upon opening the box, Plaintiffs received a printed copy of Samsung's six-page Terms and Conditions insert. *Id.* ¶ 12. Those same Terms and Conditions were also made available both on Samsung's website and pre-loaded on the device in the Settings folder. *Id.* ¶¶ 17, 40. As set out in the image in Appendix B, the first page of the Terms and Conditions instructs the user in bold font to:

> **TERMS & CONDITIONS / HEALTH & SAFETY INFORMATION**
> **Read this document before opening the mobile device, accessories, or software (defined collectively and individually as the "Product") and keep it for future reference. This document contains important Terms and Conditions. Electronic acceptance, opening the Product packaging, use of the Product or retention of the Product constitutes acceptance of these Terms and Conditions.**

*Id.* ¶ 14.

Immediately following the first page and Table of Contents, users are informed of the Arbitration Agreement, and opt-out availability, in bolded text:

> **Important Legal information**
>
> **READ THIS INFORMATION BEFORE USING YOUR MOBILE DEVICE.**
>
> **Arbitration Agreement – This Product is subject to a binding arbitration agreement between you and SAMSUNG ELECTRONICS AMERICA, INC. ("Samsung'). You can opt out of the agreement within 30 calendar days of the first consumer purchase by emailing optout@sea.samsung.com or calling 1-800-SAMSUNG (726-7864) and providing the applicable information. For complete terms and conditions that bind you and Samsung, refer to the "Arbitration Agreement" section of this document.**

*Id.* ¶ 15; Appendix C. Users also are directed to an online version of the Arbitration Agreement and EULA with the full URLs for those documents below the prompt: "The full Arbitration Agreement, Standard One-year Limited Warranty, End User License Agreement (EULA), and Health & Safety information for your device are available online." *Id.*

Still further, users are informed that the Terms and Conditions, Arbitration Agreement, and End User License Agreement can be found on the device itself: "The full Arbitration Agreement, Standard Limited Warranty, End User License Agreement (EULA) and Health & Safety Information are also available on the device, in the Samsung legal section of Settings," with a detailed description on how users could access those materials in the A20's "Settings" folder. *Id.* ¶ 18.

To activate and use the A20, users must complete an electronic device set-up process the first time the phone is turned on. *Id.* ¶ 19. The set-up process requires clicking through a series of interactive screens, and the first interactive screen includes a hyperlink to the full version of the EULA: "By continuing, you agree to the **End User License Agreement** …." *Id.* ¶ 21; Appendix D. Beneath this text, by clicking "Next," Plaintiffs agreed to the terms of the EULA. *Id.* Only after doing so, they were able move onto the next interactive screen to finish setting up the Galaxy A20. *Id.* As set out in Appendix E, the first page of the EULA instructs the user:

> READ THIS INFORMATION BEFORE USING YOUR PRODUCT.
>
> **Please read this document before operating your device, accessories or software (for purposes of this document, defined collectively and individually as "Product") and keep it for future reference. This document contains important terms and conditions with respect to the Product. Retaining or using this Product constitutes acceptance of these terms and conditions and agreement to be bound by them.**

*Id.* ¶ 22.

Because Plaintiff G.T. alleges that she used her A20 to "take photos of herself and other people," FAC ¶ 57, the set-up process was completed—which means that Plaintiffs accepted the Arbitration Agreement. But Plaintiffs do not allege specifically who purchased the phone and completed that set-up process. That said, if G.T. herself did so, then by doing so she represented that she "reviewed this EULA with your parent or legal guardian and that you and your parent or

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

guardian understand and consent to the terms and conditions of this EULA." *Id.* ¶ 24. She also effectively represented that she was thirteen or older, because the EULA contains an explicit recitation that minors under the age of 13 are not allowed to use the software at issue here. *See id.* ("If you are under the age of 13, you may not license or use this software."). And if the guardian, Ms. Hanlon, completed the process, then as "a parent or guardian permitting a Minor to use the Product, [she] agree[d] to ... assume responsibility and be bound by this EULA for the Minor's access and use of the Product." *See id.* ¶ 23.

Plaintiffs were presented with the Arbitration Agreement contained in both the Terms and Conditions and the EULA—and given the opportunity to opt out of arbitration—on multiple occasions. And at each stage, Plaintiffs *accepted* the Arbitration Agreement, including by: (1) opening the box and using the A20 after the box told them that doing so would bind them; (2) using and keeping the A20 after the in-box Terms and Conditions told them doing so amounted to acceptance; and (3) completing the mandatory clickwrap set-up process of the A20 and thereby accepting the EULA.

### B. The Scope of the Arbitration Agreement

The relevant Arbitration Agreement language is broad and requires arbitration of all disputes related to the Gallery App and other activities on the phone. For example, the first paragraph of the Arbitration Agreement reiterates the binding nature of the agreement:

**ARBITRATION AGREEMENT**
This is a binding legal agreement ("Agreement") between you (either an individual or entity) and Samsung.[4] Opening the product packaging, use of the Product, or

---

[4] The Arbitration Agreement also covers Samsung Electronics America, Inc. as a wholly owned subsidiary of Samsung Electronics Co., Ltd ("SEC"). The EULA explains the scope of the agreement on its first page: "This EULA is a legal agreement between you (either an individual or a single entity) and Samsung Electronics Co., Ltd. ("Samsung," "we," "us") for software, whether pre-installed or downloaded, owned by Samsung and/or its affiliated companies and its third party suppliers and licensors." See *id.* ¶ 29. Accordingly, since Defendant Samsung Electronics America, Inc. is a wholly owned subsidiary of SEC, it is an "affiliated company" and thus it is covered by the EULA as well.

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

retention of the Product constitutes acceptance of this Agreement, regardless of whether you are the original purchaser, user, or other recipient of the Product.

*Id.* ¶ 26.  And the next paragraph sets forth its substantive terms, including a class action wavier:

> You and Samsung each agree that, subject to Samsung's right to apply for injunctive remedies set forth in Paragraph 15 above, all disputes between you and Samsung relating in any way to or arising in any way from the Standard Limited Warranty or the sale, condition or performance of the Product shall be resolved exclusively through final and binding arbitration, and not by a court or jury.  Any such dispute shall not be combined or consolidated with a dispute involving any other person's or entity's product or claim, and specifically, without limitation of the foregoing, shall not under any circumstances proceed as part of a class action.  The arbitration shall be conducted before a single arbitrator, whose award may not exceed, in form or amount, the relief allowed by the applicable law.

*Id.* ¶ 27.  Those terms encompass Plaintiffs' claims because those claims are all based on the use of the Gallery App, which is "Samsung Software" under the EULA.  *See id.* ¶ 28 ("Samsung Software" includes Samsung applications that are included with or downloaded on the device prior to sale).  Thus, Plaintiffs agreed to arbitrate exactly the kinds of claims set out in the Complaint— i.e., "disputes between [Plaintiff] and Samsung relating in any way or arising in any way from … Samsung Software …."  *See id.* ¶ 27.

Nor did Plaintiffs opt out of arbitration.  The Arbitration Agreement notifies consumers, in bold font, of their opt out rights:

> **You may opt out of this Agreement by providing notice to Samsung no later than 30 calendar days from the date of the first consumer purchaser's purchase of the Product.  To opt out, you must send notice by e-mail to optout@sea.samsung.com, with the subject line:  "EULA Arbitration Opt Out."**

*Id.* ¶ 31. Also, the Arbitration Agreement allows opt out by phone.  *Id.*  But Plaintiffs do not allege that they opted out of the Arbitration Agreement, and Samsung has confirmed that it has no record that they did so.  *See id.* ¶ 43.

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

### III.   LEGAL STANDARD

Pursuant to the Federal Arbitration Act (the "FAA"), where an action has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration, upon motion of a party, a court shall stay the trial of that action until the arbitration has been held in accordance with the terms of the agreement." 9 U.S.C. § 3.  This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).  The Seventh Circuit has held that a motion to compel arbitration is a Rule 12(b)(3) motion for improper venue. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014).

Under the FAA, the Court must compel arbitration if:  (1) a valid agreement to arbitrate exists, (2) the dispute falls within the scope of the agreement, and (3) the non-moving party has refused to arbitrate. *Smith v. Cavalry Portfolio Servs. LLC*, No. 20-cv-1375, 2020 WL 7682236, at *1 (N.D. Ill. Dec. 26, 2020), citing 9 U.S.C. § 4; *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (arbitration is mandatory under these circumstances).  This case meets all three requirements.

### IV.   ARGUMENT

#### A.   Challenges to Enforceability Are Left to the Arbitrator

The Supreme Court has held that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006); *Rent-A-Ctr. W., Inc. v. Jackson*, 561 U.S. 63, 71-73 (2010) (requiring basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene).  Even where a party opposing arbitration specifically challenges the arbitration provision, disputes regarding enforceability are for the arbitrator to

-8-

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

decide where "the parties have demonstrated, clearly and unmistakably that it is their intent to" delegate such questions to the arbitrator. *Rent-A-Ctr.*, 561 U.S. at 79-80; *see also K.F.C. v. Snap, Inc.*, 2021 U.S. Dist. LEXIS 108695, at *3 (S.D. Ill. June 10, 2021) (referring the question of an arbitration agreement's enforceability to a minor to the arbitrator because there was a valid delegation clause contained in the AAA arbitration rules); *Chopper Trading LLC v. Allston Trading LLC*, No. 19-CV-01674, 2021 WL 3709188, at *7 (N.D. Ill. Aug. 20, 2021).

Here, the Arbitration Agreement expressly incorporates the American Arbitration Association's ("AAA") Supplementary Procedures for Consumer-Related Disputes, and specifically AAA's rule that "[t]he arbitrator shall decide all issues of interpretation and application of this Agreement." Cantwell Decl. ¶ 33; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (instructing that "a court possesses no power to decide" arbitrability issues where an agreement contains a delegation clause). Accordingly, the parties have agreed that all challenges to the Arbitration Agreement are to be determined by the arbitrator. Thus, the arbitrator—not the Court—should determine the validity of the Arbitration Agreement, including the impact (if any) of Plaintiff G.T.'s minor status.

### B. The Arbitration Agreement Is Valid and Enforceable

Even if the Court were to reach the arbitrability question and consider challenges to the Arbitration Agreement, it should find that the Arbitration Agreement is valid and enforceable. As set out in more detail in Section C below, Plaintiffs—regardless of their status—affirmatively accepted the EULA and Terms and Conditions. That acceptance is binding on Plaintiff G.T. (and her guardian), making arbitration the proper forum to hear this dispute.[5]

---

[5] Samsung principally addresses Illinois law, which is the law of the forum, because no relevant conflict exists between Illinois and New York on the relevant issues (the Arbitration Agreement's choice-of-law provision selects New York law). *See* Cantwell Decl. ¶ 34; *see also Barron v. Ford Motor Co. of Can.*, 965 F.2d 195, 197 (7th Cir. 1992) ("[B]efore entangling itself in messy issues of conflict of laws a court

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

**1.    Plaintiff G.T. Is Bound by the Agreement Because She Did Not Disaffirm the Contract and Accepted Its Benefits**

The Arbitration Agreement remains a valid and enforceable agreement despite Plaintiff G.T.'s minority status because she continued to use her phone and did not disaffirm the Arbitration Agreement that governs the device and its software.  A contract entered into by a minor is not per se invalid or void; rather, the contract is voidable by the minor if the minor disaffirms the contract. *See Shepherd v. Shepherd*, 97 N.E.2d 273, 279 (Ill. 1951).  That is because, under Illinois law, "the privilege of minority ... is to be used as a shield and not as a sword" since a minor's right to disaffirm a contract before achieving majority "should be exercised with some regard to the rights of others, certainly with as much regard to those rights as is fairly consistent with adequate protection of the rights of the minor himself."  *Id*. at 282; *accord I.C. ex rel. Solovsky v. Delta Galil USA*, 135 F. Supp. 3d 196, 209 (S.D.N.Y. 2015).

This principle means that minors cannot escape arbitration provisions in contracts that they accept the benefits of, as is the case here.  For example, in *Sheller by Sheller v. Frank's Nursery & Crafts*, a court in this District mandated arbitration of minor plaintiffs' claims against their former employer based on an arbitration provision in their employment contract.  957 F. Supp. 150 (N.D. Ill. 1997).  The *Sheller* court held that the minor could not disaffirm a contract with an arbitration provision because their claims depended on their employment, which only existed because of the contract.  Because they accepted the benefits of the employment agreement, the plaintiffs could not disaffirm the arbitration provision they wished to avoid.  Multiple other courts, including in New York, have rejected similar attempts by minors to avoid arbitration clauses and other contractual conditions where, as is the case here, the minors accepted the benefits of those

---

ought to satisfy itself that there actually is a difference between the relevant laws of the different states."). Samsung also cites relevant New York authority on enforcing arbitration clauses where appropriate to show the lack of conflict.

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

contracts. *See Doe #1 v. Coll. Bd.*, 440 F. Supp. 3d 349, 355 (S.D.N.Y. 2020) (enforcing arbitration provision against a minor because a valid contract was never disaffirmed and "New York law offers minors the right to disaffirm a contract, not to find that no enforceable contract exists"); *A.V., et al. v. IParadigms, LLC*, Civ. No. 07-0293 (E.D. Va. Mar. 11, 2008) (minors who entered into valid clickwrap agreement accepted the benefits of the agreement and could not escape agreement's liability waiver); *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 896 (S.D. Ill. 2012) (under California law, Facebook's forum selection clause was enforceable because "[m]inors must either accept or repudiate the entire contract, and they cannot retain the contract's fruits and at the same time deny its obligations").

Plaintiff G.T. accepted the benefits of the contract (the EULA and Terms and Conditions)—and more importantly has not repudiated or disaffirmed it. By setting up her device, Plaintiff G.T. necessarily accepted the EULA and the Arbitration Agreement. After setup, Plaintiff G.T. did not repudiate or disaffirm the contract. Instead, she kept using the device—including *after* learning how the Gallery App allegedly functions. *E.g.*, FAC ¶ 57 ("[Plaintiff] owns a Samsung Galaxy A20[.]"); *id.* ¶ 64. She thus "cannot retain the contract's fruits and at the same time deny its obligations." *E.K.D.*, 885 F. Supp. 2d at 896. The Arbitration Agreement remains valid, enforceable, and binding as to Plaintiff G.T.

## 2. Plaintiff Is Bound by Her Guardian's Agreements

If (on the other hand) G.T.'s guardian Ms. Hanlon purchased and set up the phone—thereby accepting the EULA and Terms and Conditions—then Plaintiff G.T. is bound by her legal guardian's consent to arbitration under both the theory of agency and the third-party beneficiary doctrine. *See Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 734-35 (7th Cir. 2005), citing *Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508, 514 (2004); *McAllister Bros. v. A & S Transp. Co.*, 621 F.2d 519, 524 (2d Cir. 1980).

First, Plaintiff G.T. is bound by her legal representative's acceptance of the EULA and its Arbitration Agreement because her guardian was her agent for the purposes of the agreement and the use of the device.  Under Illinois law, "[a] party to a contract need not personally participate in its formation where he is represented by an agent.  An agent may bind his principal contractually upon proof of the agency relationship and proof that the agent had authority to bind his principal in contract." *In re Reed*, 532 B.R. 82, 97 n.7 (Bankr. N.D. Ill. 2015) (quoting *Bull v. Mitchell*, 448 N.E.2d 1016, 1023 (Ill. App. Ct. 1983) (citing 1 Restatement (Second) of Agency § 140)).[6]  And multiple courts have specifically applied agency principles to bind minors to digital terms and conditions that were accepted by their parents.  In *Motise v. America Online, Inc.*, for example, the court held that a minor plaintiff who used his stepfather's AOL account was bound to the forum-selection provision in the AOL member agreement because "[a]ny other conclusion would permit individuals to avoid the Defendant's Terms of Service simply by having third parties create accounts and then using them as the Plaintiff did."  346 F. Supp. 2d 563, 566 (S.D.N.Y. 2004). *See also Hofer v. Gap, Inc.*, 516 F. Supp. 2d 161, 175-76 (D. Mass. 2007) (plaintiff bound by Expedia's terms and conditions purchased by companion because "the person booking the tickets is acting as an agent on behalf of the other members of the traveling party"); *Adsit Co. v. Gustin*, 874 N.E.2d 1018, 1023-24 (Ind. Ct. App. 2007) (forum selection clause in online agreement enforceable because daughter-in-law provided credit card to mother-in-law for purchase and thereby gave her mother-in-law "actual authority to engage in the transaction on her behalf"); *see generally Taylor v. Samsung Elecs. Am.*, No. 16 C 50313, 2018 WL 3921145, at *5 (N.D. Ill. Aug. 16, 2018) ("[b]ecause a principal is bound under the terms of a valid arbitration clause, its agents,

---

[6] Similarly, under New York law an agent has the authority to bind her principal when the agent's conduct on behalf of the principal reasonably would lead the third party to believe the agent had authority to enter into the contract.  *See Hallock v. State*, 64 N.Y.2d 224, 231-32, 474 N.E.2d 1178 (1984).

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

employees, and representatives are also covered under the terms of such agreements") (internal citations omitted). The same is true here—G.T. should be bound by her representative's acceptance of the Arbitration Agreement.

Second, Plaintiff G.T. is bound by the Arbitration Agreement because she is the third-party beneficiary of the EULA that contains the Arbitration Agreement. "Where it is shown that the signatories to the agreement intended that the nonsignatories were to derive benefits from the agreement and where the arbitration clause itself is susceptible to this interpretation, then arbitration is proper." *Dannewitz v. Equicredit Corp. of Am.*, 333 Ill. App. 3d 370, 373 (2002), citing *Johnson v. Noble*, 240 Ill. App. 3d 731, 735-36 (1992).[7] Here, the EULA contemplates the use of the device and software contained within the device. *See* Cantwell Decl. ¶ 29. And to the extent Ms. Hanlon accepted that agreement so that Plaintiff G.T. could receive the benefits of the contract (i.e., use the phone), Plaintiff G.T. is a third-party beneficiary and thus bound by the EULA and its Arbitration Agreement.[8]

## C. Plaintiffs Agreed to Arbitrate These Claims

In addition to accepting the Arbitration Agreement included in the EULA, Plaintiffs agreed to arbitrate all disputes with Samsung, including those at issue in this purported class action as

---

[7] *See also, e.g.*, *Int'l Ins. Agency Servs., LLC v. Revios Reinsurance U.S., Inc.*, 2007 WL 951943, at *3, 5 (N.D. Ill. Mar. 27, 2007); *Ogden Power Dev.-Cayman, Inc. v. PMR Ltd.*, No. 14-cv-8169 (PKC), 2015 WL 2414581, at *9 (S.D.N.Y. May 21, 2015); *Spano v. V & J Nat'l Enters.*, LLC , 264 F. Supp. 3d 440, 453 (W.D.N.Y. 2017).

[8] Even if a salesperson helped Plaintiffs activate the phone, the Arbitration Agreement—in the packaging, the in-box Terms and Conditions, and accepted as part of the EULA during setup—are still enforceable because Plaintiffs were on notice of the clause and continued to use the device. *See Boomer v. AT & T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002); *Taylor*, 2018 WL 3921145, at *3; *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. EDCV161953DMGKKX, 2020 WL 6528422, at * 4 (C.D. Cal. Oct. 20, 2020) (enforcing arbitration clause because plaintiff had reasonable inquiry notice as to its terms even though he authorized the T-Mobile representative to click through activation page); *Beture v. Samsung Elecs. Am., Inc.*, No. CV 17-5757 (SRC), 2018 WL 4621586, at *6 (D.N.J. July 18, 2018) ("Even when a carrier store representative performed the [] initialization, a smartphone user still has reasonable notice that use of the device is subject to terms and conditions.").

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

contained in the Terms and Conditions.  There is no doubt that Samsung provided clear and proper notice of the existence of the obligation to arbitrate all disputes, including:  (1) on the phone's box; (2) in the printed Terms and Conditions insert included with the phone; and (3) pre-loaded on the phone itself (and available on Samsung's website).[9]

### 1. Plaintiffs Affirmatively Accepted the EULA and Its Arbitration Agreement

Plaintiffs agreed to Samsung's EULA (which contained the Arbitration Agreement) during the phone's set-up process.  Like traditional contracts, digital agreements require mutual assent. *Fischer v. Instant Checkmate LLC*, No. 19 C 4892, 2021 WL 3033586, at * 5 (N.D. Ill. July 19, 2021); *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) ("While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract.").  And clicking "I agree" is unquestionably "affirmative consent"—"[c]ourts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of the agreement by clicking 'I agree.'"  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017); *see also Fischer*, 2021 WL 3033586, at * 5 (finding valid clickwrap agreement when plaintiff registered their account on webpage instructing that "By clicking 'Continue' you represent that you ... have agreed to our terms of use ....); *Miracle-Pond v. Shutterfly, Inc.*, 2020 WL 2513099, at *4 (N.D. Ill. May 15, 2020).

Here, Plaintiffs agreed to Samsung's EULA through "affirmative assent and affirmative action," *Miracle-Pond*, 2020 WL 2513099, at *5, by clicking "Next" when prompted with the

---

[9] While the Arbitration Agreement's choice-of-law provision selects New York law, "the court must determine whether the parties have a valid contract." *Kaufman v. Am. Express Travel Related Servs. Co.*, 2008 WL 687224, at *3 (N.D. Ill. Mar. 7, 2008).  And here, Illinois law governs that issue. *See Stone v. Doerge*, 328 F.3d 343, 345 (7th Cir. 2003).  That said, New York law on "shrinkwrap" and "clickwrap" contracts accords with Illinois. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 836-37 (S.D.N.Y. 2012); *Moore v. Microsoft Corp.*, 293 A.D.2d 587, 741 N.Y.S.2d 91 (2002).

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

message that "[by] continuing, you agree to the **End User License Agreement** …."  *See* Cantwell Decl. ¶ 21; Appendix D.  Courts have enforced other "clickwrap" agreements in similar circumstances.  In *Miracle-Pond*, for example, a court in this District held that a Shutterfly customer assented to the clickwrap contract when she clicked the button "Accept" accompanied by the prompt that she "agreed to use … Shutterfly … in accordance with Shutterfly's Terms of Use."  2020 WL 2513099, at *1.  Similarly, in *Acaley v. Vimeo, Inc.*, the user was found to be bound by Vimeo's terms and conditions after clicking the prompt "[b]y continuing I agree to the terms" because that process "would place a reasonable person on notice that there were terms and conditions connected to his or her continued use of the app."  464 F. Supp. 3d 959, 966 (N.D. Ill. 2020).  And in *Beture*, 2018 WL 4621586, at *7, the court held that the ***same*** Samsung EULA was binding on a plaintiff who clicked through the *same* setup process at issue here.  *See also Forby v. One Techs., LP*, 2016 U.S. Dist. LEXIS 46141, at *2-3 (S.D. Ill. Apr. 5, 2016) (enforcing online agreement where plaintiff was notified; "By clicking on the 'Continue' button below, you agree to the Offer Details, to the Terms and Conditions, acknowledge receipt of our Privacy Policy and agree to its terms….").  Just as in those cases, Plaintiffs here affirmatively agreed to arbitrate their claims.

## 2.    The Arbitration Agreement Was Explained on the Phone's Packaging and in the Terms and Conditions Insert

When Plaintiffs purchased and used their Galaxy A20, the Terms and Conditions, including the Arbitration Agreement, became effective.  Plaintiffs were prominently notified—both on the Galaxy A20's box and in the Terms and Conditions insert—that using or retaining the phone constituted acceptance of the Terms and Conditions, including the Arbitration Agreement.

It is commonplace in modern consumer transactions for terms and conditions to be included in the box for a product.  The Seventh Circuit has consistently held that a consumer can be bound

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

by an arbitration agreement included in a product's terms and conditions by purchasing and using a defendant's device if proper and sufficient notification is provided to the consumer of the existing and binding nature of such arbitration agreements. *See ProCD v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996) (explaining that consumers agree to terms when the seller provides "notice on the outside of the box" and "Terms on the inside," sometimes referred to as a "shrinkwrap" agreement). The Seventh Circuit's decision in *Hill v. Gateway 2000, Inc*., is a seminal and binding case on this issue. In *Hill*, the plaintiffs ordered a computer over the phone, which they later received in a box that also contained "a list of terms"—including an arbitration clause—"said to govern unless the customer returns the computer within 30 days." 105 F.3d 1147 (7th Cir. 1997). After Gateway invoked the binding arbitration clause, the Seventh Circuit noted that many commercial transactions exist in which people pay for products with terms to follow. *Id.* at 1148. Recognizing this reality, the Seventh Circuit acknowledged the benefits to consumers and sellers alike of "approve-or-return" terms and conditions included in or on product packaging and received after a purchase:

> Practical considerations support allowing vendors to enclose the full legal terms with their products. Cashiers cannot be expected to read legal documents to customers before ringing up sales.... Customers as a group are better off when vendors skip costly and ineffectual steps ... and use instead a simple approve-or-return device. Competent adults are bound by such documents, read or unread.

*Id.* at 1149. Ultimately, the Seventh Circuit in *Hill* enforced the arbitration agreement found inside the box—even though the plaintiffs had not seen it before or when they purchased the product— because having a reasonable opportunity to reject the terms is sufficient. *Id.* In line with the *Hill* decision, numerous courts have also enforced both "shrinkwrap" and "inside the box" Samsung

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

arbitration agreements where the relevant terms and conditions were conspicuously provided to users when they obtained the devices.[10]

Like *Hill,* the Terms and Conditions, including the Arbitration Agreement, were conspicuously noted on the box for the Galaxy A20 in bold font: "**If you open the package, use or retain the device, you accept Samsung's Terms and Conditions, including an Arbitration Agreement.**" *See* Cantwell Decl. ¶ 8; Appendix A. Likewise, the physical insert of the Terms and Conditions, including the Arbitration Agreement, stated, "**[u]se of the Product or retention of the Product constitutes acceptance of these Terms and Conditions.**" *See id.* ¶¶ 13, 26. And the terms of the Arbitration Agreement were also available on the phone itself, as well as on Samsung's website. *See id.* ¶¶ 17, 40. As was true for each of the Samsung authorities in footnote 10, the Terms and Conditions, including the Arbitration Agreement, are enforceable against Plaintiffs. Plaintiffs received clear notice of the Arbitration Agreement's terms, and they accepted those terms by opening the box and by using the phone. *See id.* ¶ 7.

**D.      The Arbitration Agreement Encompasses Plaintiffs' BIPA Claims**

As set out above, the scope of the Arbitration Agreement—including whether it encompasses Plaintiffs' claims—is an issue that should be resolved by the arbitrator. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995). But to the extent the Court reaches that

---

[10] *See In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1300 (N.D. Cal. 2018) (arbitration clause binding because plaintiff received notice of arbitration clause and opt-out option in multiple ways); *Taylor*, 2018 WL 3921145, at *4 (enforcing Samsung's shrinkwrap arbitration agreement because the terms and conditions were provided to plaintiff in numerous different ways); *McNamara v. Samsung Telecomms. Am., LLC*, No. 14 C 1676, 2014 WL 5543955, at *1 (N.D. Ill. Nov. 3, 2014) (holding that smartphone's product user guide provided reasonable notice of the arbitration clause); *Schmidt v. Samsung Elecs. Am., Inc.*, No. C16-1725-JCC, 2017 WL 2289035, at *3-4 (W.D. Wash. May 25, 2017) (relying on *Hill* and *ProCD* to enforce shrinkwrap agreement to arbitrate for a different Samsung smartphone under California and Washington law); *In re Samsung Galaxy*, 298 F. Supp. 3d at 1300 (enforcing a shrinkwrap arbitration clause similar to the one at issue here against certain plaintiffs because the materials "direct[] the consumer to read the important legal information and notes in bold that arbitration applies … and includes the capitalized arbitration provision and the bolded procedure describing how to opt out").

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

question, it should be clear that the Arbitration Agreement *does* encompasses all of the claims asserted in this case because all of those claims stem from Plaintiff's use of the Gallery App. Because the FAA reflects a "liberal federal policy favoring arbitration agreements," "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also CK Witco Corp. v. Paper Allied Indus.*, 272 F.3d 419, 421–22 (7th Cir. 2001) ("[W]hen a contract contains an arbitration clause, a strong presumption in favor of arbitration exists and courts have no choice but to order arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."); *Sportvision, Inc. v. MLB Advanced Media, LP*, 2020 WL 1957450, at \*5 (S.D.N.Y. 2020) (enforcing arbitration clause for a claim "arising out of or relating to [the] agreement").

Here, Plaintiffs agreed to arbitrate "all disputes between … Samsung relating in any way to or arising in any way from the EULA, Samsung Software … or the sale, condition or performance of the Product or Samsung Software." *See* Cantwell Decl. ¶ 27. The Seventh Circuit has interpreted arbitration provisions applying similarly broad language—claims "arising out of or relating to" an agreement—as "capable of an expansive reach" under Illinois law. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999).[11] And the text of the Arbitration Agreement at issue here is even more expansive: it applies to any controversy or claim "relating ***in any way*** to or arising ***in any way*** from" either the EULA *or* Samsung Software— including the Gallery App, since it was included with or downloaded on the device prior to sale. Cantwell Decl. ¶¶ 27, 28 (emphasis added). Thus, any claims related to the Gallery App—i.e., *all*

---

[11] The phrase "arising out of or related to" is also interpreted broadly under New York law. *See Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995).

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

of Plaintiff's claims in this case—"aris[e] from … Samsung Software" and are therefore covered by the Arbitration Agreement.

        **E.**      **All Proceedings Should Be Dismissed, or in the Alternative, Stayed Pending Arbitration**

Because all of the claims set forth in the complaint are subject to arbitration, this case should be dismissed pursuant to Rule 12(b)(3) for improper venue. *See Soucy v. Capital Mgmt. Servs., L.P.*, No. 14 C 5935, 2015 WL 404632, at *4 (N.D. Ill. Jan. 29, 2015). The Seventh Circuit has "repeatedly affirmed district courts' decisions dismissing suits where all of the claims must be arbitrated according to the agreement." *Id.* at *6. In the alternative, the proceedings should be stayed under Section 3 of the FAA (which governs the Arbitration Agreement), which allows the district court to stay litigation pending the resolution of arbitration. *See* 9 U.S.C. § 3; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

        **V.**      **CONCLUSION**

Samsung requests that the Court (1) compel Plaintiffs to arbitrate their claims on an individual basis and (2) dismiss or stay this action pending the outcome of arbitration.

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Dated:  October 29, 2021                    By: *s/Mark H. Boyle* _____
                                              Mark H. Boyle

                                              ATTORNEY FOR DEFENDANT
                                              SAMSUNG ELECTRONICS AMERICA, INC.
                                              DONOHUE BROWN MATHEWSON &
                                              SMYTH LLC
                                              Mark H. Boyle
                                              140 South Dearborn Street, Suite 800
                                              Chicago, IL 60603
                                              (312) 422-0900

                                              O'MELVENY & MYERS LLP
                                              Randall W. Edwards (*pro hac vice*)
                                              Matthew D. Powers (*pro hac vice*)
                                              Benjamin C. Seelig (*pro hac vice*)
                                              Two Embarcadero Center, 28th Floor
                                              San Francisco, CA 94111-3823
                                              (415) 984-8700

                                              Attorneys for Samsung Electronics America,
                                              Inc.

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on the 29th day of October, 2021, he caused the foregoing DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS to be filed with the Clerk of the District Court via the CM/ECF system, which will send notification of such filing to all listed parties.

_s/Mark H. Boyle_

140 South Dearborn Street, Suite 800
Chicago, IL 60603
(312) 422-0900